IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, § § § Plaintiff, § § v. § § CRYPTOZOO, INC., a Delaware § Corporation, LOGAN PAUL, DANIELLE § STROBEL, JEFFREY LEVIN, EDUARDO § IBANEZ, JAKE GREENBAUM a/k/a § CRYPTO KING, and OPHIR BENTOV § a/k/a BEN ROTH, § § Defendants. § | CIVIL ACTION NO.: 1:23-cv-110 |

**DEFENDANTS LOGAN PAUL, JEFFREY LEVIN, AND OPHIR BENTOV'S CONSOLIDATED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Logan Paul ("Paul"), Jeffrey Levin ("Levin"), and Ophir Bentov a/k/a Ben Roth ("Bentov") (collectively, the "Individuals") make a special appearance in this action and move to dismiss Plaintiff Don Holland's ("Holland") complaint against them for lack of personal jurisdiction.

## I.  INTRODUCTION

Holland's complaint against the Individuals should be dismissed in its entirety because the Individuals have no connection to Texas and this Court lacks personal jurisdiction over each of them. Holland brings claims against the Individuals, along with other defendants CryptoZoo Inc., Danielle Strobel, Eduardo Ibanez, and Jake Greenbaum a/k/a Crypto King (together with the Individuals, "Defendants") on the basis that they all induced Holland to purchase certain digital assets—Zoo Tokens (a type of digital currency) and Non-Fungible Tokens (NFTs)—for

use in an online game called "CryptoZoo." Holland alleges that Paul promoted the CryptoZoo game through his online platforms, promising that the game would be supported, well-funded, and would make players money. (Complaint ¶ 37.) Holland also alleges that CryptoZoo's Terms of Service stated that "'[Defendants] will strive to do the best for the project and the community.'" (*Id*. ¶ 37 & Ex. 1.) Contrary to these representations, Holland claims that "Defendants"—almost entirely without distinction—manipulated the Zoo Token market to their financial benefit, and failed to deliver a functional CryptoZoo game or support the CryptoZoo community as promised. (*Id*. ¶¶ 38–45.) Holland brings a host of state-law claims sounding in contract, tort, and deceptive business practices, all of which rely on these same general allegations. (*Id*. ¶¶ 56–116.)

Holland's complaint confirms, as it must, that neither Paul, Levin, nor Bentov reside in Texas. And as discussed below, the undisputable evidence establishes that none of the Individuals live or work in Texas, own property in Texas, have sued or been sued by anyone in Texas (except for this case), or have otherwise invoked the privileges or protections of Texas law. Holland does not allege that the Individuals negotiated, performed, or breached any of the contracts that he alleges exist while the Individuals were physically present in Texas. Nor does he allege that the Individuals marketed or promoted CryptoZoo specifically to Texas residents or directed any public statements about the game to Texas residents, such that Texas could be deemed the "focal point" of any allegedly tortious activity. It would therefore violate due process and "traditional notions of fair play and substantial justice" to subject the Individuals to personal jurisdiction in Texas.

Accordingly, Paul, Levin, and Bentov respectfully request that the Court dismiss all Holland's claims against them for lack for personal jurisdiction.

II.     **FACTUAL BACKGROUND**

Holland alleges that in 2021, his son told him about CryptoZoo, an "NFT project" involving Paul. (Complaint ¶ 37.) The game, according to Holland, allowed players to purchase a digital currency called "Zoo Tokens," which could then be used to purchase CryptoZoo NFTs for use in the CryptoZoo online game. (*Id*. ¶ 2.) Holland alleges that Paul promoted the game on his online platforms as "a 'game that makes you money' with a 'massive team' supporting it, funded by 'like a million dollars' Mr. Paul claimed to have invested." (*Id*. ¶ 37.) Holland further alleges that as of August 2021, when Defendants "released" the Zoo Tokens and the NFTs, CryptoZoo's online Terms of Service stated that "'[Defendants] will strive to do the best for the project and the community." (*Id*. ¶ 37 & Ex. 1.) Holland alleges that he purchased $1,000 in Zoo Tokens, which he then used to purchase a CryptoZoo NFT. (*Id*. ¶ 37.)

Holland alleges that the value of his "investment" in the game fluctuated, but that Holland nevertheless spent an additional $2,000 based on nonspecific "false affirmations by the development team, including from Ben Roth." (*Id*. ¶ 38.) But once Paul "announce[d] another NFT project and started ignoring ZOO," Holland claims he "realized his money was likely lost." (*Id*. ¶ 39.)

Holland alleges that CryptoZoo "was never released as advertised and the value of the Zoo Tokens and [CryptoZoo] NFTs plummeted," including because "Defendants manipulated the market for Zoo Tokens by buying and selling them in bulk." (*Id*. ¶¶ 39, 40.) Holland further alleges that Defendants "purchased these digital products at an artificially low value" before the project had been officially launched and, after the public announcement, Defendants Ibanez and Greenbaum, "and potentially other Defendants" sold them "for an immediate and large profit, effectively stealing the money of consumers who had invested." (*Id*. ¶ 43.) According to Holland, "Defendants knew they were supposed to hold onto any early purchased digital

products until months after the public release because they knew that selling before then constitutes a 'rug pull' and is fraudulent." (*Id*.)

### A. Holland's Claims

Holland brings a putative class action against all Defendants for (1) fraud, (2) express breach of contract, (3) implied breach of contract, (4) unjust enrichment[1], (5) violation of Texas' Deceptive Trade Practices Act ("DTPA"), (6) negligence, (7) fraudulent misrepresentation, and (8) conspiracy to commit fraud. The proposed class consists of "[a]ll persons who purchased Zoo tokens and/or CryptoZoo NFTs while in Texas prior to the filing of this action." (*Id*. ¶ 46.) To bring his claims in this Court, Holland invokes diversity jurisdiction under 28 U.S.C. § 1332 (*id*. ¶ 18), and asserts that venue is proper under 28 U.S.C. § 1391(b) on the conclusory basis that "[t]he claims asserted in this action arose in this district; a substantial part of the activities, conduct, and/or damages giving rise to the claims occurred in this district; and Defendants have substantial contacts with this district." (*Id*. ¶ 19.)

The same alleged facts underlie all eight of Holland's claims: Defendants—almost without distinction—failed to provide a functional and supported CryptoZoo game and manipulated the Zoo Token market, in contravention of Defendants' representations and CryptoZoo's Terms of Service. The complaint is devoid of any factual allegations to link Holland's claims to this district or to anywhere in Texas.

### B. The Individuals Have No Connection to Texas

Aside from a single conclusory line that "Defendants have substantial contacts with this district" (Complaint ¶ 19), Holland does not allege anywhere in his complaint that any of the Individuals or claims have any connection to the State of Texas, let alone to this judicial district.

---

[1] Notably, "unjust enrichment is not a distinct independent cause of action but simply a theory of recovery." *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied).

Holland concedes that Paul resides in Dorado, Puerto Rico, and that Levin and Bentov both reside in California. (*Id.* ¶¶ 21, 23, 26; *see* Exhibit 1 [Declaration of Logan Paul ("Paul Decl.")] ¶ 2; Exhibit 2 [Declaration of Jeffrey Levin ("Levin Decl.")] ¶ 2; Exhibit 3 [Declaration of Ophir Bentov ("Bentov Decl.")] ¶ 2.) In fact, the evidence shows that the Individuals have never:

(1) lived or worked in the State of Texas;
(2) maintained a business office in the State of Texas;
(3) owned or leased any property in the State of Texas;
(4) hired any employees in the State of Texas;
(5) paid or owed any taxes to the State of Texas or any of its political subdivisions;
(6) been required to maintain, or maintained, a registered agent for service in Texas; or
(7) been a party to a lawsuit in Texas, except for this case.

(Paul Decl. ¶¶ 2, 4–9; Levin Decl. ¶¶ 2, 4–9; Bentov Decl. ¶¶ 2, 4–9.)

Bentov has never so much as traveled to Texas, and Paul and Levin have each spent less than two weeks total in Texas in the past approximately 10 years. (Bentov Decl. ¶ 3; Paul Decl. ¶ 3; Levin Decl. ¶ 3.) Moreover, none of the Individuals engaged in any conduct related to the CryptoZoo game while physically present in Texas, including promoting or otherwise communicating about the game. (Paul Decl. ¶¶ 3, 10, 12; Levin Decl. ¶¶ 3, 10; Bentov Decl. ¶¶ 3, 10.) In addition, none of the Individuals directly targeted Texas residents in any of the online communications identified in the complaint, nor did they know that any specific players, including Holland, were based in Texas. (Paul Decl. ¶¶ 10–12; Levin Decl. ¶¶ 10–11; Bentov Decl. ¶¶ 11–12.) Holland does not allege otherwise.

In fact, Paul was in Puerto Rico when he allegedly made the oral statements regarding CryptoZoo that are quoted in the complaint (*see* Comp. ¶ 37; Paul Decl. ¶ 10) and none of Paul's alleged online messages about the game were posted from Texas. (*See* Comp. ¶¶ 13–15; Paul Decl. ¶ 12.) Similarly, all of Bentov's communications about CryptoZoo (*see* Comp. ¶ 38) were made from Los Angeles, California. (Bentov Decl. ¶ 10.) The complaint does not identify *any*

CryptoZoo-related communications or activities by Levin at all, let alone in Texas. (*See generally* Complaint; Levin Decl. ¶ 10.)

In short, the only alleged connection this case has to Texas is that Holland alleges that he resides here. (*Id.* ¶ 1.)[2]

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUALS

A federal court sitting in diversity can exercise personal jurisdiction over a nonresident defendant if: "(1) the nonresident defendant is amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the due process clause of the fourteenth amendment." *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985). "Because the Texas long-arm statute has been interpreted to extend to the limits of due process, the principal question [] is whether the assertion of jurisdiction over [a defendant] is constitutionally permissible." *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067–68 (5th Cir. 1992) (citation omitted). Importantly, the party invoking the court's jurisdiction—*i.e.*, Holland—bears the burden of establishing jurisdiction. *Id.*

Under the Fourteenth Amendment's Due Process Clause, a court can exercise personal jurisdiction only if: (1) a defendant has minimum contacts with Texas; and (2) subjecting the defendant to jurisdiction in Texas is consistent with "traditional notions of fair play and substantial justice." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The "minimum contacts" requirement is the "constitutional touchstone" of personal jurisdiction and ensures that a defendant will be "haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he

---

[2] Holland's Complaint does not even allege that he purchased the Zoo Tokens or NFTs while physically present in Texas (*see, e.g.*, Complaint ¶¶ 37, 38), which (even if he did) would still be insufficient to force the Individuals to litigate here due to their lack of contacts with Texas. *See, infra*, § III.A–B.

makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The party invoking the court's jurisdiction must establish both of these prongs, and the latter "fairness prong cannot compensate for or overcome the requirement of some minimum contacts with the forum state." *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1150–51 (5th Cir. 1984) (footnote omitted).

These same principles apply with equal force when a court considers personal jurisdiction in connection with a non-resident's Internet-related activities. As the Fifth Circuit has explained: "Although the Internet and the other new communications technologies do present some strikingly new factual patterns and do change the way personal jurisdiction is acquired over some defendants at the margins . . . the analysis applicable to a case involving jurisdiction based on the Internet . . . should not be different at its most basic level from any other personal jurisdiction case." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226–27 (5th Cir. 2012) (citation omitted). Thus, "[i]f the defendant is not physically present in or a resident of the forum state, and has not been physically served in the forum state, the federal court must undertake the traditional personal jurisdiction analysis." *Id*. (citation omitted).

### A. The Individuals Do Not Have "Minimum Contacts" With Texas

A nonresident's "minimum contacts" with a forum can give rise to "general" or "specific" personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Freudensprung*, 379 F.3d at 343. As discussed below, none of the Individuals have sufficient contacts with Texas for this Court to exercise either general or specific jurisdiction over them.

#### 1. This Court Lacks General Jurisdiction Over the Individuals

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924

(2011). Even so, a court can exercise general jurisdiction when the defendant's contacts with the forum are "sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction." *Stuart*, 772 F.2d at 1191. This "continuous and systematic" contacts test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001). It is "assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

This Court lacks general jurisdiction over the Individuals because their contacts with Texas have not been "sufficiently 'continuous and systematic' to satisfy due process requirements." *See Freudensprung*, 379 F.3d at 345. None of the Individuals are domiciled in Texas. (Complaint ¶¶ 21, 23, 26; *see also* Paul Decl. ¶ 2; Levin Decl. ¶ 2; Bentov Decl. ¶ 2.) They all reside outside Texas—Paul in Dorado, Puerto Rico, and both Levin and Bentov in California. (Comp. ¶¶ 21, 23, 26; *see also* Paul Decl. ¶ 2; Levin Decl. ¶ 2; Bentov Decl. ¶ 2.) In addition, none of the Individuals have ever operated a business in Texas, owned or leased real property in Texas, paid or owed taxes to the State of Texas, maintained a registered agent for service in Texas, or been a party to a lawsuit in Texas, except for this case. (Paul Decl. ¶¶ 2, 4–9; Levin Decl. ¶¶ 2, 4–9; Bentov Decl. ¶¶ 2, 4–9.) Bentov has never even traveled to Texas, and Paul and Levin have each spent less than two weeks total in Texas in the past approximately 10 years—for trips that had nothing to do with the CryptoZoo game. (Bentov Decl. ¶ 3; Paul Decl. ¶ 3; Levin Decl. ¶ 3.) Regardless, "mere travel, even at regular intervals into a state, does not create general jurisdiction." *Johnston*, 523 F.3d at 614.

Accordingly, no basis exists for this Court to exercise general jurisdiction over the Individuals—and Holland does not allege otherwise. The portion of Holland's complaint labeled

"Parties and Personal Jurisdiction" confirms that no Defendant, including Paul, Levin, and Bentov, resides in Texas. (*See* Comp. ¶¶ 20–26.) The only time Holland mentions any contacts with Texas is in connection with the complaint's venue allegations, in which he asserts, in conclusory fashion, that "[t]he claims asserted in this action arose in this district, a substantial part of the activities, conduct, and/or damages giving rise to the claims occurred in this district, *and Defendants have substantial contacts with this district*." (*Id.* ¶ 19 [emphasis added].) Holland alleges no facts to support these conclusory statements, so the Court can—and should—disregard them. *See Panda Brandywine Corp. v. Ontario Mech. Sales & Serv., Inc.*, 253 F.3d 865, 868–69 (5th Cir. 2001) (recognizing that a court need not credit conclusory allegations purporting to establish personal jurisdiction—even if uncontroverted).[3]

Therefore, because Paul, Levin, and Bentov do not have any contacts with Texas, let alone "continuous and systematic" contacts, this Court lacks general jurisdiction over them. *See Stuart*, 772 F.2d at 1191.

### 2. This Court Lacks Specific Jurisdiction Over the Individuals

Without continuous and systematic contacts, Holland is left with specific jurisdiction, which requires that "(1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants contacts with the forum state." *Freudensprung*, 379 F.3d at 343 (relying on *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)). "In short, '[t]he focus [of this inquiry] is on the relationship between the defendant, the forum, and the litigation.'" *Id.* (citing *Burger King*, 471 U.S. at 474).

---

[3] Nor would any of the Individuals' alleged efforts to promote the CryptoZoo game to the public at large change this analysis. *See Growden*, 733 F.2d at 1151–52 ("[Defendant's] advertising in these two national trade publications which circulated in Louisiana is insufficient, without more, to constitute a 'purposeful availment' of the facilities of Louisiana.").

As discussed below, Holland cannot satisfy either prong necessary for this Court to exercise specific jurisdiction over the Individuals for any of his claims. First, none of the Individuals "purposely directed" any CryptoZoo-related activities toward Texas nor "purposely availed" themselves of the privileges of conducting any CryptoZoo activities in Texas. (*See, e.g.*, Paul Decl. ¶¶ 10–12; Levin Decl. ¶¶ 10–11; Bentov Decl. ¶¶ 10–12.) And second, Holland's claims do not—and cannot—"arise out of or relate to" any of the Individuals' contacts with Texas because there no relevant contacts with Texas. *See, e.g.*, *Panda Brandywine Corp.*, 253 F.3d at 868.

### a. Holland's Contract Claims

To determine whether a court has specific jurisdiction over a nonresident defendant for a breach of contract claim, the Fifth Circuit considers factors such as the place of contracting, the place of performance, and the law governing the contract. *See Jones*, 954 F.2d at 1068–69. As the Supreme Court has instructed, courts should employ a "highly realistic approach" in making this determination and take into account "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts" with the forum state. *See Burger King*, 471 U.S. at 478–79; *see, e.g.*, *Stuart*, 772 F.2d at 1192–94 (holding that the court lacked specific jurisdiction over nonresident ski equipment manufacturer who contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas) (quoting *Burger King*, 471 U.S. at 478–79); *Pervasive Software Inc.*, 688 F.3d at 223 (holding that the court lacked jurisdiction over nonresident software developer who allegedly breached royalty agreement with Texas software manufacturer).

Importantly, "merely contracting with a resident of the forum state is insufficient [] to subject the nonresident to the forum's jurisdiction." *Colwell Realty Invs., Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986) (citing *Burger King*, 471 U.S. at 478–79); *see Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that the court lacked specific personal jurisdiction even though nonresident entered into a contract with Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communications with the plaintiff in Texas). Indeed, the Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung*, 379 F.3d at 344 (holding there was no specific jurisdiction over nonresident defendant who entered into a contract with a Texas corporation, communicated with the Texas corporation in carrying out the contract, agreed to arbitrate any disputes arising out of the contract in Texas, and wired payments under the contract to Texas).

The Individuals' contacts with Texas here are far less substantial than in *Holt*, *Freudensprung*, and *Stuart*, all of which held that the court lacked specific jurisdiction over the nonresident defendants. Holland's claims for breach of express and implied contract are premised on Defendants' alleged online representations that the CryptoZoo game would be functional and supported, and that Defendants would "strive to do the best for the project and the community" under CryptoZoo's Terms of Service. (*See* Comp. ¶ 37 & Ex. 1.) While his allegations appear insufficient to establish that any contract exists between him and the

Individuals,[4] Holland does not allege that the Individuals entered into, performed, or breached any purported contract in Texas. Indeed, none of the Individuals conducted any business related to CryptoZoo while physically present in Texas, nor did they direct any communications specifically to Texas residents or target Texas residents in advertising or promoting the game. (*See* Paul Decl. ¶¶ 3, 10–12; Levin Decl. ¶¶ 3, 10–11; Bentov Decl. ¶¶ 3, 10–12.)

Promoting CryptoZoo to the public at large—which includes residents of every State—does not support a contrary result, nor does it support exposing the Individuals to jurisdiction in every State where a resident may have heard or read a promotion. *See Stuart*, 772 F.2d at 1192–94. Thus, to the extent this case relates to Texas at all, it does so only though the mere fortuity that Holland happens to be a resident of Texas and that he purports to represent a putative class of Texas residents. That is insufficient to subject the Individuals to specific jurisdiction here. *See, e.g.*, *Freudensprung*, 379 F.3d at 344.

### b.   Holland's Intentional Tort Claims

This Court cannot exercise specific jurisdiction over the Individuals under the "effects test" either, which provides that personal jurisdiction may be proper where "effects" are felt inside the forum state as a result of the defendant's activity outside the forum state. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). The Fifth Circuit has cautioned that the effects test is "but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir. 2002) (applying the "effects test" and determining the court lacked specific jurisdiction over nonresidents in Texas). The test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful

---

[4] While not the focus of this motion, the Individuals will challenge the sufficiency of Holland's allegations in the appropriate forum.

availment of the benefits of the forum state." *Panda Brandywine Corp.*, 253 F.3d at 869 (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)). Moreover, "[s]uch jurisdiction is rare" and the Fifth Circuit has "expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (holding no personal jurisdiction in Texas under "effects test") (citing *Panda Brandywine Corp.*, 253 F.3d at 870 (holding no specific jurisdiction existed over nonresident in Texas for plaintiffs' tortious interference with contract claims)).

A court can exercise specific jurisdiction under the effects test when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to the plaintiff; and (3) the defendant expressly aimed [its] conduct at the forum, so that the forum can be said to be the focal point of the tortious activity." *Nat. Dynamics, LLC v. Conquest Int'l, Inc.*, A:12–CV–965–JRN, 2013 WL 12077798, at *4 (W.D. Tex. July 3, 2013) (citing *Calder*, 465 U.S. at 789). But injury alone, even if foreseeable, is not sufficient to confer specific jurisdiction unless the defendant directs specific acts toward the forum. *See Walden*, 571 U.S. at 289–90. As the Supreme Court has explained, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* Thus, the question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way[,]" and to inquire otherwise "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.*[5]

---

[5] Moreover, "actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury." *Great Am. Food Chain, Inc. v. Andreottola*, No. 3:14-CV-1727-L, 2015 WL 493758, at

Likewise, "[a]pplication of the effects test in a case involving Internet activities 'requires proof that the out-of-state defendant's Internet activity is expressly directed at or directed to the forum state.'" *Nat. Dynamics*, 2013 WL 12077798, at *4 (citing *Revell*, 317 F.3d at 475). In *Natural Dynamics*, for example, the District Court dismissed breach of contract, unfair competition, and trademark infringement claims against a nonresident vitamin and supplement distributor and its sole shareholder for lack of personal jurisdiction. *Id.* at *1. The resident plaintiff alleged that the nonresidents breached a purchase and sale agreement and improperly attempted to compete with plaintiff. *Id.* at *2. In opposing the motion to dismiss, plaintiff attempted to rely on defendants' website that allegedly contained confusingly similar products and marketing, but the court held that plaintiff "fail[ed] to demonstrate how each of the claims in this suit ar[o]se out of Defendants' contacts with Texas." *Id.* at *3.

The court reasoned that "[a] website that is 'presumably directed at the entire world' instead of specifically targeted to residents of the forum state cannot support personal jurisdiction over the nonresident defendant." *Id*. Because the plaintiff did not "present any evidence that Defendants have expressly directed their website activity to Texas or to residents of Texas," the court refused to apply the effects test "based merely on Plaintiff's vague allegation that Defendants have caused harm in Texas." *Id*.; *see also Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 772 (5th Cir. 2001) (holding that the court lacked specific jurisdiction where there was no evidence that the defendant "expressly aimed its allegedly tortious activities at Texas, nor is there evidence that [defendant] knew the brunt of [plaintiff's] injury would be felt there.").

---

*4–5 (N.D. Tex. Feb. 4, 2015) (citing *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996)). Under this formulation, "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Id.* Thus, even if Holland experienced economic effects in Texas, that alone cannot establish specific jurisdiction.

Here, Holland brings tort claims for fraud, negligence, fraudulent misrepresentation, and conspiracy[6] to commit fraud based on Defendants' alleged misrepresentations that they would create a functioning and well-supported game and would strive to do their best for the CryptoZoo community.[7] (*See, e.g.*, Comp. ¶¶ 56–61, 100–116.) At most, Holland alleges that he is a resident of Texas and lost a portion of the money he spent on the Zoo Tokens and CryptoZoo NFTs. (*See id.* ¶¶ 1, 37–45.) He does not allege—nor could he—that any of the Individuals "expressly directed" their online communications at Holland or any other Texas resident. (*See* Paul Decl. ¶¶ 10–12; Levin Decl. ¶¶ 10–11; Bentov Decl. ¶¶ 10–12.) And as outlined above, he also fails to allege that the Individuals purposely availed themselves of the privilege of doing business in Texas in connection with the CryptoZoo game. Thus, even if Holland felt a financial loss in Texas, that is not enough for Texas to be deemed the "focal point" of the Individuals' alleged tortious activity, so this Court cannot exercise specific jurisdiction over the Individuals for Holland's claims. *See, e.g.*, *Revel*, 317 F.3d at 473.

For all these reasons, Holland has not and cannot show that any of the Individuals have minimum contacts with Texas. Accordingly, this Court lacks specific personal jurisdiction over Paul, Levin, and Bentov.

---

[6] Conspiracy allegations do not relieve Holland of his burden to prove that each and every Defendant has sufficient minimum contacts with Texas. *See Andreottola*, 2015 WL 493758, at *7 ("[B]ecause the focus must be on each individual defendant's contacts with the state, personal jurisdiction does not arise from any [one defendant's] acts that may have been directed at Texas. Rather, Plaintiffs must show that either the alleged conspiracy or [each defendant's] part in the conspiracy was related to or arose out of their contacts with Texas.") (internal citations omitted).

[7] As noted, Holland also brings a claim under the DTPA, based on the same allegations as his breach of contract and tort claims. (*See* Complaint ¶¶ 93-99.) The same jurisdictional analysis applies to this claim, so Holland's DTPA should be dismissed with the rest of his claims. *See Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x 455, 457 (5th Cir. 2016) (dismissing copyright and trademark infringement, breach of contract, unjust enrichment, tortious interference with contract, unfair competition, and violations of the Texas Deceptive Trade Practices Act for lack of personal jurisdiction).

### B. Forcing the Individuals to Defend This Action in Texas Would Offend Traditional Notions of Fair Play and Substantial Justice

If a nonresident defendant has sufficient minimum contacts with the forum state and the claims at issue arise out of those contacts—which is not the case here—the court then considers whether exercising jurisdiction over the nonresident would be fair and reasonable. *See Wilson*, 20 F.3d at 647 (citations omitted). In this regard, exercising jurisdiction must be reasonable in light of the forum's interest in the litigation and must not offend traditional notions of fair play and substantial justice. *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *Submersible Sys.*, 249 F.3d at 418 (citing *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 113–14 (1987)).

Courts examine five factors for this inquiry: "(1) the burden on the non-resident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *See Stross v. Lynn*, No. 1:19-CV-01022-LY, 2020 WL 4192271, at *2 (W.D. Tex. June 3, 2020), *report and recommendation adopted*, No. 1:19-CV-1022-LY, 2020 WL 10058202 (W.D. Tex. Aug. 7, 2020) (listing factors).

It is unnecessary for the Court to engage in this fairness inquiry where, as here, Holland fails to demonstrate that any of the Individuals have sufficient "minimum contacts" with Texas. *See Stross*, 2020 WL 4192271, at *5; *Wilson*, 20 F.3d at 651 n.7 ("Because we hold that [nonresidents] do not have sufficient related or unrelated minimum contacts with Texas, we need not address whether the exercise of personal jurisdiction in this case would be consonant with 'traditional notions of fair play and substantial justice.'" (citations omitted)).

Even if the Court were to consider this inquiry, requiring the Individuals to defend against Holland's claims in Texas would be unfair and unreasonable. The Individuals do not have any relevant contacts with Texas. (Paul Decl. ¶¶ 2–12; Levin Decl. ¶¶ 2–11; Bentov Decl.

¶¶ 2–12.) If this matter were to proceed in Texas, it would greatly inconvenience the Individuals, all of whom live elsewhere. (Paul Decl. ¶ 2; Levin Decl. ¶ 2; Bentov Decl. ¶ 2.) Further, Texas has very little interest in adjudicating this dispute because it involves communications and conduct by out-of-state actors, none of which were expressly directed to Texas or Texas residents. In light of these practical considerations, subjecting the Individuals to jurisdiction in Texas would offend traditional notions of fair play and substantial justice.

## IV.     CONCLUSION

For the reasons set forth above, Paul, Levin, and Bentov respectfully request that the Court grant this motion to dismiss all claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Respectfully submitted,

*/s/ Shelby O'Brien*
SHELBY O'BRIEN
ENOCH KEVER PLLC
7600 N. Capital of Texas Highway
Building B, Suite 200
Austin, Texas 78731
Telephone: (512) 615-1223
Facsimile: (512) 615-1198
sobrien@enochkever.com

*/s/ Sarah E. Moses*
CHRISTOPHER CHATHAM
BRAD SEILING
SARAH E. MOSES
BENJAMIN E. STRAUSS
(*Pro Hac Vice* Applications Pending)
MANATT, PHELPS, & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
cchatham@manatt.com
bseiling@manatt.com
smoses@manatt.com
bstrauss@manatt.com

Attorneys for Defendants Logan Paul, Jeffrey Levin, and Ophir Bentov

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May 2023, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of electronic filing to the following CM/ECF registrants:

| | |
|---|---|
| Jarrett Lee Ellzey<br>Leigh S. Montgomery<br>Ellzey & Associates, PLLC<br>1105 Milford St.<br>Houston, TX 77006<br>Tel: (888) 350-3931<br>Fax: (888) 995-3335<br>Email: jarrett@ellzeylaw.com<br>Email: leigh@ellzeylaw.com<br><br>Thomas Kherkher<br>Kherkher Law Firm, PLLC<br>5909 West Loop South, Suite 525<br>Houston, TX 77401<br>Tel: (713) 244-6363<br>Email: tom@attorneytom.com | Attorneys for Plaintiff Don Holland |
| Lindsay K. Gerdes<br>Mark G. Arnzen<br>Dinsmore & Shohl LLP<br>255 E. Fifth Street, Suite 1900<br>Cincinnati, OH 45202<br>Tel: (513) 977-8200<br>Fax: (513) 977-1841<br>Email: lindsay.gerdes@dinsmore.com<br>Email: mark.arnzen@dinsmore.com<br><br>William B. Mateja<br>Jonathan Clark<br>Sheppard Mullin Richter & Hampton LLP<br>2200 Ross Avenue, 20th Fl.<br>Dallas, TX 75201<br>Tel: (469) 391-7415<br>Fax: (469) 391-7559<br>Email: bmateja@sheppardmullin.com<br>Email: jclark@sheppardmullin.com | Attorneys for Defendant Danielle Strobel |

*/s/ Shelby O'Brien*
Shelby O'Brien