**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | Civil Action No. 1:23-cv-00110 |
| | § § | JURY TRIAL DEMANDED |
| CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH, | § § § § § § § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

"Regardless of whether your offering involves beavers, chinchillas or animal-based NFTs, under the federal securities laws, it's the economic reality of the offering – not the labels you put on it or the underlying objects – that guides the determination of what's an investment contract and therefore a security."

–Gurbir S. Grewal, Director of the SEC's Division of Enforcement.

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................6

II.     NATURE OF ACTION ..........................................................................................10

III.    SUBJECT MATTER JURISDICTION AND VENUE................................................18

IV.     BACKGROUND ON DIGITAL ASSETS, CRYPTOCURRENCY, AND NFTS.....19

V.      MISNOMER / ALTER EGO .................................................................................21

VI.     PRINCIPAL-AGENT LIABILITY .........................................................................21

VII.    PARTIES ............................................................................................................22

    A.   Co-Lead Class Plaintiffs .................................................................................22

    B.   Individual Plaintiffs .......................................................................................22

    C.   Founder Defendants .......................................................................................41

    D.   Manager Defendant ........................................................................................43

VIII.   FACTUAL ALLEGATIONS ..................................................................................43

IX.     CLASS ACTION ALLEGATIONS ........................................................................51

X.      CAUSES OF ACTION ..........................................................................................56

    A.   Count One: Fraud...........................................................................................56

    B.   Count Two: Express Breach Of Contract .........................................................57

    C.   Count Three: Implied Breach Of Contract ......................................................59

    D.   Count Four: Unjust Enrichment ......................................................................60

    E.   Count Five: Negligence...................................................................................61

    F.   Count Six: Fraudulent Misrepresentation ........................................................62

    G.   Count Seven: Conspiracy To Commit Fraud.....................................................63

    H.   Count Eight: Civil Aiding and Abetting Fraud .................................................63

    I.   Count Nine: Violation of the Arizona Consumer Fraud Act (Ariz. Rev.
         Stat. Ann. § 44-1521, et seq.) .........................................................................64

    J.   Count Ten: False Advertising Under the California False Advertising
         Law (Cal. Bus. & Prof. Code § 17500, et seq.)................................................67

K.    COUNT ELEVEN: FALSE VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
      (CAL. CIV. CODE § 1750, *ET SEQ.*) ....................................................................... 70

L.    COUNT TWELVE: UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES
      UNDER THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §
      17200, *ET SEQ.*)................................................................................................. 73

M.    COUNT THIRTEEN: VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
      (COLO. REV. STAT. § 6-1-101, *ET SEQ.*) ............................................................... 74

N.    COUNT FOURTEEN: VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE
      PRACTICES ACT (FLA. STAT. § 501.201, *ET SEQ.*) ................................................. 77

O.    COUNT FIFTEEN: VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR
      CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*) .................................... 79

P.    COUNT SIXTEEN: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE
      BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1, *ET SEQ.*) ..................... 82

Q.    COUNT SEVENTEEN: VIOLATION OF THE DECEPTIVE ACTS OR PRACTICES
      PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*) ........... 85

R.    COUNT EIGHTEEN: VIOLATION OF THE NORTH CAROLINA PRIVATE RIGHT OF
      ACTION FOR CONSUMER FRAUDS ACT (NORTH CAROLINA CODE § 714H.1, *ET SEQ.*) ........ 88

S.    COUNT NINETEEN: VIOLATION OF THE NEW JERSEY PRIVATE RIGHT OF ACTION FOR
      CONSUMER FRAUDS ACT (NEW JERSEY CODE § 714H.1, *ET SEQ.*) .................................... 90

T.    COUNT TWENTY: VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
      (NEV. REV. STAT. § 598.0903, *ET SEQ.*)................................................................. 93

U.    COUNT TWENTY-ONE: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
      (N.Y. GEN. BUS. LAW § 349) .............................................................................. 95

V.    COUNT TWENTY-TWO: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE
      PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. §§ 201-1, *ET
      SEQ.*)................................................................................................................. 98

W.    COUNT TWENTY-THREE: VIOLATION OF TEXAS'S DECEPTIVE TRADE PRACTICES
      ACT ("DTPA")................................................................................................. 101

X.    COUNT TWENTY-FOUR: VIOLATION OF SECTION 10(B) AND SEC RULE 10B-5(B).......... 104

Y.    COUNT TWENTY-FIVE: VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
      AGAINST THE FOUNDER DEFENDANTS .............................................................. 107

Z.   COUNT TWENTY-SIX: VIOLATION OF RICO: 18 U.S.C. § 1962(C) ................................... 108

AA.  COUNT TWENTY-SEVEN: COMMODITY POOL FRAUD IN VIOLATION OF SECTIONS 4O
     AND 22(A) OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. § 6O, 7 U.S.C. §
     25(A)(1). .................................................................................................................... 110

**XI.    DAMAGES ............................................................................................................. 111**

**XII.   PUNITIVE DAMAGES ........................................................................................... 112**

**XIII.  ATTORNEY'S FEES ............................................................................................... 112**

**XIV.   INCORPORATION OF PARAGRAPHS .................................................................. 113**

**XV.    PRAYER FOR RELIEF .......................................................................................... 113**

Co-Lead Plaintiffs Don Holland, Alex Heikali, and Mourad Kechichian, each individually and on behalf all others similarly situated, and Plaintiffs Simon Geldof, Jeffer Holzheimer, Ali Mostafa, Marko Drapic, Richard Lam, Daniel Commons, Conrado Canete, Jesse Griggs, Kyle Gorney, Jakob Emil Slotsvang, Daniel Nicolici, Jacob Juggins, Matthew Walmsley, Lasse Bjornstad, Theirry Ducatel, Emilio Jorge Collazo Sanz, Renato Herartt, Agron Pitarka, Arseny Savrasov, Kira Krieg, Jacob Stockamp, Dmitry Bobkov, Patrick Marcher, Abdullah Miraj, Nicolas Campoamor, David Reading, Cristian Nunez, Liam Manning, Daniel Healy, Aidan O'Flaherty, Jacky Jiang, Yanick Martel, Liam Giblin, Armen Akopian, Hwa Kwang Kuar, Evgeniya Guberman, Nicolas Camacho, Nathan Jones, Paul Brian Endriga, Carlos Manuel Miniño Medina, Tyler Paboojian, Mitch Robinson, Nicolas Cortes, Eduardo Vazquez, Juan Pablo Ochoa, Santiago Borzone, Nabine Neupane, Matthew Bundy, Nicolas Mougel, Vraj Patel, Brandon Potemra, Marco Zahedi, Thomas Baker, Liam Boyd, Tim Bauer, Ayush Patel, Marius Amihaesei, Oliver Simoza, Andrew Felkin, Shaun Triplett, Louis Dimonaco, Umer Ali, Justin Mayo, Jesper Roos, Martin Paolo Austria, Gunnar Leon, James Goetz, Phillip Ladendorf, Mike Speilmann, Zaboer Rafaqat, Afonso Silvano, Johan Cruz, Tom Fitzgerald, Kurt Alexander, George Bou Khalil, Martin Beattie, Luke Mcllwee, Garrett Roche, Duarte Campos de Oliveira, Emil Norgaard, Sean Fry, Mark Lightbown, Anthony Arnold, Daniel Hernández, Tom Cropper, João Amorim, Marcus Owens, David Nicholls, Ricardo Garcia, Jagdeep Cheema, Shawn Bourget, Arun Bhatta, Marcus Karl Förster, Alexandre El-Hage, Matthew Chase, Matthew Walker, James Furber, Hon fai Ma, Mangus Lervold, Luke Gorman, Brennen Giroux, Jordan Hazel, Danielle Altman, Daniel Brink, Jacobo Castaño, Logan Law, Artiom Zorin, Grant Kim Castillones, Francisco Javier Fernandez Sanz, Mitchell Rogers, Jaime Ruiz Martinez, Dražen Jakobović, Kenneth Thorbjornsen, Jon Gjyleri, Brett Thomas, Michael Ahdoot, David-lee Brunelle, Kyle McVey, Mohammad Shahzad

Faisal, Yudesh Ramchand, John Louie Magat, Julian Vincent Deutsch, Jefferey Lens, Andrei Diaconu, Jake Castinetti, Rainey van Oers, William Ball, Jason Thompson, Aden Worroll, Mark Furber, Isaiah Hopkins, Reece Dickson, Yury Petrov, Rob Taylor, Yori Bouthillier, Isaac Jensen, and Diego Villalba (collectively "Plaintiffs"), by their undersigned attorneys, allege in this First Amended Class Action Complaint for violations of the federal securities laws (the "Complaint") the following, based upon personal knowledge with respect to their own acts, and upon information and belief based upon facts obtained through investigation conducted by their counsel, which included, inter alia: (a) documents and solicitation materials made by Defendants; (b) public statements made by Defendants concerning CryptoZoo, Inc. or the CryptoZoo Products; and (c) media publications, web blogs, and other web sources concerning CryptoZoo Products, against of CryptoZoo Inc., Founder Defendants Logan Paul, Danielle Strobel, Jeffrey Levin, Eddie Ibanez, and Jake Greenbaum a/k/a Crypto King, and Manager Defendant Ophir Bentov a/k/a Ben Roth (collectively, "Defendants").

Despite the public admissions and internal documents already available, Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. A substantial amount of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their control.

## I.  INTRODUCTION

1.  This is a class action lawsuit against snake-oil salesmen masquerading as an ever-pending online children's game company. Defendants sold digital assets that did not have characteristics, uses, or benefits they advertised and promoted and, either through reckless incompetence or greed, failed to pay the developers and release the CryptoZoo game—the purported purpose of Defendants' endeavor that may have concealed their scheme.

2.  Founder Defendants Logan Paul, Danielle Strobel, Jeffrey Levin, Eddie Ibanez, and

Jake Greenbaum a/k/a Crypto King created the company, CryptoZoo Inc., to sell digital assets ostensibly for use in the digital CryptoZoo game: first, in the form of a digital currency called Zoo Tokens, which could then be used to purchase Defendants' other products, CryptoZoo Non-Fungible Tokens ("CZ NFTs"). Non-Fungible Tokens ("NFTs"), as discussed below, are a form of digital assets that can be purchased, sold, and transferred on other cryptocurrencies, such as the Binance or Ethereum blockchain in this case. Collectively, Zoo Tokens and CZ NFTs are referred to as "CryptoZoo Products" below. Defendants also created an online CryptoZoo community to discuss the game, which Manager Defendant Ophir Bentov a/k/a Ben Roth oversaw maintaining.

3.      Ultimately, Defendants never released the game—though allegedly it was completed "early in 2023"—despite Defendants' statements from 2021 that it had already been completed and tested. The first of these public statements was made during the public announcement of CryptoZoo on August 18, 2021, by Defendant Logan Paul, the majority owner of CryptoZoo and online celebrity, via his YouTube show Impaulsive, claiming the CryptoZoo game was "so fun" and "a really fun game that makes you money."

4.      Yet, on January 4, 2024, almost a year after the filing date of this lawsuit—Paul publicly admitted via X that the game will never be released, allegedly because "there are too many regulatory hurdles that would need to be cleared." Logan Paul, X, @LoganPaul, available at https://twitter.com/LoganPaul/status/1742965334645276708 ("2024 Tweet"). Paul's 2024 Tweet revealed Defendants' promises and representations they had individually played the CryptoZoo game, or that it was functional, made before the game was allegedly "complet[ed] in early 2023" were false. *Id*.

5.      Further, Paul attempts to distance himself from the fraudulent scheme he instigated with the other Founder Defendants by blaming "[b]ad actors who DID steal money and who

betrayed [the CryptoZoo] team while internally sabotaging the game" (*id.*), referencing his contemporaneously filed, self-exculpatory crossclaims against Defendants Ibanez and Greenbaum. *See* Dkt. 55 at p.15. To create more distance from his bad acts, Paul also offers to "buy-back" CZ NFTs for their "original purchase price," claiming it is "a way for [him] to make whole those who intended to play CryptoZoo." 2024 Tweet.

6.      Yet, an inspection of Paul's "buy-back" program's Terms and Conditions reveals his promises to again be misrepresentations. The Terms and Conditions do not contain the term "original purchase price" and in its place Paul offers a flat exchange of 0.1 Ethereum for each CZ NFT returned—conveniently omitting the economic reality that Ethereum's dollar-value has gone down nearly 50% since the initial sale of CryptoZoo products over two years ago:

> Upon requesting a buy-back and accepting these Terms, PAUL agrees to pay you .1 Ethereum, and in exchange you agree to return, the CryptoZoo NFT [] that is the subject of your buy-back request (the "Buy-Back"). Pursuant to this Buy-Back, .1 Ethereum will be deposited into the crypto wallet from which the NFT was returned, and at that time you will no longer own or have any possessory interest in the NFT that was returned.

*See* Terms and Conditions, Logan Paul's EggNFTBuyBack program, available at https://etotbjdn3ex.typeform.com/EggNFTBuyBack. The next term, entitled Eligibility, further eviscerates Paul's presented offer by granting Paul sole discretion as to whether to complete the exchange even after the NFT is transferred to him:

> The CryptoZoo NFTs eligible for the Buy-Back will be base egg NFTs and base animal NFTs. Hybrid animal NFTs will not be eligible for the Buy-Back. Any NFTs submitted for the Buy-Back that PAUL in his sole discretion deems ineligible pursuant to this provision will not be returned.

*Id*.

7.      And most revealing of all, the Terms and Conditions contain a term entitled Waiver and Release of Claims term requiring claimants to waive all other CryptoZoo related claims, including for Zoo Tokens. Investors/consumers, such as Plaintiffs and those similarly situated,

spent much more and lost much more on Zoo Tokens than CZ NFTs by almost a factor of ten. The differential was caused as investors/consumers lost faith after purchasing Zoo Tokens yet never receiving the CryptoZoo game to use the CZ NFTs, which themselves were later discovered to not have the advertised properties. The Waiver and Release of Claims covers claims against Paul and "any related personnel, affiliates, agents, partners, employees, service providers, or representatives, for monetary or equitable relief arising out of or in connection with CryptoZoo, including but not limited to this Buy-Back, your purchase of any $ZOO tokens, or your purchase of any CryptoZoo NFT." *Id*. The term is designed to have damaged consumers/investors waive their valuable Zoo Token claims in exchange for receiving a partial recovery on their less valuable (overall) CZ NFT claims.

8.      Paul states the Zoo Tokens are not included because the "buy-back is not intended to compensate those who gambled on the crypto market and lost" before incongruously stating, "the Zoo Token was created to support the CryptoZoo game and its players; it was 'not intended as an investment vehicle,' as outlined in the original WhitePaper." 2024 Tweet. Yet, even if Zoo Tokens were created solely to support the CryptoZoo game—despite Paul's prior representation that CryptoZoo was a "really fun game that makes you money" at a time before CZ NFTs had even been released—the game never existed or will never be released. Defendants promised one thing up front, did something completely different behind the scenes for years, and now attempt to walk back their misrepresentations and fraudulent inducements to avoid liability.

9.      Defendants misrepresented the status of the CryptoZoo game to entice Paul's loyal online fans and the public into investing into CryptoZoo Products and then failed to ever provide a functional CryptoZoo game to use said CryptoZoo Products, failed to support the CryptoZoo community as promised, and manipulated the initial and resale markets for Zoo Tokens and CZ

NFTs.

## II.      NATURE OF ACTION

10.     This action is brought on behalf of a class consisting of all persons and entities who purchased Zoo Tokens or CZ NFTs ("CryptoZoo Products") from June 11, 2021 through the original filing date of this suit, February 2, 2023, inclusive (the "Class"). The Class is comprised of four subclasses: (1) all persons and entities who purchased Zoo Tokens directly from Defendants, or the platform Defendants used for sale, on their public release date; (2) all persons and entities who purchased CZ NFTs directly from Defendants, or the platform Defendants used for sale, on their public release date; (3) all persons and entities who purchased Zoo Tokens or CZ NFTs directly from Defendants during the class period; and (4) all persons and entities who purchased Zoo Tokens or CZ NFTs on the open market during the class period as a result of Defendants' successfully soliciting Zoo Tokens or CZ NFTs. This action seeks to recover damages for Plaintiffs and future Class members' claims, which are brought under common law, state consumer statutes, and violations of federal law, including federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by SEC, against CryptoZoo Inc., the Founder Defendants, and the Manager Defendant, who was paid to promote the products to, and manage, the CryptoZoo online community.

11.     Amongst common law and state consumer claims, this action alleges Exchange Act violations of Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5] against all Defendants; and violations of Section 20(a) [15 U.S.C. § 78t(a)] against the Founder Defendants (the "Exchange Act Claims").

12.     Defendants were never permitted to solicit investments from the public related to CryptoZoo. The entity CryptoZoo Inc. was created to serve as a fraudulent vehicle for the sole

purpose of selling patently worthless, unregistered Zoo Tokens and CZ NFTs to enrich CryptoZoo's founders, promoter/manager, and affiliates. Absent Defendants' fraudulent conduct and misrepresentations, Zoo Tokens and CZ NFTs could not have been offered and sold to investors at any price.

13. Defendants promoted CryptoZoo Products using Paul's online platforms—such as his YouTube channels, specifically his show Impaulsive, as well as other social media accounts to consumers unfamiliar with digital currency products, as a "game that makes you money"—despite no game existing unbeknownst to said customers. This led to tens of thousands of people purchasing said fraudulent security products.

14. The CryptoZoo game would never be released—but that did not deter Defendants' scheme. Defendants maintained course and manipulated the digital currency market for Zoo Tokens to their advantage by executing a "rug pull," which is a colloquial term used to describe a scheme in which an NFT developer solicits funds from prospective NFT purchasers promising them certain benefits. Once the purchasers' funds are used to purchase the NFTs, the developers abruptly abandon the project and fail to deliver the promised benefits all while fraudulently retaining the purchasers' funds.

15. As part of Defendants' NFT scheme, Defendants marketed CZ NFTs to purchasers by falsely claiming that, in exchange for transferring cryptocurrency to purchase the CZ NFT, purchasers would later receive benefits, including, among other things, rewards, exclusive access to other cryptocurrency assets, and the support of an online ecosystem to use and market CZ NFTs. Soon after completing the sale of all their CZ NFTs, Defendants, together with others, transferred millions of dollars' worth of purchasers' cryptocurrency to, among other places, wallets controlled by Defendants.

16.     This is similar to other morally bankrupt strategies Defendants Paul and Levin, potentially in conjunction with other Defendants, employed with other cryptocurrency and NFT related rug-pulls, pump-and-dumps, insider trading schemes—scams generally—including Dink Doink, Liquid Marketplace, F*** Elon, EMAX, OMI, and Elon Gate. Paul ties these schemes together with CryptoZoo when he appeared on a YouTube show hosted by True Geordie on June 19, 2022—a time when many Plaintiffs and future potential Class members were still asking for the CryptoZoo game. Paul, attempting to distance himself from the repercussions of his "failed projects" aka scams, stated, "[he] will keep building" from his failed projects and his current NFT project "will work." LOGAN PAUL Calls Out Everyone, True Geordie Podcast #155, available at https://www.youtube.com/watch?v=QOTQrXa1YKw. The only issue being that Paul was referring to another NFT project called Originals, implying CryptoZoo was a failure, before he goes on to say he "will explain everything one day [about his NFT past], with his manger [Levin] who's like in charge now." *Id*.

17.     Even once this scheme came to the public's attention in December of 2022, Paul posted a video on January 3, 2023, denying responsibility by blaming a "developer who stole the game code" and "trusting the team that [he] relied on to vet and manage [Defendant Ibanez's] hiring process," who hired the developer and who also "conned [him]." He then deleted it the same day after receiving negative public attention.

18.     In another attempt, Paul acknowledged CryptoZoo's failings on January 13, 2023, releasing a video promising to (1) "burn" his and Levin's Zoo Tokens, (2) create a "rewards program for disappointed Base Egg and Base Animals holders," and (3) to finish and deliver the game. The rewards program involves "burn[ing] your Base Egg or Base Animal for the mint price (0.1 Eth/equivalent in BNB)"—only two of three sets of CZ NFTs in CryptoZoo. The program did

not appear to include Defendants' Zoo Tokens used to participate in the failed CryptoZoo game or the third set of CZ NFTs, Hybrid Animals—and does not appear to have ever been created. Yet, Paul said he was still going to complete the game at this time—inducing more investors/customers to buy CryptoZoo Products shown by a great increase in trading volume:



19.     Around the same time, Paul—or someone acting on his behalf—posted messages to the CryptoZoo community confirming the exclusion of consumers who had already sold CZ NFTs from the "rewards program."



20.    Paul also posted that no one in the CryptoZoo community should put any more money into CryptoZoo, framing it as an investment, before saying CryptoZoo was "not intended as an investment vehicle."





21.     Paul stated he "would no longer be the scapegoat for anyone's financial decisions,"

denying responsibility for Plaintiffs and the CryptoZoo community's losses.



22.     Defendants' unlawful solicitation, offer, and sale of unregistered securities are

violations of the Securities Act of 1933 (the "Securities Act") Sections 5 [15 U.S.C. § 77e(a)(1)],

12(a)(1) [15 U.S.C. § 77l(a)(1)], and 15(a) [15 U.S.C. § 77o(a)]. Defendants' public offer and sale

of Zoo Tokens and CZ NFTs were unlawful offerings of unregistered securities for which no

exemption from registration was available under the Securities Act.

23.     The public sale of Zoo Tokens and CZ NFTs were clear offers and sales of

securities because, inter alia, Defendants touted, and Plaintiffs and other purchasers were conditioned to expect, and did reasonably expect, that the Zoo Tokens and CZ NFTs received would be worth more than the ETH, BTC, or other virtual currencies invested. Additionally, Defendants explicitly referred to CryptoZoo as a game that would make the purchaser money.

24.     The Securities Act's registration requirements are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions. Absent registration, issuers of securities may market their securities with no disclosure requirements whatsoever. For example, an issuer could omit any information that would make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines), peddle its securities using unbounded exaggerations regarding the progress of its product development and business plan, or even fabricate the existence of a game supporting the digital products, as was the case here.

25.     Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent the protections of the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security. As detailed herein, Defendants' public offers and sales of Zoo Tokens and CZ NFTs, were most likely offers and sales of unregistered securities. Accordingly, Defendants are strictly liable under Section 12(a)(1) of the Securities Act.

26.     The Exchange Act Claims are based on Defendants' fraudulent and manipulative scheme to enrich themselves by issuing false and materially misleading statements concerning the existence of the CryptoZoo game, that it would make players money, the value of Zoo Tokens and CZ NFTs and the benefits from owning Zoo Tokens and CZ NFTs, and that the Defendants were actively supporting the project, its online ecosystem, or the game.

27.     Defendants' false and materially misleading statements appeared in press releases, CryptoZoo's website, online chat rooms or forums located on websites such as Reddit.com/r/CryptoZooCo ("Reddit"), white papers, postings on social media websites such as Twitter, promotional videos posted on websites such as YouTube, internet podcast interviews and other materials relating to CryptoZoo, Zoo Tokens, or CZ NFTs, which were disseminated widely to the investing public.

28.     Each of Defendants' misrepresentations and omissions were material because they were designed to, and did, entice the public into purchasing unregistered securities (Zoo Tokens or CZ NFTs) which were nothing more than a vehicle for the individual Defendants' personal enrichment. As detailed *infra*, when the magnitude of Defendants' failure to support the project and build the game was revealed, the trading prices of Zoo Tokens, or CZ NFTs plummeted.

29.     Plaintiffs allege that Defendants acted with scienter in connection with their claims under the Exchange Act. Proof of Defendants' scienter comes, in part, from text messages between the Founder Defendants. These text messages show, among other things, that CryptoZoo was a fraudulent scheme since its inception, Zoo Tokens and CZ NFTs have at all times been patently worthless, and that no investor would have purchased any Zoo Tokens or CZ NFTs absent Defendants' fraudulent acts.

30.     Plaintiffs and others similarly situated deserve redress from Defendants for their fraudulently promoting and selling products that did not function as advertised, failing to support the CryptoZoo project, and manipulating the digital currency. Defendants operated this fraudulent venture to exploit and steal from Plaintiffs and other customers who trusted Paul's false representations. As a result, Defendants defrauded Plaintiffs and thousands of other consumers, and unjustly enriched themselves by profiting off Plaintiffs and others without delivering on their

promises.

31.     Today, investors in Zoo Tokens or CZ NFTs have little to show for their investments other than broken promises. For these reasons, Plaintiffs on behalf of themselves, and all similarly situated investors, seeks compensatory, injunctive, and rescissory relief, providing rescission and repayment of all investments made to purchase Zoo Tokens or CZ NFTs during the class period, and the right to secure and conserve such funds until repayment.

### III.     SUBJECT MATTER JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), under Section 22 of the Securities Act [15 U.S.C. § 77v] because Plaintiffs allege violations of Sections 12(a)(1) and 15(a) of the Securities Act [15 U.S.C. §§ 77l(a)(1) and 77o(a)], and under Section 27 of the Exchange Act [15 U.S.C. § 78aa], because Plaintiffs allege violations of Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)]. In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, interstate telephone communications and the Internet.

33.     The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District, is an individual who either is present in this District for jurisdictional purposes, or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

34.     Venue is proper in this District under Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1391 because the claims asserted in this action arose in this district; a substantial part of the activities, conduct, and/or damages giving rise to the claims occurred in this district; Defendants have substantial contacts with this district; and Defendants have received

substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District..

## IV.        BACKGROUND ON DIGITAL ASSETS, CRYPTOCURRENCY, AND NFTs

35.       A "cryptocurrency" is a digital or "virtual" currency circulated over the Internet as a form of value. Cryptocurrencies are created, and their transaction records are verified and maintained, by a decentralized system using cryptography, rather than through a centralized authority like a bank or government. Like traditional fiat currency, there are multiple types of cryptocurrencies—*e.g.*, Bitcoin, Ether, and Binance Token ("BNB"). Due to its decentralized nature and limited regulation, cryptocurrency users can transfer funds over the blockchain more anonymously compared to traditional banking and credit systems.

36.       Cryptocurrency owners typically store their cryptocurrency in digital "wallets," which are identified by unique electronic "addresses." Wallets allow cryptocurrency users to store multiple cryptocurrencies and retrieve their digital assets. Each digital wallet has a unique cryptographic address, which is used to facilitate transfers of cryptocurrency between wallet addresses.

37.       These types of cryptocurrency transactions are completed using (1) a "public key," which is akin to a bank account number or public-facing email address, and (2) a corresponding "private key," which is akin to a bank 4-digit PIN or email password that allows a user the ability to access and transfer value or information stored at the public address. Users may transfer cryptocurrency to the public address represented as a case-sensitive string of letters and numbers, 26 to 36 characters long. Each public address is controlled and/or accessed using a unique corresponding private key. Only the holder of an address's private key can authorize transfers of cryptocurrency from that address to another cryptocurrency address. A user may control multiple public blockchain addresses simultaneously.

38.     Each cryptocurrency transaction, regardless of the cryptocurrency denomination, is recorded on a "blockchain," which acts as a public accounting ledger. Unlike a traditional bank's ledger, the transactions reflected in a blockchain are distributed across numerous participants that, together, form a network. For each cryptocurrency transaction occurring on a blockchain, the blockchain public ledger records, among other things, the following transaction details: the date and time; the unique cryptocurrency addresses involved in the transaction, including the addresses of the sending and receiving parties; and the amount of cryptocurrency transferred.

39.     The blockchain does not identify the parties who control the cryptocurrency addresses involved in each transaction. However, because each cryptocurrency address is unique, anyone can review other transactions recorded on the blockchain related to the transfer and trace the flow of cryptocurrency. Tracing cryptocurrency to a particular user can be complicated, however, by a user's reliance on multiple cryptocurrency addresses to transfer funds or the use of "mixers," which, in practice, can be used to obscure the link between the sender and receiver of transferred cryptocurrency by commingling cryptocurrencies from multiple transferring parties into a pool before sending specific amounts on to an intended recipient.

40.     An NFT is a unique digital item that is recorded on a blockchain and cannot be copied, substituted, or subdivided. In other words, each NFT is a one-of-a-kind digital item. NFTs can also be transferred on the blockchain. Many NFTs exist as part of the Ethereum blockchain. Like cryptocurrencies, NFTs are uniquely identifiable on the blockchain. Once minted, an NFT can no longer be edited, modified, or deleted.

41.     NFTs can be created in multiple forms, but one of the most common types of NFTs is an image data file like a .jpeg image file. However, unlike a .jpeg image file, the NFT provides the owner with an electronic image and corresponding certificate of ownership. NFTs can also act

as a "utility" token, allowing an NFT owner to access reward programs, giveaways, and access to other digital assets by virtue of their NFT ownership.

42.     NFTs are created through a process referred to as "minting" and relies on the use of a "smart contract." A smart contract is a piece of computer code that runs on a blockchain. In simple terms, a smart contract is a program that automatically executes defined tasks when and if certain conditions are met. A smart contract system often follows "if . . . , then . . ." statements. For example, a smart contract might be coded to release electronic currency to a party automatically upon the occurrence of an agreed-upon event without the need for further action by either party to the contract. The minting of NFTs relies on smart contracts to govern the creation, sale, and any subsequent transfers of the NFTs after minting. NFT smart contract code is publicly viewable on the blockchain.

## V.     MISNOMER / ALTER EGO

43.     In the event any parties are misnamed or are not included here, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named here. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## VI.     PRINCIPAL-AGENT LIABILITY

44.     All allegations here of acts or omissions by Defendants include, but are not limited to, acts and omissions of such Defendants' officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners. Plaintiffs allege that such acts and omissions were committed or made with express and/or implied authority of the Defendants, or were ratified or otherwise approved by the same Defendants; or otherwise, that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment, as the case may be.

## VII.      PARTIES

**A.      CO-LEAD CLASS PLAINTIFFS**

45.      Plaintiff Don Holland, a police officer residing in Round Rock, Texas, invested one-thousand dollars ($1,000) purchasing CryptoZoo Products on September 4, 2021, and an additional two-thousand dollars ($2,000) in November of 2021, while in Round Rock, Texas. Holland lost a total of three-thousand dollars ($3,000).

46.      Plaintiff Alex Heikali is an investment banker residing in Los Angeles, California where he initially purchased CryptoZoo Products from Defendants on September 15, 2021. Mr. Heikali invested two hundred fifty thousand dollars ($250,000.00) and lost two hundred forty-thousand dollars ($240,000.00).

47.      Plaintiff Mourad Kechichian is a small business owner residing in Madera, California where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Kechichian invested three hundred fifty thousand dollars ($350,000.00) and lost three hundred fifty thousand dollars ($350,000.00).

**B.      INDIVIDUAL PLAINTIFFS**

48.      Plaintiff Hwa Kwang Kuar resided in Singapore where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Kuar invested two hundred thousand forty-eight dollars ($248,000.00) and lost a total of two hundred thousand forty-five dollars ($245,000.00).

49.      Plaintiff Simon Geldof resided in Belgium where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Geldof invested eight thousand dollars ($8,000.00) and lost a total of six thousand dollars ($6,000.00).

50.      Plaintiff Jeffer Holzheimer resided in Charlotte, North Carolina where he initially purchased CryptoZoo Products from Defendants beginning on August 26, 2021. Mr. Holzheimer

invested eighteen thousand dollars ($18,000.00) and lost seventeen thousand dollars ($17,000.00).

51.     Plaintiff Ali Mostafa resided in Thomastown Australia where he initially purchased CryptoZoo Products from Defendants beginning on August 18, 2021. Mr. Mostafa invested thirty thousand dollars ($30,000.00) and lost twenty-nine thousand dollars ($29,000.00).

52.     Plaintiff Marko Drapic resided in Illinois where he initially purchased CryptoZoo Products from Defendants beginning on October 28, 2021. Mr. Drapic invested five thousand eight hundred seventy-six dollars ($5,876.00) and lost five thousand two hundred forty-six dollars ($5,246.00).

53.     Plaintiff Richard Lam resided in Riverwood, Australia where he initially purchased CryptoZoo Products from Defendants beginning on August 20, 2021. Mr. Lam invested thirty-four thousand eighty-five dollars and fifty-six cents ($34,085.86) and lost thirty thousand dollars ($30,000.00).

54.     Plaintiff Daniel Commons resided in Dundas, Australia where he initially purchased CryptoZoo Products from Defendants beginning on August 20, 2021. Mr. Commons invested thirty-five thousand dollars ($35,000.00) and lost fifteen thousand dollars ($15,000.00).

55.     Plaintiff Conrado Canete resided in Santa Fe, Argentina where he initially purchased CryptoZoo Products from Defendants beginning on September 1, 2021. Mr. Canete invested twenty-five thousand dollars ($25,000.00) and lost ten thousand dollars ($10,000.00).

56.     Plaintiff Jesse Griggs resided in Tucson, Arizona where he initially purchased CryptoZoo Products from Defendants on October 17, 2021. Mr. Griggs invested twenty-two thousand dollars ($22,000.00) and lost nineteen thousand dollars (19,000.00).

57.     Plaintiff Kyle Gorney resided in the United States where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Gorney invested twenty-four

thousand dollars ($24,000.00) and lost twenty-three thousand dollars ($23,000.00).

58.   Plaintiff Jakob Emil Slotsvang resided in Denmark where he initially purchased CryptoZoo Products from Defendants on January 6, 2022. Mr. Slotsvang invested sixty-four thousand one hundred twenty-nine dollars ($64,129.00) and lost sixty-thousand dollars ($60,000.00).

59.   Plaintiff Daniel Nicolici resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Nicolici invested twenty thousand dollars ($20,000.00) and lost eighteen thousand dollars ($18,000.00).

60.   Plaintiff Jacob Juggins resided in England where he initially purchased CryptoZoo Products from Defendants on August 18, 2021. Mr. Juggins invested twelve thousand six hundred fifteen dollars ($12,615.00) and lost eight thousand four hundred fifteen ($8,415.00).

61.   Plaintiff Matthew Walmsley resided in England where he initially purchased CryptoZoo Products from Defendants on August 21, 2021. Mr. Walmsley invested five thousand ($5,000.00) and lost four thousand six hundred sixty-four ($4,664.00).

62.   Plaintiff Lasse Bjornstad resided in Norway where Lasse Bjornstad initially purchased CryptoZoo Products from Defendants on September 1, 2021. Lasse Bjornstad invested three thousand dollars ($3,000.00) and lost eight hundred fifty dollars ($850.00).

63.   Plaintiff Thierry Ducatel resided in France where he initially purchased CryptoZoo Products from Defendants on August 15, 2021. Mr. Ducatel invested seventeen thousand dollars ($17,000.00) and lost sixteen thousand dollars ($16,000.00)

64.   Plaintiff Emilio Jorge Collazo Sanz resided in Spain where he initially purchased CryptoZoo Products from Defendants on August 22, 2021. Mr. Collazo Sanz invested fifty thousand dollars ($50,000.00) and lost forty-seven thousand dollars ($47,000.00).

65.     Plaintiff Renato Herartt resided in Brazil where he initially purchased CryptoZoo Products from Defendants on September 29, 2021. Mr. Herartt invested forty-two thousand dollars ($42,000.00) and lost twelve thousand dollars ($12,000.00).

66.     Plaintiff Argon Pitarka resided in Macedonia where he initially purchased CryptoZoo Products from Defendants on October 16, 2021. Mr. Pitarka invested two thousand three hundred dollars ($2,300.00) and lost two thousand dollars ($2,000.00).

67.     Plaintiff Arseny Savrasov resided in Switzerland where he initially purchased CryptoZoo Products from Defendants on September 25, 2021. Mr. Savrasov invested five thousand dollars ($5,000.00) and lost four thousand eight hundred dollars ($4,800.00).

68.     Plaintiff Kira Krieg resided in Waikato, New Zealand where she initially purchased CryptoZoo Products from Defendants on September 21, 2021. Ms. Krieg invested three thousand five hundred ($3,500.00) and lost three thousand three hundred ($3,300.00).

69.     Plaintiff Jacob Stockamp resided in Litchfield, Illinois where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Stockamp invested two thousand nineteen dollars and forty-three cents ($2,019.43) and lost one hundred sixty-nine dollars and seventy-three cents ($169.73).

70.     Plaintiff Dmitry Bobkov resided in Moscow, Russia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Bobkov invested one hundred fifty thousand dollars ($150,000.00) and lost one thousand four hundred dollars ($140,000.00).

71.     Plaintiff Patrick Marcher resided in Italy where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Marcher invested twenty-three thousand five-hundred dollars ($23,500.00) and lost twenty-one thousand five-hundred dollars ($21,500.00).

72.     Plaintiff Abdullah Miraj resided in Canada where he initially purchased CryptoZoo Products from Defendants on October 4, 2021. Mr. Miraj invested one hundred thirty thousand dollars ($130,000.00) and lost one hundred twenty-eight thousand dollars ($128,000.00).

73.     Plaintiff Nicolás Campoamor resided in Madrid, Spain where he initially purchased CryptoZoo Products from Defendants on May 8, 2021. Mr. Campoamor invested eight thousand dollars ($8,000.00) and lost seven thousand four hundred ($7,400.00).

74.     Plaintiff David Reading resided in England where he initially purchased CryptoZoo Products from Defendants on September 29, 2021. Mr. Reading invested twenty-one thousand one hundred seventy-four dollars and sixty-three cents ($21,174.63) and lost five thousand five hundred fourteen dollars and seventeen cents ($5,514.17).

75.     Plaintiff Cristian Nunez resided in New York, New York where he initially purchased CryptoZoo Products from Defendants on December 24, 2021. Mr. Nunez invested five thousand seven hundred six dollars ($5,706.00) and lost three-thousand five-hundred sixty dollars and eighty-three cents ($3,560.83).

76.     Plaintiff Liam Manning resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Manning invested one thousand two hundred dollars ($1,200.00) and lost six hundred dollars ($600.00).

77.     Plaintiff Daniel Healy resided in Australia where he initially purchased CryptoZoo Products from Defendants on October 12, 2021. Mr. Healy invested seven thousand dollars ($7,000.00) and lost six thousand seven hundred dollars ($6,700.00).

78.     Plaintiff Aidan O'Flaherty resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 22, 2021. Mr. O'Flaherty invested twenty thousand dollars ($20,000.00) and lost twenty thousand dollars ($20,000.00).

79.     Plaintiff Jacky Jiang resided in Australia where Jacky Jiang initially purchased CryptoZoo Products from Defendants on October 31, 2021. Jacky Jiang invested two thousand dollars ($2,000.00) and lost one thousand seven hundred dollars ($1,700.00).

80.     Plaintiff Yanick Martel resided in Canada where he initially purchased CryptoZoo Products from Defendants on August 15, 2021. Mr. Martel invested twenty-eight thousand dollars ($28,000.00) and lost twenty-five thousand dollars ($25,000.00).

81.     Plaintiff Liam Giblin resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Giblin invested ten thousand dollars ($10,000.00) and lost ten thousand dollars ($10,000.00).

82.     Plaintiff Armen Akopian resided in Las Vegas, Nevada where he initially purchased CryptoZoo Products from Defendants on November 23, 2021. Mr. Akopian invested four thousand dollars ($4,000.00) and lost three thousand eight hundred dollars ($3,800.00).

83.     Plaintiff Evgeniya Guberman resided in Canoga Park, California where she initially purchased CryptoZoo Products from Defendants on October 14, 2021. Ms. Guberman invested thirty-eight thousand dollars ($38,000.00) and lost thirty-thousand dollars ($30,000.00).

84.     Plaintiff Nicolas Camacho resided in Bogota, Colombia where he initially purchased CryptoZoo Products from Defendants on August 26, 2021. Mr. Camacho invested six hundred dollars ($600.00) and lost five hundred fifty dollars ($550.00).

85.     Plaintiff Nathan Jones resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Jones invested twenty-five thousand dollars ($25,000.00) and lost fifteen-thousand six-hundred sixty-four dollars and ninety-three cents ($15,664.93).

86.     Plaintiff Paul Brian Endriga resided in the Philippines where he initially purchased

CryptoZoo Products from Defendants on August 29, 2021. Mr. Endriga invested four thousand dollars ($4,000.00) and lost three thousand nine hundred dollars ($3,900.00).

87.     Plaintiff Carlos Manuel Miniño Medina resided in the Dominican Republic where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Miniño Medina invested six thousand dollars ($6,000.00) and lost three thousand dollars ($3,000.00).

88.     Plaintiff Tyler Paboojian resided in Fresno, California where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Paboojian invested seven hundred dollars ($700.00) and lost seven hundred dollars ($700.00).

89.     Plaintiff Mitch Robinson resided in West Liberty, Iowa where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Robinson invested six thousand dollars ($6,000.00) and lost six thousand dollars ($6,000.00).

90.     Plaintiff Eduardo Vazquez resided in Eugene, Oregon where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Vazquez invested one thousand two hundred dollars ($1,200.00) and lost one thousand dollars ($1,000.00).

91.     Plaintiff Juan Pablo Ochoa resided in Bogota, Colombia where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Ochoa invested one thousand dollars ($1,000.00) and lost nine hundred eighty dollars ($980.00).

92.     Plaintiff Santiago Borzone resided in Argentina where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Santiago Borzone invested one thousand six hundred dollars ($1,600.00) and lost one thousand dollars ($1,000.00).

93.     Plaintiff Nabine Neupane resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 29, 2021. Nabine Neupane invested thirty-five thousand dollars ($35,000.00) and lost thirty-four thousand seven hundred dollars ($34,700.00).

94.     Plaintiff Matthew Bundy resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 12, 2021. Mr. Bundy invested five thousand three hundred seventeen dollars ($5,317.00) and lost five thousand nine dollars ($5,000.00).

95.     Plaintiff Nicolas Cortes resided in Bogota, Colombia where he initially purchased CryptoZoo Products from Defendants on August 17, 2021. Mr. Cortes invested four thousand dollars ($4,000.00) and lost three thousand nine hundred eighty dollars ($3,980.00).

96.     Plaintiff Nicolas Mougel resided in France where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Mougel invested thirteen thousand four hundred one dollars ($13,401.00) and lost twelve thousand six hundred thirty-nine dollars ($12,639.00).

97.     Plaintiff Vraj Patel resided in Castle Pines, Colorado where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Patel invested seventy-five thousand dollars ($75,000.00) and lost sixty-five thousand dollars ($65,00.00).

98.     Plaintiff Brandon Potemra resided in Allen, Texas where he initially purchased CryptoZoo Products from Defendants on August 17, 2021. Mr. Potemra invested forty-five thousand sixty-nine dollars and eighty-one cents ($45,069.81) and lost forty-five thousand sixty-nine dollars and eighty-one cents ($45,069.81)

99.     Plaintiff Marco Zahedi resided in Irvine, California where he initially purchased CryptoZoo Products from Defendants on September 25, 2021. Mr. Zahedi invested two thousand three hundred fifty dollars ($2,350.00) and lost two thousand three hundred forty dollars ($2,340.00).

100.     Plaintiff Thomas Baker resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Baker invested thirteen thousand

twenty-eight dollars and eighty-nine cents ($13,028.89) and lost thirteen thousand twenty-eight dollars and eighty-nine cents ($13,028.89)

101.    Plaintiff Liam Boyd resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 28, 2021. Mr. Boyd invested fifteen thousand six hundred twenty-four dollars ($15,624.00) and lost fifteen thousand five hundred dollars ($15,550.00

102.    Plaintiff Tim Bauer resided in Slovenia where he initially purchased CryptoZoo Products from Defendants on July 28, 2021. Mr. Bauer invested ten thousand dollars ($10,000.00) and lost seven thousand dollars ($7,000.00)

103.    Plaintiff Ayush Patel resided in India where he initially purchased CryptoZoo Products from Defendants on September 4, 2021. Mr. Patel invested one thousand five hundred dollars ($1,500.00) and lost one thousand five hundred dollars ($1,500.00)

104.    Plaintiff Marius Amihaesei resided in Romania where he initially purchased CryptoZoo Products from Defendants on August 30, 2021. Mr. Amihaesei invested twenty-two thousand dollars ($22,000.00) and lost fifteen thousand dollars ($15,000.00).

105.    Plaintiff Oliver Simoza resided in Florida where he initially purchased CryptoZoo Products from Defendants on September 29, 2021. Mr. Simoza invested one hundred thousand thirty-one five hundred twenty dollars ($131,520.00) and lost thirty-five thousand dollars ($35,000.00).

106.    Plaintiff Andrew Felkin resided in Northern Ireland where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Felkin invested one hundred thirty thousand dollars ($130,000.00) and lost one hundred ten thousand dollars ($110,000.00).

107.    Plaintiff Shaun Triplett resided in Australia where he initially purchased CryptoZoo Products from Defendants on November 21, 2021. Mr. Triplett invested two thousand dollars

($2,000.00) and lost one thousand nine hundred seventy-eight dollars ($1,978.00).

108.  Plaintiff Louis Dimonaco resided in Yorktown Heights, New York where he initially purchased CryptoZoo Products from Defendants on August 16, 2021. Mr. Dimonaco invested three thousand dollars ($3,000.00) and lost three thousand dollars ($3,000.00).

109.  Plaintiff Umer Ali resided in England where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Ali invested one thousand two hundred forty-one dollars ($1,241.00) and lost one thousand two hundred forty-one dollars ($1,241.00).

110.  Plaintiff Justin Mayo resided in Fall River, Massachusetts where he initially purchased CryptoZoo Products from Defendants on September 4, 2021. Mr. Mayo invested five hundred dollars ($500.00) and lost five hundred dollars ($500.00).

111.  Plaintiff Jesper Roos resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on August 31, 2021. Mr. Roos invested twelve thousand dollars ($12,000.00) and lost nine thousand dollars ($9,000.00).

112.  Plaintiff Martin Paolo Austria resided in the Philippines where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Austria invested one thousand two hundred dollars ($1,200.00) and lost one thousand one hundred fifty dollars ($1,150.00).

113.  Plaintiff Gunnar Leon resided in New York, New York where he initially purchased CryptoZoo Products from Defendants on June 1, 2021. Mr. Leon invested thirty thousand dollars ($30,000.00) and lost twenty thousand dollars ($20,00.00).

114.  Plaintiff James Goetz resided in Woodland Hills, California where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Goetz invested two thousand dollars ($2,000.00) and lost two thousand dollars ($2,000.00).

115.   Plaintiff Phillip Ladendorf resided in Germany where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Ladendorf invested one thousand three hundred dollars ($3,000.00) and lost three thousand dollars ($3,000.00).

116.   Plaintiff Mike Spielmann resided in Whitesboro, New York where he initially purchased CryptoZoo Products from Defendants on August 1, 2021. Mr. Spielmann invested three thousand dollars ($3,000.00) and lost two thousand eight hundred dollars ($2,800.00).

117.   Plaintiff Zaboer Rafaqat resided in Belgium where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Rafaqat invested six thousand dollars ($6,000.00) and lost five thousand dollars ($5,000.00).

118.   Plaintiff Afonso Silvano resided in Portugal where he initially purchased CryptoZoo Products from Defendants on October 15, 2021. Mr. Silvano invested four thousand five hundred dollars ($4,500.00) and lost two thousand six hundred dollars ($2,600.00).

119.   Plaintiff Johan Cruz resided in Canada where he initially purchased CryptoZoo Products from Defendants on August 26, 2021. Mr. Cruz invested four thousand two hundred forty-four dollars and four cents ($4,244.04) and lost three thousand six hundred forty-seven dollars and twenty cents ($3,647.20).

120.   Plaintiff Tom Fitzgerald resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 9, 2021. Mr. Fitzgerald invested four hundred twenty-two dollars ($422.00) and lost four hundred twenty dollars ($420.00).

121.   Plaintiff Kurt Alexander resided in Canada where he initially purchased CryptoZoo Products from Defendants on January 18, 2022. Mr. Alexander invested two thousand dollars ($2,000.00) and lost two thousand dollars ($2,000.00).

122.   Plaintiff George Bou Khalil resided in Lebanon where he initially purchased

CryptoZoo Products from Defendants on September 2, 2021. Mr. Bou Khalil invested fifty thousand dollars ($50,000.00) and lost twenty-five thousand dollars ($25,000.00).

123.    Plaintiff Martin Beattie resided in Spain where he initially purchased CryptoZoo Products from Defendants on January 9, 2021. Mr. Beattie invested one thousand eight hundred twenty dollars and thirty-five cents ($1,820.35) and lost one thousand four hundred ninety-four dollars and ninety-seven cents ($1,494.97).

124.    Plaintiff Luke Mcllwee resided in San Diego, California where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Mcllwee invested two thousand dollars ($2,000.00) and lost two thousand dollars ($2,000.00).

125.    Plaintiff Garrett Roche resided in Biglerville, Pennsylvania where he initially purchased CryptoZoo Products from Defendants on October 1, 2021. Mr. Roche invested one hundred ($100.00) and lost one hundred dollars ($100.00).

126.    Plaintiff Duarte Campos de Oliveira resided in Portugal where he initially purchased CryptoZoo Products from Defendants on August 18, 2021. Mr. Campos de Oliveira invested one hundred eighty-five thousand dollars ($185,000.00) and lost one hundred seventy-five thousand dollars ($175,000.00).

127.    Plaintiff Emil Norgaard resided in Denmark where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Norgaard invested five thousand dollars ($5,000.00) and lost five thousand dollars ($5,000.00).

128.    Plaintiff Sean Fry resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Fry invested one thousand one hundred thirty-seven dollars and sixty-six cents ($1,137.66) and lost one thousand one hundred twenty-six dollars and two cents ($1,126.02).

129.    Plaintiff Mark Lightbown resided in England where he initially purchased CryptoZoo Products from Defendants on August 24, 2021. Mr. Lightbown invested fifteen thousand dollars ($15,000.00) and lost thirteen thousand five hundred dollars ($13,500.00).

130.    Plaintiff Anthony Arnold resided in La Palma, California where he initially purchased CryptoZoo Products from Defendants on December 8, 2021. Mr. Arnold invested eighty-five thousand dollars ($85,000.00) and lost eighty-three thousand dollars ($83,000.00).

131.    Plaintiff Daniel Hernández resided in Spain where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Hernández invested fourteen-thousand dollars ($14,000.00) and lost thirteen-thousand seven-hundred dollars ($13,700.00).

132.    Plaintiff Tom Cropper resided in England where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Cropper invested one thousand seven hundred fifty-three dollars and seventeen cents ($1,753.17) and lost one thousand seven hundred fifty-one dollars and twenty-four cents ($1,751.24).

133.    Plaintiff João Amorim resided in Portugal where he initially purchased CryptoZoo Products from Defendants on July 31, 2021. Mr. Amorim invested eight thousand dollars ($8,000.00) and lost eight thousand dollars ($8,000.00).

134.    Plaintiff Marcus Owens resided in the United States where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Owens invested eighty thousand dollars ($80,000.00) and lost eighty thousand dollars ($80,000.00).

135.    Plaintiff David Nicholls resided in Wales where he initially purchased CryptoZoo Products from Defendants on September 15, 2021. Mr. Amorim invested one thousand five hundred dollars ($1,500.00) and lost one thousand four hundred seventy dollars ($1,470.00).

136.    Plaintiff Ricardo Garcia resided in Las Vegas, Nevada where he initially purchased

CryptoZoo Products from Defendants on July 29, 2021. Mr. Garcia invested seventy-five thousand dollars ($75,000.00) and lost fifty thousand dollars ($50,000.00).

137.    Plaintiff Jagdeep Cheema resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Cheema invested ninety-two thousand eight hundred forty-nine dollars and ninety-eight cents ($92,849.98) and lost ninety-two thousand eight hundred forty-nine dollars and ninety-eight cents ($92,849.98).

138.    Plaintiff Shawn Bourget resided in Canada where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Bourget invested twelve thousand five hundred dollars and ($12,500.00) and lost eleven thousand dollars ($11,000.00).

139.    Plaintiff Arun Bhatta resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 1, 2021. Mr. Bhatta invested ten thousand dollars and ($10,000.00) and lost eight thousand dollars ($8,000.00).

140.    Plaintiff Marcus Karl Förster resided in Germany where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Förster invested five thousand dollars and ($5,000.00) and lost four thousand eight hundred dollars ($4,800.00).

141.    Plaintiff Alexandre El-Hage resided in Canada where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. El-Hage invested three thousand dollars and ($3,000.00) and lost two thousand eight hundred dollars ($2,800.00).

142.    Plaintiff Matthew Chase resided in Brea, California where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Chase invested one hundred twenty thousand dollars and ($120,000.00) and lost one hundred fifteen thousand dollars ($115,000.00).

143.    Plaintiff Matthew Walker resided in Australia where he initially purchased

CryptoZoo Products from Defendants on September 1, 2021. Mr. Walker invested six thousand dollars and ($6,000.00) and lost six thousand dollars ($6,000.00).

144.    Plaintiff James Furber resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on July 21, 2021. Mr. Furber invested twenty-five thousand dollars and ($25,000.00) and lost twenty-four thousand dollars ($24,000.00).

145.    Plaintiff Hon fai Ma resided in Philippines where he initially purchased CryptoZoo Products from Defendants on October 10, 2021. Mr. Ma invested fifty thousand dollars and ($50,000.00) and lost thirty-eight thousand one hundred eighty-two dollars ($38,182.00).

146.    Plaintiff Magnus Lervold resided in Norway where he initially purchased CryptoZoo Products from Defendants on January 19, 2021. Mr. Lervold invested seventy thousand dollars and ($70,000.00) and lost seventeen thousand eight hundred dollars ($17,800.00).

147.    Plaintiff Luke Gorman resided in Scotland where he initially purchased CryptoZoo Products from Defendants on August 26, 2021. Mr. Gorman invested twelve thousand one hundred dollars and ($12,100.00) and lost nine thousand three hundred dollars ($9,300.00).

148.    Plaintiff Brennen Giroux resided in Canada where he initially purchased CryptoZoo Products from Defendants on August 28, 2021. Mr. Giroux invested forty thousand dollars and ($40,000.00) and lost forty thousand dollars ($40,000.00).

149.    Plaintiff Jordan Hazel resided in England where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Hazel invested six hundred dollars and ($600.00) and lost six hundred dollars ($600.00).

150.    Plaintiff Danielle Altman resided in Los Angeles, California where she initially purchased CryptoZoo Products from Defendants on September 28, 2021. Ms. Altman invested five thousand dollars and ($5,000.00) and lost five thousand dollars ($5,000.00).

151.    Plaintiff Daniel Brink resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 5, 2021. Mr. Brink invested eleven thousand four hundred sixty-nine dollars and ($11,469.00) and lost eleven thousand four hundred sixty-nine dollars ($11,469.00).

152.    Plaintiff Logan Law resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Law invested two thousand dollars and ($2,000.00) and lost two thousand dollars ($2,000.00).

153.    Plaintiff Jacobo Castaño resided in Spain where he initially purchased CryptoZoo Products from Defendants on February 1, 2022. Mr. Castaño invested two thousand three hundred dollars and ($2,300.00) and lost two thousand two-hundred dollars ($2,200.00).

154.    Plaintiff Artiom Zorin resided in Belgium where he initially purchased CryptoZoo Products from Defendants on August 17, 2021. Mr. Zorin invested five thousand dollars and ($5,000.00) and lost four thousand dollars ($4,000.00).

155.    Plaintiff Grant Kim Castillones resided in the Philippines where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Castillones invested one thousand five hundred six dollars and seventy-four cents ($1,506.74) and lost one thousand two hundred forty-four dollars and thirty cents ($1,244.30).

156.    Plaintiff Francisco Javier Fernandez Sanz resided in Spain where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Fernandez Sanz invested one thousand one hundred sixty-eight dollars and ($1,168.00) and lost one thousand dollars ($1,000.00).

157.    Plaintiff Mitchell Rogers resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 3, 2021. Mr. Rogers invested three thousand

dollars and ($3,000.00) and lost three thousand dollars ($3,000.00).

158.     Plaintiff Jaime Ruiz Martinez resided in Spain where he initially purchased CryptoZoo Products from Defendants on January 14, 2023. Mr. Ruiz Martinez invested one hundred ninety dollars and ($190.00) and lost one hundred seventy dollars ($170.00).

159.     Plaintiff Dražen Jakobović resided in Croatia where he initially purchased CryptoZoo Products from Defendants on August 21, 2021. Mr. Jakobović invested twelve thousand dollars and ($12,000.00) and lost twelve thousand dollars ($12,000.00).

160.     Plaintiff Kenneth Thorbjornsen resided in Norway where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Thorbjornsen invested four thousand dollars and ($4,000.00) and lost four thousand dollars ($4,000.00).

161.     Plaintiff Jon Gjyleri resided in New Jersey where he initially purchased CryptoZoo Products from Defendants on August 27, 2021. Mr. Gjyleri invested thirty-five thousand dollars and ($35,000.00) and lost thirty-five thousand dollars ($35,000.00).

162.     Plaintiff Brett Thomas resided in Queensland Australia where he initially purchased CryptoZoo Products from Defendants on November 21, 2021.  Mr. Thomas invested seven hundred fifty thousand dollars ($750,000.00) and lost seven hundred fifty thousand dollars ($750,000.00).

163.     Plaintiff Michael Ahdoot resided in Los Angeles, California where he initially purchased CryptoZoo Products from Defendants on August 1, 2021.  Mr. Ahdoot invested one hundred thousand dollars ($100,000.00) and lost one hundred thousand dollars ($100,000.00).

164.     Plaintiff David-lee Brunelle resided in Montreal, Quebec Canada where he initially purchased CryptoZoo Products from Defendants on September 20, 2021.  Mr. Brunelle invested one hundred thousand dollars ($100,000.00) and lost ninety thousand dollars ($90,000.00).

165.     Plaintiff Kyle McVey resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on September 1, 2021.  Mr. McVey invested sixty thousand dollars ($60,000.00) and lost sixty thousand dollars ($60,000.00).

166.     Plaintiff Mohammad Shahzad Faisal resided in Kuwait where he initially purchased CryptoZoo Products from Defendants on August 20, 2021.  Mr. Faisal invested forty-five thousand dollars ($45,000.00) and lost seven hundred fifty thousand dollars ($45,000.00).

167.     Plaintiff Yudesh Ramchand resided in Queens Village, New York where he initially purchased CryptoZoo Products from Defendants on August 25, 2021.  Mr. Thomas invested thirty thousand dollars ($30,000.00) and lost thirty thousand dollars ($30,000.00).

168.     Plaintiff John Louie Magat resided in the Phillipines where he initially purchased CryptoZoo Products from Defendants on August 19, 2021.  Mr. Magat invested thirty thousand dollars ($30,000.00) and lost twenty-nine thousand dollars ($29,000.00).

169.     Plaintiff Julian Vincent Deutsch resided in Germany where he initially purchased CryptoZoo Products from Defendants on August 13, 2021.  Mr. Deutsch invested twenty-two thousand dollars ($22,000.00) and lost nineteen thousand five hundred dollars ($19,500.00).

170.     Plaintiff Jefferey Lens resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on January 3, 2022.  Mr. Lens invested twenty thousand dollars ($20,000.00) and lost nineteen thousand dollars ($19,000.00).

171.     Plaintiff Andrei Diaconu resided in Texas where he initially purchased CryptoZoo Products from Defendants on September 29, 2021.  Mr. Diaconu invested ten thousand dollars ($10,000.00) and lost ten thousand dollars ($10,000.00).

172.     Plaintiff Jake Castinetti resided in Danvers, Massachusetts where he initially purchased CryptoZoo Products from Defendants on August 4, 2021.  Mr. Castinetti invested two

thousand nine hundred dollars ($2,900.00) and lost two thousand nine hundred dollars ($2,900.00).

173.    Plaintiff Raney van Oers resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on September 3, 2021.  Mr. van Oers invested six thousand five hundred dollars ($6,500.00) and lost six thousand five hundred dollars ($6,500.00).

174.    Plaintiff William Ball resided in Prescot, England, UK, where he initially purchased CryptoZoo Products from Defendants on August 31, 2021.  Mr. Ball invested six thousand dollars ($6,000.00) and lost six thousand dollars ($6,000.00).

175.    Plaintiff Jason Thompson resided in the United Kingdom where he initially purchased CryptoZoo Products from Defendants on September 1, 2021.  Mr. Thompson invested five thousand dollars ($5,000.00) and lost five thousand dollars ($5,000.00).

176.    Plaintiff Aden Worroll resided in the Australia where he initially purchased CryptoZoo Products from Defendants on September 3, 2021.  Mr. Worroll invested four thousand two hundred dollars ($4,200.00) and lost four thousand two hundred dollars ($4,200.00).

177.    Plaintiff Mark Furber resided in Spain where he initially purchased CryptoZoo Products from Defendants on January 28, 2022.  Mr. Furber invested four thousand dollars ($4,000.00) and lost three thousand dollars ($3,000.00).

178.    Plaintiff Isaiah Hopkins resided in Henderson, Nevada where he initially purchased CryptoZoo Products from Defendants on October 17, 2021.  Mr. Hopkins invested three thousand dollars ($3,000.00) and lost three thousand dollars ($3,000.00).

179.    Plaintiff Reece Dickson resided in Scotland where he initially purchased CryptoZoo Products from Defendants on September 29, 2021.  Mr. Dickson invested three thousand dollars ($3,000.00) and lost two thousand seven hundred dollars ($2,700.00).

180.    Plaintiff Yury Petrov resided in Moscow, Russia where he initially purchased

CryptoZoo Products from Defendants on October 15, 2021.  Mr. Petrov invested two thousand five hundred dollars ($2,500.00) and lost two thousand three hundred fifty dollars ($2,350.00).

181.    Plaintiff Rob Taylor resided in Chapel St. Leonards, England in the United Kingdom where he initially purchased CryptoZoo Products from Defendants on August 19, 2021. Mr. Taylor invested twenty-five thousand dollars ($25,000.00) and lost one thousand five hundred dollars ($1,500.00).

182.    Plaintiff Yori Bouthillier resided in Quebec, Canada where he initially purchased CryptoZoo Products from Defendants on September 1, 2021.  Mr. Bouthillier invested one thousand eight hundred ninety-five dollars ($1,895.00) and lost seven hundred fifty-eight dollars ($758.00).

183.    Plaintiff Isaac Jensen resided in Beaverton, Oregon where he initially purchased CryptoZoo Products from Defendants on August 25, 2021.  Mr. Jensen invested six hundred dollars ($600.00) and lost four hundred dollars ($400.00).

184.    Plaintiff Diego Villalba resided in Madrid, Spain where he initially purchased CryptoZoo Products from Defendants on January 21, 2022.  Mr. Villalba invested two hundred fifty dollars ($250.00) and lost two hundred fifty dollars ($250.00).

## C.    FOUNDER DEFENDANTS

185.    Defendant Logan Paul is an entertainer with a sizeable online audience. Based on his own statements, information, and belief, he is a founder and majority owner of CryptoZoo Inc., who has been involved in other cryptocurrency related rug-pulls, pump-and-dumps, or scams such as Dink Doink, Liquid Marketplace, F*** Elon, EMAX, and Elon Gate.

186.    Defendant Jeffrey Levin is Logan Paul's manager and one of the founders of CryptoZoo Inc., who hired the software development team BlockOps LLC out of Austin, Texas, and who was aware of Ibanez's fraudulent backstory one month before the product publicly

launched as shown in a publicly available call between Coffeezilla and Levin. *See* The Biggest Fraud in Logan Paul's Scam, Coffeezilla's YouTube channel, available at https://www.youtube.com/watch?v=wvzyDg40-yw&t=0s. Paul publicly stated Levin is in "charge now."

187.    Defendant Eduardo Ibanez is one of the founders of CryptoZoo Inc. and the lead developer of CryptoZoo. The CryptoZoo website described Ibanez "American tech entrepreneur, data scientist, and cybersecurity expert" who "spent most of his teen years hacking websites from his bedroom before he joined the MIT and went on to work to government agencies in cyber security." CryptoZoo Website, *Who is Eddie Ibanez? CryptoZoo Lead Developer*, https://cryptozooworld.com/eddie-ibanez.

188.    Ibanez also has "3 kids, who he said multiple times, love to play CryptoZoo. So much that his daughter was apparently telling her teachers that her dad was creating hybrids animals at his office. You can't make that up." *Id*. Plaintiff believes these statements are lies based on CryptoZoo never being made and on information and belief from public reports. *See* Adam Robb, *Philly-born tech founder who falsely claimed he had an Eagles Super Bowl ring and helped the CIA hunt terrorists, got $1.5 million in PPP loans as his company went up in flames*, BILLPENN at WHYY, Feb. 14, 2022, at 2, https://billypenn.com/2022/02/14/eddie-ibanez-zenabi-eagles-dolphins-logan-paul ("Ibanez's most recent public bio, posted on the CryptoZoo.co website last July, falsely claimed he was a visiting associate professor at the Stern School of Business at New York University, held multiple degrees, and was the recipient of distinguished service medals.").

189.    Defendant Jake Greenbaum a/k/a Crypto King is one of the founders of CryptoZoo Inc. who tried to profit earlier than the group originally planned, dramatically lowering the overall

assessed value of all Zoo Tokens before the products were released to the public.

190.     Defendant Danielle Strobel was Logan Paul's assistant and is one of the founders of CryptoZoo Inc. and discusses helping administratively throughout Defendants' internal communications as their scheme developed.

191.     The list of CryptoZoo founders is noted in Defendants' internal documents, where Paul, Strobel, Levin, Ibanez, and Greenbaum are listed as founders of CryptoZoo Inc., with each receiving 51%, 1%, 10%, 30%, and 5% of the founder shares respectively, with 3% leftover for expenses.

## D.     MANAGER DEFENDANT

192.     Defendant Ophir Bentov a/k/a Ben Roth managed various developers and is the manager of the CryptoZoo community who promised future updates to the community that were never fulfilled.

## VIII.     FACTUAL ALLEGATIONS

193.     Plaintiff Holland began investing in cryptocurrency in 2016 at his son's urging.

194.     Plaintiff Heikali began investing in cryptocurrency in 2017, trading successfully over the next few years and selling his cryptocurrency holdings for a profit in 2020.

195.     On at least as early as February 19, 2021, the Founder Defendants began meeting and developing what would become CryptoZoo. Their meeting notes from these meetings show the motive behind CryptoZoo was always profit despite Paul's claim it was a "passion project," with their June 3, 2021 meeting notes showing they were focused on "profit for the team" and "cover[ing] startup costs," and the fact they had planned a private sale amongst themselves before publicly releasing it as of May 26, 2021 according to their internal communications:

jake the crypto king

> 2 trillion tokens. Private sale 10% allocated, 200 Billion tokens allowed to be sold privately. $.002 is the going live price, selling at $.001. That means the private sale has room to raise $200mil on 10% of the token supply at $.001 which is a 50% discount. And with how little of circulating supply will be out it is likely to run significantly.

J

196.    Founder Defendants were also aware as of April 14, 2021 that a cryptocurrency token "can trade as security" and the same token can act as a cryptocurrency and NFT:

Apr 14, 2021, 1:21 AM

Eddie Ibanez

There would be close no gas fee's if I did an ERC1155 token as I can bundle actions & transactions into 1 VS having to create a smart contract every time.

It can also transact as a currency (fungible) and as a nonfungible token (animal) –
It allows for multiple tokens under
One contract. The same token can trade as a security & NFT if we wanted.

197.    On May 27, 2021, Defendant Levin further stated they "definitely don't want to do anything that brings sec eyeballs" in response to Logan pushing for a presale of Zoo Tokens after Levin told him it would be "against the SEC":


Logan Paul

$20M is a lot of moneyyyy



We also can't do a presale of coins.  It's against the SEC.  Eddie is going to confirm we can do a presale of eggs.

Logan Paul



Everyone does presale with coins

Jeff Levin



1. Definitely don't want to do anything that brings sec eyeballs

198.    Despite such knowledge, Defendants never registered Zoo Tokens or CZ NFTs and did either a presale through illegal liquidity pool trading before the CryptoZoo Products were publicly released, as noted on May 27, 2021:

jake the crypto king



If we can't sell, no presale. We can still trade em in the liquidity pool.

And again on June 11, 2021:

jake the crypto king

1. We mint tokens via a wallet address (new phone or just need wallet doesn't matter). 2. We lock tokens in a liquidity pool from that same wallet address. 3. We lock team tokens to be distributed over months to the founders that have token allocations. 4. We begin buying out of the liquidity pool. 5. Once the team has exhausted funds for the liquidity pool buying we send the contract address to friends/family/investors who want to be able to get in that have heard about it. 5. As long as trusted team members have the back up words I can't do anything with locked tokens, and if I perish when they unlock u can access them. Or we just use a different new phone but than same situation, who holds it, who holds back up words.

199.    On May 15, 2021, Paul asks the other Founder Defendants if they should "add a charity component at all. Donating to animal rescues or some shit," evincing derision of any altruism and focusing on the brand and tax benefit possibilities.

200.    Externally, on or around August 18, 2021, CryptoZoo was promoted by Paul on his YouTube show Impaulsive as a "really fun game that makes you money" with a "massive team" supporting it, funded by "like a million dollars" that Paul claimed to have invested. Yet, Paul had not paid CryptoZoo's developers—so the game never worked—nor did he appear to spend any money towards the success of the project. In fact, none of that was true: the CryptoZoo game never existed or would "not be released" (2024 Tweet), it would not make the user money (a common statement to entice people into a pyramid scheme), there was no massive team (as Paul admits in his self-deleted January 3, 2023 video), and Paul allegedly spent "$400,000 to have it developed" (according to 2024 Tweet) or "approximately $220,000 in out-of-pocket expenses for the project, most of which was spent on paying artists." [Dkt. 55, p.26, ¶ 36].

201.    Without promotion, during June and August of 2021, Defendants secretly released the Zoo Tokens, CZ NFTs, and CryptoZoo's original (non-binding browserwrap) terms stating "[Defendants] will strive to do the best for the project and the community," and "[b]y holding a CryptoZoo NFT, you will have the opportunity to participate in a variety of future opportunities." *See* Exhibit 1.

202.    On the following days, once CryptoZoo was publicly announced, Holland's son told him about Logan Paul's new NFT project and Holland invested an initial $1,000 to purchase Zoo Tokens, which he used to purchase a CZ NFT.

203.    Similarly, a friend told Plaintiff Heikali about CryptoZoo, and on September 11, invested an initial $40,000 to purchase Zoo Tokens.

204.    Internally, the squabbles raged as early as launch day, with Greenbaum accusing

Paul of theft and the other Founder Defendants kicked Greenbaum out:

> Logan u stole $40 mil $s in tokens from me, u stole from 248 individuals. U are a
> scam arist, u are a liar, and U betrayed ur own community. U won't take advice
> from more brilliant minds and like to play god when u aren't. The reality is. U aren't
> that guy. And every detail from this project is going to get exposed. Japan round 2
> for the biggest moron I've ever had the pleasure of doing business with.

205.    After launch day came and went, the investment generally rose in price until

November 8, 2021, which is when a lot of individuals began to fear the project due to lack of

positive developments and online chatter about the CZ NFTs being nonfunctional, causing the

price fell by over 50% by November 22. The price then rose again in until November 24, to about

80% of its previous peak, before dropping a total of 50% by November 29, shooting back up to

80% of peak value on December 1. It then steadily dropped to nothing beside four small jumps on

December 27, 2021, August 28, 2022, September 1, 2022, and October 8, 2022. As shown

throughout, each of those dates generally trails one of Defendants' false or recklessly hopeful

statements.

206.    Initially during September, Zoo Tokens lost almost all of their value for the first

time. To remedy this, Paul appeared on Jon Youshaei's YouTube channel on a show entitled, The

Untold Story of Logan Paul, released October 11, 2021, and stated:

> I think [CryptoZoo is] the most important thing we're doing. Kids are going to care
> about the blockchain because of my project. Imagine if your first experience on the
> blockchain is with CryptoZoo. We're coming up with really, really fun plans for
> six months, a year down the line, two years down the line. Like this could be the
> one of the biggest things I do.

207.    Like others, Plaintiffs thought there was long term merit in the project due to the

false affirmations by the development team, including from Ben Roth. It was a steady drip of

information on positive developments—which were untrue—that led them to believe the project

was legitimate. For example, on November 2, 2021, the CryptoZoo Twitter account posted a riddle

announcing a prize of 10 million Zoo Tokens or an CZ NFT—supporting a surge—despite it being unclear which is being offered and it appears nothing was ever awarded. Trusting Defendants' promises that CryptoZoo would be functional,

208.    Accordingly, Plaintiffs spent additional amounts, including Holland who spent approximately $2,000 more after his initial investment for a total of $3,000, while Heikali invested an additional $60,000 in Zoo Tokens and another and another, until his investments reached $250,000 in total.

209.    Simultaneously on the development side, Defendants, upon information and belief, hired a software developer to develop the game but never paid for his services and therefore never received the game code. This pattern repeated itself with PixelPlex, as Defendants considered these developers "too transactional" in wanting to be paid for their work. Defendants then hired Vatom Ventures and offered to pay them 20 million Zoo Tokens before that relationship also fell apart. Finally, Defendants hired developers from BlockOps LLC operating out of Austin, Texas. These developers created projects related to CryptoZoo, including Zoobay, under the direction of Defendants, mostly Ben Roth. Defendants refused to have BlockOps finish the CryptoZoo game because it was too expensive.

210.    As this process unfolded, Defendants continued to publicly talk about the game and provide news about potential updates that never come to fruition. On May 14, 2022, Defendants Levin and Paul stated they were "Never given up, working on [CryptoZoo] daily," before making additional comments affirming their dedication to CryptoZoo:

    a.    "Let our actions speak for ourselves," Levin.

    b.    "Artists working around the clock," Paul.

    c.    "[Defendants] said they are going to do something, they're gonna do it," Levin.

  d.  Defendants are "long-term thinkers," Levin.

  e.  "Retroactively working to make these projects right and just takes times time bro. It just takes f***ing time bro. Development takes time." Paul.

  f.  "Working backwards to fix things, which isn't ideal, but also this project will speak for itself." Paul.

  g.  And now, you know, we're working backwards to try and fix it." Paul.

211. These statements continued until Defendants realized the game was not going to be created at a price they wanted to pay. Thus, in a video released by a YouTube-based investigative reporter Coffeezilla on December 20, 2022, there is audio of a call between Levin and Coffeezilla, where Levin first began to publicly backpedal, stating:

  a.  "More preparation, more education, more time to learn and uh find the right partners,"

  b.  "Logan loves to move fast…Fast sometimes can be a stumble," and

  c.  Defendants needed to "Take the time."

Available at https://www.youtube.com/watch?v=wvzyDg40-yw.

212. On August 17, 2021, Paul exchanged text messages with Ibanez evincing concern the Texas market may be in danger if cryptocurrency is banned there, before also worrying about the Connecticut and New York markets, evincing an at least national marketing strategy.

213. Once Plaintiffs saw Logan Paul announce another NFT project and started ignoring CryptoZoo, they realized their money was likely lost. CryptoZoo was never released as advertised and the value of the Zoo Tokens and CZ NFTs plummeted.

214. The value continued to drop because Defendants manipulated the market for Zoo Tokens and CZ NFTs by buying and selling them in bulk. Defendants caused Plaintiffs to effectively lose most of the value of the assets they used to purchase the Zoo Tokens and CZ NFTs.

215.    Defendants' scheme caused damages to Plaintiffs and other consumers. Defendants knew consumers like Plaintiffs would be convinced to purchase their products by Defendants' false representations of profit and a functional game.

216.    On information and belief, Defendants made the business decision to forego an expensive and time-consuming process to create a functional CryptoZoo game or support it, and instead deliberately undertook a scheme to defraud Plaintiffs and other consumers. Paul has admitted the game will never be released and alleges it was actually built, but not until early in 2023.

217.    On information and belief, June 11, 2021, was considered internally by Defendants as "Zoo Day," the day upon which they released—without any public notice—their digital products for purchase on the Binance blockchain. On Zoo Day, and until the release was publicly announced, Logan Paul, Danielle Strobel, Jeffrey Levin, Eddie Ibanez, and Jake Greenbaum a/k/a Crypto King purchased these digital products at an artificially low value. Soon after the project was publicly announced, Eddie Ibanez, Jake Greenbaum, and potentially other Defendants, sold large amounts of the digital products for an immediate and large profit, effectively stealing the money of consumers who had invested.

218.    Defendants' internal documents show the Founder Defendants knew they were supposed to hold onto any early purchased digital products until months after the public release because they knew that selling before then constitutes a "rug pull" and is fraudulent. Due to the unconscionability of Defendants' fraudulent scheme, Defendants should disgorge the revenue, profit, and any other gains made therefrom to Plaintiffs.

219.    Yet, despite scheming together, all was not well among the Defendants, as confirmed by Paul's crossclaims against Ibanez and Greenbaum. In the video released by

Coffeezilla on December 20, 2022, discussed *supra*, Defendant Greenbaum stated:

> I don't want it to ever be thought that Logan's the reason it failed. He's not. Logan wasn't smart enough for what he tried to build. And then when it was built and was failing, [he] didn't have the ability to correct it, and to save face and reputation it was more convenient to pull out than be associated with a failing project.

220.    On information and belief, Defendants manipulated the Zoo Token market. Their standard operating procedure has been to promise products they failed to deliver on only to abandon the project and community they promised to support. Due to these unconscionable practices, Defendants should disgorge any revenue, profits, or any other gains from their scheme to Plaintiffs.

221.    Logan Paul and Defendants knew or should have known that they were falsely advertising a non-functional product and that consumers would be deceived by their false representations. Defendants acted with reckless disregard when they made such false representations and are responsible for Plaintiffs' damages.

## IX.    CLASS ACTION ALLEGATIONS

222.    Plaintiffs bring this action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

CRYPTOZOO CLASS:

**All persons who purchased Zoo Tokens and/or CryptoZoo NFTs from June 11, 2021 through (at least) January 4, 2024.**

223.    The Class is comprised of four subclasses: (1) all persons and entities who purchased Zoo Tokens directly from Defendants, or the platform Defendants used for sale, on their public release date; (2) all persons and entities who purchased CZ NFTs directly from Defendants, or the platform Defendants used for sale, on their public release date; (3) all persons and entities who purchased Zoo Tokens or CZ NFTs directly from Defendants during the class period; and (4) all persons and entities who purchased Zoo Tokens or CZ NFTs on the open market during the

class period as a result of Defendants' successfully soliciting Zoo Tokens or CZ NFTs.

224.    Excluded from the class definition are any employees, officers, directors of Defendants, and attorneys appearing in this case, and any judge assigned to hear this action. Plaintiffs reserve the right to modify this class definition as he obtains relevant information.

225.    The proposed class can be identified through Defendants' records and Binance block chain records containing, amongst other information, the relevant digital currency transactions.

226.    Such data indicates there is approximately 20,000 potential victims based on publicly available cryptocurrency addresses and, on information and belief, there are thousands in the United States. Accordingly, the number of Putative CryptoZoo Class Members is believed to be in the thousands, rendering the class so numerous that individual joinder of all class members is impracticable.

227.    Lead Plaintiffs are members of the proposed class.

**Commonality**

228.    There are questions of fact common to the Putative CryptoZoo Class, and those questions predominate over questions affecting any individual Putative CryptoZoo Class Member. Common questions of fact include but are not limited to:

a.    Whether Defendants fraudulently promoted investment products, that did not function as promoted, causing investors/consumers like those in the Putative CryptoZoo Class to invest in Zoo Tokens or CZ NFTs;

b.    Whether Defendants fraudulently promoted future products or services, or futures in products or services—products or services Defendants knew would not exist as promoted or at all—causing consumers like those in the

Putative CryptoZoo Class to purchase said futures or invest further in CryptoZoo products;

c.     Whether Defendants violated their agreement(s) to deliver functional products and breached their agreement(s);

d.     Whether Defendants knew CryptoZoo would not be functional when they claimed it would be or was, and made false representations despite that knowledge;

e.     Whether Defendants had a duty to provide functional products to their consumers, and if Defendants violated that duty;

f.     Whether Defendants failed to deliver on its promises to consumers to provide functional products;

g.     Whether Defendant made any false representations to their investors or consumers, and whether Defendants knew those representations to be false, or whether those assertions were made recklessly and without adequate investigation of their truth or falsity;

h.     Whether Defendants received revenues from their fraudulent venture, and the amount of those revenues;

i.     Whether Defendant manipulated the market for Zoo Tokens and their NFTs; and

j.     Whether Defendants had a duty to not manipulate the market for Zoo, and whether Defendants violated that duty.

229.     There are questions of law common to the Putative CryptoZoo Class, and those questions predominate over questions affecting any individual Putative CryptoZoo Class Member.

Common questions of law include but are not limited to:

a.   Whether Defendant's conduct in (1) making false representations about CryptoZoo, (2) failing to provide a functional CryptoZoo product, (3) selling Zoo Tokens and CZ NFTs as unregistered securities without proper regard for investors, and (4) manipulating the Zoo Token market, constitute acts of fraud;

b.   Whether Defendant's conduct common to the Putative CryptoZoo Class has resulted or will result in Defendant being enriched at the expense of Putative CryptoZoo Class Members, or in Defendant retaining a benefit to the detriment and loss of Putative CryptoZoo Class Members, in frustration of the fundamental principles of justice, equity, and good conscience, and thus constitutes unjust enrichment;

c.   Whether Defendant's conduct common to the Putative CryptoZoo Class demonstrates willfulness, malice, or recklessness, or whether Defendant proceeded with conscious disregard for the rights of others, therefore entitling Putative CryptoZoo Class Members to punitive damages.

**Typicality**

230.   Typicality. *Fed. R. Civ. P. 23(a)(3)*. Lead Plaintiffs' claims are typical of the claims of the Putative CryptoZoo Class Members. Lead Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Lead Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other Members of the Putative CryptoZoo Class.

**Adequacy**

231.     Adequacy. *Fed. R. Civ. P. 23(a)(4).* Lead Plaintiffs are adequate representatives of the proposed Putative CryptoZoo Class because their interests coincide with and are not antagonistic to, the interests of the other Plaintiffs and Members of the Putative CryptoZoo Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The non-lead Plaintiffs have no interests antagonistic to or conflicting with those of the Class. Lead Plaintiffs and their Counsel will fairly and adequately protect the interests of the Members of the Putative CryptoZoo Class.

## **Superiority**

232.     Superiority. *Fed. R. Civ. P. 23(b)(3).* Questions of law and fact common to the Putative CryptoZoo Class Members predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness and Scienter will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the Putative CryptoZoo Class Members.

233.     The damages sought by each Member are such that individual prosecution for a majority of the Members would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct—and would be burdensome and expensive on the Federal Judiciary System to resolve multiple litigations based on the same facts as a single class action. It would be virtually impossible for Members of the Putative CryptoZoo Class individually to redress effectively the wrongs done to them. Even if the Members of the Putative CryptoZoo Class themselves could afford such individual litigation, it would still be an unnecessary burden on the courts.

234.     Furthermore,  individualized  litigation  presents  a  potential  for  inconsistent  or

contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in one case.

## X.      CAUSES OF ACTION

### A.  COUNT ONE: FRAUD

235.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

236.    Defendants failed to disclose that CryptoZoo was non-functional as promoted and that they would not be supporting the project.

237.    Defendants have no practice of providing promised products/projects and supporting said projects/products.

238.    This is a signal attribute of fraud because Defendants represented to provide the promoted products/projects and to do what was best for the Plaintiffs and other consumers. Moreover, in related context and as previously alleged, Defendants had a duty to provide the promoted products/projects and to do what was best for the Plaintiffs, investors, and other consumers, but chose to proceed in violation of this duty.

239.    Rather than make candid, straightforward disclosure of their material failures, Defendants ignored them.

240.    Plaintiffs and other consumers were ignorant of these material failures and did not stand in equal opportunity with Defendants to know they existed. They had no way of knowing what sort of products/projects would be implemented or what contractual terms Defendants injected to immunize their scheme. In this context these purported contractual terms have the additional effect of intentionally misleading Plaintiffs and other consumers concerning

Defendants' practices. These customers cannot reasonably expect that Defendants would take their assets and fail to provide a functional CryptoZoo, fail to support the community, or manipulate the Zoo Token or CZ NFT market. But this is reflected repeatedly in Plaintiffs' statements as presented in this Complaint.

**B.**    **COUNT TWO: EXPRESS BREACH OF CONTRACT**

241.    Plaintiffs incorporate by reference the paragraphs 1-204 of this Complaint as if fully set forth here.

242.    Plaintiffs allege that they entered into valid and enforceable express contracts, or was a third party beneficiary of valid and enforceable express contracts, with Defendants.

243.    The valid and enforceable express contracts that Plaintiffs entered with Defendants include Defendants' representations that they would provide a functional version of CryptoZoo at the time the Zoo Tokens and CZ NFTs were publicly noticed and/or released as for sale. The express contracts also include violations of Defendants' then-current terms of service.

244.    Under these express contracts, Defendants and/or their affiliated contractors or associates, promised and were obligated to: (a) provide a functional version of CryptoZoo, upon which the value of Zoo Tokens and CZ NFTs were at least partially dependent; and (b) provide the agreed terms in exchange for Plaintiffs' and other consumers investments in Defendants' products/services. In exchange, Plaintiffs and other consumers agreed to pay money for these products/services.

245.    Both the (a) provision of a functioning CryptoZoo and (b) the obligation that Defendants "will strive to do the best for the project and the community" of participants in CryptoZoo—amongst other obligations—were material aspects of these agreements.

246.    At all relevant times, Defendants expressly represented in their promotions that CryptoZoo would be functional by September 1, 2021, and they "will strive to do the best for the

project and the community [of participants in CryptoZoo]." Defendants had a duty to provide a functional CryptoZoo product, especially if they were taking assets from Plaintiffs and other consumers in exchange for access to it. Instead, Defendants pocketed Plaintiffs' and other consumers' money and mostly forgot, according to the publicly available information, about the "failed endeavor" until receiving negative media attention.

247.   Defendants' express representations—including, but not limited to, express representations found in their advertising and promotion—formed an express verbal contract/offer requiring Defendants to provide a functional CryptoZoo and to "strive to do the best for the project and the community [of participants in CryptoZoo]."

248.   Plaintiffs trusted Defendants' representations and proposed agreements related to their products. Yet Defendants failed to provide the promoted product and do what was best for their consumers, even lying about the underlying investment in the project. The CryptoZoo Tokens and CZ NFTs are essentially worthless, in part because CryptoZoo was never released. Plaintiffs would not have entered into these arrangements with Defendants without believing CryptoZoo would function and be supported by Defendants.

249.   A meeting of the minds occurred, as Plaintiffs and other consumers invested in Defendants digital products in exchange for, amongst other things, a functioning CryptoZoo and Defendants' support of it.

250.   Plaintiffs performed their obligations under the contract when they paid for Defendants' digital products.

251.   Defendants materially breached their contractual obligations to provide a functional CryptoZoo and support the project.

252.   Defendants materially breached the terms of these express contracts, including, but

not limited to, the terms stated in their promotions and then-current terms of service.

253.    The ensuing damages were a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

254.    As a result of Defendants' failure to fulfill obligations promised in these contracts, Plaintiffs and other consumers did not receive the full benefit of the bargain, and instead received products that were of a diminished value to that described in the agreements. Defendants therefore damaged Plaintiffs in an amount at least equal to the difference in the value of the Zoo Tokens and/or CZ NFTs they paid for, and the value they were left with.

255.    Had Defendants disclosed that CryptoZoo was nonfunctional, or that they were not going to support the project, neither the Plaintiffs nor any reasonable person would have purchased/invested in Defendants' products/services.

256.    As a direct and proximate result of these breaches, Plaintiffs have been harmed and suffered, and will continue to suffer, actual damages and injuries, including without limitation the loss of assets and loss of use of those assets, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendants.

257.    Plaintiffs are entitled to compensatory and consequential damages suffered as a result of these breaches.

## C.    COUNT THREE: IMPLIED BREACH OF CONTRACT

258.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

259.    When Plaintiffs and other consumers provided their investments/monies to Defendants in exchange for Defendants' services and products required to participate in CryptoZoo, they entered into implied contracts with Defendants under which Defendants agreed to reasonably provide a functional CryptoZoo and support it.

260. Defendants solicited and invited Plaintiffs and other consumers to invest/pay for their digital products as part of Defendants' regular business practices. Plaintiffs accepted Defendants' offers and provided assets to Defendants.

261. In entering such implied contracts, Plaintiffs reasonably believed and expected that Defendants would provide a functional CryptoZoo and support the project.

262. Plaintiffs provided assets to Defendants reasonably believing and expecting that Defendants would provide a functional CryptoZoo and support the project.

263. Plaintiffs would not have provided their assets to Defendants in the absence of the implied contract between them and Defendants to provide a functional CryptoZoo and support the project.

264. Plaintiffs would not have entrusted their assets to Defendants in the absence of their implied promise provide a functional CryptoZoo and support the project.

265. Plaintiffs fully and adequately performed their obligations under the implied contracts with Defendants.

266. Defendants breached their implied contracts with Plaintiffs by failing to provide a functional CryptoZoo and support the project.

267. As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiffs sustained damages as alleged here.

268. Plaintiffs are entitled to compensatory and consequential damages suffered as a result of these breaches.

## D.   COUNT FOUR: UNJUST ENRICHMENT

269. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

270. As a direct and proximate result of Defendants' intentional and unlawful taking of

Plaintiffs' assets without providing the promised product/services, Plaintiffs have been deprived of the profits and other benefits of purchasing/investing in Defendants' products. Defendants have been unjustly enriched by its wrongful receipt and retention of profits and other benefits they deprived Plaintiffs and, in equity, Defendants should not be allowed to retain their revenues and benefits.

271.    Plaintiffs are entitled to a judgment requiring Defendants to disgorge all sums they have received as revenue and other benefits arising from their unconscionable and unlawful failure to provide a functional CryptoZoo, failure to support the project, and manipulation of the Zoo Token market.

E.    COUNT FIVE: NEGLIGENCE

272.    Plaintiffs incorporate by reference the the foregoing paragraphs of this Complaint as if fully set forth herein.

273.    By representing to the public that CryptoZoo would be functional, was seeded with around a million dollars, and that the CryptoZoo community would be supported, Defendants had a duty of care to use reasonable means to provide the promised products/services, not manipulate the Zoo Token and CZ NFT markets, and support Plaintiffs and the other members of the CryptoZoo community.

274.    Defendants' duty of care to provide the promised products/services, not manipulate the Zoo Token market, and support Plaintiffs and the other members of the CryptoZoo community arose from the special relationship that existed between Plaintiffs and Defendants. Defendants were positioned to ensure that the promised products/services would be delivered, that Zoo Token and CZ NFT markets were not manipulated, and to support Plaintiffs and the other members of the CryptoZoo community.

275.    Defendants breached their duties, and thus were negligent, by failing to provide the

promised products/services, failing to support Plaintiffs and the other members of the CryptoZoo community, and manipulating the Zoo Token and CZ NFT markets. The specific negligent acts and omissions committed by Defendants include, but are not limited to:

a.   Promoting products or services, that did not exist as promoted, causing Plaintiffs to purchase said products or services under false pretenses;

b.   Representing that CryptoZoo would be functional and making false representations despite that knowledge;

c.   Willfully failing to provide functional products and services to their consumer, even after receiving revenues from their fraudulent venture;

d.   Willfully manipulating the market for Zoo Tokens and CZ NFTs; and

e.   Willfully failing to support Plaintiffs and the CryptoZoo community.

276.   It was foreseeable that Defendants' failures to provide the promised products/services, not manipulate the Zoo Token and CZ NFT markets, and support Plaintiffs and the other members of the CryptoZoo community would result in one or more types of damages and/or injuries to Plaintiffs.

277.   Plaintiffs are entitled to compensatory and consequential damages suffered as a result of Defendants' negligent failures.

## F.   COUNT SIX: FRAUDULENT MISREPRESENTATION

278.   Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

279.   Defendants fraudulently represented to the public that CryptoZoo would be functional and that they would be supporting the project and the CryptoZoo community.

280.   Upon information and belief, Defendants knew that CryptoZoo would never be functional and that they had no intention of supporting the project or the CryptoZoo community, including Plaintiffs.

281.     Defendants had a duty to tell its consumers, including Plaintiffs, that CryptoZoo would never be functional and that they had no intention of supporting the project or the CryptoZoo community.

282.     Rather than make candid, straightforward disclosures to their consumers, including Plaintiffs, Defendants willfully concealed that CryptoZoo would never be functional and that they had no intention of supporting the project or the CryptoZoo community.

283.     Plaintiffs would not have purchased Defendants' products but for their reliance on Defendants' material statements that CryptoZoo would be functional and that they would be supporting the project and the CryptoZoo community.

284.     As a result, Plaintiffs is entitled to compensatory and consequential damages suffered as a result of Defendants' fraudulent representations.

## G.     COUNT SEVEN: CONSPIRACY TO COMMIT FRAUD

285.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

286.     Defendants conspired with one another and potentially others as yet unknown to commit the acts set forth in this Complaint.

287.     Said conspiracy constitutes a conspiracy to defraud Plaintiffs and other consumers.

288.     Plaintiffs, unaware of the falsity of statements made by Defendants, and in reliance on their accuracy, paid money to Defendants based on such fraudulent statements. Plaintiffs have been damaged as a result of Defendants' conspiracy to commit fraud.

## H.     COUNT EIGHT: CIVIL AIDING AND ABETTING FRAUD

289.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

290.     Each non-entity Defendant, on behalf of CryptoZoo Inc., themselves, and each

other, made numerous misrepresentations of material fact with the intent to commit the acts set forth in this Complaint.

291.    Each Defendant aided and abetted each other in perpetuating the fraudulent scheme described above against Plaintiffs and other investors/consumers. Indeed, by virtue of the conduct and facts described above, each of the Defendants named in this action aided and abetted the fraud that each Defendant perpetrated against Plaintiffs.

292.    Plaintiffs, because of Defendants' aiding and abetting each other's fraud, unaware of the falsity of statements made by Defendants, and relying on their accuracy, paid money to Defendants based on such fraudulent statements. Plaintiffs have been damaged as a result of Defendants' aiding and abetting.

**CONSUMER PROTECTION CLAIMS AGAINST ALL DEFENDANTS**

293.    For each of the Consumer Protection Claims below, Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

294.    Though Plaintiffs believe Defendants' alleged actions had an effect nationwide, the claims below are based on Plaintiffs' domicile at the time of injury and Plaintiffs reserve the right to supplement, as necessary, the Consumer Protection Claims for any future Class members who is domiciled in a state unrepresented below.

**I.    COUNT NINE: VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. ANN. § 44-1521, *ET SEQ.*)**

295.    The Arizona Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Arizona ("Arizona resident Class members") against all Defendants.

296.    The Defendants, the Arizona Plaintiff, and Arizona resident Class members are "persons" within the meaning of Ariz. Rev. Stat. Ann. § 44-1521(6).

297.    Zoo Tokens, CZ NFTs, and the CryptoZoo game are "merchandise" within the meaning of Ariz. Rev. Stat. Ann § 44-1521(5).

298.    The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful business practices. Ariz. Rev. Stat. Ann § 44-1522(A).

299.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

300.    Specifically, by failing to disclose and actively concealing the failure to develop CryptoZoo, and misrepresenting its progress, affecting the value of Zoo Tokens and CZ NFTs, Defendants engaged in deceptive acts or practices, as outlined in Ariz. Rev. Stat. § 44-1522(A), including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with advertising CryptoZoo and selling Zoo Tokens and CZ NFTs.

301.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Arizona Plaintiff and Arizona resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

302.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Arizona Plaintiff and Arizona resident Class members, as Defendants intended. Had they known the truth, the Arizona Plaintiff and Arizona resident Class members would not have purchased Zoo Tokens or CZ NFTs, or would have paid significantly less for them.

303.    The Arizona Plaintiff and Arizona resident Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Arizona Plaintiff and Arizona resident Class members did not, and could not, unravel Defendants' deception on their own.

304.    Defendants had an ongoing duty to the Arizona Plaintiff and Arizona resident Class members to refrain from unfair or deceptive practices under the Arizona CFA in the course of their business. Specifically, Defendants owed the Arizona Plaintiff and Arizona resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and/or appropriately support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo or support the CryptoZoo community from Arizona Plaintiffs and the Arizona resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

305.    The Arizona Plaintiff and Arizona resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

306.    Defendants' violations present a continuing risk to the Arizona Plaintiff and Arizona resident Class members, as well as to the general public. Defendants' unlawful acts and

practices complained of herein affect the public interest.

307.    The Arizona Plaintiff and Arizona State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices and awarding damages and any other just and proper relief available under the Arizona CFA.

**J.      COUNT TEN: FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)**

308.    The California Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in California ("California resident Class members") against all Defendants.

309.    Defendants, the California Plaintiffs, and California resident Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

310.    The California False Advertising Law ("California FAL") prohibits false advertising. California Bus. & Prof. Code § 17500.

311.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

312.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or support the CryptoZoo community, affecting the value of Zoo Tokens and CZ NFTs, Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500., including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in

connection with advertising CryptoZoo and selling Zoo Tokens and CZ NFTs.

313.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Arizona Plaintiff and Arizona resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

314.    Defendants made or caused to be made and disseminated throughout California advertising, marketing, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including the California Plaintiffs and California resident Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint, including paragraphs 1-31; 170-198.

315.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiffs and California resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

316.    Defendants' scheme and concealment of their failure to develop CryptoZoo and

true characteristics of the Zoo Tokens and CZ NFTs were material to the California Plaintiff and California resident Class members, as Defendants intended. Had they known the truth, the California Plaintiff and California resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

317.    The California Plaintiff and California resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The California Plaintiff and California resident Class members did not, and could not, unravel Defendants' deception on their own.

318.    Defendants had an ongoing duty to the California Plaintiff and California resident Class members to refrain from unfair or deceptive practices under the California FAL in the course of their business. Specifically, Defendants owed the California Plaintiff and California resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from California Plaintiffs and the California resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

319.    The California Plaintiff and California resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

320.    Defendants' violations present a continuing risk to the California Plaintiff and California resident Class members, as well as to the general public. Defendants' unlawful acts and

practices complained of herein affect the public interest.

321.    The California Plaintiff and California State Class members seek an order enjoining Defendants' false advertising, any such orders or judgments as may be necessary to restore to the California Plaintiffs and California resident Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

## K.    COUNT ELEVEN: FALSE VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*)

322.    The California Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in California ("California resident Class members") against all Defendants.

323.    Zoo Tokens, CZ NFTs, and the CryptoZoo game are "goods" within the meaning of Cal. Civ. Code § 1761(a).

324.    Defendants, the California Plaintiffs, and California resident Class members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

325.    The California Plaintiffs and California resident Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

326.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

327.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the

reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

328.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members— Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

   a.    Representing that Zoo Tokens and CZ NFTs have characteristics, uses, benefits, and qualities which they do not have.

   b.    Representing that Zoo Tokens and CZ NFTs are of a particular standard, quality, and grade when they are not.

   c.    Advertising CryptoZoo, Zoo Tokens, and/or CZ NFTs with the intent not to sell them as advertised.

   d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

   e.    Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

329.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiff and California resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

330.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the California Plaintiff and California resident Class members, as Defendants intended. Had they known the truth, the California Plaintiff and California resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

331.    The California Plaintiff and California resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The California Plaintiff and California resident Class members did not, and could not, unravel Defendants' deception on their own.

332.    Defendants had an ongoing duty to the California Plaintiff and California resident Class members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, Defendants owed the California Plaintiff and California resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from California Plaintiffs and the California resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

333.    The California Plaintiff and California resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

334.    Defendants' violations present a continuing risk to the California Plaintiff and

California resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

335.    Defendants were provided notice of the issues raised in this count before the filing of this lawsuit through Coffeezilla and Paul interacted publicly to Coffeezilla's expose. Because Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the California Plaintiffs seek all damages and relief to which the California Plaintiffs and California State Class members are entitled.

336.    Pursuant to Cal. Civ. Code § 1780(a), the California Plaintiffs and California residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against Defendants.

## L.    COUNT TWELVE: UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES UNDER THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

337.    The California Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in California ("California resident Class members") against all Defendants.

338.    California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

339.    As detailed in the allegations above, Defendants knowingly and intentionally designed, developed, tested, manufactured, and/or sold Zoo Tokens and/or CZ NFTs, and marketed and sold those Zoo Tokens and/or CZ NFTs, while misrepresenting the development of the CryptoZoo game and fraudulently concealing that failure from regulators and the California Plaintiffs and California resident Class members alike. In doing so, Defendants have engaged in at least one of the following unlawful, fraudulent, and unfair business acts and practices in

violation of the UCL:

    a.    Knowingly and intentionally concealing from the California Plaintiffs and California resident Class members that was not and/or would not be developed while obtaining money from the California Plaintiffs and California State Class members;

    b.    marketing Zoo Tokens and/or CZ NFTs as possessing functional use for a game that did not and would not exist; and/or

    c.    violating both federal and California laws, including the federal RICO statute, as alleged *infra*.

340.    Defendants' misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiff and California resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

341.    The California Plaintiff and California resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

342.    Pursuant to Cal. Bus. & Prof. Code § 17200, the California Plaintiffs and California residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices, any such orders or judgments as may be necessary to restore to the California Plaintiffs and California State Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203, and any other just and proper relief available under the California UCL.

**M.**    **COUNT THIRTEEN: VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. § 6-1-101, *ET SEQ.*)**

343.    The Colorado Plaintiff brings this count individually and on behalf of members of

the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Colorado ("Colorado resident Class members") against all Defendants.

344.    Defendants, the Colorado Plaintiff, and Colorado resident Class members are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

345.    The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices in the course of the person's business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

346.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

347.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Colo. Rev. Stat. § 6-1-105, including failing to disclose material information.

348.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Colorado Plaintiff and Colorado resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo

Tokens and CZ NFTs.

349.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Colorado Plaintiff and Colorado resident Class members, as Defendants intended. Had they known the truth, the Colorado Plaintiff and Colorado resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

350.    The Colorado Plaintiff and Colorado resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Colorado Plaintiff and Colorado resident Class members did not, and could not, unravel Defendants' deception on their own.

351.    Defendants had an ongoing duty to the Colorado Plaintiff and Colorado resident Class members to refrain from unfair or deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendants owed the Colorado Plaintiff and Colorado resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Colorado Plaintiff and the Colorado resident Class members.

352.    The Colorado Plaintiff and Colorado resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

353.    Defendants' violations present a continuing risk to the Colorado Plaintiff and Colorado resident Class members, as well as to the general public. Defendants' unlawful acts and

practices complained of herein affect the public interest.

354.     Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and Colorado residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Colorado CPA.

N.     **COUNT FOURTEEN: VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET SEQ.*)**

355.     The Florida Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Florida ("Florida resident Class members") against all Defendants.

356.     The Florida Plaintiff and Florida resident Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

357.     Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

358.     The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

359.     In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

360.     Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—

Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

361.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Florida Plaintiff and Florida resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

362.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Florida Plaintiff and Florida resident Class members, as Defendants intended. Had they known the truth, the Florida Plaintiff and Florida resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

363.    The Florida Plaintiff and Florida resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Florida Plaintiff and Florida resident Class members did not, and could not, unravel Defendants' deception on their own.

364.    Defendants had an ongoing duty to the Florida Plaintiff and Florida resident Class members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed the Florida Plaintiff and Florida resident Class

members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the Florida Plaintiff and the Florida resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

365.    The Florida Plaintiff and Florida resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

366.    Defendants' violations present a continuing risk to the Florida Plaintiff and Florida resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

367.    Pursuant to Fla. Stat. § 501.211, the Florida Plaintiff and Florida residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

**O.    COUNT FIFTEEN: VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*)**

368.    The Iowa Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Iowa ("Iowa resident Class members") against all Defendants.

369.    The Iowa Plaintiff and Iowa resident Class members are "consumers" within the meaning of Iowa Code § 714H.2.

370.    Defendants were and are engaged in the "sale" of "consumer merchandise" within the meaning of Iowa Code § 714H.2.

371.    The Iowa Private Right of Action for Consumer Frauds Act ("PRACF Act") prohibits unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes." Iowa Code § 714H.3.

372.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the PRACF Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

373.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Iowa Code § 714H.3.

374.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Iowa Plaintiff and Iowa resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality

of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

375.   Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Iowa Plaintiff and Iowa resident Class members, as Defendants intended. Had they known the truth, the Iowa Plaintiff and Iowa resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

376.   The Iowa Plaintiff and Iowa resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Iowa Plaintiff and Iowa resident Class members did not, and could not, unravel Defendants' deception on their own.

377.   Defendants had an ongoing duty to the Iowa Plaintiff and Iowa resident Class members to refrain from unfair or deceptive practices under the PRACF Act in the course of their business. Specifically, Defendants owed the Iowa Plaintiff and Iowa resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the Iowa Plaintiff and the Iowa resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

378.   The Iowa Plaintiff and Iowa resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

379.   Defendants' violations present a continuing risk to the Iowa Plaintiff and Iowa

resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

380.    Pursuant to Iowa Code § 714H.5, the Iowa Plaintiff and Iowa residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under the PRACF Act.

**P.    COUNT SIXTEEN: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1, _ET SEQ._)**

381.    The Illinois Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Illinois ("Illinois resident Class members") against all Defendants.

382.    Defendants, the Illinois Plaintiffs, and Illinois resident Class members are "persons" within the meaning of 815 ILCS 505/1(c).

383.    The Illinois Plaintiffs and Illinois resident Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

384.    The CryptoZoo game, Zoo Tokens, and CZ NFTs are "merchandise" within the meaning of 815 ILCS 505/1(b).

385.    Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

386.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

387.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the

reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

388.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

> a.    Causing likelihood of confusion or of misunderstanding as to the existence of a CryptoZoo game;
>
> b.    Representing that the CryptoZoo products, including CryptoZoo game, Zoo Tokens, and CZ NFTs, had characteristics, uses, or benefits that they do not have;
>
> c.    Representing that the CryptoZoo game, Zoo Tokens, and CZ NFTs are of a particular standard, quality, and grade when they are not;
>
> d.    Advertising the CryptoZoo game, Zoo Tokens, and CZ NFTs with the intent not to sell them as advertised;
>
> e.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or
>
> f.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the CryptoZoo game, Zoo Tokens, or CZ NFTs, whether or not any person has in fact been misled, deceived or damaged thereby.

389.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the

quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

390.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Illinois Plaintiffs and Illinois resident Class members, as Defendants intended. Had they known the truth, the Illinois Plaintiffs and Illinois resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

391.    The Illinois Plaintiffs and Illinois resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Illinois Plaintiffs and Illinois resident Class members did not, and could not, unravel Defendants' deception on their own.

392.    Defendants had an ongoing duty to the Illinois Plaintiffs and Illinois resident Class members to refrain from unfair or deceptive practices under the Illinois CFDBPA in the course of their business. Specifically, Defendants owed the Illinois Plaintiffs and Illinois resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Illinois Plaintiffs and the Illinois resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

393.    The Illinois Plaintiffs and Illinois resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment,

misrepresentations, and/or failure to disclose material information.

394.    Defendants' violations present a continuing risk to the Illinois Plaintiffs and Illinois resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

395.    Pursuant to 815 ILCS 505/10a, the Illinois Plaintiffs and Illinois residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under Illinois CFDBPA.

**Q.    COUNT SEVENTEEN: VIOLATION OF THE DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*)**

396.    The Massachusetts Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Massachusetts ("Massachusetts resident Class members") against all Defendants.

397.    Defendants, the Massachusetts Plaintiffs, and Massachusetts resident Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

398.    Defendants were and are engaged in "trade" and "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

399.    The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

400.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ

NFTs, as detailed above.

401.   Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair and/or deceptive business practices in the conduct of any trade or commerce as prohibited by Mass. Gen. Laws ch. 93A, § 2.

402.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Massachusetts Plaintiffs and Massachusetts resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

403.   Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Massachusetts Plaintiffs and Massachusetts resident Class members, as Defendants intended. Had they known the truth, the Massachusetts Plaintiffs and Massachusetts resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

404.   The Massachusetts Plaintiffs and Massachusetts resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Massachusetts Plaintiffs and Massachusetts resident Class members did not, and could not, unravel Defendants' deception on their own.

405.    Defendants had an ongoing duty to the Massachusetts Plaintiffs and Massachusetts resident Class members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed the Massachusetts Plaintiffs and Massachusetts resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Massachusetts Plaintiffs and the Massachusetts resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

406.    The Massachusetts Plaintiffs and Massachusetts resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

407.    Defendants' violations present a continuing risk to the Massachusetts Plaintiffs and Massachusetts resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

408.    Any requirement to give notice to Defendants under Mass. Gen. Laws ch. 93A, § 9(3) is excused because, inter alia, on information and belief Defendants do not maintain a place of business or do not keep assets within Massachusetts.

409.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiffs and Massachusetts residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under the Massachusetts Act.

**R.**   **COUNT EIGHTEEN: VIOLATION OF THE NORTH CAROLINA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (NORTH CAROLINA CODE § 714H.1, *ET SEQ.*)**

410.   The North Carolina Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in North Carolina ("North Carolina resident Class members") against all Defendants.

411.   The North Carolina Plaintiff and North Carolina resident Class members are "consumers" within the meaning of North Carolina Code § 714H.2.

412.   Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

413.   The Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes." North Carolina Code § 714H.3.

414.   In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

415.   Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—

Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce prohibited by N.C. Gen. Stat. § 75-16.

416.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the North Carolina Plaintiff and North Carolina resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

417.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the North Carolina Plaintiff and North Carolina resident Class members, as Defendants intended. Had they known the truth, the North Carolina Plaintiff and North Carolina resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

418.    The North Carolina Plaintiff and North Carolina resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The North Carolina Plaintiff and North Carolina resident Class members did not, and could not, unravel Defendants' deception on their own.

419.    Defendants had an ongoing duty to the North Carolina Plaintiff and North Carolina resident Class members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed the North Carolina Plaintiff

and North Carolina resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the North Carolina Plaintiff and the North Carolina resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

420.    The North Carolina Plaintiff and North Carolina resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

421.    Defendants' violations present a continuing risk to the North Carolina Plaintiff and North Carolina resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

422.    Pursuant to N.C. Gen. Stat. § 75-16, the North Carolina Plaintiff and North Carolina residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under the North Carolina UDTPA.

**S.    COUNT NINETEEN: VIOLATION OF THE NEW JERSEY PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (NEW JERSEY CODE § 714H.1, *ET SEQ.*)**

423.    The New Jersey Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in New Jersey ("New Jersey resident Class members") against all Defendants.

424.    Defendants, the New Jersey Plaintiff, and New Jersey resident Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

425.    The CryptoZoo game, Zoo Tokens, and CZ NFTs are "merchandise" within the

meaning of N.J. Stat. Ann. § 56:8-1(c).

426.    The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unfair trade practices. N.J. Stat. Ann. § 56:8-2.

427.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

428.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce prohibited by N.J. Stat. Ann. § 56:8-2, including the act, use, or employment of any unconscionable commercial practice, and/or concealment, suppression or omission of material facts.

429.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New Jersey Plaintiff and New Jersey resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

430.    Defendants' scheme and concealment of their failure to develop CryptoZoo and

true characteristics of the Zoo Tokens and CZ NFTs were material to the New Jersey Plaintiff and New Jersey resident Class members, as Defendants intended. Had they known the truth, the New Jersey Plaintiff and New Jersey resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

431.    The New Jersey Plaintiff and New Jersey resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The New Jersey Plaintiff and New Jersey resident Class members did not, and could not, unravel Defendants' deception on their own.

432.    Defendants had an ongoing duty to the New Jersey Plaintiff and New Jersey resident Class members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed the New Jersey Plaintiff and New Jersey resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the New Jersey Plaintiff and the New Jersey resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

433.    The New Jersey Plaintiff and New Jersey resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

434.    Defendants' violations present a continuing risk to the New Jersey Plaintiff and New Jersey resident Class members, as well as to the general public. Defendants' unlawful acts

and practices complained of herein affect the public interest.

435.    Pursuant to N.J. Stat. Ann. § 56:8-19, the New Jersey Plaintiff and New Jersey residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

**T.    COUNT TWENTY: VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ*.)**

436.    The Nevada Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Nevada ("Nevada resident Class members") against all Defendants.

437.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et. seq., prohibits the use of deceptive trade practices in the course of business and occupation.

438.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

439.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

        a.    Causing likelihood of confusion or of misunderstanding as to the existence of a CryptoZoo game;

        b.    Representing that the CryptoZoo products, including CryptoZoo game, Zoo

Tokens, and CZ NFTs, had characteristics, uses, or benefits that they do not have;

c.      Representing that the CryptoZoo game, Zoo Tokens, and CZ NFTs are of a particular standard, quality, and grade when they are not;

d.      Advertising the CryptoZoo game, Zoo Tokens, and CZ NFTs with the intent not to sell them as advertised;

e.      Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

f.      Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the CryptoZoo game, Zoo Tokens, or CZ NFTs, whether or not any person has in fact been misled, deceived or damaged thereby.

440.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Nevada Plaintiffs and Nevada resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

441.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Nevada Plaintiffs and Nevada resident Class members, as Defendants intended. Had they known the truth, the Nevada Plaintiffs and Nevada resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

442.    The Nevada Plaintiffs and Nevada resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or

otherwise learning the facts that Defendants had concealed or failed to disclose. The Nevada Plaintiffs and Nevada resident Class members did not, and could not, unravel Defendants' deception on their own.

443.    Defendants had an ongoing duty to the Nevada Plaintiffs and Nevada resident Class members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed the Nevada Plaintiffs and Nevada resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Nevada Plaintiffs and the Nevada resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

444.    The Nevada Plaintiffs and Nevada resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

445.    Defendants' violations present a continuing risk to the Nevada Plaintiffs and Nevada resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

446.    Pursuant to Nev. Rev. Stat. §§ 41.600, the Nevada Plaintiffs and Nevada residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada Act.

**U.    COUNT TWENTY-ONE: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349)**

447.    The New York Plaintiffs bring this count individually and on behalf of members of

the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in New York ("New York resident Class members") against all Defendants.

448.  The New York Plaintiffs and New York resident Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

449.  Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

450.  The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

451.  In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

452.  Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in deceptive or practices in the conduct of business, trade or commerce, and/or in the furnishing practices of any service, as prohibited by N.Y. Gen. Bus. Law. § 349.

453.  Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New York Plaintiffs and New York resident Class members, about the

true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

454.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the New York Plaintiffs and New York resident Class members, as Defendants intended. Had they known the truth, the New York Plaintiffs and New York resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

455.    The New York Plaintiffs and New York resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The New York Plaintiffs and New York resident Class members did not, and could not, unravel Defendants' deception on their own.

456.    Defendants had an ongoing duty to the New York Plaintiffs and New York resident Class members to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed the New York Plaintiffs and New York resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from New York Plaintiffs and the New York resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

457.    The New York Plaintiffs and New York resident Class members suffered

ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

458.    Defendants' violations present a continuing risk to the New York Plaintiffs and New York resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

459.    Pursuant to N.Y. Gen. Bus. Law § 349, the New York Plaintiffs and New York residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under New York DAPA.

## V.    COUNT TWENTY-TWO: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. §§ 201-1, *ET SEQ.*)

460.    The Pennsylvania Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Pennsylvania ("Pennsylvania resident Class members") against all Defendants.

461.    Defendants, the Pennsylvania Plaintiff, and Pennsylvania resident Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

462.    The Pennsylvania Plaintiffs and Pennsylvania resident purchased the CryptoZoo products primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

463.    Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

464.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

465.    In the course of their business, Defendants, themselves or through their agents,

employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

466.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members— Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat. § 201-2(3):

a.    Causing likelihood of confusion or of misunderstanding as to the existence of a CryptoZoo game;

b.    Representing that the CryptoZoo products, including CryptoZoo game, Zoo Tokens, and CZ NFTs, had characteristics, uses, or benefits that they do not have;

c.    Representing that the CryptoZoo game, Zoo Tokens, and CZ NFTs are of a particular standard, quality, and grade when they are not;

d.    Advertising the CryptoZoo game, Zoo Tokens, and CZ NFTs with the intent not to sell them as advertised;

e.    Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding; and/or

f.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the CryptoZoo game, Zoo Tokens, or CZ NFTs, whether or not any person has in fact been misled, deceived or damaged thereby.

467.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable

consumers, including the Pennsylvania Plaintiff and Pennsylvania resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

468.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Pennsylvania Plaintiff and Pennsylvania resident Class members, as Defendants intended. Had they known the truth, the Pennsylvania Plaintiff and Pennsylvania resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

469.    The Pennsylvania Plaintiff and Pennsylvania resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Pennsylvania Plaintiff and Pennsylvania resident Class members did not, and could not, unravel Defendants' deception on their own.

470.    Defendants had an ongoing duty to the Pennsylvania Plaintiff and Pennsylvania resident Class members to refrain from unfair or deceptive practices under the Pennsylvania CPA in the course of their business. Specifically, Defendants owed the Pennsylvania Plaintiff and Pennsylvania resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Pennsylvania Plaintiff and the Pennsylvania resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

471.    The Pennsylvania Plaintiff and Pennsylvania resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

472.    Defendants' violations present a continuing risk to the Pennsylvania Plaintiff and Pennsylvania resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

473.    Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), the Pennsylvania Plaintiff and Pennsylvania residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under Pennsylvania CPA.

## W.    Count Twenty-Three: Violation of Texas's Deceptive Trade Practices Act ("DTPA")

474.    Texas resident Plaintiffs are consumers under the DTPA.

475.    Defendants' conduct concerning their false advertising, failure to provide the promised products/services, manipulation of the Zoo Token and CZ NFT markets, failure to disclose information concerning the progress of CryptoZoo, and failure to support Texas resident Plaintiffs and the CryptoZoo community, as enumerated in this Complaint, constitute false, unfair, misleading, unconscionable, and/or deceptive acts under the DTPA These facts were known to Defendants at all times and done with the intent to induce Texas resident Plaintiffs and consumers to provide assets to Defendants, remain invested the game after it initially failed, or engage in transactions that they would not otherwise have engaged had the information withheld been known to them.

476.    Defendants conduct concerning their misrepresentations and failures as enumerated in this Complaint was unfair, misleading, and unconscionable under the DTPA.

477.    Defendants should not be allowed to rely on their terms of service to escape liability for their accused practices and profit from their own wrong.

478.    As a direct and proximate result of Defendants' intentional, unconscionable, misleading, unfair, and unlawful conduct, Texas resident Plaintiffs have been deprived of the profits and other benefits of purchasing/investing in Defendants' products/services.

479.    Texas resident Plaintiffs have been damaged by Defendants' willful violation of the DTPA and are entitled to relief in the form of treble damages, attorneys' fees, and costs.

## THE EXCHANGE ACT CLAIMS

480.    Plaintiffs' Exchange Act claims seek to hold Defendants liable for intentionally (or with deliberate recklessness) issuing false and misleading statements for the purpose of inducing investors to purchase Zoo Tokens and/or CZ NFTs, and/or perpetuating a fraudulent scheme or device upon Plaintiffs and the Class.

## SCIENTER

481.    For the purposes of Plaintiffs' claims under the Exchange Act, Plaintiffs allege that the above-described material misrepresentations and omissions were made by Defendants either intentionally and/or with reckless disregard to the accuracy for the purposes of: (a) personal financial gain; (b) inflating market demand for Zoo Tokens during the public sale and offering of Zoo Tokens and CZ NFTs; and (c) securing additional financing and/or investors.

482.    Defendants were aware of the false claims as set forth in detail above. Each of the Founder Defendants had actual knowledge that: (i) the CryptoZoo game did not exist, (ii) that it could therefore not make players money, (iii) there was no value in Zoo Tokens and CZ NFTs; (iv) there are no benefits from owning Zoo Tokens and CZ NFTs, and (v) that the Defendants were not actively supporting the project, its online ecosystem, or the game.

483.    Similarly, by virtue of his position as a manager, and/or his relationship with the

Founder Defendants, the Manager Defendant knew or were grossly reckless in not knowing the fabricated, non-existent base security that Plaintiffs and the Class were investing in.

## LOSS CAUSATION

484.     During the Class Period, Defendants made false and misleading statements and engaged in a scheme to deceive the market, as well as a course of conduct that artificially inflated the price of CryptoZoo's patently worthless Zoo Tokens and CZ NFTs and operated as a fraud and deceit on the Class by materially misleading the investing public.

485.     These false and/or materially misleading statements concealed the fact that CryptoZoo was nothing but a vehicle for the Founder Defendants' self-dealing and personal enrichment.

## APPLICATION OF PRESUMPTION OF RELIANCE: FRAUD-CREATED-THE MARKET DOCTRINE

486.     Reliance need not be proven in this action because the action involves falsities so egregious and pervasive that they go to the very existence of Zoo Tokens and CZ NFTs. Positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the securities are so tainted by fraud as to be unmarketable. In other words, it must be shown that but for the fraud, Zoo Tokens and CZ NFTs would not have been marketable.

487.     Zoo Tokens and CZ NFTs should not have been sold to the investing public as they have at all times been objectively valueless and unmarketable because there was never a CryptoZoo game to use them with or other promised owner benefits.

488.     As detailed herein, absent the Founder Defendants' fraudulent conduct, Zoo Tokens and CZ NFTs could not have been sold for any price. Further, given that Zoo Tokens and CZ NFTs were not registered for sale, they were unlawfully offered and thus, *per se* unmarketable. Where, as here, actors introduce an otherwise unmarketable security into the market by means of fraud,

they have manipulated all purchasers of the security at issue.

489.    Accordingly, Plaintiffs are entitled to the presumption of reliance because all Zoo Tokens and CZ NFTs were offered and sold as a result of Defendants' brazen fraud and in particular, the Founder Defendants' egregious fraudulent conduct.

**NO SAFE HARBOR**

490.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

491.    The Zoo Tokens and CZ NFTs at issue here were unregistered securities and thus, such safe harbors are inapplicable. Furthermore, to the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

492.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of CryptoZoo who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying, or relating to, any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made.

**X.    COUNT TWENTY-FOUR: VIOLATION OF SECTION 10(B) AND SEC RULE 10B-5(B).**

493.    Plaintiffs incorporates and re-allege all preceding paragraphs as if fully set forth

herein.

494.     This Count is asserted by Plaintiffs on behalf of themselves and the Class against all Defendants and is based upon Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

495.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct that was intended to, and did (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Zoo Tokens and CZ NFTs; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire patently worthless unregistered securities, Zoo Tokens and CZ NFTs, at artificially created, and inflated, prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

496.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs and the other members of the Class.

497.     Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of Defendants participated directly or indirectly in the preparation and/or publication of the promotional materials, press releases and other statements and documents described above, including statements made to the media that were designed to influence the market for Zoo Tokens and CZ NFTs. Such promotional materials, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CryptoZoo's business, value of Zoo Tokens and CZ NFTs, and the entire 'game' scheme.

498.    By virtue of their positions at, and relationships or interactions with, CryptoZoo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with a reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

499.    The Founder Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Founder Defendants and Manager Defendant were able to and did, directly or indirectly, control the content of the statements of CryptoZoo. As officers and/or directors of a company raising investments from the general public, the Founder Defendants and Manager Defendant had a duty to disseminate timely, accurate, and truthful information with respect to CryptoZoo's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading promotional materials, releases, and public statements, a public market was created for worthless Zoo Tokens and CZ NFTs. Zoo Tokens and CZ NFTs have no use and no value whatsoever, yet Defendants' fraudulent conduct artificially created such a market.

500.    In ignorance of the adverse facts concerning the non-existence or inviability of the CryptoZoo game and Defendants' misrepresentations and concealment of CryptoZoo Inc.'s business and financial conditions, Plaintiffs and the other members of the Class purchased or otherwise acquired Zoo Tokens and CZ NFTs and were damaged thereby.

501.    Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired any Zoo Tokens and CZ NFTs. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, Zoo Tokens and CZ NFTs had no true value and thus Plaintiffs and the other members of the Class purchased worthless unregistered securities. The market price of Zoo Tokens and CZ NFTs plummeted upon materialization of undisclosed risks and/or public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

502.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

503.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of CryptoZoo unregistered securities during the Class Period, upon the disclosure that the CryptoZoo had been disseminated false information concerning essentially every aspect of its operation to the investing public.

**Y.    COUNT TWENTY-FIVE: VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST THE FOUNDER DEFENDANTS**

504.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

505.    During the Class Period, the Founder Defendants participated in the operation and management of CryptoZoo, and conducted and participated, directly and indirectly, in the conduct of CryptoZoo's business affairs. Because of their senior positions, they knew the false information about CryptoZoo's development and the Zoo Tokens and CZ NFTs.

506.    As officers and/or directors of a company raising investments from the investing public, the Founder Defendants had a duty to disseminate accurate and truthful information with

respect to CryptoZoo's operations and to correct promptly any public statements issued by CryptoZoo which had become materially false or misleading.

507.    Because of their positions of control and authority as senior officers, the Founder Defendants were able to, and did, control the contents of the various promotional materials, press releases and public statements which CryptoZoo disseminated in the marketplace during the Class Period concerning CryptoZoo's operations. Throughout the Class Period, the Founder Defendants exercised their power and authority to cause CryptoZoo to engage in the wrongful acts complained of herein. The Founder Defendants, therefore, were "controlling persons" of CryptoZoo within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which created a market for patently worthless Zoo Tokens and CZ NFTs.

508.    Each of the Founder Defendants, therefore, acted as a controlling person of CryptoZoo. By reason of their senior positions and/or being directors of CryptoZoo, each of the Founder Defendants had the power to direct the actions of, and exercised the same to cause, CryptoZoo to engage in the unlawful acts and conduct complained of herein. Each of the Founder Defendants exercised control over the general operations of CryptoZoo and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

509.    By reason of the above conduct, the Founder Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by CryptoZoo.

## RICO CLAIM

**Z.    COUNT TWENTY-SIX: VIOLATION OF RICO: 18 U.S.C. § 1962(C)**

510.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

511.    CryptoZoo Inc. was one of Defendants Paul and Levin's entities for their criminal

enterprise, all of whom are engaged in interstate commerce and whose activities affect interstate commerce.

512.   Before and during the Class Period, Defendants participated in an ongoing fraudulent enterprise led by Defendants Paul and Levin—who were previously engaged in a pattern and practice of cryptocurrency and NFT-related rug-pulls and pump-and-dumps, including:

    a.   Dink Doink;

    b.   Liquid Marketplace;

    c.   F*** Elon;

    d.   EMAX;

    e.   OMI; and

    f.   Elon Gate.

513.   In relation to each of the above cryptocurrencies or crypto exchanges, Paul and Levin either individually or through agents invested in each, Paul would made a public appearance touting each, and then they sold the investments after Paul's celebrity would make price of each jump after his public support.

514.   For the CryptoZoo phase of Defendants Paul and Levin's ongoing fraudulent enterprise, each of the other Defendants named herein managed and operated CryptoZoo through a pattern of racketeering activity, and thereby damaged Plaintiffs.

515.   Defendants each employed such criminal conduct as their regular way of doing business, as each Defendant lied about the progress of the game except for Defendant Stroebel who did not make public statements. Defendant Paul verifies such assertions of criminality as to his former-conspirators Defendants Ibanez and Greenbaum in his crossclaims. [Dkt. 55]

516.   Each of the Defendants transferred Plaintiffs' fraudulently obtained cryptocurrency

and funds, and other fraudulently obtained funds, amongst themselves and in the open market in order to profit off their misrepresentations and to conceal the nature of their scheme.

517.    As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in an amount of at least $5,000,000.

## COMMODITIES CLAIM

**AA.    COUNT TWENTY-SEVEN: COMMODITY POOL FRAUD IN VIOLATION OF SECTIONS 4O AND 22(A) OF THE COMMODITY EXCHANGE ACT, 7 U.S.C. § 6O, 7 U.S.C. § 25(A)(1).**

518.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

519.    Plaintiffs alternatively seek relief under Section 4o of the Commodity Exchange Act, entitled "Fraud and misrepresentation by commodity trading advisors, commodity pool operators, and associated person," which provides in relevant part:

(1)    It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of mails or any means or instrumentality of interstate commerce, directly or indirectly –

(A)    to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B)    to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant. 7 U.S.C. § 6o.

520.    Defendants employed a device, scheme, or artifice to defraud Plaintiffs, or engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon Plaintiffs in violation of section 4o of the Commodity Exchange Act, by, among other things:

a.    receiving cryptocurrency funds from Plaintiffs, failing to create the CryptoZoo game as promised, and converting and/or misappropriating such funds;

b.      providing Plaintiffs with misleading statements that misrepresented the development of the CryptoZoo game and support for the CryptoZoo community;

c.      failing to accurately inform Plaintiffs about the status of the CryptoZoo game, continuously promising it would be released when it never was, and failing to provide timely account statements, status reports, and updates; and

d.      misrepresenting the assets invested by Founder Defendants.

521.     Defendants acted with scienter as shown through the misrepresentations revealed comparing their public and private statements, as well as strong circumstantial evidence of other conscious misbehavior or recklessness, and that Defendants both had motive and opportunity to commit fraud.

522.     Defendants received substantial compensation in exchange for providing CryptoZoo Products and managing the CryptoZoo community.

523.     Defendants' misrepresentations and/or omissions as alleged herein proximately caused Plaintiffs' injuries in the form of loss of funds due to a promised but never released game under Defendants' control.

## XI.      DAMAGES

524.     Plaintiffs hereby adopts by reference each and every foregoing paragraph of the stated in this Complaint as if fully and completely set forth here.

525.     Defendants' conduct and actions discussed above proximately caused injury to Plaintiffs, which resulted in:

a.      Loss of use damages for assets diminished by Defendants' actions;

b.      Actual damages and treble damages under the Consumer Protection Claims;

c.      Exemplary damages under the Consumer Protection Claims and Common

Law Fraud;

d.      Actual damages, including economic damages under all causes of action;

e.      As a direct and proximate result of Defendants' breaches of contracts, Plaintiffs sustained damages as alleged here;

f.      Plaintiffs are entitled to compensatory and consequential damages suffered as a result of Defendants' fraud and actions.

g.      Mental anguish;

h.      Civil penalties;

i.      Prejudgment interest;

j.      Attorney's fees; and

k.      Costs of action.

526.    Plaintiffs further seek unliquidated damages within the jurisdictional limits of this Court.

## XII.      PUNITIVE DAMAGES

527.    Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth here.

528.    The wrong done to Plaintiffs by Defendants was attended by fraudulent, malicious, intentional, willful, wanton, or reckless conduct that evidenced a conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs seek punitive damages in an amount to be proven at trial.

## XIII.     ATTORNEY'S FEES

529.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten here.

530.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorney's fees be awarded under his breach of contract claims.

## XIV.        INCORPORATION OF PARAGRAPHS

531.   Every paragraph in this Complaint is hereby incorporated into every other paragraph.

## XV.        PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, awarding relief as follows:

a.   Finding a class action is the most efficient and effective way to resolve the claims against Defendants;

b.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

c.   Holding that the doctrine of unjust enrichment applies and ordering Defendants to pay Plaintiffs all sums received by Defendants flowing from their illegal and unconscionable activities;

d.   For an award of actual damages, compensatory damages, statutory damages, exemplary damages, and statutory penalties, in an amount to be determined, as allowable by law;

e.   For an award of punitive damages, as allowable by law;

f.   For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

g.   Pre-and post-judgment interest on any amounts awarded; and

h.   Such other and further relief as this court may deem just and proper.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
Alexander G. Kykta
Texas Bar No. 24107841
alex@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

     Pursuant to Federal Rules of Civil Procedure 5(d).  I hereby certify that on January 15, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.  I further certify that the foregoing has been served the foregoing document on all counsel of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).


                                                       */s/Jarrett L. Ellzey*
                                                       Jarrett L. Ellzey