IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

DON HOLLAND, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH,

Defendants.
_____/

LOGAN PAUL,

Cross-Plaintiff,

vs.

EDUARDO IBANEZ and
JAKE GREENBAUM a/k/a CRYPTO KING

Cross-Defendants.
_____/

Civil Action No. 1:23-cv-110

**DEFENDANT/CROSS-PLAINTIFF LOGAN PAUL'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S AMENDED OPPOSED MOTION
FOR LEAVE TO FILE FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant/Cross-Plaintiff Logan Paul files this Response in Opposition to Plaintiff's Amended Opposed Motion for Leave to File First Amended Class Action Complaint [D.E. 60], in which he requests that the Court deny Plaintiff leave to amend. Contrary to counsel's representations to the Court, Plaintiff's counsel failed to meaningfully confer with Mr. Paul's

1

counsel in advance of filing his original motion [D.E. 59], as required by Local Rule CV-7(g). Although the failure to confer ultimately did not prejudice Mr. Paul who—having now seen the proposed amendment—opposes Plaintiff's motion on the merits, Mr. Paul nevertheless raises the issue to address the reason for that failure: conferral stood in the way of Plaintiff's marketing and social media ends.

## INTRODUCTION

On January 4, 2024, Mr. Paul filed his Answer, Affirmative Defenses, and Crossclaim against Eduardo Ibanez and Jake Greenbaum a/k/a Crypto King. [D.E. 55]. On the same day, Mr. Paul announced the launch of his NFT "buyback" program, through which he is personally committing approximately $2.3 million to buy back CryptoZoo base egg and base animal NFTs from disappointed NFT holders, even though he maintains and will prove in this case that he was never a recipient of the proceeds from the sale of those NFTs. Once Mr. Paul's filing and the announcement of his buyback program were made public, a member of Plaintiff's legal team (Mr. Kherkher, also known by his social media presence, "Attorney Tom"), immediately took to social media and posted an "emergency" YouTube video in order to publicly respond to Mr. Paul's activities. The next evening, despite the fact that Mr. Kherkher had sufficient time to plan, record, and publicize his emergency YouTube video, Plaintiff's counsel nevertheless expedited the filing of their proposed amended complaint *without* conferring with Mr. Paul, who had expressly requested a copy of Plaintiff's proposed amended pleading to consider the request. [D.E. 59].

The failure of Plaintiff's counsel to confer was not accidental. In light of the publicity generated by Mr. Paul's filing and the announcement of his buyback program, Plaintiff's counsel perceived a strategic benefit to expediting their own filing, and they were determined to make the filing immediately regardless of whether they were able to comply with their mandatory conferral

requirement. When the undersigned counsel for Mr. Paul asked to meaningfully confer via a telephonic conference in order to better understand Plaintiff's motion, Plaintiff's counsel approached *other* Defendants to this action and sought to elicit their positions on the motion by *misrepresenting that Mr. Paul had already opposed the motion*. Once Plaintiff's counsel extracted an opposition from one of these Defendants based on their misrepresentations about Mr. Paul's position, they then tried to justify their failure to confer to Mr. Paul on the ground that they had proceeded with their filing because another Defendant had opposed.

The gamesmanship by Plaintiff's counsel with regard to the first proposed amended complaint is troubling. Moreover, their efforts to litigate this case in the media also run afoul of this Court's local rule prohibiting a lawyer from making an "extra-judicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that the statement has a substantial likelihood of materially prejudicing an adjudicative proceeding." *See* Local Rule AT-6(a).

A detailed breakdown of the facts underlying Plaintiff's conduct is set forth below, and in the filings of Co-Defendants Levin, Strobel, and Bentov. On these grounds, as well as those set forth in his co-defendants' filings, Mr. Paul asserts this limited opposition to Plaintiff's amended motion to amend and requests that the motion be denied.

## BACKGROUND

Mr. Paul filed his Answer, Affirmative Defenses, and Crossclaim on January 4, 2024. [D.E. 55]. The next evening, Plaintiff filed his Opposed Motion for Leave to File First Amended Class Action Complaint. [D.E. 59].

On December 18, 2023 — nearly a year after this case was filed — Plaintiff advised Mr. Paul that he intended to seek leave to amend the complaint, and that he would confer with Mr. Paul

when he was ready to file. A few days later, Plaintiff advised Mr. Paul that he would be seeking to add federal securities law claims and again asked about Mr. Paul's position on the Motion for Leave to Amend. *See* composite of emails between Plaintiff and Mr. Paul from December 18, 2023, through January 13, 2024, attached as **Exhibit 1**.

Mr. Paul responded the same day — not with opposition — but simply with a request to schedule a phone conference to confer after the holidays. *Id.* On January 3, 2024, the Parties exchanged emails to schedule a conference on Plaintiff's forthcoming motion, and Mr. Paul requested that the Parties speak about the Amended Complaint on January 8, 2024. *Id.*

Instead of addressing Mr. Paul's request, Plaintiff's counsel responded that Plaintiff would note Defendants as opposed to the motion. *Id.* Mr. Paul immediately responded that noting him as opposed would be incorrect, as he did not have enough information about Plaintiff's proposed Amended Complaint to determine his position. *Id.*

Two days later, on January 5, 2024, Mr. Paul again tried to confirm the proposed January 8, 2024, phone conference, but received no response. *Id.* After Mr. Paul filed his crossclaim, instead of conferring with Mr. Paul as requested, and as required by Local Rule CV-7, Plaintiff misrepresented Mr. Paul's position to Defendants Levin, Strobel, and Bentov in order to expedite their filing.

<u>Plaintiff's Counsel Extracts Opposition<br>from Co-Defendants by Misstating Mr. Paul's Position</u>

On January 5, 2024, Plaintiff represented to Mr. Levin and Mr. Bentov that Mr. Paul opposed the Plaintiff's Motion for Leave to Amend. An audio copy of Plaintiff's voicemail

4

memorializing this representation is being submitted to the Court as **Exhibit 2**.[1] The same day, Plaintiff also represented to Ms. Strobel that Mr. Paul opposed the motion.

These representations mischaracterized Mr. Paul's position—his counsel had, in fact, requested a conference to discuss the amendment, as well as copy of the proposed pleading so that Mr. Paul could meaningfully consider Plaintiff's request. Before misrepresenting Mr. Paul's position to Mr. Levin, Ms. Strobel, and Mr. Bentov, on January 4, 2024— *the same day that Mr. Paul filed his Answer, Affirmative Defenses and Crossclaim*—Plaintiff's attorney Tom Kherkher, Esq., posted a public "emergency" update video about this case on social media.[2]

On January 8, 2024, Plaintiff contacted Mr. Paul and advised that he was available that afternoon to confer, even though he had already filed his motion based on a conferral with another Defendant. *Id.* Notably, Plaintiff's email to Mr. Paul on January 8, 2024, represented that Plaintiff had never received a response regarding Mr. Paul's position on the motion, while three days earlier, Plaintiff had represented to Mr. Levin, Ms. Strobel, and Mr. Bentov that Mr. Paul opposed the motion. Neither statement by Plaintiff was accurate.

<u>Plaintiff's Counsel Tried to Cure Their Failure to Confer by
Filing an Amended Proposed Amended Complaint</u>

On January 12, 2024, Plaintiff's Counsel advised Mr. Paul that he would be seeking to amend his recently filed proposed amended complaint and requested to confer on the issue. *Id.* In response, Mr. Paul asked about the substance of the proposed amendment. *Id.* Mr. Paul was told

---

[1] A thumb drive containing Exhibit 2, which is a voicemail from Leigh Montgomery dated January 5, 2024, is being mailed to the Court and to opposing counsel contemporaneously with the filing of this response. The thumb drive is otherwise available upon request.

[2] AttorneyTom, YOUTUBE (Jan. 4, 2024), https://www.youtube.com/watch?v=KK9sX3LOsdw. Additionally, on the same day, Plaintiff's counsel posted on X (formerly Twitter): "They would say this is a predatory tactic to include a total claim waiver on a 'buyback' that only accounts for a small fraction of the financial damage he caused." Attorney Tom (@attorney_tom), X (Jan. 4, 2024, 8:04 PM), https://twitter.com/attorney_tom/status/1743075977251487886.

5

that it was identical to the initial filing, and only sought to add additional plaintiffs to the case. *Id.* Based on those representations, and the substance of the proposed amended pleading that Plaintiff's counsel had already publicly filed, Mr. Paul confirmed his opposition to the proposed amendment. *Id.* Thereafter on January 15, 2024, Plaintiff filed his Amended Opposed Motion for Leave to File Amended Class Action Complaint. [D.E. 60].

## **ARGUMENT**

The initial failure to confer with Mr. Paul, and his subsequent misrepresentations to Mr. Paul's Co-Defendants Mr. Levin, Ms. Strobel, and Mr. Bentov about his position on the motion, constituted a purposeful violation of Local Rule CV-7(g). The Court should deny the motion for that reason alone.

Local Rule CV-7(g) provides:

> The Court may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made.

Plaintiff's failure to satisfy the conferral requirement of Rule CV-7(g) was plainly motivated by a desire to immediately respond to Mr. Paul's Answer, Affirmative Defenses, and Crossclaim, and the simultaneous announcement of his buy-back of CryptoZoo NFTs, which had generated significant publicity. [3] While Mr. Paul appreciates that motions for leave to amend are typically granted liberally under Federal Rule 15, this Court should not reward Plaintiff for subordinating his obligations under the Local Rules in favor of prioritizing his media objectives in connection with this case. *See Encore Wire Corp. v. Copperweld Bitmetallics, LLC*, 2023 WL 123506, *3 (E.D. TX Jan. 6, 2023) ("Encore's Motion for Leave to Amend its Complaint fails for

---

[3] Indeed, Plaintiff's email to Mr. Paul on January 8, 2024, stated that Mr. Paul's recent filing and NFT buy-back "undermined" his claims, and corroborated that Plaintiff's behavior was reactionary. *See* Ex. 1.

6

two reasons. First, Encore submitted the motion in violation of this Court's local rules. For this reason alone, it will be denied.").

Plaintiff's conduct in this regard is improper, and it is part of a troubling pattern. Instead of focusing on their case and allowing the judicial process to run its course, Plaintiff's counsel has consistently taken to social media to amplify their allegations against Mr. Paul—which will be proven false—and disparage Mr. Paul by portraying him as a scam artist.[4] Most recently, in his "emergency update" video on January 8, 2024, "Attorney Tom" described Mr. Paul's buyback as "deceptive" and "dirty" given the eligibility requirements for claimants and the scope of the corresponding waiver in the program's terms and conditions.  He characterized the program as a "sneaky trick," even though Mr. Paul had announced that he planned to implement such a program (*and* defined its eligibility requirements) before this lawsuit was even filed. Of course, while Mr. Kherkher explained that his recommendation to clients was not to participate in the buy-back, he neglected to mention his own significant financial interest in preventing qualified claimants from participating in the buy-back given that participants would become ineligible to participate as members in the putative class he is representing (*i.e.*, a class for which he would be entitled to a portion of any potential future recovery).

Equally troubling are the strong indicia that Plaintiff's counsel has been coordinating with YouTube crypto journalist Stephen Findeisen (a/k/a "Coffeezilla")—whom Mr. Kherkher knows personally[5]—for the same purpose. Counsel appears to be using Coffeezilla to perpetuate their

---

[4] Mr. Kherkher has posted at least two other public videos regarding this case to his YouTube Channel as "Attorney Tom." *See* AttorneyTom, YOUTUBE (Jan. 16, 2023), https://www.youtube.com/watch?v=se6Yt32VeGI; *and* AttorneyTom, YOUTUBE (Feb. 6, 2023), https://www.youtube.com/watch?v=VDgQGbtqBmQ.

[5] *See* AttorneyTom on X: "I got to hangout with the legend @coffeebreak_YT today! He is a great youtuber and even better person!" Attorney Tom (@attorney_tom), X (Apr. 1, 2022, 6:45 PM), https://twitter.com/attorney_tom/status/1510025696848105480.

false narrative about Mr. Paul's conduct and intentions for the CryptoZoo project, and influence public sentiment with regard to same, all while Coffeezilla presents himself as a neutral and unbiased third party to the dispute. Indeed, not only do Plaintiff's counsel and Coffeezilla appear to possess the same case-related materials notwithstanding that discovery has yet to commence, but Plaintiff's talking points in confidential contexts like mediation—including highly nuanced points about Mr. Paul's alleged conduct in connection with entirely unrelated projects—have then been parroted wholesale by Coffeezilla both in his public videos and in private messages to Mr. Paul.  In a recent video addressing Mr. Paul's buy-back program, Coffeezilla echoed Mr. Kherkher's "emergency update," relaying to his 4.6 million viewers his impression that Mr. Paul "may be losing" this lawsuit—even though, of course, even a cursory look at the docket shows that this case is still in its infancy and the Court has yet to make any substantive rulings.

As noted, discovery has yet to commence — and if Plaintiff is granted leave to amend, discovery will be further delayed pursuant to the requirements of the PSLRA. Nevertheless, if discovery does commence in this case, Mr. Paul intends to seek third-party discovery from Coffeezilla on an expedited basis, with specific regard to his communications with Plaintiff's counsel and potential violations of this Court's Local Rules.

The coordination between Plaintiff's counsel and Coffeezilla presents another, final reason why the motion should be denied:  The "new" factual allegations underlying the proposed amended complaint were already known to Plaintiff at the time of the original complaint, as the allegations are identical to the public allegations previously made by Coffeezilla. *See Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (affirming order denying leave to amend complaint, in relevant part because "all of the facts relevant to the proposed amendment were known to the appellant at the time she filed her original complaint," and noting "the duty of an

8

attorney to prepare a case properly and to give the issues full consideration before preparing pleadings").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's amended motion for leave to amend.

Dated: January 29, 2024.

| | |
|---|---|
| /s/ *Benjamin J. Widlanski*___<br>Benjamin J. Widlanski, Esq.<br>Email: bwidlanski@kttlaw.com<br>Tal Lifshitz, Esq.<br>Email: tjl@kttlaw.com<br>Rachel Sullivan, Esq.<br>Email: rs@kttlaw.com<br>Jeffrey Leavitt, Esq.<br>jleavitt@kttlaw.com<br>**KOZYAK TROPIN & THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Miami, Florida 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Counsel for Defendant Logan Paul* (admitted *pro hac vice*) | /s/ *Jeffrey Neiman*__<br>Jeffrey Neiman, Esq.<br>jneiman@mnrlawfirm.com<br>Jason L. Mays, Esq.<br>jmays@ mnrlawfirm.com<br>**MARCUS, NEIMAN, RASHBAUM & PINEIRO LLP**<br>One Biscayne Tower<br>2 South Biscayne Boulevard, Suite 2530<br>Miami, Florida 33131<br>Telephone: (305) 400-4260<br><br>*Counsel for Defendant Logan Paul* (admitted *pro hac vice*) |
| /s/ *Shelby O'Brien*___<br>Shelby O'Brien<br>**ENOCH KEVER PLLC**<br>7600 N. Capital of Texas Highway<br>Building B, Suite 200<br>Austin, Texas 78731<br>Telephone: (512) 615-1223<br>Facsimile: (512) 615-1198<br>sobrien@enochkever.com<br>*Counsel for Defendants Paul, Levin, and Bentov*<br>(admitted to Western District of Texas) | |

## CERTIFICATE OF SERVICE

I hereby certify a copy of the above and foregoing has been served upon all counsel of record by using the Court's electronic filing system on the 29th day of January 2024.

/s/ *Tal Lifshitz, Esq.*
