# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 1:23-cv-00110 |
| vs. | § § | JURY TRIAL DEMANDED |
| CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH, | § § § § § § § § | |
| *Defendants.* | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S AMENDED OPPOSED MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT

Plaintiff Don Holland, individually and on behalf of all others similarly situated, files this Reply in support of his amended motion for leave [Dkt. 60, "Motion"] to file his First Amended Class Action Complaint [Dkt. 60.1]—adding plaintiffs and claims to preserve statutes of limitation:

## I.    INTRODUCTION

1.    In a tirade befitting a celebrity accustomed to always getting his way, Logan Paul side-steps the merits of Plaintiff's simple procedural motion and uses his response to attack the investor and their counsel for attempting to hold him accountable for a highly visible "pump-and-dump" cryptocurrency scam. Paul and his cohorts repeatedly speak of gamesmanship to paint Plaintiff's counsel as unethical.[1] Their positions are not only false and misleading to the Court, but

---

[1] The undersigned is Board Certified in Civil Trial Law and Fellow of the American Board of Trial Advocates, with no history of ethical infractions in twenty years of licensure.

they are also not resistant to irony.

2.      In his shameful hit piece, Paul ignores his own history of gamesmanship. Paul has apparently purged all memory of baiting Plaintiff into staying this case for mediation and then no-showing to that event, presumably because he had more important matters to attend to than making a good-faith effort to compensate the people he failed. The true story here is that the additionally requested plaintiffs were under the duress of limitations period. Paul's counsel knew that—yet cancelled a scheduled meet-and-confer and delayed contact with Plaintiff's counsel, while facilitating Paul's extrajudicial attempt to winnow the proposed Class with a supposed buyback program before Plaintiff could file an amended complaint. These were the circumstances surrounding the filing of Plaintiff's motion for leave. Defendants' Responses are largely fantasy and, tellingly, avoid discussing the standard for leave while substituting vitriol.

3.      Defendants' vitriol is intended solely to inflame the Court by using a simple procedural tool as a doorway to taint Plaintiff's case with a distorted narrative. But this is not a YouTube channel or X—Paul's platforms for venting his frustrations or spinning the facts to his liking—this is a Court of law. We now turn to the merits, where the focus of this exchange should have been all along.

## II.     THE CONFERENCE REQUIREMENTS WERE MET, OR ALTERNATIVELY, SHOULD BE WAIVED IN THIS CIRCUMSTANCE

### A.      STROBEL OPPOSED THE MOTION INDEPENDENT OF THE OTHER DEFENDANTS.

4.      Strobel states, "[b]efore this filing, Plaintiff's counsel contacted the undersigned, informing the latter that Mr. Paul's counsel had stated their opposition to the request for leave. Apparently, that wasn't true." Dkt. 61, p.1. Though the undersigned dislikes going tit-for-tat, such allegations cannot go unanswered on the record. Strobel's counsel was informed Paul's counsel had not proffered a decision. Strobel's counsel stated Strobel was opposed to Plaintiff's Motion

for Leave *nonetheless* because Plaintiff was adding over one hundred and thirty plaintiffs and twenty or more claims to the suit. Strobel had a meaningful conference on the Motion for Leave and is opposed, as Plaintiff indicated in his motion.

### B.    PAUL ADMITS HE OPPOSES PLAINTIFF'S MOTION ON THE MERITS.

5.     Paul clearly states he "opposes Plaintiff's motion on the merits." Dkt. 62 at p.2. Even if the conference requirements were not met (which Plaintiff denies), Paul agrees any "failure to confer ultimately did not prejudice Mr. Paul." *Id*. Thus, although much time and argument are spent on the conference requirement by Paul, it is admittedly a non-issue. Despite Paul's admissions, Plaintiff briefly addresses the conference issue.

6.     As Paul notes, Plaintiff first informed Paul of his intention to amend his complaint on December 18, 2023, confirming the additional plaintiffs to be added, as well as the securities claim. **Exhibit A**, pg. 11.[2] As explained in the unredacted emails, Plaintiff's urgency was based on the potential release from the tolling agreement that was tolling the individual claimants' statutes of limitation,[3] to which Paul's counsel asked to meet and confer after the holidays. **Exhibit A** at p.10. Exercising due diligence, Plaintiff's counsel immediately asked for a date to discuss. Seven days later, Paul's counsel suggested January 4, 2024, and Plaintiff agreed. *Id*. at p.9.

7.     On January 3, Paul's counsel requested that the January 4 call be cancelled and pushed to January 8. *Id*. at pp.7-8. Given the possibility of the tolling agreement expiring, as well as the conference by Strobel confirming opposition, Plaintiff felt the only option was to hold fast on the agreed upon conference date but proceed to file if Paul's counsel continued to delay. **Exhibit**

---

[2] Despite Defendants discussing mediation in their Responses [Dkt. 61 at ¶.1; Dkt. 62 at p.8; Dkt. 63 at p.2], Paul redacted the portions of Dkt. 62.1 discussing Plaintiff granting Paul 45 additional days to answer—which he used to launch a buy-back program aimed at reducing the size of Plaintiff's class and answer a stale complaint he knew Plaintiff planned to supersede. *See* **Exhibit A** (Unredacted and complete email exchange between counsel).

[3] Although there is an argument that by counsel's actions, the tolling agreement was ended, Plaintiff does not waive the right to argue to the contrary should it be of issue.

**A**, pg. 6-7. Notably, after filing, Plaintiff's counsel offered to continue to confer and amend the certificate of conference, but Paul's counsel rebuffed the request. *Id*. at 5-6.

8.      The next day, Paul filed his needless answer to Plaintiff's original complaint, simultaneously initiating his own social media campaign "announcing the launch of [Paul's] promised buyback." Dkt. 55 at ¶ 106. Paul purposefully delayed conferring on Plaintiff's FAC to launch a social media strategy aimed at reducing his exposure in this lawsuit. The authority Paul cites, *Encore,* is inapposite as Encore scheduled a conference, but then filed the leave before the conference was set to occur. *See Encore Wire Corp. v. Copperweld Bitmetallics*, LLC, 2023 WL 123506, *3-4 (E.D. Tex. Jan. 6, 2023). Furthermore, the *Encore* court had a separate substantial reason to deny the amendment: the claims were already pending in another court proceeding. *Id*. In the present case, Plaintiff scheduled a conference, but Paul delayed the conference so that he could file his own answer and initiate his alleged buyback program. Paul was the one acting in bad faith.

9.      Plaintiff, who had been trying to confer on his leave since December 18th is painted as acting in bad faith, as opposed to trying to protect the other claimants' statute of limitations. Though this appears to be a he-said-she-said situation, such accusations are irrelevant given Paul has admitted he is opposed to the merits, as well as that he was <u>not prejudiced</u> by any alleged failure to confer.

    **C.**    **GIVEN THE CONFERENCE WITH STROBEL AND PAUL, THE MOTION WAS RIPE FOR CONSIDERATION BY THE COURT.**

10.      Levin and Bentov are correct in that Plaintiff's counsel's voicemail to them misstated the opposing party—it was Strobel, not Logan Paul, who had officially provided her position prior to the phone call to Levin and Bentov's counsel. *See* Seiling Dec. Dkt. 63.1. Despite this misstatement, Levin and Bentov's counsel was given notice of Plaintiff's Amended Motion

for Leave. See Dkt. 63 at pg. 3. This was a simple mistake and not intended to "trick" anyone into somehow agreeing to something they did not want to do with respect to this motion for leave. Notably, at no time since the original filing on January 5, 2024, has counsel for Levin and Bentov made any attempt to respond or confer on Plaintiff's motion for leave to amend.

### D.    ALTERNATIVELY, THE CONFERENCE REQUIREMENT SHOULD BE WAIVED.

11.    Even if the Court considers the conference requirements were not met prior to Plaintiff's filing his amended motion for leave, such should not be a substantial reason to deny Plaintiff's motion for leave. It is clear at this point Defendants oppose the motion on the merits. Thus, court intervention on this issue will be necessary despite Plaintiff's alleged lack of compliance.

12.    As Defendants were aware before the parties' agreed motion to stay and mediation attempt [Dkt. 38], Plaintiff had over a hundred individual claimants who were going to initiate their claims in this matter. The parties entered the tolling agreement to allow for the mediation, while also ensuring no claimant was waiving their rights to assert legal claims in the case. Defendants knew Plaintiff would be filing their individual claims once the mediation failed. Plaintiff's request for leave, adding the additional claimants and claims is no surprise given the information exchanged during the stay in this case.

13.    Defendants were not prejudiced from the failure to confer, as it is clear they are opposed to Plaintiff's requested leave. The issue is ripe for consideration by the Court.

### III.    ARGUMENTS ON THE MERITS

### A.    DEFENDANTS PROVIDE NO BASIS TO DENY PLAINTIFF'S MOTION FOR LEAVE.

14.    "[L]eave should be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "The standard to freely give leave when justice so requires 'evinces a bias in favor of granting leave to amend.'" *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003)). "In other

words, the baseline presumption is that leave *will be granted* when a plaintiff moves for it." *Heller v. Marriott Vacations Worldwide Corp.*, No. EP-22-CV-00398-FM-MAT, at *3 (W.D. Tex. Feb. 2, 2024) (slip-copy).

15.     Although courts may, in their discretion, deny leave, the court must have a substantial reason to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). Substantial reasons include undue delay, bad faith, or a dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice, and futility of the amendment. *Weyerhaeuser Co. v. Burlington Ins.,* 74 F.4th 275, 288 (5th Cir. 2023). Defendants presented no such reasons to the Court in their respective Responses to Plaintiff's amended request for leave.

16.     Bluntly, each of Defendants' Responses [Dkts. 61 (Strobel), 62 (Paul), and 63 (Levin & Bentov)] fails to address the standard for determining a motion for leave, instead focusing, respectively, on jurisdiction, gamesmanship,[4] and a mistaken understanding of the conferral requirements. *See* Dkt. 61 § III.A., Dkt. 62, and Dkt. 63.

   **B.     STROBEL, LEVIN AND BENTOV'S JURISDICTIONAL ARGUMENTS ARE MISPLACED AND WITHOUT SUPPORT.**

17.     Strobel's Response denies that Plaintiff's allegations of her being "Mr. Paul's personal assistant, that she 'help[ed] administratively [with CryptoZoo's startup],' that she was a 'founder' of CryptoZoo with a 1% stake, [and] that she participated in 'Zoo Day,' [while not making] 'public statements' about CryptoZoo" [Dkt. 61 at p.3] confer jurisdiction upon her. Yet Strobel merely states "[n]one of these factual allegations are sufficient for this Court to exercise

---

[4] Paul's focus on gamesmanship is, to borrow from psychology, projection. Paul's Response [Dkt. 62] discusses "Plaintiff's marketing and social media ends" after Paul delayed engaging Plaintiff about his amended complaint for almost a month after Plaintiff said he would be amending, launched his own social media campaign designed to use fine print to winnow down the class, and filing an unnecessary answer a week before it was due.

jurisdiction over [her]" without explanation. *Id*.

18.     Strobel does not explain why having an ownership interest in a fraudulent enterprise that she actively helped get off the ground does not confer jurisdiction upon her for defrauding Texas residents. Evidence of such was pleaded and is seen in Defendants' internal communications—in which Strobel messages over 45 times—examples of which are shown below from March 23, 2021, April 21, 2021, and August 17, 2021, respectively:



19.     Likewise, Levin and Bentov allege the Court has no jurisdiction over them. But Plaintiff has alleged they were founders and they fully participated fully in the enterprise. Dkt. 60.1 at ¶¶ 2, 16-18, 186, 191-192, 197, 210-211, and 510-517.

20.     Strobel's, Levin and Bentov also display a misunderstanding of Texas law, which confers jurisdiction on out-of-state investors making money in Texas, which they presumably did as 'founders.' *See, e.g.*, *Cornerstone Healthcare Group Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71–74 (Tex. 2016) (holding out-of-state investors targeting Texas assets

purposefully availed themselves of the state).

21.    The jurisdictional arguments have previously been made in the respective parties' briefing and have no place in determining whether Plaintiff's motion for leave should be granted.

**C.    STROBEL'S ALLEGED PLEADING DEFICIENCIES ARE NOT A BASIS TO DENY LEAVE AND ARE WITHOUT SUPPORT.**

22.    Strobel claims 5 of the 27 claims in Plaintiff's proposed First Amended Class Action Complaint ("FAC") are deficiently pled. "[T]he sufficiency of a complaint is properly the object of a motion to dismiss under Rule 12, not a plaintiff's initial motion for leave to amend under Rule 15 that is filed within the time to amend pleadings." *LeJeune v. Mammoth Energy Services, Inc*., No. 5:19-cv-286, 2019 WL 11626274 at \*3(W.D. Tex.—August 5, 2019). This is Plaintiff's first request to amend the pleading that will be heard by the Court. Strobel's alleged 'pleading deficiencies,' if any, do not form a basis for a 'substantial reason' to deny Plaintiff's leave, or support a futility analysis.

23.    Even if the alleged pleading deficiencies are considered, Strobel's cited cases confirm she merely had to know of the dangers of the enterprise misleading the public and participate in the scheme—as alleged in Plaintiff's proposed amended complaint. *See In re UICI Sec. Litig.*, No. 3:04-CV-1149-P, 2006 WL 7354417, at \*3 (N.D. Tex. Sept. 29, 2006) (citing *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 697 (5th Cir.2005)) ("A securities fraud plaintiff must plead facts demonstrating that the defendant either consciously misbehaved in making its statements, or was so severely reckless that the defendant must have been aware of the danger of misleading the investing public."); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) ("For an informal enterprise, known as an association-in-fact enterprise, the "group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc."

and "[m]embers of the group need not have fixed roles; different members may perform different roles at different times ....") (citing *Boyle v. United States,* 556 U.S. 938, 948 (2009)).

24.    Plaintiff alleges Strobel was a founder of CryptoZoo, knowingly helped the scheme, and purchased CryptoZoo products at an artificially low price. Dkt. 60.1 at ¶¶ 2, 190-191, and 217. Although Strobel claims such allegations are immaterial, the case law holds otherwise.

25.    Rather than analyze the cases, Strobel merely cites to general propositions stating there must be specific allegations of misrepresentations without addressing the rest of the cases. *See Commodity Futures Trading Comm'n v. EOX Holdings L.L.C.*, 405 F. Supp. 3d 697, 715 (S.D. Tex. 2019) ("Even if the court were to conclude that the allegations did not satisfy Rule 9(b)'s pleading requirements, courts have held that Rule 9(b) is relaxed in insider trading cases where the facts about the alleged fraud are 'peculiarly within the [defendants'] knowledge.'") (citing *SEC v. Payton*, 97 F. Supp. 3d 558, 563 n. 3 (S.D.N.Y. 2015) (quoting *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)); *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) ("Control person liability does not require participation in the fraudulent transaction" [citing G.A. Thompson & Co. v. Partridge, 636 F.2d 945, 958 (5th Cir.1981)]. "[b]ut a plaintiff 'must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based.'") (citing *Meek v. Howard, Weil, Laboisse, Friedrichs, Inc.*, 95 F.3d 45, at *3 (5th Cir.1996) (citing *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619–20 (5th Cir.1993))).

26.    Strobel has provided no substantial reason to deny Plaintiff's motion for leave. Plaintiff's Motion should be granted.

**D.    PAUL'S OTHER ARGUMENTS ARE IMMATERIAL AND BROUGHT SOLELY FOR THE PURPOSES OF HARASSMENT**

27.    Paul spends a considerable portion of his response disparaging Plaintiff's counsel and counsel's attempts to inform and protect the class, as well as attempt to argue leave should be

denied because all allegations were previously "known" by Plaintiff's counsel. Dkt. 62 at pg. 7-8. None of the arguments provide a substantial reason to deny Plaintiff's requested leave and are more appropriately a characterization of Paul's own bad faith during this case.

28.     Paul attempts to cover his own actions during this case by arguing he planned his purported buyback program well before the lawsuit was initiated. Dkt. 62 at pg. 7. However, Plaintiff's original complaint has been on file since February 2, 2023 and Paul did nothing to initiate his buyback program for close to a year. Paul only took action *after* Plaintiff's counsel had informed his counsel they were seeking leave to add the individual claimants and the securities claim. Dkt. 55. Thus, Paul's counsel needed to push back the conference to allow Paul to try and correct his past misdeeds.

29.     To exemplify Paul's bad-faith, four months ago, he used his most recent boxing promotion tour to propagate his intellectually dishonest narrative to tens-of-millions of people. When called out by a rival boxer Dillon Danis for scamming CryptoZoo customers and responded that he is, "rectifying [his] situation and didn't scam anyone." He then claims to have "never made a single dollar"—though disputed by Plaintiff as the funds offered for the buyback program are similar in amount to funds linked to a CryptoZoo wallet that CryptoZoo profits were sent to—and "never sold a single token [interruption from Danis] and [to be] rectifying [his] situation." *Id.*

30.     A few weeks later, on a YouTube talk show, Paul again deflected from the allegations by stating, "[b]ecause of the legal position of this, and if people cared they could look into this, umm, I unfortunately can't say anything on the situation and I-I-I've tried, I've wanted to. We're very close in my opinion. I think we're very close to a final resolution and that's what I

mean when I say I'm rectifying it but unfortunately, I can't give you any details right now."[5]

31.     These comments reflect Paul's own desire to desire to appear like a good guy to the world by claiming the lawsuit is close to a resolution. This is despite Paul failing to show up to the mediation as promised, delaying conferring on Plaintiff's Motion for Leave, and disrupting the litigation with a buyback program that requires, in the fine-print disclaimer, claimants to release their class action claims.

32.     Paul complains of Mr. Kherkher's video discussing the "fine print" contained in the buyback program. Although Paul believes he is free to utilize media platforms to discuss this case with class members, his Response suggests no such freedoms extend to counsel seeking to represent the class of individuals affected by his conduct. Paul's Response attempts to improperly chill Plaintiff's effort to inform its clients and class members after his own gamesmanship. In fact, Plaintiff's counsel had to expend time and energy on the inquiries it received from confused clients about whether to forgo their Zoo Token claims and accept the buyback. Accordingly, Paul's Response should be discounted, and Plaintiff's Motion should be granted.

33.     The *Layfield* case is easily distinguishable from the instant matter. *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979). In *Layfield*, the plaintiff waited until after substantial discovery and a motion for summary judgment were pending to file leave for an amended complaint, on matters never previously suggested. *Id. (quoting Lamar v. American Finance System of Fulton County, Inc.,* 577 F.2d 953, 955 (5th Cir. 1978) (affirming decision of a district court to deny leave when both parties had summary judgments pending). As Paul notes, discovery has not commenced in this case. This is Plaintiff's first request for an amendment, that

---

[5]  MMAFightingonSBN, *Logan Paul on Dillon Danis: 'I'm Going to Make Him Suffer as Long as I Can' | The MMA Hour*, YouTube (Sept. 27, 2023), available at (and *see*) https://www.youtube.com/watch?v=3PsMoWBpP8s, *see* 21:30-22:08.

is after Paul and the other Defendants were given a lengthy stay to engage in a mediation they did not attend. Paul failed to be true to his public words and attempt to resolve this case.

34.    Paul's arguments are immaterial to the decision to grant Plaintiff's motion for leave and only, ironically, show his bad faith. Plaintiff's motion for leave should be granted.

## PRAYER FOR RELIEF

Plaintiff prays the Court grant Plaintiff's Amended Opposed Motion for Leave to File Plaintiffs' First Amended Class Action Complaint.  Plaintiff also asks for all other relief to which he may be justly entitled, at law or in equity.

Respectfully submitted,

 */s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
Alexander G. Kykta
Texas Bar No. 24107841
alex@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rules of Civil Procedure 5(d).  I hereby certify that on February 5, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.  I further certify that the foregoing has been served this document on all counsel of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

 */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey