**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DON HOLLAND, individually and on behalf** | : | |
| **of all others similarly situated,** | : | **CIVIL ACTION NO.: 1:23-cv-110** |
| | : | |
| **Plaintiff,** | : | |
| | : | **HON. ALAN ALBRIGHT** |
| **v.** | : | |
| | : | |
| **CRYPTOZOO, INC., *et al.*,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

**<u>DEFENDANT DANIELLE STROBEL'S MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Danielle Jonas, f/k/a Danielle Strobel ("Ms. Strobel"),[1] files this Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal Jurisdiction (the "Motion"). In support thereof, Ms. Strobel would respectfully show this Court as follows:

**I.      INTRODUCTION**

On May 19, 2023, Ms. Strobel first moved to dismiss this action for lack of personal jurisdiction. (*See* Motion to Dismiss for Lack of Personal Jurisdiction, Doc. No. 22). That Motion explained numerous reasons why this Court does not have personal jurisdiction over her -- namely, that Ms. Strobel has *no connection* to Texas, and that the claims alleged in the initial Complaint do not relate to any activities carried out in or directed at this state.

Fifteen months later, Plaintiffs filed an Amended Complaint. (Doc. No. 81). But all of the jurisdictional defects Ms. Strobel previously identified still exist. She still has no connection to

---

[1] During the course of this litigation, Ms. Strobel's last name changed to Jonas. Nevertheless, this Motion will refer to her as "Ms. Strobel" to avoid confusion, as that is how Plaintiffs identified her in the Amended Complaint.

Texas.  Ms. Strobel lives in Colorado and has never purposely availed herself of Texas law. Indeed, her "history" of Texas contacts can be fully summarized as follows: (1) a 2013 canoe trip; and (2) a 2020 trip unrelated to CryptoZoo lasting less than a day.  Ms. Strobel owns no Texas property, and she has not engaged in any business with -- or directed at -- Texas or its residents.

Despite the Amended Complaint now spanning 115 pages and 531 paragraphs, Plaintiffs still have not added any substantive allegations that would render this Court's jurisdiction over Ms. Strobel appropriate or reasonable.  Ms. Strobel is identified by name three times in the Amended Complaint in three places.  And none of those tie her or her alleged conduct to Texas in any way.

Worse still, the Amended Complaint adds 139 new Plaintiffs, *only three of whom reside in Texas*.  (Doc. No. 81 ¶¶ 48–184).  Ms. Strobel has not had any contact with these individuals or the 100-plus Plaintiffs who do not even reside in the United States.

In sum, the Amended Complaint contains virtually no well-pled factual allegations directed at Ms. Strobel, and certainly none that had anything to do with Texas.  For 137 of the Plaintiffs, the Amended Complaint amounts to allegations by out-of-state plaintiffs against an out-of-state defendant for conduct that purportedly took place outside the forum state.  Such a scenario fails the personal jurisdiction analysis under any metric.  For these reasons, and those set forth in detail below, Plaintiffs' claims against Ms. Strobel should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Claims

This action arises out of the Plaintiffs' purchase of digital assets from Defendant CryptoZoo Inc.  Plaintiffs allegedly purchased "Zoo Tokens" which could be used to redeem other digital products from CryptoZoo -- namely, Non-Fungible Tokens ("NFTs") to be used in

connection with an online game.  (Doc. No. 81 at ¶ 2).  According to Plaintiffs, they purchased these digital assets with the expectation that they "would later receive benefits, including . . . rewards, exclusive access to other cryptocurrency assets, and the support of an online ecosystem to use and market [CryptoZoo] NFTs."  (*Id.* at ¶ 15).

In essence, Plaintiffs claim that the CryptoZoo game failed to live up to their expectations. (*Id.* at ¶¶ 213–16).  According to Plaintiffs, Strobel and Defendants CryptoZoo, Logan Paul ("Mr. Paul"), Jeffrey Levin ("Mr. Levin"), Eduardo Ibanez, Jake Greenbaum, and Ophir Bentov ("Mr. Bentov") (collectively, "Defendants") "executed a 'rug pull'" by "fraudulently promoting and selling products that did not function as advertised, failing to support the CryptoZoo project, and manipulating the digital currency."  (*Id.* at ¶¶ 14, 30).

Plaintiff Don Holland filed the original Complaint on February 2, 2023.  (Doc. No. 1).  On May 19, 2023, Ms. Strobel, Mr. Paul, Mr. Bentov, and Mr. Levin all moved to dismiss for lack of personal jurisdiction.  (Doc. Nos. 22-23).  Plaintiff Holland responded and the Motion was fully briefed, although never ruled upon.  (Doc. Nos. 32-33, 35-36).  This action was stayed while the parties participated in mediation.  (Doc. No. 38).  When that was unsuccessful, Plaintiff sought and obtained leave to file an Amended Complaint.  (Doc. Nos. 60, 80-81).

## B.    Plaintiffs' Amended Complaint

Plaintiffs' Amended Complaint – while certainly ballooning in size – essentially includes the same factual allegations as the original Complaint.  And like the original version, Plaintiffs' Amended Complaint still does not include any substantive allegations against Ms. Strobel, nor does it provide any connection between Ms. Strobel and Texas.  Instead, Plaintiffs continue their practice of engaging in impermissible "group pleading," rarely specifying which specific

3

Defendant allegedly committed which bad act.  (*See, e.g.*, Doc. No. 81 at ¶¶ 13–14, 216, 236, 251–52, 270, 275, 279, 291).

Notably, Plaintiffs do not attribute any alleged representation or statement about CryptoZoo to Ms. Strobel.  In fact, the Amended Complaint explicitly concedes that she "did not make any public statements."  (*Id.* at ¶ 515).  The only other references to Ms. Strobel in the Amended Complaint are as follows:

- "Defendant Danielle Strobel was Logan Paul's assistant and is one of the founders of CryptoZoo Inc. and discusses helping administratively throughout Defendants' internal communications as their scheme developed."  (Doc. No. 81 at ¶ 190).

- "The list of CryptoZoo founders is noted in Defendants' internal documents, where Paul, Strobel, Levin, Ibanez, and Greenbaum are listed as founders of CryptoZoo Inc., with each receiving 51%, 1%, 10%, 30%, and 5% of the founder shares respectively . . . ." (*Id.* at ¶ 191).

Obviously, these allegations do not identify Ms. Strobel's purported wrongful conduct, much less that such conduct was somehow connected to Texas.

Plaintiffs did add a number of causes of action to their Amended Complaint.  They now assert eight common law claims (Fraud, Express Breach of Contract, Implied Breach of Contract, Unjust Enrichment, Negligence, Fraudulent Misrepresentation, Conspiracy to Commit Fraud, and Aiding and Abetting Fraud), fifteen statutory causes of action (citing to various consumer protection statutes from across the country), and four federal statutory claims (under the Securities Exchange Act of 1934, the Commodity Exchange Act, and the federal RICO statute).

## C.    Ms. Strobel's Lack Of Contacts With Texas

Ms. Strobel currently resides in Colorado Springs, Colorado.  (Affidavit of Danielle Jonas f/k/a Danielle Strobel ("Strobel Affidavit"), attached hereto as Exhibit A, at ¶ 2).  She has never lived in Texas, and has only visited the state twice: once in 2013 for a two-week canoeing trip on the Rio Grande River, and again in 2020 -- for less than 24 hours -- on a matter unrelated to

CryptoZoo. (*See id*. at ¶ 3).  Additionally, Ms. Strobel has never owned, leased, or held a security interest in any real or personal property in the State of Texas; opened or maintained a bank account in Texas; paid or owed taxes to the State of Texas or any of its political subdivisions; engaged in any business directed at Texas residents; opened or maintained an office or other business premises of any kind in Texas; hired employees, servants, or agents in Texas; maintained or been required to maintain a registered agent for service in Texas; maintained a telephone or facsimile number in Texas; or been a party to a lawsuit in Texas (with the exception of this case).  (*See id*. at ¶¶ 4-6).

Ms. Strobel's involvement in CryptoZoo was equally limited.  She never drafted, revised, signed, or filed any of CryptoZoo's organizational documents; drafted, revised, signed, or published any CryptoZoo contract; drafted or revised CryptoZoo's Terms and Conditions or Terms of Service; or had access to any of CryptoZoo's bank, depository, or investment accounts.  (*See id*. at ¶¶ 8-11).

## III.    ARGUMENT

### A.    Legal Standard.

Federal courts may exercise jurisdiction over a nonresident defendant only when two conditions are present. First, the state's long-arm statute must confer jurisdiction over the defendant.  *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985).  Second, any exercise of jurisdiction must comport with due process.  *Id.*

Courts have repeatedly held that the Texas long-arm statute extends to the federal due process limit, and therefore "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  For personal jurisdiction to comport with federal due process, the nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'" *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 233 (5th Cir. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts exist when the "defendant has purposefully availed [her]self of the benefits and protections of the forum." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). However, a defendant cannot "purposefully avail" herself of the forum through the "unilateral activity of another party or a third person." *Spademan*, 772 F.2d at 1191 (quoting *Burger King*, 471 U.S. at 475). Rather, purposeful availment means that the defendant's contacts "proximately result from actions by the defendant [*her*]*self* that create a 'substantial connection' with the forum." *Id.* (emphasis in original). A defendant's purposeful availment of the forum can create two kinds of contacts. "[C]ontinuous and systematic" contacts confer general jurisdiction, whereas limited contacts that give rise or relate to the litigation may confer specific jurisdiction. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

Finally, Plaintiff bears the burden of establishing personal jurisdiction over each claim as to each defendant. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75, n.5 (5th Cir. 2006); *Gen. Retail Servs. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (noting that "it is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations" when the complaint fails to "ascribe[] specific conduct or statements to [certain] individuals"); *Fernandez-Lopez v. Hernandez*, No. DR:19-CV-46-AM-CW, 2020 U.S. Dist. LEXIS 253510, at *21 (W.D. Tex. Oct. 1, 2020) ("[A] plaintiff must still establish sufficient minimum contacts within the forum state for each individual defendant, which Plaintiffs have not done."). This Court "may consider the contents of the record before [it] at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the

recognized methods of discovery.'" *Quick Techs. v. Sage Grp. Plc*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

> **B.      Ms. Strobel Does Not Have Sufficient Contacts With The State Of Texas For This Court To Exercise Personal Jurisdiction Over Her.**

> **1.      Ms. Strobel Is Not Subject To General Jurisdiction Because She Has No "Continuous And Systematic" Contacts With Texas.**

"A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).   While general jurisdiction confers jurisdiction over any claim involving a defendant, it "is a high bar." *Johnson v. TheHuffingtonpost.com, Inc.*, 21 F.4th 314, 323 (5th Cir. 2021).

Indeed, the contacts needed to establish general jurisdiction effectively amount to domicile. *See Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 337 (5th Cir. 2020) ("[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." (quoting *Goodyear*, 564 U.S. at 924)).   "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).

This Court does not have general jurisdiction over Ms. Strobel, and Plaintiffs have not alleged otherwise.   While Ms. Strobel has been to Texas twice, "traveling through parts of the state a few times . . . are insufficient activities for the Defendant to be considered 'at home' in Texas." *See Crownover v. Crownover*, No. DR-15-CV-132-AM, 2016 U.S. Dist. LEXIS 203425, at *17 (W.D. Tex. Sept. 20, 2016).   Plus, Plaintiffs do not allege *any facts* "as to the extent, duration, or

frequency" of Ms. Strobel's purported contacts with Texas.  For these reasons, this Court cannot exercise general jurisdiction over Ms. Strobel.

### 2. Specific Jurisdiction Is Also Lacking.

The Fifth Circuit "has framed the [specific jurisdiction] inquiry as a three-step analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*See Defense Distributed v. Grewal*, 971 F.3d 485, 490–91 (5th Cir. 2020).  "[S]pecific jurisdiction is a claim-specific inquiry," so a plaintiff must identify how each of the defendants' conduct gives rise to each cause of action.  *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Obviously, "[i]t is essential . . . that there be some act by which the defendant purposefully avails [herself] of the privilege of conducting activities within the forum state."  *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  As a result, a plaintiff must "ascribe[] specific conduct or statements" to individual defendants.  *Gen. Retail Servs. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (citing *Rush v. Savchuk*, 444 U.S. 320, 332–33 (1980)).

#### a. None Of The Non-Texas Plaintiffs Can Establish Personal Jurisdiction As A Matter of Law.

As an initial matter, the 137 non-Texas Plaintiffs cannot plead facts establishing that this Court may exercise specific jurisdiction over Ms. Strobel.  In other words, jurisdiction over Ms. Strobel cannot be premised on claims made by out-of-state Plaintiffs against an out-of-state Defendant for conduct that allegedly occurred in a forum other than Texas.  *See Defense Distributed*, 971 F.3d at 490–91.

8

> b.    *Ms. Strobel Never Purposefully Availed Herself Of Texas Law, And None Of Plaintiffs' Claims Arise Out Of Her Contact With Texas.*

There are no allegations, much less facts, demonstrating that Ms. Strobel purposefully availed herself of Texas law.  She did not direct any activity towards Texas, nor did this "litigation result[] from alleged injuries that arise out of or relate to those activities."  *See Gen. Retail Servs.*, 255 F. App'x at 793.  Ms. Strobel's two visits to Texas over the course of her lifetime are precisely the "random, fortuitous, and attenuated" contacts that are insufficient to provide notice that she could be hailed into a Texas courtroom.  *McFadin*, 587 F.3d at 759.

Significantly, Plaintiffs do not tie any of their claims to "specific conduct or statements" of Ms. Strobel.  In fact, they admit that Ms. Strobel "did not make public statements."  (Doc. No. 81 at ¶ 515).  Regardless, Plaintiffs' claims of alleged misrepresentations and material omissions by the collective "Defendants" are insufficient anyway to establish personal jurisdiction.  The Fifth Circuit's analysis in *General Retail Services* is particularly on-point:

> We uphold the district court's dismissal of Joe Barbat, Jack Barbat and Ebner because General Retail failed to demonstrate that they purposefully directed any activities into the forum state.  While it is true that a single act can confer personal jurisdiction over a defendant if that act gives rise to the claim being asserted, **General Retail has not carried its burden to show that these individuals could reasonably expect to be hailed into court in Texas**. **The First Amended Complaint merely identifies who Joe and Jack Barbat are**.  While it mentions Ebner one more time, the allegation merely states that the Ebner "met" Wiley. **There is nothing in the First Amended Complaint that ascribes specific conduct or statements to these individuals.  Contrary to General Retail's argument, it is not enough to simply rest on the use of the collective term, "Defendants," in the allegations**.

*See Gen. Retail Servs.*, 255 F. App'x at 793 (internal citations omitted) (emphasis added).  The same is true here.

That the Amended Complaint includes claims for "Conspiracy to Commit Fraud" and "Aiding and Abetting" does not change this result.  (Doc. No. 81 at ¶¶ 285–292).  Texas law is

9

clear that merely "alleging a conspiracy . . . does not provide an independent basis for jurisdiction." *See Crownover*, 2016 U.S. Dist. LEXIS 203425 at \*35 (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)).  Instead, "a plaintiff must show that ***each defendant individually***, and not as part of a conspiracy, purposely established minimum contacts with Texas that would satisfy due process."  *Bar Grp., LLC v. Bus. Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 539 (S.D. Tex. 2017) (emphasis added); *see also Fernandez-Lopez*, 2020 U.S. Dist. LEXIS 253510 at \*21 (citing *Nat'l Indus. Sand Ass'n*, 897 S.W.2d at 773).  Likewise, simply labeling conduct as "aiding or abetting" does not confer personal jurisdiction either.  *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 666–67 (N.D. Tex. 2020); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2018 U.S. Dist. LEXIS 1902, at \*19–20 (W.D. Tex. Jan. 4, 2018).

Ultimately, the Amended Complaint is devoid of any specific or individualized allegations regarding Ms. Strobel.  Thus, Plaintiffs' causes of action for "Conspiracy to Commit Fraud" and "Aiding and Abetting" do not somehow establish personal jurisdiction over Ms. Strobel, nor does it show that she purposefully availed herself of Texas law.

> **c.  *CryptoZoo's Purported Contacts With Texas Do Not Confer Jurisdiction Over Ms. Strobel.***

In their Amended Complaint, Plaintiffs do not allege that Ms. Strobel was an officer, director, or employee of CryptoZoo -- only that she was a "founder" with an alleged 1% stake and that she "helped administratively."  (Doc. No. 81 at ¶ 190).  But even if she had been an officer, director, or employee, CryptoZoo's alleged contacts with Texas could not be imputed to Ms. Strobel for purposes of establishing personal jurisdiction.

Under Texas law, "the fiduciary shield doctrine 'provides that corporate officers are not subject to jurisdiction in a foreign forum if their actions are taken in a representative capacity.'"

*Auto Wax Co., Inc. v. Marchese*, No. 3:01-CV-2571-M, 2002 U.S. Dist. LEXIS 12758, at \*10 (N.D. Tex. July 15, 2002) (quoting *Shapolsky v. Brewton*, 56 S.W.3d 120, 133 n.6 (Tex. Ct App. 2001)). Stated another way,

> Absent some allegation of a specific act in Texas, or one with reasonably foreseeable consequences within this state's borders, a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here.  Constitutional considerations of due process forbid this bootstrapping of minimum contacts.

*Siskind v. Villa Found. for Educ., Inc*., 642 S.W.2d 434, 438 (Tex. 1982).  Thus, for this additional reason, exercising personal jurisdiction over Ms. Strobel is improper and would violate constitutional due process.

> ### d.    *Requiring Ms. Strobel To Defend Herself Against Plaintiffs' Claims In Texas Would "Offend Traditional Notions Of Fair Play And Substantial Justice."*

Because Ms. Strobel does not have minimum contacts with the State of Texas, this Court need not consider "whether the exercise of personal jurisdiction [over her] is fair and reasonable." *See Defense Distributed*, 971 F.3d at 490–91; *see also Spademan*, 772 F.2d at 1191–92. Regardless, however, it is not.

In determining whether jurisdiction would be fair and reasonable, the following factors are considered:

> 1) the burden on the nonresident defendant; 2) the interests of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in the most efficient resolution of controversies; and 5) the shared interests of the several states in furthering fundamental social policies.

*Seiferth*, 472 F.3d at 276 (5th Cir. 2006).  None of these factors support exercising jurisdiction over Ms. Strobel in this case.

11

First, it would be extremely burdensome, time-consuming, and costly for Ms. Strobel to have to defend herself from Plaintiffs' claims in Texas. (Strobel Affidavit at ¶ 12). She lives in Colorado and has no connection of any kind to Texas.

Second, while Texas may have some interest in providing a forum for its residents, that does not trump the constitutional rights of a non-resident who (1) had no substantive involvement in any Plaintiffs' claims, and (2) has no contacts whatsoever with the forum state. Moreover, the vast majority of Plaintiffs are not, in fact, residents of Texas. In the end, it would be both unfair and unreasonable for this Court to exercise personal jurisdiction over Ms. Strobel.

> **C.      Plaintiffs Cannot Manufacture Personal Jurisdiction Over Ms. Strobel By Attempting To Plead Violations Of Federal Securities And RICO Laws In Their Amended Complaint.**

In the Amended Complaint, Plaintiffs allege four new causes of action arising under federal law: violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Rule 10b-5 (17 C.F.R. § 240.10b-5); liability under Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78t, "Liability of controlling persons"); a violation of the Commodity Exchange Act Section 4o (7 U.S.C. § 60); and a RICO claim (18 U.S.C. § 1962(c)). (Doc. No. 81 ¶¶ 480–526).

Again, these claims are based on the alleged conduct of the collective "Defendants" or "Founder Defendants," without Plaintiffs specifying any purported wrongdoing by Ms. Strobel. (*See, e.g., id.* at ¶ 480) ("Plaintiffs' Exchange Act claims seek to hold Defendants liable for intentionally (or with deliberate recklessness) issuing false and misleading statements . . ."); (*Id.* at ¶ 507) (The Founder Defendants "participated in the unlawful conduct alleged which created a market for patently worthless Zoo Tokens and CZ NFTs."); (*Id.* at ¶ 515) ("Defendants each employed such criminal conduct as their regular way of doing business, as each Defendant lied about the progress of the game except for Defendant Stroebel [sic] who did not make public

12

statements."); (*Id*. at ¶ 520) ("Defendants employed a device, scheme, or artifice to defraud Plaintiffs, or engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon Plaintiffs in violation of section 4o of the Commodity Exchange Act . . .").  Thus, Plaintiffs appear to have asserted these claims against Ms. Strobel (and others) so that they could use these statutes' nationwide service of process provisions to establish jurisdiction.  15 U.S.C. § 78aa(a) (Securities Exchange Act); 7 U.S.C. § 25(a) (Commodity Exchange Act); 18 U.S.C. § 1965 (RICO).

Significantly, however, these service provisions cannot be invoked unless Plaintiffs have demonstrated a "colorable" claim.  *See Fernandez-Lopez*, 2020 U.S. Dist. LEXIS 253510, at *25 ("The more widely recognized and sound approach is to determine if a plaintiff has presented a 'colorable' RICO claim."); *Warfield v. Arpe*, No. 3:05-cv-1457-R, 2007 U.S. Dist. LEXIS 12177, at *27–29 (N.D. Tex. Feb. 22, 2007) ("[T]he Court is not aware of any caselaw in support of invoking the federal securities laws service of process statutes (§§ 77v & 78aa) as a basis for personal jurisdiction over defendants who are not alleged to have committed any securities violations."); *Hardwire LLC v. Ebaugh,* No. CV JKB-20-0304, 2021 U.S. Dist. LEXIS 162400, at *11 (D. Md. Aug. 26, 2021) ("A defendant may challenge a court's exercise of personal jurisdiction under RICO's nationwide service of process clause by establishing that the exercise of jurisdiction violates the Fifth Amendment's Due Process Clause or that the RICO claim is not colorable."); *Doe v. Varsity Brands, LLC*, No. 6:22-3508-HMH, 2023 U.S. Dist. LEXIS 111452, at *19 (D.S.C. June 27, 2023) ("When a plaintiff relies on a federal statute providing for nationwide service of process, the court will have personal jurisdiction over a properly served defendant provided that (1) the federal claim is colorable, and (2) the exercise of personal jurisdiction satisfies the Fifth Amendment's Due Process Clause."); *Brown v. Fid. Nat'l Title Grp*., No. 3:18-cv-01148-

J-32MCR, 2020 U.S. Dist. LEXIS 157645, at \*54 (M.D. Fla. Aug. 5, 2020) ("Plaintiff has not stated a colorable RICO claim" and "is unable to take advantage of the nationwide service-of-process provision to establish personal jurisdiction over this Defendant."); *Don't Look Media, LLC v. Fly Victor Ltd.*, No. 19-61555-CIV-SINGHAL, 2020 U.S. Dist. LEXIS 250935, at \*7 (S.D. Fla. Feb. 5, 2020) ("Plaintiff has failed to assert a colorable claim under federal statute and it is not entitled to take advantage of that statute's nationwide service of process provision."); *Cox v. Coinmarketcap Opco, LLC*, No. 23-15363, 2024 U.S. App. LEXIS 20195, at \*26-29 (9th Cir. Aug. 12, 2024) (a plaintiff must show that its Commodity Exchange Act claim is colorable in order to invoke the Act's nationwide service of process provision).

A "colorable" claim must not be "immaterial and made solely for the purpose of obtaining jurisdiction," nor can it be "wholly insubstantial and frivolous." *Fellows v. Universal Restaurants Inc.*, 701 F.2d 447, 449 (5th Cir. 1983). A claim "may be insubstantial either (1) because it is obviously without merit, or (2) because it is clearly foreclosed by previous decisions of the Supreme Court." *Fernandez-Lopez*, 2020 U.S. Dist LEXIS 253510, at \*23–24 (quoting *Miller v. Stanmore*, 636 F.2d 986, 989 (5th Cir. 1981)). As set forth below, none of Plaintiffs' federal claims are sufficiently pled such that they can serve as a basis for asserting personal jurisdiction over Ms. Strobel.

        **1.**      **Plaintiffs' Securities Exchange Act and Commodity Exchange Act Causes of Action**

Claims under Rule 10b-5 sound in fraud, requiring heightened pleading under Federal Rule of Civil Procedure 9(b). *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194–95 (5th Cir. 1996). Therefore, "Section 10(b) and Rule 10b-5 require a plaintiff to allege a materially false or misleading statement **on the part of each defendant**." *In re UICI Sec. Litig.*, No. 3:04-CV-1149-P, 2006 U.S. Dist. LEXIS 73753, at \*7–8 (N.D. Tex. Sept. 29, 2006) (emphasis added). Only

claims for "primary liability" are available in a civil 10b-5 action, and a plaintiff cannot pursue claims for aiding or abetting a violation of 10b-5.  15 U.S.C § 78t(e); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 162–63 (2008).

Claims under 7 U.S.C. § 60 (section 4o), one of the Commodity Exchange Act's ("CEA's") antifraud provisions, also require heightened fraud pleading under Rule 9(b).  *See Krukever v. TD Ameritrade, Inc.*, 337 F. Supp. 3d 1227, 1234–35 (S.D. Fla. 2018); *Prestwick Capital Mgmt. Ltd. v. Peregrine Fin. Grp., Inc.*, No. 10 C 23, 2010 U.S. Dist. LEXIS 120148, at *8 (N.D. Ill. Nov. 12, 2010).  Again, a plaintiff must "state with particularity what representations *each* defendant made." *Ocoro v. Montelongo*, No. 5:16-cv-01278-RCL, 2018 U.S. Dist. LEXIS 102028, at *10 (W.D. Tex. June 19, 2018); *see also United States ex rel. Young v. Kindred Healthcare, Inc.*, No. 1:18-cv-00806-RP, 2020 U.S. Dist. LEXIS 244372, at *16 (W.D. Tex. Dec. 30, 2020) ("Group pleadings generally are prohibited when a complaint is subject to Rule 9(b).").

In this case, Plaintiffs' Section 10b and Section 4o claims against Ms. Strobel are not "colorable."  Plaintiffs admit that Ms. Strobel "**did not make public statements**" regarding CryptoZoo.  (Doc. No. 81 at ¶ 515) (emphasis added).  Obviously then she could not have made any "misrepresentations" or "lied" about CryptoZoo.  (*See id.* ¶¶ 520–23).  A false or materially misleading statement by Ms. Strobel is a necessary element of these claims, yet Plaintiffs admittedly cannot meet this element.  As a result, Plaintiffs cannot use the nationwide service of process provisions to justify this Court exercising jurisdiction over Ms. Strobel.

Plaintiffs cannot use their Section 20(a) claim to establish jurisdiction either.  To adequately plead "controlling person" liability under Section 20(a), "a plaintiff 'must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based.'"  *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014); *see also Carlton*

15

*v. Cannon*, 184 F. Supp. 3d 428, 461 (S.D. Tex. 2016).  Thus, "a plaintiff needs to allege some facts beyond a defendant's position or title that show the defendant had actual power or control over the controlled person." *In re Pilgrim's Pride Corp. Secs. Litig.*, No. 2:08-cv-419-TJW, 2010 U.S. Dist. LEXIS 84260, at *106–07 (E.D. Tex. Aug. 17, 2010).  Plaintiffs have failed to do so here with respect to Ms. Strobel.

Instead, the Amended Complaint resorts to conclusory "group pleading" without directing any specific allegations against Ms. Strobel:

> Because of their positions of control and authority as senior officers, the Founder Defendants were able to, and did, control the contents of the various promotional materials, press releases and public statements which CryptoZoo disseminated in the marketplace during the Class Period concerning CryptoZoo's operations. Throughout the Class Period, the Founder Defendants exercised their power and authority to cause CryptoZoo to engage in the wrongful acts complained of herein. The Founder Defendants, therefore, were "controlling persons" of CryptoZoo within the meaning of Section 20(a) of the Exchange Act.

(Doc. No. 80 at ¶507).  Plaintiffs' description of Ms. Strobel as a "Founder" is insufficient as a matter of law to infer that she was a "controlling person." *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 261 (5th Cir. 2005) ("Corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded.").  For these reasons, Plaintiffs' securities-based claims cannot serve as the basis for this Court exercising personal jurisdiction over Ms. Strobel.

### 2.    Plaintiffs' RICO Claim

"To state a claim under [18 U.S.C.] § 1962(c), a plaintiff must adequately plead that the defendant engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 784 (5th Cir. 2020) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  "To establish

16

a RICO 'enterprise,' a plaintiff must provide evidence of the existence of an entity separate and apart from the pattern of racketeering activity." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019). "Racketeering activity" means one of the criminal acts (or "predicate acts") enumerated in the RICO statute. 18 U.S.C. § 1961(1). And a plaintiff must allege a "pattern" of racketeering activity, meaning an "agreement involving each of the Defendants to commit at least two predicate acts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992).

More important, "a RICO plaintiff must plead the specified facts as to each defendant. It cannot . . . 'lump[] together the defendants.'" *Walker*, 938 F.3d at 738 (quoting *In re MasterCard Int'l, Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 476 (E.D. La. 2001)). "[A] person cannot be held liable for a RICO conspiracy merely by evidence that [s]he associated with other conspirators." *Haney v. Abdallah*, No. SA-11-CA-176-OLG, 2011 U.S. Dist. LEXIS 166446, at *12 (E.D. Tex. Sept. 16, 2011) (citing *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). Plaintiffs' RICO claim here comes nowhere close to meeting this exacting standard.

First, Plaintiffs do not allege a single act that could qualify as a "predicate act" under § 1961(1). Indeed, none of the criteria identified in § 1961(1) is even mentioned in the Amended Complaint. Rather, Plaintiffs make conclusory allegations of fraud and "criminal" conduct. (Doc. No. 81 at ¶ 511). But even then, Plaintiffs cannot plead a civil RICO claim that is based on "any conduct that would have been actionable as fraud in the purchase or sale of securities." 18 U.S.C. § 1964(c). And without any legitimate predicate act, Plaintiffs certainly cannot establish a "pattern of racketeering activity."

Plaintiffs' "enterprise" allegations are equally without substance. The Amended Complaint simply asserts that Mr. Paul and Mr. Levin "led" an "ongoing fraudulent enterprise"

involving various NFTs and cryptocurrency assets and projects.  (Doc. No. 81 at ¶¶ 511–12).

While CryptoZoo itself cannot be the enterprise, Plaintiffs make little effort to articulate what is,

advancing only the unsupported allegation that these other NFT and cryptocurrency projects were

"fraudulent" and "criminal."  (*Id.* at ¶ 512).

In the end, Plaintiffs' RICO allegations against Ms. Strobel are non-existent.  At least as it

relates to her, the RICO claim "is immaterial and made solely for the purpose of obtaining personal

jurisdiction and venue in the Western District of Texas."  *See Fernandez-Lopez*, 2020 U.S. Dist.

LEXIS 253511 at \*34.  Accordingly, this Court should not exercise jurisdiction over Ms. Strobel

under RICO's nationwide service of process provision.

**D.**    **The Federal Claims Necessarily Fail As To The International Plaintiffs Because They Cannot Invoke Federal Laws For Extraterritorial Violations.**

Finally, the 104 international Plaintiffs are not even permitted to invoke the federal statutes

cited in the Amended Complaint.  Indeed, there is a general presumption against the extraterritorial

application of federal statutes.  *See Morrison v. Nat'l Aust'l Bank Ltd.*, 561 U.S. 247, 261 (2010).

This means that federal securities laws only apply to domestic purchases and sales of securities.

*Id.* at 268; 15 U.S.C. § 78dd.  Similarly, for the federal RICO statute to apply, Plaintiffs must allege

a "domestic injury."  *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 346 (2016).

Here, the 104 international Plaintiffs do not and cannot plead domestic purchases, sales, or

injuries.  Their claims uniformly allege that they made the relevant purchases and were damaged

thereby outside the territory of the United States.  For example:

> Plaintiff Hwa Kwang Kuar resided in Singapore where he initially purchased CryptoZoo Products . . . . Mr. Kuar invested [$248,000.00] and lost a total of [$245,000.00].

(Doc. No. 81 at ¶ 48).  Mr. Kuar allegedly made a purchase in Singapore, and he allegedly lost

money in Singapore.  He cannot invoke RICO or federal securities laws for any reason, including

18

to establish personal jurisdiction via the statutes' nationwide service of process provisions. The other international Plaintiffs' allegations are in substantially the same form as Mr. Kuar's. Accordingly, personal jurisdiction over Ms. Strobel cannot be based on any claims asserted by the international Plaintiffs.

## IV.    CONCLUSION

For any and all of the foregoing reasons, Ms. Strobel respectfully requests that her Motion to Dismiss be granted.

Respectfully submitted,

*/s/ William B. Mateja*
William B. Mateja (13185350)
Jonathan E. Clark (24069515)
Sheppard, Mullin, Richter & Hampton LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Phone: 469-391-7400
Email: BMateja@sheppardmullin.com
     JClark@sheppardmullin.com
and

Mark G. Arnzen, Jr. *Pro Hac Vice*
Lindsay K. Gerdes *Pro Hac Vice*
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: 513-977-8440
Email: mark.arnzen@dinsmore.com
     lindsay.gerdes@dinsmore.com

***Counsel for Defendant Danielle Strobel***

19

## CERTIFICATE OF SERVICE

I hereby certify a copy of the above and foregoing has been served upon all counsel of record by using the Court's electronic filing system on the 3rd of September 2024.

/s/ William B. Mateja
William B. Mateja (13185350)