**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **DON HOLLAND, individually and on behalf of all others similarly situated,** § § § | |
| **Plaintiff,** § § | |
| **v.** § § | **CIVIL ACTION NO.: 1:23-cv-110** |
| **CRYPTOZOO, INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH,** § § § § § § § § | |
| **Defendants.** § | |

**DEFENDANTS JEFFREY LEVIN AND OPHIR BENTOV'S CONSOLIDATED
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Jeffrey Levin ("Levin") and Ophir Bentov a/k/a Ben Roth ("Bentov") make a special appearance in this action and move to dismiss Plaintiffs' First Amended Complaint ("FAC") against them for lack of personal jurisdiction.

## I.    INTRODUCTION

Plaintiffs' claims against Levin and Bentov should be dismissed. Neither Defendant has minimum contacts with Texas and this Court lacks personal jurisdiction over both of them. "Co-Lead" Plaintiffs Don Holland ("Holland"), Alex Heikali ("Heikali"), and Mourad Kechichian ("Kechichian"), with 137 additional claimants (together, "Plaintiffs"), claim Levin, Bentov, and co-defendants CryptoZoo Inc., Logan Paul ("Paul"), Danielle Strobel, Eduardo Ibanez, and Jake Greenbaum a/k/a Crypto King (collectively, "Defendants") induced Plaintiffs to purchase digital assets for an online game called "CryptoZoo" and then failed to deliver. On this basis, Plaintiffs bring 27 claims sounding in contract, tort, deceptive business practices (under the laws of Texas

and 12 other states), a civil RICO claim, and claims under the Securities Exchange Act of 1934 (the "Exchange Act") and the Commodities Exchange Act (the "CEA"). (*Id.* ¶¶ 235-523.)

Plaintiffs cannot establish personal jurisdiction over Levin or Bentov under RICO, the Exchange Act, or the CEA. One hundred and three Plaintiffs allege that they reside and purchased "CryptoZoo Products" outside the United States. None of these Plaintiffs can bring a claim under the federal statutes here, all of which require a "domestic" injury or transaction; thus, these Plaintiffs cannot avail themselves of the statutes' nationwide service of process provisions. The remaining 37 United States-based Plaintiffs cannot either. For the reasons set forth in Paul's concurrently-filed motion to dismiss ("Paul MTD," Dkt. No. 85),[1] Plaintiffs fail to assert a "colorable" claim under any of the federal statutes. These arguments apply with even greater force with respect to Levin and Bentov where the FAC fails to identify a ***single*** actionable misrepresentation by either of them. In fact, the FAC does not identify ***any*** public statements made by Bentov at all. And the few statements Levin is alleged to have made all occurred ***after all but one of the 140 Plaintiffs had already purchased their CryptoZoo Products***. Plaintiffs' federal claims are wholly lacking in legal or factual support, and appear to be asserted solely for obtaining jurisdiction. Plaintiffs cannot—and should not—be permitted to engage in such blatant forum shopping.

Without personal jurisdiction over their federal claims, Plaintiffs' state-law claims should be dismissed. Neither Levin nor Bentov has sufficient minimum contacts with Texas. In his original Complaint, Holland conceded that neither Levin nor Bentov reside in Texas. (Dkt. No. 1 ¶¶ 23, 26) (alleging that both reside in California). In a transparent attempt to avoid these fatal jurisdictional facts, Plaintiffs omit them from their FAC. (*See* FAC ¶¶ 186, 192.) But the

---

[1] Levin and Bentov have summarized/referenced certain of Paul's arguments in this Motion where indicated, but, to ease the Court's burden, Levin and Bentov do not repeat those arguments in full.

undisputable evidence establishes that neither Levin nor Bentov live or work in Texas, own property in Texas, or otherwise invoked the privileges or protections of Texas law—in connection with CryptoZoo or otherwise.

Accordingly, Levin and Bentov respectfully request that the Court dismiss all of Plaintiffs' claims against them for lack for personal jurisdiction.

## II.    FACTUAL BACKGROUND

Plaintiffs allege that Defendants misrepresented the nature of, and failed to deliver on, CryptoZoo, an online game that allowed players to purchase digital currency called "Zoo Tokens," which could be used to purchase CryptoZoo NFTs. (*Id.* ¶¶ 2-3.) Plaintiffs allege that Paul promoted CryptoZoo as a "'game that makes you money' with a 'massive team' supporting it, funded by 'like a million dollars.'" (*Id.* ¶ 200.) Plaintiffs further allege that when Defendants "released" the Zoo Tokens and NFTs, the website's Terms of Service stated "[Defendants] will strive to do the best for the project and the community." (*Id.* ¶ 201 & Ex. 1.)[2]

Holland, Heikali, and Kechichian allege that they purchased "CryptoZoo Products" (Zoo Tokens and/or NFTs) in September 2021, and Holland purchased additional CryptoZoo Products in November 2021. (*Id.* ¶¶ 45-47.) Holland and Heikali each allege that they had "invested" in cryptocurrency for many years prior (*id.* ¶¶ 193-94) and that each heard about CryptoZoo from someone other than Defendants. (*Id.* ¶¶ 202-03.) The FAC merely lists the names and residences of the remaining 137 Plaintiffs, and how much money they supposedly spent and lost on CryptoZoo Products. (*See id.* ¶¶ 48-184.) All but one of the 140 Plaintiffs purchased CryptoZoo Products between May 8, 2021[3] and February 1, 2022; one Plaintiff, Jaime Ruiz Martinez, allegedly purchased CryptoZoo Products on January 14, 2023. (*Id.* ¶¶ 45-184.)

---

[2] Although not attached to the FAC, "Exhibit 1" appears to refer to the exhibit attached to Holland's original Complaint. (Dkt. No. 1.)

[3] Two Plaintiffs allege that they purchased CryptoZoo Products in January 2021 (*id.* ¶¶ 123, 146), which appears to be incorrect.

Plaintiffs allege that the value of the CryptoZoo NFTs/Zoo Tokens fluctuated from approximately September through December 2021, with a few subsequent jumps in response to "false or recklessly hopeful statements" not attributed to Levin or Bentov. (*See id.* ¶ 205.) Despite these fluctuations, Plaintiffs "thought there was long term merit in the project" and purchased additional CryptoZoo Products. (*Id.* ¶¶ 207-08.) Plaintiffs allege that once Paul "announce[d] another NFT project and started ignoring CryptoZoo," they "realized their money was likely lost." (*Id.* ¶ 213.) Plaintiffs claim that CryptoZoo "was never released as advertised and the value of the Zoo Tokens and [CryptoZoo] NFTs plummeted," including because "Defendants manipulated the market." (*Id.* ¶¶ 213-14.)

Plaintiffs' allegations as to how Levin and Bentov participated in this alleged scheme are virtually non-existent. Plaintiffs allege that Bentov "oversaw" "an online CryptoZoo community" and "promised future updates to the community that were never fulfilled," among other unspecified "false affirmations." (*Id.* ¶¶ 2, 192, 207.) Plaintiffs also allege that Bentov "managed various developers" and that Defendants generally (but "mostly" Bentov) "direct[ed]" work done by a developer "out of" Texas, BlockOps, LLC ("BlockOps") for "projects related to CryptoZoo." (*Id.* ¶¶ 192, 209.) Plaintiffs fail to allege a single specific public-facing statement that Bentov made to any Plaintiff upon which any Plaintiff relied. (*See generally* FAC.)

The same holds true for Levin. Plaintiffs allege a single public-facing conversation that Levin had with Paul on May 14, 2022 during which they (both, apparently) stated they had "[n]ever given up" and were "working on [CryptoZoo] daily." (*Id.* ¶ 210.) Levin allegedly further stated: "Let our actions speak for ourselves," "[Defendants] said they are going to do something, they're gonna do it," and Defendants are "long-term thinkers." (*Id.*) Plaintiffs do not allege that a single Plaintiff heard or relied on these statements. (*See generally* FAC.) In fact, this conversation occurred ***after all but one*** of the 140 Plaintiffs purchased their CryptoZoo Products.

**Page 4 of 21**

(*See id*. ¶ 158.) Beyond that, Plaintiffs allege that (1) Levin is Paul's manager and a founder of CryptoZoo Inc.; (2) Levin hired BlockOps; and (3) Levin and Paul, "potentially in conjunction with other Defendants" engaged in other unrelated "cryptocurrency and NFT related" "scams." (*Id*. ¶ 16, 186.)

### A.      Plaintiffs' Claims

On February 2, 2023, Holland brought his original Complaint for fraud, express and implied breach of contract, unjust enrichment,[4] negligence, fraudulent misrepresentation, conspiracy to commit fraud, and violation of Texas' Deceptive Trade Practices Act ("DTPA"). (Dkt No. 1.) After Levin and Bentov moved to dismiss the Complaint on personal jurisdiction grounds (Dkt. No. 23.), Plaintiffs sought leave to file the FAC, which the Court granted. (Dkt. Nos. 60, 80.) The FAC adds 139 Plaintiffs and 19 claims, including claims under the consumer protection laws of 12 additional states, and claims under the Exchange Act, RICO, and the CEA.[5] The proposed class consists of "[a]ll persons who purchased Zoo tokens and/or CryptoZoo NFTs from June 11, 2021 through (at least) January 4, 2024." (FAC ¶ 222.)

Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1332, the Exchange Act, and the CEA, and allege that the Court has personal jurisdiction because each Defendant "either conducts business in and maintains operations in this District, is an individual who either is present in this District for jurisdictional purposes, or has sufficient minimum contacts with this District." (*Id*. ¶¶ 32-33.) Plaintiffs assert that venue is proper under 28 U.S.C. § 1391 and Section 27 of the Exchange Act because their claims "arose in this district," and "Defendants have substantial contacts with" and "engag[e] in activities having an effect in this District." (*Id*. ¶ 34.)

---

[4] "[U]njust enrichment is not a distinct independent cause of action but simply a theory of recovery." *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied).
[5] The FAC also adds a claim for aiding and abetting fraud. (FAC ¶¶ 289-92.)

### B.      Levin and Bentov Do Not Have Minimum Contacts With Texas

Plaintiffs do not—and cannot—establish that Levin or Bentov have sufficient ties to Texas, let alone this District. Holland's original Complaint conceded that Levin and Bentov both reside in California. (Dkt. No. 1 ¶¶ 23, 26; *see* Exhibit 1 [Declaration of Jeffrey Levin ("Levin Decl.")] ¶ 2; Exhibit 2 [Declaration of Ophir Bentov ("Bentov Decl.")] ¶ 2.) Plaintiffs' FAC conspicuously omits these facts, but it is beyond dispute that Levin and Bentov have never: (1) lived or worked in Texas; (2) maintained a business office in Texas; (3) owned or leased property in Texas; (4) paid or owed any taxes to Texas or any of its political subdivisions; (5) been required to maintain, or maintained, a registered agent for service in Texas; or (6) been a party to a lawsuit in Texas, except for this case. (Levin Decl. ¶¶ 2, 4–9; Bentov Decl. ¶¶ 2, 4–9.)

Bentov has never so much as traveled to Texas, and Levin has spent less than two weeks total in Texas in the past approximately 10 years. (Bentov Decl. ¶ 3; Levin Decl. ¶ 3.) Levin and Bentov did not promote, communicate about, or engage in any other conduct related to CryptoZoo while physically present in Texas. (Levin Decl. ¶¶ 3, 9; Bentov Decl. ¶¶ 3, 10.) Neither Levin nor Bentov directly targeted Texas residents in any communications identified in the FAC, nor did they know that any specific players of the game, including any of Plaintiffs, were based in Texas. (Levin Decl. ¶¶ 9–11; Bentov Decl. ¶¶ 10–12.) Levin was not in Texas when he made the oral statements regarding CryptoZoo that are quoted in the FAC. (FAC ¶ 210; Levin Decl. ¶ 9). All actions Bentov undertook for the game occurred in California. (Bentov Decl. ¶ 10.) Plaintiffs do not allege otherwise.

### III.      THE COURT LACKS PERSONAL JURISDICTION OVER LEVIN AND BENTOV

In federal question cases where, as here, the federal statutes contain a service of process provision, the court must look to those provisions to determine whether personal jurisdiction exists over an out-of-state defendant. *See Lovett v. Sanderson*, 184 F.3d 819 (5th Cir. 1999).

Otherwise, a court can exercise personal jurisdiction over a nonresident defendant only if: "(1) the nonresident defendant is amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the due process clause of the fourteenth amendment." *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985). "Because the Texas long-arm statute has been interpreted to extend to the limits of due process, the principal question [] is whether the assertion of jurisdiction over [a defendant] is constitutionally permissible." *Jones v. Petty-Ray Geophysical Geosource*, *Inc.*, 954 F.2d 1061, 1067–68 (5th Cir. 1992) (citation omitted). The party invoking the court's jurisdiction—*i.e.*, Plaintiffs—bear the burden of establishing jurisdiction. *See, e.g.*, *Energium,* 2023 WL 6202043, at *2.

A.    **Plaintiffs Fail to Establish Personal Jurisdiction Over Levin and Bentov For Plaintiffs' Federal Claims**

Plaintiffs cannot establish personal jurisdiction over Levin or Bentov under RICO, the Exchange Act, or the CEA. The Plaintiffs based outside the United States have not alleged a "domestic" injury or transaction, and the Plaintiffs based in the United States fail to state a "colorable" claim. Neither group can avail itself of the statutes' nationwide service of process provisions.

1.    **The International Plaintiffs Cannot Assert Federal Claims**

There is a presumption against extraterritorial application of federal statutes. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.") Thus, to state a claim under RICO, a plaintiff must "allege and prove a domestic injury to business or property." *RJR Nabisco v. European Community*, 579 U.S. 325, 354 (2016). "[I]njury to intangible assets owned by one residing abroad" is not a domestic injury under RICO. *See Gracia v. Lion Mexico Consolidated L.P.*, 2018 WL 6427350, at *7 (W.D. Tex. Sept. 14, 2018) (citing *Armada (Singapore) PTE Ltd. v. Amcol Int'l*, 885 F.3d 1090, 1094-95 (7th Cir. 2018)).

Likewise, to state a claim under the Exchange Act and the CEA, a plaintiff must allege a "domestic transaction." *Morrision*, 561 U.S. at 267 (Section 10(b) of the Exchange Act applies only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities."); *see also Loginovskaya v. Batratchenko*, 764 F.3d 266, 272 (2d Cir. 2014) (holding that a private cause of action under the CEA requires a "domestic transaction."). An "investment" in a United States-based venture while a foreign individual is outside the United States is not a "domestic transaction." *Aes v. 4G Companies*, 2012 WL 949040, at *7 (S.D. Tex. Mar. 20, 2012) (dismissing Exchange Act Section 10(b) and Rule 10b-5 claims).

Here, 103 Plaintiffs allege that they "resided" and "initially purchased CryptoZoo Products" outside the United States. *See, e.g.*, FAC ¶ 184 ("Plaintiff Diego Villalba resided in Madrid, Spain where he initially purchased CryptoZoo Products from Defendants on January 21, 2022. Mr. Villalba invested two hundred fifty dollars ($250.00) and lost two hundred fifty dollars ($250.00).") These Plaintiffs do not—and cannot—allege a "domestic" injury or transaction. They thus cannot bring claims under RICO, the Exchange Act, or the CEA, and cannot avail themselves of the statutes' nationwide service of process provisions.

### 2.    The Domestic Plaintiffs Do Not Assert "Colorable" Federal Claims

The remaining 37 domestic Plaintiffs cannot establish personal jurisdiction over Levin or Bentov under the federal statutes either. "'A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him.'" *Energium Health v. Gabali*, 2023 WL 6202043, at *4 (N.D. Tex. Sept. 22, 2023) (citing *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)). "'In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause.'" *Energium*, 2023 WL 6202043, at *4 (citing *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex*

*Corp.)*, 124 F.3d 619, 627 (4th Cir. 1997)). RICO, the Exchange Act, and the CEA each contain personal jurisdiction provisions that provide for nationwide service of process. 18 U.S.C. § 1965(b) (RICO); 15 U.S.C. § 78aa(a) (Exchange Act); 7 U.S.C. § 25(c) (CEA).

Before a plaintiff can take advantage of these nationwide service of process provisions, however, the plaintiff must first assert a "colorable" claim under each statute. *See Fernandez-Lopez v. Hernandez*, 2020 WL 9396487, at *8 (W.D. Tex. Nov. 20, 2020) (holding that plaintiff could not rely on RICO's venue or service of process provisions because plaintiff failed to assert a colorable RICO claim) (collecting cases); *San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc*., 979 F.2d 1356, 1358 (9th Cir. 1992) (addressing the Exchange Act's nationwide service of process provision); *Cox v. CoinMarketCap OPCO, LLC*, 2024 WL 3748982, at *11 (9th Cir. Aug. 12, 2024) (addressing the CEA's nationwide service of process provision). This approach is commonly used to address nationwide service of process provisions in federal statutes (and makes good sense given the limited nature of federal court jurisdiction). *See Fernandez-Lopez*, 2020 WL 9396487, at *9 (citing *FernDenny's, Inc. v. Cake*, 364 F.3d 521, 524 (4th Cir. 2004) (addressing ERISA's nationwide service of process provision); *NGS Am., Inc., v. Jefferson*, 218 F.3d 519, 524-25 (6th Cir. 2000) (same); *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (addressing 29 U.S.C. § 1451)).

To determine whether a plaintiff has alleged a "colorable" claim, courts look to the standard set forth in *Bell v. Hood*, 327 U.S. 678, 682-83 (1946), and may dismiss federal claims on jurisdictional grounds if it finds: "(1) that the federal claim is immaterial and made solely for the purpose of obtaining jurisdiction, or (2) that the federal claim is wholly insubstantial and frivolous." *Fernandez-Lopez*, 2020 WL 9396487 at *9 (quoting *Fellows v. Universal Rests., Inc*., 701 F.2d 447, 449 (5th Cir. 1983)).

"The first exception, that the federal claim is immaterial and made solely for the purpose of obtaining federal jurisdiction, usually arises where a federal claim is joined with primarily state claims, and it does not apply where the [federal or constitutional] claim, whatever its merit or substance, is the essence of the action." *Id.* (citing *Miller v. Stanmore*, 636 F.2d 986, 989 (5th Cir. 1981)). "A determination of the second exception requires application of a two pronged test: a federal question may be insubstantial either (1) because it is obviously without merit, or (2) because it is clearly foreclosed by previous decisions of the Supreme Court." *Id.* (citing *Miller*, 636 F.2d at 989, and *Young v. Hosemann,* 598 F.3d 184, 188 (5th Cir. 2010)). A federal claim is made "solely for the purpose of obtaining personal jurisdiction" where there is "insufficient factual or legal substance" to support those claims. *Id.* at *12 (applying this test to RICO claim).

### a.        Plaintiffs Fail to Allege a "Colorable" RICO Claim

Plaintiffs' RICO claim, which consists of just eight paragraphs out of the 531 that comprise the FAC, fails to clear the "colorable" standard by a mile, including because RICO claims that sound in fraud must satisfy the requirements of Rule 9(b). *See, e.g.*, *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). In *Fernandez-Lopez*, for example, the court noted the "widely recognized" and "sound approach" that "a plaintiff must first present a 'colorable' RICO claim in order to take advantage of the nationwide personal jurisdiction" provision, and held that the plaintiffs' "insufficiently pleaded complaint prevents them from relying on § 1965." 2020 WL 9396487 at *8, 13. The plaintiffs alleged "nothing more than multiple acts that are part of a single legal transaction" that occurred within a short duration of time. *Id.* at *10. Allegations regarding subsequent conduct that plaintiffs "threw in" did not salvage their RICO claim because they did not "implicate any of the [d]efendants" in the illegal acts pled in the complaint. *Id.* at *11. The plaintiffs also failed to adequately allege an enterprise that "exist[ed] apart from the specific allegations of illegality or wrongdoing." *Id.* at *12. The court found the RICO claim was

thus "immaterial and made solely for the purpose of obtaining personal jurisdiction." *Id.*

Here, Plaintiffs allege that Paul and Levin, grouped together virtually without distinction, led a "criminal enterprise," in which all Defendants supposedly participated, by "engag[ing] in a pattern and practice of cryptocurrency and NFT-related rug-pulls and pump-and-dumps," including "Dink Doink; Liquid Marketplace; F*** Elon; EMAX; OMI; and Elon Gate." (FAC ¶¶ 511-512.) Plaintiffs further allege that "Paul and Levin either individually or through agents invested in each, Paul would make an appearance touting each, and then they sold the investments after Paul's celebrity would make price [*sic*] of each jump after this public support." (*Id.* ¶ 513.) On this basis, Plaintiffs aver that Defendants "managed and operated CryptoZoo through a pattern of racketeering activity" and "employed such criminal conduct as their regular way of doing business," including by "transfer[ring]" Plaintiffs' funds "to profit off their misrepresentations and to conceal the nature of their scheme." (*Id.* ¶¶ 514-16.)

As explained in Paul's Motion to Dismiss, Plaintiffs' threadbare allegations come nowhere close to alleging a pattern of racketeering activity or a RICO enterprise, as required under the Act. (Paul MTD at 17-23.) Plaintiffs fail to identify ***any*** specific act that Levin undertook in connection with these alleged schemes, including how they worked, what public statements were made, or how each Defendant allegedly participated. Like much of the rest of the FAC, the RICO allegations do not even mention Bentov by name. As in *Fernandez-Lopez*, Plaintiffs' RICO claim is utterly lacking in factual or legal support and the Court should "not allow the Plaintiffs to couch their claims as falling under RICO simply for the purpose of obtaining jurisdiction over the Defendants and attaining the venue of their choice." 2020 WL 9396487 at *12.

b.      <u>**Plaintiffs Have Failed to Allege "Colorable" Claims Under the Exchange Act or the CEA**</u>

Plaintiffs' Exchange Act and CEA clams fare no better. Plaintiffs assert two claims under

the Exchange Act—for securities fraud under Section 10(b) and Rule 10b-5, and for control person liability under Section 20(a). According to Plaintiffs, these claims "seek to hold Defendants liable for intentionally (or with deliberate recklessness) issuing false and misleading statements for the purpose of inducing investors to purchase Zoo Tokens and/or CZ NFTs, and/or perpetuating a fraudulent scheme or device upon Plaintiffs and the Class." (FAC ¶ 480.)

As explained in Paul's Motion to Dismiss, Plaintiffs fail to allege a colorable claim under Section 10(b) or Rule 10b-5 because (1) NFTs and Zoo Tokens are not securities and Plaintiffs fail to allege sufficient facts to show otherwise; and (2) Plaintiffs have failed to plead these claims with particularity, as required by the Private Securities Litigation Reform Act of 1995 and Federal Rule of Civil Procedure 9(b). (*See* Paul MTD at 23-30.) Plaintiffs' failure to plead these claims with particularity is especially egregious as to Levin and Bentov.

To state a fraud-based claim under section 10(b) and Rule 10b–5, a plaintiff must plead "(1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Such claims must be pled with specificity under Federal Rule of Civil Procedure 9: "plaintiffs must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Id.* (internal citation omitted). In multi-defendant cases, this means that the plaintiff must allege a materially false or misleading statement **on the part of each defendant.** *See id*. at 365.

As noted above, Plaintiffs fail to identify a **single** specific statement made by Bentov about anything to anyone. As to the **one** public-facing conversation Levin supposedly had on May 14, 2022 (*see, supra*, Sec. II), Plaintiffs fail to explain why or how Levin's alleged statements—that Levin and Paul had "[n]ever given up" and were "working on [CryptoZoo]

daily," Defendants' actions would "speak for [them]selves," "Defendants said they are going to do something, they're gonna do it," and Defendants are "long-term thinkers"—misrepresented any material fact, were made with scienter, or that any Plaintiff even heard them, let alone relied on them. (*See* Paul MTD at 27-30.) Likewise, Plaintiffs' Section 20(a) claim for control person liability against Levin fails because Plaintiffs have failed to plead a Section 10(b) or Rule 10b-5 claim by any person "controlled" by Levin, and because Plaintiffs have asserted a Section 10(a) claim against him. (*See id.* at 30-31.)

Finally, Plaintiffs have failed to plead a colorable claim under the CEA, 7 U.S.C. § 6*o*. Plaintiffs allege that Defendants violated Section 6*o* by, among other things, "providing Plaintiffs with misleading statements that misrepresented the development of the CryptoZoo game and support for the CryptoZoo community" and "misrepresenting the assets invested by the Founder Defendants." (FAC ¶ 520(b), (d).)

As explained in Paul's Motion to Dismiss, the FAC fails to establish that the CEA applies here because Plaintiffs' alleged purchases of Zoo Tokens and NFTs were "spot sales," and not contracts for future delivery. (*See* Paul MTD at 31-33.) Moreover, as with Plaintiffs' Exchange Act claims, claims asserted under Section 6*o* must be pled with specificity under Rule 9, and must specify which specific representation each Defendant made. *See U.S. Commodity Futures Trading Comm'n v. M25 Inv. Inc.*, 2010 WL 769367, at *1-2 (N.D. Tex. Mar. 6, 2010). As above, Plaintiffs have failed to point to any specific misstatement that Levin or Bentov allegedly made regarding the development of CryptoZoo or support for the community, or the assets invested by the Founder Defendants.

Accordingly, Plaintiffs have failed to plead a colorable federal claim and cannot avail themselves of the statutes' nationwide service provisions to establish personal jurisdiction over Levin or Bentov.

**B.**    **The FAC Fails to Establish Personal Jurisdiction Over Levin and Bentov For Plaintiffs' State-Law Claims**

Plaintiffs cannot establish personal jurisdiction on any other basis because Levin and Bentov do not have minimum contacts with Texas. Under the Fourteenth Amendment's Due Process Clause, a court can exercise personal jurisdiction only if: (1) a defendant has minimum contacts with Texas; and (2) subjecting the defendant to jurisdiction in Texas is consistent with "traditional notions of fair play and substantial justice." *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The "minimum contacts" requirement is the constitutional touchstone of personal jurisdiction and ensures that a defendant will be "haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

**1.**    **Levin and Bentov Do Not Have "Minimum Contacts" With Texas**

A nonresident's "minimum contacts" with a forum can give rise to "general" or "specific" personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Freudensprung*, 379 F.3d at 343. In response to Levin and Bentov's original motion to dismiss for lack of personal jurisdiction (Dkt. No. 23), Plaintiffs did not assert that they had general jurisdiction over any Defendant, arguing solely that Defendants were subject to specific jurisdiction in Texas. Levin and Bentov therefore address only specific jurisdiction below, although Plaintiffs cannot establish general jurisdiction over either Defendant regardless.[6]

---

[6] As Levin and Bentov argued previously, Plaintiffs cannot establish general jurisdiction because neither Defendant is domiciled in Texas (*Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011)) or has contacts with the state that are "sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction." *Stuart*, 772 F.2d at 1191. (*See* Dkt. No. 36.)

To establish personal jurisdiction, a plaintiff must allege "(1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants contacts with the forum state." *Freudensprung*, 379 F.3d at 343 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).

As discussed below, Plaintiffs cannot satisfy either prong necessary for this Court to exercise specific jurisdiction over Levin or Bentov.

### a.        Plaintiffs' Contract Claims

To determine whether a court has specific jurisdiction over a nonresident defendant for a breach of contract claim, the Fifth Circuit considers factors such as the place of contracting, the place of performance, and the law governing the contract. *See Jones*, 954 F.2d at 1068–69. As the Supreme Court has instructed, courts should employ a "'highly realistic' approach" in making this determination and take into account "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts" with the forum state. *See Burger King*, 471 U.S. at 478–79; *see also Stuart*, 772 F.2d at 1192–94 (holding that the court lacked specific jurisdiction over nonresident who contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (holding that the court lacked jurisdiction over nonresident software developer who allegedly breached royalty agreement with Texas software manufacturer).

Importantly, "merely contracting with a resident of the forum state is insufficient [] to subject the nonresident to the forum's jurisdiction." *Colwell Realty Invs., Inc. v. Triple T Inns of*

*Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986) (citing *Burger King*, 471 U.S. at 478–79); *see Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that the court lacked specific personal jurisdiction even though nonresident entered into a contract with Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communications with the plaintiff in Texas). Indeed, the Fifth Circuit has "repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung*, 379 F.3d at 344 (holding there was no specific jurisdiction over nonresident defendant who entered into a contract with a Texas corporation, communicated with the Texas corporation in carrying out the contract, agreed to arbitrate any disputes arising out of the contract in Texas, and wired payments under the contract to Texas).

Levin and Bentov's contacts with Texas here are far less substantial than in *Holt*, *Freudensprung*, and *Stuart*, all of which held that the court lacked specific jurisdiction over the nonresident defendants. Plaintiffs' contract claims are premised on Defendants' alleged online representations that the CryptoZoo game would be functional and supported, and that Defendants would "strive to do the best for the project and the community" under CryptoZoo's Terms of Service. (*See* FAC ¶¶ 201, 245-47, 259 & Ex. 1.) While these allegations are insufficient to establish the existence of any contract (*see* Paul MTD at 34-39),[7] Plaintiffs do not allege that Levin or Bentov individually entered into, performed, or breached any purported contract with Plaintiffs in Texas. Indeed, Levin and Bentov did not conduct any business related to CryptoZoo

---

[7] While not the focus of this motion, Levin and Bentov will challenge the sufficiency of Plaintiffs' allegations at the appropriate time.

while physically present in Texas, nor did they target Texas residents in advertising or promoting the game. (*See* Levin Decl. ¶¶ 3, 9–11; Bentov Decl. ¶¶ 3, 10–12.)

Thus, to the extent Plaintiffs' purported contract claims relate to Texas at all, it is though the mere fortuity that Holland and two other Plaintiffs happen to reside in Texas and purchased CryptoZoo Products there.[8] That is insufficient to subject Levin and Bentov to specific jurisdiction. *See, e.g.*, *Freudensprung*, 379 F.3d at 344.

### b.        Plaintiffs' Intentional Tort Claims

This Court cannot exercise specific jurisdiction over Levin or Bentov under the "effects test" either, which provides that personal jurisdiction may be proper where "effects" are felt inside the forum state as a result of the defendant's tortious activity outside the forum state. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)). The Fifth Circuit has cautioned that the effects test is "but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell v. Lidov,* 317 F.3d 467, 473 (5th Cir. 2002) (applying the "effects test" and determining the court lacked specific jurisdiction over nonresidents in Texas). The test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Panda Brandywine Corp. v. Potomoc Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (quoting *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997)). Moreover, "[s]uch jurisdiction is rare" and the Fifth Circuit has "expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (no personal jurisdiction in Texas under "effects

---

[8] The FAC vaguely alleges that two Plaintiffs "resided in the United States." (FAC ¶¶ 57, 134.) It is not clear whether these Plaintiffs reside in Texas or not.

test") (citing *Panda Brandywine Corp.*, 253 F.3d at 870 (no specific jurisdiction over nonresident in Texas for plaintiffs' tortious interference with contract claims)).

Courts can exercise specific jurisdiction under the effects test when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to the plaintiff; and (3) the defendant expressly aimed [its] conduct at the forum, so that the forum can be said to be the focal point of the tortious activity." *Nat. Dynamics, LLC v. Conquest Int'l, Inc.*, 2013 WL 12077798, at *4 (W.D. Tex. July 3, 2013) (citing *Calder*, 465 U.S. at 789). The relevant inquiry "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way[,]" and to inquire otherwise "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Walden,* 571 U.S. at 289-90.

Here, Plaintiffs bring tort claims for fraud, negligence, fraudulent misrepresentation, conspiracy,[9] and aiding and abetting fraud, based on Defendants' alleged misrepresentations that they would create a functioning and well-supported game and would strive to do the best for the CryptoZoo community.[10] (*See, e.g.*, FAC ¶¶ 236, 273, 279, 286, 290.) As described above, these

---

[9] Conspiracy allegations do not relieve Plaintiffs of their burden to prove that each and every Defendant has sufficient minimum contacts with Texas. *See Great Am. Food Chain, Inc. v. Andreottola*, 2015 WL 493758, at *7 (N.D. Tex. Feb. 4, 2015) ("[B]ecause the focus must be on each individual defendant's contacts with the state, personal jurisdiction does not arise from any [one defendant's] acts that may have been directed at Texas. Rather, Plaintiffs must show that either the alleged conspiracy or [each defendant's] part in the conspiracy was related to or arose out of their contacts with Texas.") (internal citations omitted); *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) ("To establish its prima facie case of specific personal jurisdiction, [plaintiff] was required to demonstrate that [defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas." (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir.1999))).

[10] As noted, Plaintiffs' claims under 13 states' consumer protection statutes, including DTPA, are based on the same allegations as Plaintiffs' breach of contract and tort claims. (*See* FAC ¶¶ 293-479.) The same jurisdictional analysis therefore applies to Plaintiffs' consumer protection claims, and they should also be dismissed. *See Hazim v. Schiel & Denver Book Publishers*, 647 F. App'x

allegations fail to establish that Levin or Bentov "expressly aimed" any of their conduct to Texas such that Texas is the "focal point" of the alleged tortious conduct.

Plaintiffs' attempt to avoid this conclusion—by alleging that Levin hired a software development company based in Texas and Bentov oversaw some portion of this work (*id.* ¶ 209) —does not save Plaintiffs' claims. These allegations fail to allege, let alone establish, that Levin or Bentov undertook these actions in their individual capacity, as opposed to for the benefit of CryptoZoo, Inc. And Fifth Circuit precedent makes clear that "merely contracting with a resident of the forum state is insufficient [] to subject the nonresident to the forum's jurisdiction." *See Colwell,* 785 F.2d at 1334; *Burger King,* 471 U.S. at 477–79. Thus, Texas is not the "focal point" of Levin or Bentov's alleged tortious activity. *See, e.g.*, *Revel*, 317 F.3d at 473.

Plaintiffs have not and cannot show that Levin or Bentov have minimum contacts with Texas. Accordingly, this Court lacks specific personal jurisdiction over them.

### 2. Forcing Levin and Bentov to Defend This Action in Texas Would Offend Traditional Notions of Fair Play and Substantial Justice

The Court need not analyze whether exercising jurisdiction would be fair and reasonable in light of the forum's interest in the litigation because neither Levin nor Bentov have sufficient minimum contacts with Texas. *See Stross v. Lynn*, 2020 WL 4192271, at *5 (W.D. Tex. June, 3, 2020), *R&R adopted*, 2020 WL 10058202 (W.D. Tex. Aug. 7, 2020); *Wilson*, 20 F.3d at 651 n.7 ("Because we hold that [nonresidents] do not have sufficient related or unrelated minimum contacts with Texas, we need not address . . . 'traditional notions of fair play and substantial justice.'" (citations omitted)). If the Court were to consider this inquiry, requiring Levin and Bentov to defend against Plaintiffs' claims in Texas would be unfair and unreasonable because they do not have sufficient contacts with Texas as a matter of law. (Levin Decl. ¶¶ 2–11; Bentov

---

455, 457 (5th Cir. 2016) (dismissing copyright and trademark infringement, breach of contract, unjust enrichment, tortious interference with contract, unfair competition, and violations of the DTPA for lack of personal jurisdiction).

Decl. ¶¶ 2–12.) If this matter were to proceed in Texas, it would greatly inconvenience Levin and Bentov, both of whom live elsewhere. (Levin Decl. ¶ 2; Bentov Decl. ¶ 2.) Texas has very little interest in adjudicating this dispute involving communications and conduct by out-of-state actors, none of which was expressly directed to Texas or any Plaintiff based in Texas. In light of these practical considerations, subjecting Levin and Bentov to jurisdiction in Texas would offend traditional notions of fair play and substantial justice.

## IV.    **CONCLUSION**

For the reasons set forth above, Levin and Bentov respectfully request that the Court grant this motion to dismiss all claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Respectfully submitted,

/s/ Shelby O'Brien
SHELBY O'BRIEN
ENOCH KEVER PLLC
7600 N. Capital of Texas Highway
Building B, Suite 200
Austin, Texas 78731
Telephone: (512) 615-1223
Facsimile: (512) 615-1198
sobrien@enochkever.com

/s/ Sarah E. Moses
CHRISTOPHER CHATHAM
BRAD SEILING
SARAH E. MOSES
(*Pro Hac Vice*)
MANATT, PHELPS, & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
cchatham@manatt.com
bseiling@manatt.com
smoses@manatt.com

Attorneys for Defendants Jeffrey Levin and Ophir Bentov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of September 2024, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a notice of electronic filing to all counsel of record.

/s/ Sarah E. Moses_____
Sarah E. Moses