**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§ | |
| *Plaintiff*, | §<br>§ | |
| vs. | §<br>§ | Civil Action No. 1:23-cv-00110 |
| CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendants*. | §<br>§<br>§ | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS
JEFFREY LEVIN AND OPHIR BENTOV'S CONSOLIDATED
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, AND
<u>ALTERNATIVE MOTION FOR LEAVE TO AMEND</u>**

Plaintiffs, individually and on behalf of all other persons similarly situated, oppose Defendants Jeffrey Levin and Ophir Bentov's ("Defendants") motion to dismiss for lack of personal jurisdiction [Dkt. 87] ("Motion") and alternatively move for jurisdictional discovery and leave to amend:

1.      Defendants' Motion asserts that this Court cannot maintain personal jurisdiction over Defendants here because Plaintiffs' First Amended Class Action Complaint ("Complaint") fails to adequately allege that the foreign Plaintiffs have a domestic injury or that the domestic Plaintiffs have a) presented a "colorable" federal claim or b) demonstrated that Defendants have "minimum contacts" with Texas to sustain their state law claims. These assertions have no merit for the reasons stated below.

**I.**     **The Court has personal jurisdiction over Plaintiffs' federal claims.**

        A.     <u>The Court has jurisdiction over the foreign Plaintiffs' federal claims.</u>

2.     Defendants assert that the foreign Plaintiffs may not bring the federal claims raised in the Complaint because they lack a "domestic injury." The foreign Plaintiffs have met the pleading standards to show that their injuries originated in or are grounded in the United States such that they may benefit from the United States statutes raised.

3.     The facts alleged in the Complaint sufficiently ground the injury suffered by the foreign Plaintiffs such that they may pursue their RICO claims. In *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023), the Supreme Court expanded on the precedent it set in *RJR Nabisco v. European Cmty.*, 579 U.S. 325, 354 (2016), stating that "in assessing whether there is a domestic injury, courts should engage in a case-specific analysis that looks to the circumstances surrounding the injury." The Court continued, "If those circumstances sufficiently ground the injury in the United States, such that it is clear the injury arose domestically, then the plaintiff has alleged a domestic injury." 599 U.S. at 545.

4.     No Court in the Fifth Circuit has made a ruling concerning foreign RICO claims since the *Yegiazaryan* decision was issued, but in an analogous case about the fraudulent sale of cryptocurrency, the Southern District of New York held that the domestic injury burden was met when the plaintiff alleged that the defendant organization was incorporated in the United States, at least one individual defendant lived in the United States, the same defendant made fraudulent statements in the United States, and at least two individual defendants met in the United States concerning the fraudulent scheme. *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-cv-4650 (ER), 2024 U.S. Dist. LEXIS 156487, at *41 (S.D.N.Y. Aug. 29, 2024).

5.　　　Plaintiffs' allegations ground Plaintiffs' injury in the United States. Corporate Defendant CryptoZoo, Inc., is a United States entity incorporated in the State of Delaware, and all individual Defendants, including Defendants Levin and Bentov, are United States citizens currently residing in the United States. Compl. ¶ 33. *See also* Usworn Decl. of Jeffrey Levin, Dkt. 87-1 at ¶ 2 ("I reside in Los Angeles, California"); Unsworn Decl. of Ophir Bentov, Dkt. 87-2 at ¶ 2 ("I reside in Los Angeles, California"). Defendants together made fraudulent statements and promoted their fraudulent scheme in the United States through social media posts and Defendant Paul's YouTube channels. Compl. ¶¶ 13, 15–16, 19, 200. And finally, Defendants met in the United States to discuss and further the fraudulent scheme that is the basis of the RICO claims. Compl. ¶ 195. The injury suffered by Plaintiffs arose domestically.

6.　　　The foreign Plaintiffs have further adequately pled their allegations under the Exchange Act and the Commodity Exchange Act. While *Morrison v. National Australia Bank, Ltd.,* limits recovery to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities," certain crypto asset exchanges, including Binance through which Plantiffs purchased their CryptoZoo products, have been held by United States courts to be "domestic exchanges" under *Morrison*. 561 U.S. 247, 267 (2010); *see also Williams v. Binance*, 96 F.4th 129, 137 (2d Cir. 2024) (holding Binance to be a United States exchange because the servers on which trade occurs are in the United States). *See also* Compl. ¶¶ 217, 225.

　　　　　　　　B.　　　The Complaint presents "colorable" federal claims.

7.　　　Rather than presenting an in-depth analysis of the federal claims brought in the Complaint, Defendants rely on the arguments raised in Defendant Logan Paul's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs will likewise

rely on the counterarguments presented in their Response to Defendant Paul's Motion to Dismiss, but will address the arguments raised specific to Defendants in this Response.

i.      *Plaintiffs properly alleged RICO claims.*

8.      Plaintiffs' Response to Defendant Paul's Motion to Dismiss outlines the ways in which Plaintiffs properly allege RICO enterprise and a racketeering pattern in their Complaint and Plaintiffs will not exhaust the Court by reiterating those arguments here. Yet Plaintiffs' RICO claims are properly levied and alleged enough against all Defendants, including Defendants Levin and Bentov.

9.      Taking a cue from Defendant Paul's Motion to Dismiss, Defendants' arguments against Plaintiffs' RICO claims require the Court to engage in an inappropriate parceling off particular sections of Plaintiffs' Complaint rather than viewing it as a whole. The Complaint fully lays out each Defendant's particular role in the CryptoZoo enterprise, which engaged in the pattern of crypto asset pump-and-dump schemes.

10.     The Complaint states that Defendant Levin was "in charge" of running the CryptoZoo scheme, including hiring the software development team brought on to design the CryptoZoo game. Compl. ¶ 186. This team never produced an operational game, likely because Defendants refused to pay for this development team's services. *Id*. at ¶ 209, 211. Additionally, Defendant Levin had a 10% ownership interest in CryptoZoo and provided experiential insight into avoiding "SEC eyeballs." *Id*. at ¶¶ 191, 197. The Complaint likewise states that Defendant Bentov managed the various developers hired to produce a functional game and managed the CryptoZoo community in which all Defendants made fraudulent misrepresentations about the status of the game's development. Compl. ¶¶ 192, 210.

11.     The Complaint sufficiently lays out Defendants Levin and Bentov's participation in the fraudulent enterprise and details how they are culpable for the predicate acts on which Plaintiffs' RICO claims rest.

*ii.     Plaintiffs properly alleged Exchange Act and CEA claims*

12.     Plaintiffs' Response to Defendant Paul's Motion to Dismiss fully and completely addresses Defendants' assertion about CryptoZoo products' characterization as securities. The economic reality of Zoo Tokens and CZ NFTs is that they operate as securities.

13.     Defendants' assertion that Plaintiffs must provide a material misrepresentation physically made by every single Defendant to maintain Exchange Act claims is not supported by relevant law. The case on which Defendants rely concerns a plaintiff's attempt to tie broadly circulated, misleading statements regarding a large network of corporations to high-level executives. *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

14.     While true that "corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles," CryptoZoo, Inc., is an organization comprised of six individuals, all of whom Plaintiffs allege participated in the misleading promotion of the CryptoZoo game, as well as participated in the fraudulent market manipulation that resulted in Plaintiffs' injury. *Southland Sec. Corp.*, 365 F.3d at 365.

15.     Defendants cannot disclaim liability merely by having a single spokesperson make all public statements concerning the scheme. All Defendants, including Defendants Levin and Bentov, were responsible for the promotional materials, press releases, and public statements on which Plaintiffs relied when purchasing CryptoZoo products. Compl. ¶ 499, 507. Specifically, Plaintiffs allege that Defendant Levin is Defendant Paul's "manager" who was ultimately "in charge" of the entire CryptoZoo project, including Defendant Paul's promotions and public

statements. *Id*. at ¶ 186. Defendant Bentov managed the CryptoZoo community wherein promises regarding future updates that were never fulfilled were posted. *Id*. at ¶ 192.

16.     Moreover, regardless of any statements made or lack thereof, Rule 10b-5 of the Exchange Act applies in equal force to individuals who "employ any device, scheme, or artifice to defraud" or "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (quoting 17 C.F.R. § 240.10b-5). Defendants acts of artificially inflating the value of CryptoZoo products prior to public sale is a "scheme," "act," and "course of business" that "operates . . . as a fraud or deceit" upon potential purchasers of CryptoZoo products.

17.     Plaintiffs affirmatively alleged that Defendants secretly purchased CryptoZoo products before public release to artificially inflate the price at public release. Compl. ¶ 217. After the products were released and began to sell at this inflated price, Defendants sold their products for an immediate profit, which consequently drove the value of the products down for the remaining investors. *Id*.  Defendants also bought and sold CryptoZoo products in bulk as the scheme failed, which created a false surge in price in which Defendants could dump their products at the high price before driving the value down to zero as the market flooded with those products. *Id*. at ¶ 214. This manipulation of the market was a key part of Defendants' fraudulent scheme.

18.     Defendants' assertions about Plaintiffs' claims under the CEA fail for the same reasons stated in Plaintiffs' Response to Defendant Paul's Motion to Dismiss.

**II.      The Court has specific jurisdiction over Plaintiffs' state law claims.**

19.      Defendants likewise move for dismissal in asserting that this Court has no personal jurisdiction over Defendants. Plaintiff does not claim to have general jurisdiction over Defendants but does have specific jurisdiction, as explained below.

20.      As Defendants note,[1] the Fifth Circuit has articulated a three-step analysis for determining whether a court has specific jurisdiction over a defendant: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Which is the extent of relevant caselaw Defendants include regarding specific jurisdiction.

21.      Defendants instead cite stale caselaw that does not reflect the current state of the "minimum contacts" step of the analysis. The Fifth Circuit held minimum contacts are met:

> so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. Under that test, mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.

*Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) (internal citations and quotation marks omitted). Defendants cite cases from before or around the time *Ainsworth* was decided in support of their specific jurisdiction arguments and do not include this decade old caselaw.

---

[1] Defendants cite *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) for the specific jurisdiction analysis. Motion, p. 14.

22.     The affidavits Defendants provided are the only evidence supporting their position. *See* Dkt. 87-1, 87-2. In support of their previous Motion to Dismiss, Defendants stated "I have never hired any employees in the State of Texas." *See* Dkt. 23-2, 23-3, at ¶ 6. Defendants have removed those claims from their affadavits in support of the current Motion because they can no longer swear to that fact given the obvious proof that Defendants hired software developers based in Austin, Texas, to develop the CryptoZoo game. Compl. ¶ 186, 209. Defendants likewise did not attest that Cryptozoo employees, agents, contractors, or other entities related to Cryptozoo did not hire employees in Texas on its behalf. A "principal is charged both with the acts of an agent committed within the scope of his duties and with knowledge of such acts." *Duffie v. Wichita Cnty.*, 990 F. Supp. 2d 695, 722 (N.D. Tex. 2013).

23.     Defendants fail to note the Court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Here, it is not disputed Defendants through CryptoZoo delivered its products into the stream of commerce with the expectation that they would be purchased by or used by consumers across the world, including Texas. Additionally, Plaintiffs specifically alleged that Logan Paul conveyed to the other CryptoZoo founders that he was specifically worried about access to crypocurrency marketplaces being banned in Texas and losing out on that market. Compl. ¶ 212. Applying the *Ainsworth* standard, it was both foreseeable CryptoZoo would be purchased in Texas and that CryptoZoo had awareness that it was selling in the Texas Market—which provides a constitutionally sufficient basis for personal jurisdiction.

24.     Defendants also do not dispute Plaintiffs' allegations regarding each of Defendants' roles at CryptoZoo. Ophir Bentov admits he manages the CryptoZoo Inc. ("CryptoZoo")

community. Dkt. 87-2, ¶ 10. Logan Paul and Jeffrey Levin were founders of CryptoZoo [Compl. ¶¶ 185–86]—which still has yet to answer in this suit. Plaintiffs also alleged alter ego, principal-agent liability, and for the corporate veil to be pierced. *Id*., ¶¶ 43–44. Plaintiffs' allegations make clear Defendants were working jointly to defraud consumers behind the veil of CryptoZoo. *Id*., ¶¶ 3–31. The actions taken on behalf of CryptoZoo may therefore be imputed on each individual Defendant. Defendants do not address the agency or alter-ego issues.

25.     Plaintiffs essentially alleged Defendants failed to provide software/blockchain development that would function as represented by Defendants. So if both Defendants' affidivats and Plaintiffs' allegations are taken as true, Defendants could have used other CryptoZoo founders, agents, or affiliates to hire Texas residents on their behalf—which is uncontroverted—providing specific jurisdiction over Defendants. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *Russell v. 29 Prime, Inc.*, No. CIV.A. 13-12814-NMG, 2014 WL 3510291, at *2 (D. Mass. July 10, 2014) ("Despite the separate legal status of [defendant] and its resellers, the Court is not persuaded that defendant should be permitted to hide behind a transparent corporate shield for the purpose of avoiding personal jurisdiction…").

26.     Plaintiffs also alleged that CryptoZoo hired Texas-based employees or contractors for software/blockchain development—which directly relates to his claims—and at leat one founder of CryptoZoo visited Texas on CryptoZoo business.[2] Compl. ¶¶ 186, 209. CryptoZoo's hiring of Texas-based employees is direcly related to its need to create or provide the promised software.

---

[2] If given leave to amend, Plaintiff will include this information in its Amended Complaint.

27.     "A plaintiff does not have to establish personal jurisdiction by a preponderance of evidence when the Court does not hold an evidentiary hearing." *Le-Vel Brands, LLC v. Quintessential Biosciences, Inc.*, No. 3:18-CV-3322-K, 2019 WL 2578619, at *2 (N.D. Tex. June 24, 2019) (citing *Bonner v. Triple–S Mgmt. Corp.*, 661 F. App'x 820, 821–22 (5th Cir. 2016)). "[The Court] must accept the plaintiff's uncontroverted allegations, and resolve in [the plaintiff's] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id*. (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014)).

28.     Accordingly, resolving all conflicts in favor of Plaintiff's uncontroverted allegations, Defendants or agents or someone acting on their behalf, sold CryptoZoo products to consumers in Texas with the intent of selling to consumers in Texas—which is sufficient to confer specific jurisdiction over this case—and Defendants' Motion should be denied.

### III.     Alternatively, Plaintiffs ask the Court to grant jurisdictional discovery and leave to amend their complaint.

29.     A "court has discretion to permit a party to conduct jurisdictional discovery to resolve issues of fact raised by a motion to dismiss for lack of personal jurisdiction." *Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *4 (W.D. Tex. Aug. 10, 2020) (denying motion to dismiss and ordering jurisdictional discovery where plaintiff's allegations "suggest with reasonable particularity the possible existence of the requisite contacts"). Defendants do not deny one of their or CryptoZoo's agents, contractors, or employees could have reached out to people, or been employed, in Texas. If the Court is not satisfied that there is specific jurisdiction over Defendants based on the pleadings, Plaintiffs request the Court grant them jurisdictional discovery to determine the extent of Defendants' contacts with Texas and replead.

30.     Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave." *Callier v. SunPath Ltd.*, No. EP-

20-CV-00106-FM, 2020 WL 10285659, at *4 (W.D. Tex. Aug. 10, 2020). The court should "freely give leave when justice so requires." *Id*. "In determining whether leave to amend should be granted, the court can consider factors such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; and (5) futility of amendment." *Id*. "A court must have "substantial reason" to deny a request for leave to amend. *Id*.

31.     Again, if the Court is not satisfied that there is specific jurisdiction over Defendants, Plaintiffs request leave to amend their complaint to incorporate any limited jurisdictional discovery ordered by the Court. Amendment following jurisdictional discovery would be a good-faith attempt to strengthen pleadings in light of new information. There has not yet been repeated failure to cure deficiencies to overcome the liberal policy in favor of amendment. Amendment will not cause undue delay or undue prejudice given the early phase of proceedings.

**IV.      In conclusion, Plaintiffs request Defendants' Motion be denied.**

32.     Plaintiffs alleged uncontroverted bases for specific jurisdiction over Defendants in the Western District of Texas through Defendants' actions of selling CryptoZoo products to Texas residents with awareness they were selling to the Texas market. Alternatively, Plaintiffs request jurisdictional discovery and leave to amend their complaint. Accordingly, Plaintiffs ask the Court to deny Defendants' Motion and grant them all other and further relief to which they may be justly entitled.

Dated: October 16, 2024                Respectfully submitted,

                                       **ELLZEY & ASSOCIATES, PLLC**

                                       */s/ Jarrett L. Ellzey*
                                       Jarrett L. Ellzey
                                       Texas Bar No. 24040864
                                       jarrett@ellzeylaw.com
                                       Leigh S. Montgomery
                                       Texas Bar No. 24052214
                                       leigh@ellzeylaw.com
                                       Alexander G. Kykta
                                       Texas Bar No. 24107841
                                       alex@ellzeylaw.com
                                       1105 Milford Street
                                       Houston, Texas 77006
                                       Phone: (888) 350-3931
                                       Fax: (888) 276-3455

                                       **-AND-**

                                       **ATTORNEY TOM & ASSOCIATES**
                                       Tom Kherkher (*pro hac vice* forthcoming)
                                       Texas Bar No. 24113389
                                       tom@attorneytom.com
                                       5909 West Loop South Suite 525
                                       Houston, Texas 77401
                                       Phone: (855) 866-9467

                                       **ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(d), I hereby certify that, on October 16, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record. I further certify that the foregoing has been served the foregoing document on all counsel of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
