**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff*, | § § § | Civil Action No. 1:23-cv-00110-ADA |
| vs. | § § | |
| CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH, | § § § § § § § § | |
| *Defendants*. | § | |

**PLAINTIFFS' RESPONSE TO
DEFENDANT/CROSS-PLAINTIFF LOGAN PAUL'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**I. INTRODUCTION**

In his Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Motion"), Defendant Logan Paul has provided this Court with neither a factual nor a legal basis for dismissing Plaintiffs' First Amended Class Action Complaint ("Complaint"). Defendant Paul's basis of dismissal requires alternately ignoring or decontextualizing the facts Plaintiffs present, followed by improperly applying legal standards. Despite presenting the Court with over 50 pages of ink, Defendant Paul does not provide a legitimate basis for dismissal and his Motion to Dismiss must be denied. Alternatively, if this Court determines that Plaintiffs' Complaint falls short of the governing standard, Plaintiffs request an opportunity to file an amended complaint setting forth more facts, further supported by newly discovered documentary evidence, in support of their claims.

## II. LEGAL STANDARD

In reviewing a complaint on a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must consider all facts alleged in the complaint as true and construe the pleadings in a light most favorable to Plaintiffs. *Paselk v. Texas*, No. 4:12cv754, 2013 U.S. Dist. LEXIS 127420, at *14 (E.D. Tex. June 6, 2013) (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plaint statement of the claim showing that the pleader is entitled to relief." Although Rule 8(a)(2) requires more than labels and conclusions or "a formulaic recitation of the elements of a cause of action," it does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Twombly* and *Iqbal* did not abrogate the notice standard pleading of Rule 8(a)(2) but confirmed that Rule 8(a)(2) is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A claim should not be dismissed so long as there are "enough facts to state a claim to relief that is plausible on its face." *Bunch v. Mollabashy*, No. 3:13-CV-1075-G (BH), 2015 U.S. Dist. LEXIS 38717, at *13 (N.D. Tex. Mar. 26, 2015) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Paselk*, 2013 U.S. Dist. LEXIS 127420 at *14.

## III. ARGUMENT

Defendant Paul's Motion to Dismiss demands that the Court ignore or discount the many facts in Plaintiffs' Complaint and apply improper legal standards. Defendant Paul paints himself as a hapless victim of circumstance, but the specific and well-supported facts in the Complaint,

which the Court must construe as true, support the plausible inference that he is culpable for the harm alleged. Accordingly, Plaintiffs' claims fully satisfy the governing pleading standards and dismissal is inappropriate.

**A.      Plaintiffs' Complaint satisfies the pleading standard of Rule 8(a)(2).**

Plaintiffs' Complaint alleges sufficient facts that make their claims against Defendants plausible on their face. Based on the facts presented, the Court may make the reasonable inference that Defendants, including Defendant Paul, induced Plaintiffs into investing in CryptoZoo cryptocurrency and digital products on false pretenses. These false pretenses included Defendants advertising the cryptocurrency's use with a game they never provided despite continuously promising it would be released, claiming they were invested into CryptoZoo with non-existent special tokens that could not be transferred for 6 months, and representing that CryptoZoo was not another fraudulent cryptocurrency (such as the many other cryptocurrency projects Defendants were involved in). The Complaint plausibly shows that Defendants fraudulently took Plaintiffs money by promising significant return that they never intended to deliver, and dismissal under Rule 12 is inappropriate.

1.      <u>Plaintiffs' Complaint sufficiently pleads a factual basis for their claims against Defendants.</u>

Defendant Paul's request for dismissal begins by invoking an inapplicable and nonsensical pleading standard by which to measure the Complaint. Defendant Paul states the basis of dismissal must be the Complaint's lack of "ultimate facts," which is a standard Defendant Paul apparently made up. *See* Motion, ECF No. 84-1, p. 7 (in which Defendant Paul states in bold and underlined font that Plaintiffs' Complaint presents not "a single ultimate fact about any of their purchases to support their claims"). "Ultimate facts," as a legal term, describes the final facts of a case as determined by a factfinder from the evidence presented. "Ultimate facts" do not come into play in

a lawsuit until all the evidence has been presented; they are *not* necessary to adequately state a claim that is plausible on its face at the inception of a case and use of the term is inappropriate here.

Plaintiffs' well-pled Complaint meets the standard of Rule 8(a)(2) because it states all necessary facts to put Defendant Paul on notice of the claims against him. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). As an example of deficient pleading, Defendant Paul claims that Plaintiffs have not sufficiently pled facts showing that any of them relied on Defendant Paul's statements before purchasing CryptoZoo Products, which is only accurate based on a cursory reading of the amounts of money each Plaintiff lost because of Defendant Paul's scheme to defraud investors through cryptocurrency. *See* Motion, p. 7 (in which Defendant Paul cites the "Individual Plaintiffs" section only in support of his claims regarding pleading deficiency). But Plaintiffs brought claims of presumptive reliance based on the egregiousness and pervasiveness of Defendants' fraud on the crypto asset market,[1] which Defendant Paul neglects to address at all. Compl. ¶¶ 486–89.

Regardless, starting in Paragraph 200 of the Complaint, Plaintiffs lay out the timeline of events leading to their CryptoZoo purchases, beginning with Defendant Paul's promotion of the CryptoZoo products on his YouTube show Impaulsive. Compl. ¶ 200. The following paragraphs describe how Plaintiffs Holland and Heikali invested in CryptoZoo directly following CryptoZoo's public announcement and the ensuing buzz. *Id*. at ¶ 202, 203. Plaintiffs then describe how the value of CryptoZoo fluctuated up and down in direct correlation with Defendant Paul and other Defendants' empty promises regarding the work being done for the CryptoZoo game until Defendants themselves lost interest and simply dropped the project. *Id*. at ¶ 205–213. These

---

[1]        These allegations are addressed more thoroughly in Sections B and D, *infr*a.

specific fact statements create a plausible inference that Plaintiffs' purchase of CryptoZoo products was in direct response to the statements and promises made by Defendants, and specifically made by Defendant Paul.

Defendant Paul's next arguments show the level of nitpicking to which he must stoop to find deficiencies with Plaintiffs' Complaint. Defendant Paul raises concerns over whether Plaintiffs adequately pled this Court's jurisdiction over Defendants, but Plaintiffs very clearly stated the basis of personal jurisdiction: each Defendant, including Defendant Paul, conducted business and maintained operations within the Western District of Texas, including by hiring BlockOps, LLC out of Austin, Texas to "work" on the game. Compl. ¶¶ 33, 189, 209. This is sufficient to state the basis of this Court's jurisdiction over Defendants. Likewise, Defendant Paul's accusation concerning Plaintiffs' failure to comply with Federal Rule of Civil Procedure 10(a) by only including one Plaintiff in the caption is legally unsupportable; Rule 15 requires Court permission prior to amending a case caption, and the Court has not yet amended the caption in this case.[2]

2.    The Complaint cohesively informs Defendants of the claims against them.

By again misapplying the relevant standard, Defendant Paul asserts that Plaintiffs' Complaint should be dismissed for improper "shotgun pleading." "Shotgun pleading," as defined by courts in the Fifth Circuit, is pleading that "sets forth an excessive number of facts and then asserts in a conclusory fashion that each of those facts supports a number of legal claims, with the result that 'each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.'" *Martin v. Tesoro Corp.*, No. 2:11 CV 1413, 2012 U.S. Dist. LEXIS

---

[2]    Notably, Defendant Paul failed to comply with his own interpretation of Rule 10(a) because he did not include the names of any Plaintiff other than Plaintiff Holland in the caption of his Motion to Dismiss.

71392, at *7 (W.D. La. May 21, 2012) (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001)). Shotgun pleading is **not** pleading a large number of relevant facts in a complicated case, nor is it grouping together defendants within claims when the defendants are able to determine the conduct that led to the basis of each claim. *See, e.g.*, *Alexander v. Dresser, LLC*, No. 1:21-CV-00161, 2022 U.S. Dist. LEXIS 30174, at *11 (W.D. La. Feb. 18, 2022) (denying dismissal for alleged shotgun pleading when the complaint plausibly laid out a complicated liability scheme for multiple defendants); *Martin*, 2012 U.S. Dist. LEXIS 71392, at *7–8 (holding that based on the alleged facts, it was plausible that all defendants were responsible for the conduct leading to each claim).

A complaint should be dismissed only for improper shotgun pleading if it "fails 'to give the defendants adequate notice of the claims against and the grounds upon which [each] claim rests." *Hicks v. Andrews*, Civil Action No. 5:23cv81-RWS-JBB, 2024 U.S. Dist. LEXIS 50454, at *17 (E.D. Tex. Feb. 28, 2024) (quoting *Alexander*, 2022 U.S. Dist. LEXIS 30174, at *12–13). Plaintiffs' Complaint fully and completely lays out the basis for each of the claims brought, as well as the actions of each Defendant that led to those claims. While cryptocurrency itself, as the underlying premise of this case, is particularly complicated and requires extensive factual pleading simply to ensure a basic understanding of the facts at play, the basis of the claims are routine and easily understood—Defendants defrauded Plaintiffs' out of their money.

Defendant Paul's concerns about Plaintiffs' incorporation of the facts into the claims for relief is disingenuous and says more about Defendant Paul's ability to parse legal writing than Plaintiffs' ability to draft it. Incorporation of facts by reference is a routine practice in the legal community. *Dunn v. Fontenot*, No. 6:21-CV-01535, 2023 U.S. Dist. LEXIS 230995, at *5-6 (W.D. La. Dec. 29, 2023) (noting that incorporation by reference is "near universal" and "[t]he fact that

each count includes a paragraph adopting by reference prior paragraphs in that pleading does not present a practical impediment to Defendants to respond."). This type of drafting is appropriate where, as here, each legal theory of recovery is based on the same set of facts. Plaintiffs "are not required to clutter up their complaint by redundantly re-alleging all of the facts that support each claim." *Jones v. Herlin*, No. 12-1978, 2013 U.S. Dist. LEXIS 31413, at *8 (W.D. La. Mar. 6, 2013).

Likewise, Plaintiffs are not required to "specifically allege how each defendants' conduct satisfies the required elements for each of their claims." *Id*. Group pleading of defendants is inappropriate only where "geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Martin*, 2012 U.S. Dist. LEXIS 71392, at *7 (quoting *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Here, each individual Defendant participated in the same scheme to defraud Plaintiffs, which was done electronically so it could have occurred anywhere, and accordingly each claim for relief is against each individual Defendant because each individual Defendant participated in the same set of facts that led to the harm alleged. Group pleading against defendants who participated in the same illegal activity that resulted in the same harm is simple efficiency. *See Martin*, 2012 U.S. Dist. LEXIS 71392, at *7–8 ("Each of the defendants in this case is alleged to have conducted similar oil and gas operations on [the plaintiff's] property. It is therefore conceivable that all of the defendants engaged in each of the acts of misconduct set forth in the Amended Complaint, and the complaint clearly alleges that they did."). To assuage Mr. Paul's concerns over his inability to "discern which allegations are meant to support Plaintiffs' claims against him," Defendant Paul's specific conduct is fully detailed in the Complaint in Paragraphs 195–220, and every claim for relief is leveled against Defendant Paul and his co-Defendants.

**B.    Plaintiffs' Complaint satisfies the pleading requirements of Rule 9(b).**

Plaintiffs' Complaint more than meets the particularity requirements of Federal Rule of Civil Procedure 9(b). Defendant Paul's argument otherwise requires the Court to inappropriately look at each segmented part of the Complaint in a vacuum rather than as a complete picture. When a plaintiff alleges fraud or mistake, Rule 9(b) imposes a heightened pleading standard requiring particularity. Fed. R. Civ. P. 9(b). To sufficiently plead fraud, "the complaint must contain factual allegations stating the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 116–17 (5th Cir. 2019) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).

"In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct." *Id.* (citing *Tuchman*, 14 F.3d at 1068). The application of Rule 9(b) is "context-specific," however. *Burton v. Companion Prop. & Cas. Ins.*, No. W-14-CV-054, 2014 U.S. Dist. LEXIS 197416, at *9 (W.D. Tex. July 29, 2014) (quoting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009)). There is no single court-articulated standard for pleading fraud, and whether a plaintiff has sufficiently pled with particularity depends on the elements of the claim. *Id.* (citing *Grubbs*, 565 F.3d at 185).

Plaintiffs' Complaint satisfies Rule 9(b). Plaintiffs state the "who, what, when, where, and why" of Defendants' fraud through the entirety of the Complaint. Paragraphs 195 –99 detail how Defendants built their scheme in a way to avoid "sec eyeballs" while earning significant amounts of cash. Defendant Paul's specific fraudulent acts are described in Paragraphs 200–03. In Paragraph 200, Plaintiffs describe the fraudulent representations regarding the CryptoZoo game Defendant Paul made on his YouTube show that induced Plaintiffs and others into investing in the CryptoZoo game. Defendant Paul touted CryptoZoo as a "really fun game that makes you money,"

that was supported by a "massive team" and funded by "like a million dollars," none of which was true. Compl. ¶ 200. In the next paragraphs, Plaintiffs describe how Plaintiffs purchased CZ NFTs and Zoo Tokens as a direct response to Defendant Paul's fraudulent representations. *Id*. at ¶¶ 202–03. Then Plaintiffs describe how the remaining Plaintiffs' purchases of CryptoZoo products fluctuated in direct correlation with Defendants' false or recklessly hopeful public statements regarding the status of CryptoZoo. *Id*. at ¶¶ 205–08. Defendants' fraudulent representations caused Plaintiffs to buy millions of dollars' worth of digital products and rather than delivering the promised game, Defendants walked away with Plaintiffs' investments. *Id*. at ¶¶ 213–17. Plaintiffs provide a clear basis that Defendants made promises they never intended to keep inducing Plaintiffs' investment: despite claiming repeatedly that the game development was underway and would be shortly operational, Defendants never intended to fully fund the project. *Id.* at ¶¶ 209–11, 216.

The Complaint particularly describes Defendants' acts of fraudulently manipulating the CryptoZoo market. As the CryptoZoo scheme crumbled, Defendants bought and sold CZ NFTs and Zoo Tokens in bulk, which drove the value of the products down to nothing causing Plaintiffs to lose the value of the assets the used to purchase the tokens. *Id*. at ¶ 214. These details taken together clearly "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent," and accordingly have met the particularity requirement of Rule 9(b). *Williams v. WMX Techs.*, 112 F.3d 175, 177-78 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Defendant's somewhat tortured "ace-in-the-hole" argument on which almost the entirety of his arguments rest is that Plaintiffs have not shown that they relied on any of Defendant Paul's

actions or representations in purchasing CryptoZoo products, or if they did, that that reliance was justified, or if it was, that they did not do so at their own risk. This approach again requires the Court to inappropriately view the Complaint part and parcel rather than as a whole. Plaintiffs specifically plead a presumption of reliance applies under the fraud-created-the market doctrine, as the very existence of CZ NFTs and Zoo Tokens was premised on fraud. Compl. ¶¶ 486–89. Though lead Plaintiffs' reliance was individual pleaded, Plaintiffs need not prove individual reliance when Defendants' actions are so egregiously false and pervasive that the any CryptoZoo products' sale is based on fraud. *See generally*, *Spyglass Cap. Partners, L.P. v. Kim*, No. 4:07-CV-03478, 2008 U.S. Dist. LEXIS 112658, at *5–6 (S.D. Tex. Mar. 11, 2008) ("In the Fifth Circuit, a plaintiff may properly use fraud-on-the-market theory to show reliance where 'no active, efficient secondary market existed in which to trade the subject securities' if the plaintiff proves that 'the defendants conspired to bring to market securities that were not entitled to be marketed.'") (quoting *Abell v. Potomac Ins.,* 858 F.2d 1104, 1121 (5th Cir. 1988)).

Regardless, Plaintiffs have met the pleading standard for specific reliance as well as presumptive reliance. As detailed above, Defendant Paul used his popularity on social media to make blatant and specific false statements designed to induce individuals to buy CryptoZoo products, promising that the CryptoZoo game would "make[] you money," and Plaintiffs pled in Paragraphs 202–03 that they bought CryptoZoo products based on these promises. Additionally, in Paragraphs 207–08 of the Complaint, Plaintiffs specifically pled that they "[t]rust[ed] Defendants' promises that CryptoZoo would be functional" when purchasing additional CryptoZoo products.

Defendant Paul's remaining arguments over Plaintiffs' reliance on his material misrepresentations again rely on inappropriate legal standards and will be addressed more thoroughly below.

**C.      Plaintiffs' Complaint sufficiently pleads a RICO claim.**

Plaintiffs' Complaint fully and completely lays out a proper RICO claim. Defendant Paul's argument otherwise is based on his dispute of the facts as pled in the Complaint rather than any failing of Plaintiffs' pleading—an insufficient basis for dismissal. *In re Key Energy Servs. Sec. Litig.*, 166 F. Supp. 3d 822, 829 (S.D. Tex. 2016) ("Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case."). Defendant Paul's pattern of fraudulent racketeering is well-pled in the Complaint and well-documented by outside sources.

1.      <u>Plaintiffs' Complaint provides ample evidence of Defendant Paul's pattern of racketeering activity.</u>

Defendant Paul's arguments against Plaintiffs' RICO Claims once again misstate relevant law. While his statements that claims of "garden-variety fraud" are insufficient to establish a pattern of racketeering under the RICO statutes are true and supported by case law, he erroneously applies "garden-variety fraud" to the facts Plaintiffs alleged.

Courts stating that ordinary fraud claims could not be predicate acts to establish a pattern of racketeering for a RICO claim did so in response to plaintiffs who brought RICO claims in lieu of "every state common-law cause of action available to remedy business deals gone sour" to take advantage of federal law. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). The focus was on the lack of a *pattern* of fraud rather than rather than the fact of fraud itself. *See id*. ("The widespread abuse of civil RICO stems from the fact that all modern business transactions entail use of the mails or wires—giving plaintiffs a jurisdictional hook—and the fact that RICO offers a far more generous compensation scheme than typically available in state court. [The

Supreme Court] responded to that abuse by refocusing the pattern requirement on the sort of longterm [sic] criminal activity that carries some quantum of threat to society.") (citations omitted); *Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 597 (3d Cir. 1990) ("Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and are spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended to make the availability of treble damages and augmented criminal sanctions dependant [sic] solely on whether the fraudulent scheme is well enough conceived to enjoy prompt success or requires pursuit for an extended period of time.").

Defendant Paul's pattern of fraudulent business practices rises well-above the single act, "garden-variety fraud" that courts reject as a basis for RICO claims. As alleged in the Complaint, Defendant Paul has been a founding member of at least six other crypto-investment schemes.[3] Compl. ¶ 16. In every single scheme, Defendant Paul and the other founding members of CryptoZoo, including at least Levin, induced significant investment from individual purchasers by promising significant returns, then pulled out and dumped their own investment when the ventures failed. *Id*. These scams are colloquially referred to as "pump-and dumps" and "rug-pulls." Just as here, Defendant Paul earned millions in immediate cash while the individual investors were left

---

[3] Since filing the amended Complaint, Plaintiffs have uncovered additional facts and information supporting their claims regarding Defendants' fraudulent enterprise. Defendant Paul was involved in other cryptocurrency scams with at least Defendants Levin and Greenbaum, including cryptocurrency projects Bondly (on May 14, 2021, Paul paid Greenbaum about $70,000 worth of this cryptocurrency after pumping it) and PitBully (as referenced in Paul's Cross-Claim [ECF No. 55, ¶ 52]). On June 5, 2021, Paul and Greenbaum executed a pump and dump of PitBully using Paul's also famous brother to pump the formerly unknown cryptocurrency at The Bitcoin Conference in Miami to thousands of audience members—immediately after which Defendant Paul sold his PitBully holdings for a massive profit. Finally, in Paul's complaint in his lawsuit against the investigative journalist Coffeezilla who broke the CryptoZoo fraud story, Paul admitted CryptoZoo's consumers relied on his public statements advertising CryptoZoo to buy into CryptoZoo. *See Paul v. Stephen Findeisen and Coffee Break Productions LLC d/b/a Coffeezilla*, Case 5:24-cv-00717 (W.D. Tex.), at ECF No. 1, ¶ 112. Should the Court determine that Plaintiffs' RICO lacks support, Plaintiffs should be permitted to amend to include this new information.

with nothing. These pump-and-dump scams are not a single act carried out over several years; they are discrete acts demonstrating a pattern of fraud on the public.

Defendant Paul's involvement in these schemes, including his involvement with CryptoZoo, was absolutely critical to the "success" of the schemes. Defendant Paul has made a career out of marketing himself as an internet celebrity and promoting whatever product catches his fancy. Defendant Paul's celebrity status has cultivated a phenomenon in which every product he promotes receives a resultant surge in interest and revenue. Without Defendant Paul's promotion and endorsement, none of the crypto schemes cited in Plaintiffs' Complaint, and specifically CryptoZoo, would have garnered any interest in the digital market. Accordingly, Defendant Paul's involvement with the projects specifically induced significant investment. Plaintiffs also alleged that there is significant risk that Defendant Paul will continue his fraudulent business patterns—he announced a new crypto project before CryptoZoo's failure was uncovered. Compl. ¶ 214.

This is not the sort of "garden-variety fraud" that is an insufficient predicate act to support a RICO claim. Defendant Paul's routine practice is to use his celebrity status and access to millions of subscribers to defraud the public while raking in millions.

1.     <u>Plaintiffs' Complaint sufficiently pleads that Defendants formed an "enterprise."</u>

Defendant Paul claims that Plaintiffs' Complaint fails to properly allege that Defendant Paul and his co-Defendants established an enterprise under RICO. Again, this argument only has merit if the Court were to improperly view portions of Plaintiffs' Complaint in a vacuum.

A properly alleged "enterprise" under RICO includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Thus, '[a] RICO enterprise can be either a

legal entity or an association-in-fact.'" *Armendariz v. Chowaiki*, No. EP-14-CV-451-KC, 2016 U.S. Dist. LEXIS 191605, at *15 (W.D. Tex. Mar. 31, 2016) (quoting *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995)). An "enterprise" may be broadly construed, but "must nonetheless have a structure, illustrated by 'at least three structural features.'" *Id*. (quoting *Boyle v. United States*, 556 U.S. 938, 944–46 (2009)). The enterprise must 1) serve a common purpose, 2) have "relationships among those associated with the enterprise;" and 3) have "longevity sufficient to permit the[] associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 944–46.

Plaintiffs' Complaint demonstrates that Defendants participated in an enterprise sufficient to meet the pleading standard for a RICO claim. Defendants formed CryptoZoo, Inc., a business that served the common purpose of developing the CryptoZoo game and marketing CZ NFTs and Zoo Tokens to the public. Compl. ¶ 2. Plaintiffs' Complaint lays out the relationships among those associated with the enterprise. *Id*. at. ¶¶ 185–92, 195–99. And finally, the allegations in Plaintiffs' Complaint state that Defendants' enterprise was sustained long enough to sell digital assets, which was its stated purpose. *Id*. at ¶¶ 195–214. Plaintiffs' Complaint meets the standard for pleading a RICO enterprise.

      2.    <u>Plaintiffs' Complaint sufficiently pleads an enterprise between CryptoZoo, Inc. and individual Defendants.</u>

Defendant claims that Plaintiffs cannot sustain a RICO claim because Defendants cannot form a RICO enterprise with each other since they are all one entity operating under a single corporation.[4] Motion, p. 21. This argument again misses the mark. While a RICO violation requires participation from both a "person" and an "enterprise," "the need for two distinct entities is satisfied . . . when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner—whether he conducts those affairs within the scope, or beyond the

---

[4] The entity Defendant Paul relies on, Defendant CryptoZoo, has not appeared in this case.

scope, of corporate authority." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001). Thus, individual Defendants, including Defendant Paul, and CryptoZoo, Inc. "are different 'persons,' even where the employee is the corporation's sole owner." *Id*. at 163. "After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Id*. Defendant Paul's conclusion that he cannot participate in a RICO enterprise with CryptoZoo, Inc., a flat-out misstatement of law.

Plaintiffs have sufficiently laid out a proper RICO claim and Count 26 of Plaintiffs' Complaint should not be dismissed.

**D.    All of Plaintiffs' Securities Claims for Relief meet their respective pleading standards.**

Having failed to provide a legitimate basis for dismissal based on broad pleading standards, Defendant Paul next attacks Plaintiffs' particular counts, alleging that none of the facts pled support the specific claims raised. Defendant Paul's parceling off specific sections of Plaintiffs' Complaint is again ineffective; the entirety of the pleadings more than supports the claims brought against Defendant Paul.

1.    Plaintiffs' Complaint sufficiently pleads an Exchange Act Claim.

A significant portion of Defendant Paul's argument relies on his assumption that CZ NFTs and Zoo Tokens are not securities. Yet "securities" are not defined according to CryptoZoo's arbitrary, inapplicable terms of service or Defendants' unsupported belief, but by the economic reality of how they operate. *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990) (citing *Tcherepnin* v. *Knight*, 389 U.S. 332, 336 (1967)). *See also Masel v. Villarreal*, 924 F.3d 734, 743 (5th Cir. 2019) ("The label given by parties to a certain transaction will not be determinative of whether the parties have engaged in the purchase or sale of a security."); *United States SEC v. Balina*, No. 1:22-CV-00950-DAE, 2024 U.S. Dist. LEXIS 91557, at *31 (W.D. Tex. May 22,

2024) ("the Court will not consider express disclaimers in a contract when determining the character of the security"). Accordingly, how the CryptoZoo terms of service define CZ NFTs and Zoo Tokens and whether Defendant Paul intended for CZ NFTs and Zoo Tokens to act as securities is irrelevant; this Court must examine the economic reality of how CZ NFTs and Zoo Tokens functioned to determine whether they are securities under the Act.

### i. Plaintiffs' Complaint sufficiently alleges facts showing CryptoZoo Products are unregistered securities.

The Exchange Act defines "security" broadly[5] as including "investment contract," which the Supreme Court has interpreted to mean "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is lead to expect profits solely from the efforts of the promoter or a third party." *Masel*, 924 F.3d at 743 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946)). Courts in the Fifth Circuit impose a three-factor test that requires Plaintiffs to show "(1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor." *Id*. (quoting *Williamson v. Tucker*, 645 F.2d 404, 417 (5th Cir. May 1981)).

Plaintiffs' Complaint meets this burden. Plaintiffs invested significant amounts of money (Compl. ¶¶ 45–184); in the CryptoZoo common enterprise (Compl. ¶ 12–13, 15, 195–99); on the expectation that they would receive profits derived solely from Defendants' efforts to build the CryptoZoo game and maintain the supporting ecosystem (Compl. ¶ 15, 200, 205–09). Plaintiffs

---

[5]     This broad definition was intentional, as Congress "recognized the virtually limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of money of others on the promise of profits.'" *Reves*, 494 U.S. at 60–61 (quoting *SEC v. W. J. Howey Co.*, 328 U.S. 293, 299 (1946). "[T]he best way to achieve its goal of protecting investors was to define the term 'security' in sufficiently broad and general terms so as to include with that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.'" *Id*. (quoting *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 848 (1975) (internal quotations omitted)). Thus, while the Act may not have specifically foreseen the dawn of digital currency, it certainly intended to include future investment mechanisms such as crypto within its scope.

have met the pleading standard to show that the CryptoZoo products they bought were unregistered securities.

To show otherwise, Defendant Paul again muddies the water with inapplicable legal standards based on inapposite case law. Defendant Paul claims that "cryptocurrencies should not generally be considered securities" by relying on a case from New York in which the court determined that the cryptocurrency at issue *was* a security and an unauthoritative amicus brief from the same case. *See generally*, *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 328 (S.D.N.Y. 2023) ("Therefore, having considered the economic reality and totality of circumstances surrounding the Institutional Sales, the Court concludes that Ripple's Institutional Sales of XRP constituted the unregistered offer and sale of investment contracts in violation of Section 5 of the Securities Act."). The *Ripple* court, whose opinions do not bind this Court, held that cryptocurrency *itself* is not an investment contract, but may be the subject of an investment contract just like any other commodity. *Id*. at 323–24 ("In each of these cases, the subject of the investment contract was a standalone commodity, which was not itself inherently an investment contract;" "[O]rdinary assets—like gold, silver, and sugar—may be sold as investment contracts, depending on the circumstances;" "Even if XRP exhibits certain characteristics of a commodity or a currency, it may nonetheless be offered or sold as an investment contract.").

Defendant Paul digs deep into *Ripple* to once again call forth a legal standard that does not actually exist. The *Ripple* court dismissed the claims of certain plaintiffs because those plaintiffs failed to allege that they bought XRP directly from the defendant, which failed the third *Howey* factor because those plaintiffs could not expect profits from the defendant if they did not buy XRP from the defendant. 682 F. Supp. 3d at 328–30. Accordingly, Defendant Paul claims that Plaintiffs' Complaint must fail because Plaintiffs fail to allege that they specifically purchased CryptoZoo

products from CryptoZoo, and somehow Plaintiffs' allegations show the "likelihood" that they bought CryptoZoo products through secondary markets. Motion, p. 26. But whether Plaintiffs purchased CryptoZoo products from CryptoZoo or on a secondary market is irrelevant in this case.[6]

In *Ripple*, the defendant induced sales of XRP by promising a flourishing online ecosystem in which the value of XRP would increase. Accordingly, the *Ripple* plaintiffs purchased XRP the way investors might invest in the traditional stock market: they bought XRP in hopes that it would increase in value and earn them a profit. 628 F. Supp. 3d 318–19. Here, Defendants specifically tied their crypto products to a concrete item with quantifiable benefits. Unlike the nebulous digital ecosystem on offer in *Ripple*, Defendants promised Plaintiffs the CryptoZoo game, which not only would be a "really fun game that makes you money," but would also serve as a marketplace for the spending of Zoo Tokens and access to in-game and other ecosystem rewards. Unlike XRP, there was no reason for any Plaintiff to buy CryptoZoo products except as an investment in the CryptoZoo game and associated assets. Accordingly, regardless of whether Plaintiffs purchased CryptoZoo products directly from CryptoZoo, from Defendants as stated in their Complaint, or from a secondary market, Plaintiffs purchased CryptoZoo products to benefit from profiting in the CryptoZoo game, which is tied wholly and completely to Defendants.[7]

Defendant Paul assumedly relies so heavily on *Ripple* because it is the only easily findable opinion in which whether crypto assets may operate as securities is even remotely called into question. A much more apposite comparison can be found in a recent case from this District. In *United States SEC v. Balina*, Judge Ezra examined whether certain crypto assets were securities

---

[6]    Notably, Defendant Paul only gives cursory lip-service to whether Zoo Tokens or CZ NFTs meet the *Howey* factors, instead relying almost exclusively on this semantical quibble regarding whether Plaintiffs purchased CryptoZoo products "from CryptoZoo" or "from Defendants."

[7]    Should the Court agree with Defendant Paul's allegations that Plaintiffs' failure to allege that they bought CryptoZoo products from CryptoZoo (rather than "from Defendants") is fatal to the Complaint, principles of fair play and justice dictate that the Court likewise grant Plaintiffs' leave to amend to include these specific allegations.

under similar circumstances. No. 1:22-CV-00950-DAE, 2024 U.S. Dist. LEXIS 91557 (W.D. Tex. May 22, 2024). In *Balina*, the first *Howey* prong was satisfied by the plaintiffs' purchase of SPRK tokens. *Id.* at *24 ("The investment of crypto assets is equivalent to an investment of money."). Here, the first prong is satisfied by Plaintiffs' purchase of CryptoZoo products. Compl. ¶¶ 45–184. The second prong was satisfied by the defendant's promise to use the funds from the sale of SPRK Tokens to fund the digital ecosystem it created; here it is satisfied through Defendants' (and specifically Defendant Paul's) solicitation of CryptoZoo product purchases to fund the CryptoZoo game and surrounding ecosystem. *Balina*, 2024 U.S. Dist. LEXIS 91557, at *25–26; Compl. ¶¶ 12–13, 15, 195–99, 209.

Finally, the *Balina* court dismissed the defendant's argument that the third prong was not satisfied because the "investors were buying a 'finished product,'" in which the SPRK Tokens were used "as the means by which an individual could use the finished product." *Balina*, 2024 U.S. Dist. LEXIS 91557, at *28–29 ("Essentially, Balina contends that the token is more like a commodity that may increase in value, but that increase in value would not be dependent on the continuing efforts of the promoter."). The Court found that SPRK Tokens were less like "a participation interest in a book-of-the-month club" in which the operators use the funds from participators to "fund the future acquisition of books and facilitate the distribution of those books," and more like a "yet-to-be-built publishing house with the authors, books and distribution networks all to come." *Id.* at *29–30. Specifically, the Court noted the following:

> Essentially, the tokens were a vehicle for Sparkster to finance its company as investors bet on the underlying technology. If the investors did not trust Sparkster's CEO to grow the platform and improve the technology, the SPRK tokens would be worthless. This is why the Sparkster CEO highlighted the backgrounds and prestige of the management of the company.

*Id*. at \*30–31. Here, Plaintiffs likewise relied on Defendants, including Defendant Paul specifically, to promote and complete the CryptoZoo game; otherwise, their CryptoZoo products would be worthless. Compl. ¶¶ 200–08. Defendant Paul has also judicially stated—in his Complaint against Coffeezilla based in part on Coffffeezilla revealing this fraud publicly—the value of CryptoZoo rose because of his public statements:



*Paul v. Stephen Findeisen and Coffee Break Productions LLC d/b/a Coffeezilla*, Case 5:24-cv-00717 (W.D. Tex.), at ECF No. 1, ¶ 112.

Like the *Balina* defendants, Defendants here touted their crypto expertise and prior digital investment schemes to promote the CryptoZoo game and induce investment from purchasers such as Plaintiffs. Compl. ¶¶ 185–92. More compelling evidence of Defendants' "managerial efforts" are Plaintiffs' allegations regarding how Defendants manipulated the market for CryptoZoo products by publishing lies concerning the development of the game to induce investment, then immediately selling their own CryptoZoo Products at the inflated price, flooding the market and driving the value down without affecting Defendants' own bottom line. Compl. ¶¶ 205–08, 217.

The CryptoZoo Products Plaintiffs purchased meet the *Howey* test and are unregistered securities subject to the Exchange Act.

> ii. *Plaintiffs' Complaint sufficiently alleges facts showing Defendant Paul's intent to defraud and Plaintiffs' reasonable reliance.*

Once again ascribing the wrong standard to Plaintiffs' pleadings, Defendant Paul claims that Plaintiffs have failed to properly allege Defendant Paul's intent to mislead with respect to any material representations on which Plaintiffs relied in purchasing CryptoZoo products.

While Federal Rule of Civil Procedure 9(b) requires particularity in fraud pleadings, it "relaxes the particularity requirement for conditions of mind, such as scienter: 'Malice, intent, knowledge, and other condition of mind of a person may be averred generally.'" *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting Fed. R. Civ. P. 9(b)). To adequately plead scienter, Plaintiffs must "set forth specific facts in the complaint that support an inference of fraud." *SEC v. Stack*, No. 1:21-CV-00051-LY, 2021 U.S. Dist. LEXIS 196878, at *11 (W.D. Tex. Oct. 13, 2021) (quoting *Sec. & Exch. Comm'n v. Blackburn*, 156 F. Supp. 3d 778, 790 (E.D. La. 2015)). "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Id*. (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

Plaintiffs' Complaint properly alleges sufficient facts to support an inference of all Defendants' and specifically Defendant Paul's motive to commit fraud.[8] Despite a clear knowledge that presale of crypto assets could potentially violate the Exchange Act, Defendant Paul pushed for presale of Zoo Tokens to earn Defendants greater initial profit. Compl. ¶¶ 197–98. Defendant

---

[8] Since filing the amended Complaint, Plaintiffs have uncovered additional facts and information supporting their claims regarding Defendants' fraudulent enterprise, including that Defendants' white paper of CryptoZoo stated they received "founder tokens" that could not be traded for six months but those tokens never existed. Should the Court determine that Plaintiffs' Complaint lacks a factual basis, Plaintiffs should be permitted to amend to include this new information.

Paul specifically demonstrated a fraudulent motive in suggesting that Defendants add a "charity component . . . or some shit" to further induce potential investors to buy CryptoZoo products. *Id*. at ¶ 199. Moreover, Defendant Paul publicly promoted the nonexistent CryptoZoo game on his popular YouTube channel and other social media platforms. *Id*. at ¶ 200. Further, despite knowing that the CryptoZoo game was nonfunctional, Defendants, including Defendant Paul, made regular promises regarding the functionality of the game and "awarded" prizes of Zoo Tokens and CZ NFTs that were never delivered. *Id*. at ¶ 207. Defendant Paul was fully aware that Defendants had no intention of completing the project because they could not find a development team who did not demand they be paid for their work, but Defendant Paul promised Plaintiffs that Defendants had "Artists working around the clock." *Id*. at ¶¶ 210–11.

Defendants' manipulation of the CryptoZoo market is further evidence of their intent to defraud. At the beginning of the scheme, Defendants including Defendant Paul secretly released their CryptoZoo products on the Binance Blockchain and quietly purchased their own products at an artificially low value. *Id*. at ¶ 217. Once the product was publicly announced and demand was high, Defendants sold their products for an immediate profit. *Id*. Later, as the scheme fell apart and Plaintiffs began to realize that Defendants would never deliver the CryptoZoo game as promised, the value of their CryptoZoo products began to drop. *Id*. at ¶ 213. Further demonstrating their fraudulent intent, Defendants capitalized on this drop in value by buying and selling Zoo Tokens and CZ NFTs in bulk, which created a brief surge in price for Defendants to sell, then plummeted the value of the products to zero. *Id*. at ¶ 214. These facts are more than sufficient to create an inference of Defendant Paul's intent to defraud. Plaintiffs have adequately alleged scienter.

Moreover, these facts support Plaintiffs' allegations regarding presumptive reliance. Defendants promoted securities to support a product that they never intended to deliver, but the securities were worthless absent the promised product. Defendants released CryptoZoo Products to support their CryptoZoo game, but the CryptoZoo Products only had value within the CryptoZoo game. Defendants "introduced an otherwise unmarketable security into the market by means of fraud." *Regents of the Univ. of Cal. v. Credit Suisse First Bos.*, 482 F.3d 372, 391 (5th Cir. 2007) (citing *Shores v. Sklar*, 647 F.2d 462, 469–70 (5th Cir. 1981)). Accordingly, Plaintiffs reasonably "relied on the on the integrity of the market rather than on individual fraudulent disclosures." *Id*. Plaintiffs' reliance on the market was in part because of Defendants' manipulation in the secret buying and selling of CryptoZoo Products to drive the value up before allowing it to plummet.

Even assuming that Plaintiffs have not sufficiently pled presumptive reliance, Plaintiffs have still stated with particularity Defendant Paul's statements on which they relied in purchasing CryptoZoo products. Plaintiffs would not have purchased Zoo Tokens or CZ NFTs if Defendant Paul had not promised that the game would earn them money, that it was supported by "like a million dollars," or that it was already supported by a "massive team." Compl. ¶ 200. Plaintiffs have met their burden in sufficiently pleading their Exchange Act claims and Defendant Paul's arguments otherwise require the Court to inappropriately examine the Complaint in its separate parts rather than in totality. Plaintiffs have sufficiently alleged Counts 24 and 25 of their Complaint.

3.    <u>Plaintiffs' Complaint sufficiently pleads Commodity Exchange Act Claims.</u>

Defendant Paul's arguments against Plaintiffs' Commodity Exchange Act claims fail because the Motion does not accurately convey the products at issue. Defendant is correct that Plaintiffs bring their private right of action under 7 U.S.C. § 25 arises from section (a)(1) subsection (D), which references futures contracts as defined in subsection (B). Where Defendant

Paul's argument falls short is in his conclusory allegation that CZ NFTs are not "futures" as defined by that subsection. The Commodity Exchange Act permits a private right of action for "any person" who made "any contract of sale of any commodity for future delivery (**or option on such contract or any commodity**)." 7 U.S.C.S. § 25 (emphasis added). As described in Plaintiffs' Complaint, CZ NFTs operated as options on a commodity for future delivery.

To attract potential buyers and make the purchase of CryptoZoo products more alluring, Defendants sold CZ NFTs as "Base Eggs" that the buyer would "hatch" into random photoshopped animals that would produce additional CryptoZoo tokens, which is what Defendant Paul was referring to by saying the "game makes you money." *See, e.g.*, Compl. ¶¶ 18, 188, 200. Defendants ascribed certain yield values to the resulting "animals," which depended on the "rarity" of that specific animal, but the purchaser could not know the yield of CryptoZoo tokens the NFT would produce until he or she had already made the purchase, and "hatched" the NFT. Purchasers could "breed" these animals with others to create even rarer "hybrid" NFTs, which Defendants marketed as more valuable because they produced more CryptoZoo tokens. The production of a random amount of cryptocurrency from CryptoZoo NFTs is what converts Defendants' sale of NFTs from a spot sale of a commodity to a sale of futures.

Because CryptoZoo NFTs function as futures producing an unknown amount of cryptocurrency, Plaintiffs' commodity claims should not be dismissed.

**E.    Plaintiffs' Complaint sufficiently pleads common law causes of action.**

Having failed to provide a legitimate basis for dismissing Plaintiffs' Security Exchange Act and Commodity Exchange Act Claims, Defendant Paul next turns to Plaintiffs' common law claims for relief. Once again decontextualizing and ignoring facts where it best suits his purposes, Defendant Paul argues that Plaintiffs have insufficiently supported their claims for breach of contract, unjust enrichment, negligence, and civil conspiracy and aiding and abetting. A review of

the Complaint in total, however, shows the common law claims for relief are well-supported by the facts alleged.

  1.  <u>Plaintiffs' Complaint sufficiently pleads breach of contract claims.</u>

Defendant Paul disclaims breach of contract liability by arguing a) Defendant Paul never made a material representations on which Plaintiffs relied to form a contract; b) but if he did then those representations were mere puffery and reliance on them was unreasonable; and c) Defendant Paul is not a party to CryptoZoo's terms and conditions and therefore cannot be held liable for any breach of those terms.

The material terms on which Plaintiffs rely and which form the basis of Plaintiffs' breach of contract claims are Defendants' promises to provide a functional CryptoZoo game in which they could spend their Zoo Tokens, earn a profit, and receive access to special awards and perks via their CZ NFTs, all while playing a "really fun game that makes you money." Compl. ¶ 200. Defendants' promise of best management of the CryptoZoo game and maintenance of the ecosystem was also critical in their determination of whether to invest in CryptoZoo products. *Id.* at ¶ 245.

Defendant Paul first claims that Plaintiffs' reliance on these material representations was unreasonable because Named Plaintiffs were "experienced cryptocurrency investors with knowledge of the asset's volatility." Motion, p. 36. According to Defendant Paul, Plaintiffs Holland and Heikali should have known better than to take Defendant Paul at his word when purchasing CryptoZoo Products. Plaintiffs Holland and Heikali had been investing in cryptocurrency for five and four years respectively at the time they bought CryptoZoo products. Defendant Paul, by comparison, is well-known as an investment promoter, has over 23 million subscribers on his YouTube channel, and had the support and backing of his co-Defendants, all of whom had far greater experience with cryptocurrency and digital assets than any single Plaintiff.

Compl. ¶¶ 185–92. Plaintiffs' experience pales in comparison with Defendants, and in fact shores up Plaintiffs' claims that their reliance on Defendant Paul's claims was reasonable. Having invested in cryptocurrency on a small level for several years, Plaintiffs Holland and Heikali were unlikely to be easily taken in and would not have purchased CryptoZoo Products absent Defendants' fraudulent misrepresentations and acts.

Further, Defendant Paul's claim that his material representations regarding CryptoZoo are mere puffery is meritless. Defendant Paul was not speaking in a vacuum—each of his statements exist within the specific context outlined in Plaintiffs' Complaint. Defendant Paul had the backing and support of his co-Defendants, all of whom touted digital asset investment expertise. Compl. ¶¶ 185–92. Defendant Paul was the celebrity mouthpiece of the scheme; Defendants used his social media popularity to promote their scheme to give it legitimacy and reach a wider net of potential investors. *Id*. at ¶ 200. Likewise, Defendant Paul's claimed spending of "$400,000 to have [the CryptoZoo game] developed" lent legitimacy to his other claims concerning the project. *Id*. Throughout the scheme, Defendant Paul held himself out as an authority and reliable source of information for Plaintiffs and other investors. Defendant Paul cannot now disclaim the persona he worked so hard to create—Plaintiffs relied on Defendant Paul's claims because Defendant Paul and his co-Defendants cultivated a narrative to induce that reliance.

Finally, Defendant Paul claims he is not a party to CryptoZoo's terms and conditions and therefore cannot be held to its terms. Plaintiffs, however, have alleged that CryptoZoo, Inc., as a corporation, was merely a vehicle created to perpetrate a fraud as an alter ego to Defendant Paul and the other individual Defendants. Compl. ¶ 43. Accordingly, this Court may pierce the corporate veil as to Defendant Paul and find him individually liable for any breach of express of implied contract committed by CryptoZoo. *Sterett Equip. Co. v. PH Steel, Inc.*, No. 1:22-CV-476,

2024 U.S. Dist. LEXIS 48233, at *29–30 (E.D. Tex. Mar. 19, 2024). Plaintiffs have sufficiently alleged Counts Two and Three of their Complaint.

    2.    <u>Plaintiffs' Complaint sufficiently pleads unjust enrichment claims.</u>

At this point, Defendant Paul's misrepresentation of applicable law can only be willful. In the case cited by Defendant Paul to support his claim that Plaintiffs may not bring an unjust enrichment claim when a contract governs the transaction at issue,[9] the Fifth Circuit noted that "'A party to a contract may . . . seek alternative relief under both contract and quasi-contract theories[]'" like unjust enrichment." *King v. Baylor Univ.*, 46 F.4th 344, 367–68 (5th Cir. 2022) (quoting *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)) (alterations in original). "**Once a court determines** that a 'valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy.'" *Id*. (quoting *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648–49 (Tex. 2007)) (emphasis added). "[T]his action remains at the pleading stage and the court has not yet determined the extent to which the Note and Agreement govern the dispute between the parties," and accordingly Plaintiffs may bring both their breach of contract claims and their unjust enrichment claims as alternatives until the Court determines which controls. *Power Block Coin, LLC v. Song*, No. 2:23-cv-00175-TC-JCB, 2023 U.S. Dist. LEXIS 216491, at *21 (D. Utah Dec. 5, 2023).

Defendant Paul's second argument for dismissing Plaintiffs' unjust enrichment claims likewise fails. As already stated above, Plaintiffs brought allegations supporting their claims that the corporate Defendant is merely the alter ego of those who ran it, including Defendant Paul. Compl. ¶ 43. Defendants operated CryptoZoo, Inc., solely to defraud the public by inducing

---

[9]    Notably, Defendant Paul's arguments in favor of dismissing Plaintiffs' unjust enrichment claims require a distinct about-face from his arguments two pages prior stating that no valid contract exists to which Defendant Paul is bound.

investors to buy worthless CZ NFTs and Zoo Tokens for use in a game Defendants had no intention of delivering. *Id*. at ¶¶ 195–200. Accordingly, the benefit of Plaintiffs' investment dollars that they conferred on CryptoZoo, Inc., was conferred on Defendant Paul and the remaining individual Defendants.

And the benefit conferred on Defendants, including Defendant Paul, was patently unjust and inequitable because Defendants failed to deliver the product they promised in exchange for the benefit. Defendant Paul argues that the only product Plaintiffs paid for that they failed to receive was "investment returns" without once mentioning Defendants' complete failure to provide the CryptoZoo game in which those investments were to have received added value. Aside from the fraudulent promises regarding CryptoZoo Products earning Plaintiffs' money, Defendants promised a quantifiable service that they failed to deliver. Defendants' retention of Plaintiffs' investment dollars without providing the CryptoZoo game in return is an inequitable and unjust enrichment of Defendants at Plaintiffs' expense.

Finally, Defendant Paul's spurious claims that his offers to reimburse CryptoZoo Product holders negates any claim for unjust enrichment claims can be dismissed out of hand. Defendant Paul offered pennies on the dollar as a reimbursement and conditioned any reimbursement at all on his sole discretion,[10] rendering these reimbursement offers complete shams. Compl. ¶¶ 5–8. Plaintiffs have sufficiently alleged Count Four of their Complaint.

3.    Plaintiffs' Complaint sufficiently pleads negligence claims.

Defendant Paul's arguments for dismissing Plaintiffs' negligence claims fail for the same reasons his arguments against Plaintiffs' unjust enrichment claims fail. Plaintiffs may bring claims

---

[10]    Defendant Paul only offered reimbursement after this lawsuit was filed and conditioned any payouts on not filing suit, which of course means that no Plaintiff in this case meets the criteria. Compl. ¶¶ 5–8.

for negligence as alternatives to claims for breach of contract, particularly when, as here, Defendant Paul claims he is not bound by the contract.

Moreover, Defendants explicitly promised Plaintiffs and others who purchased CZ NFTs and Zoo Tokens that they would provide a functional CryptoZoo game and knowingly made false statements regarding how the progress of the game's development. Compl. ¶ 273. Defendants explicitly promised that they would support the CryptoZoo community by "striv[ing] to do the best for the project," but then manipulated the market for CryptoZoo Products by buying and selling in bulk to the detriment of the CryptoZoo community. *Id*. at ¶ 274. Defendants created a duty of care to Plaintiffs through their own reckless statements and breached that duty of care by failing to provide the promised game or support and by fraudulently ridding themselves of their own investments at opportune times to ensure they made money to the detriment of Plaintiffs. *Id*. at ¶ 275. Plaintiffs have sufficiently alleged Count Five of their Complaint.

4.  Plaintiffs' Complaint sufficiently pleads Conspiracy to Commit Fraud and Civil Aiding and Abetting.

As demonstrated above, Plaintiffs have sufficiently pled facts supporting their claims for fraud, and accordingly, their aiding and abetting and conspiracy claims are sufficiently pled. Further, Defendant Paul's application of the intracorporate conspiracy doctrine is inappropriate in this case. While true that a "corporation cannot conspire with itself any more than a private individual can," courts, including the Fifth Circuit, have recognized that the intracorporate conspiracy doctrine does not apply when "corporate employees act for their own personal purposes." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *Benningfield v. City of Hous.*, 157 F.3d 369, 379 (5th Cir. 1998) (citing *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 486 n.5 (5th Cir. 1984); *H & B Equip. Co. v. International Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978)). *See also Morella Consultants, LLC v. RCMP Enters., LLC*, No. 3:10cv432,

2011 U.S. Dist. LEXIS 101793, at *35 (M.D. Pa. Sep. 9, 2011) (recognizing that the intracorporate conspiracy doctrine does not exist if the corporate veil has been pierced).

Plaintiffs allege that Defendants worked in their own personal interest by creating a corporation designed to defraud investors by inducing them to buy worthless securities through empty promises regarding unfinished products that would earn them money. This alleged fraud is sufficient to pierce the corporate veil as to the individual Defendants, including Defendant Paul. And the individual Defendants acted exclusively in their own interest by artificially driving up the value of CryptoZoo Products by secretly buying those Products before making them publicly available, then flooding the market with the Products when the scheme tanked. Compl. ¶¶ 201, 214. Defendants' actions, including the actions of Defendant Paul, are such that they were operating in their own interests, conspiring to defraud the public under the guise of a legitimate corporation. Plaintiffs have sufficiently pled Counts Seven and Eight of their Complaint.

**F.      Plaintiffs' Complaint sufficiently pleads state consumer protection law claims.**

As a final Hail Mary, Defendant Paul claims that Plaintiffs have not sufficiently pled facts supporting any of their substantive state law claims, but only specifically directs the Court to perceived deficiencies in Plaintiffs' Texas and Colorado claims.

Defendant Paul states that Plaintiffs' Colorado claims fail because Plaintiffs failed to allege any facts supporting the claim that Defendants' conduct swayed the public. According to the case law cited by Defendant Paul, "to determine whether a challenged practice significantly impacts the public within the context of a CCPA claim," the Colorado courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 149 (Colo.

2003) (citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)). Here, Plaintiffs alone comprise 140 individuals and allege there are around 20,000 other consumers affected by Defendants' fraudulent business practices. Compl. ¶¶ 45–184, 226. The comparative sophistication between Defendants and Plaintiffs was described in Section D.1, *supra*: Defendant Paul is a popular social media personality with a large following and is supported by the self-proclaimed experience of his individual co-Defendants while Plaintiffs are ordinary individuals relying on the investment advice provided through Defendant Paul's media channels. Plaintiffs had no bargaining power or sophistication in comparison to Defendants. Finally, Plaintiffs' allegations show that Defendant Paul has both previously defrauded other consumers and has the significant potential to do so in the future by highlighting the various cryptocurrency investment schemes that Defendant Paul has promoted and dumped. Compl. ¶ 185 (providing a list of Defendant Paul's other pump-and-dump scams), ¶ 213 (Defendant Paul started ignoring CryptoZoo and announced another NFT project). Plaintiffs have alleged a significant public effect on Colorado consumers.

Defendant Paul's rehashing of similarly meritless arguments can also be discounted. Plaintiffs have already addressed Defendant Paul's fraudulent representations on which they relied when purchasing CryptoZoo Products (*see* Section B, *supra*), and that those fraudulent misrepresentations cannot be counted as puffery (*see* Section D.1, *supra*). Finally, Defendant Paul cites no legal support for his argument there can be no significant public impact when a full reimbursement has been offered, but regardless, Plaintiffs have likewise demonstrated that Defendant Paul's "reimbursements" were illusory. *See* Section D.2, *supra*. Plaintiffs have sufficiently pled Colorado consumer protection claims and Count 13 should not be dismissed.

Defendant Paul's arguments over Plaintiffs' claim under the Texas Deceptive Trade Practices Act amounts to a dispute of the facts rather than a legitimate legal basis for dismissal.

Defendant Paul claims Plaintiffs have not sufficiently pled that Defendants' fraudulent misrepresentations that induced Plaintiffs to buy worthless CryptoZoo products was an "unconscionable action" because it did not "take[] advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). But as explained in Section D.1, *supra*, the relative resources, knowledge, and experience of Defendant Paul and other Defendants compared with Plaintiffs demonstrate that all Defendants, but specifically Defendant Paul via his online celebrity status, exploited Plaintiffs' relative inexperience and lack of knowledge to induce them to invest in a fraudulent, worthless scheme. Plaintiffs have sufficiently pled Texas consumer protection claims and Count 23 should not be dismissed.

**G.      In the alternative, Plaintiffs should be given leave to amend.**

Defendant Paul has thrown spaghetti at the wall with respect to Plaintiffs' amended Complaint: he threw everything he had at the Complaint to see if any of it would stick. In doing so, Defendant Paul inappropriately decontextualized and compartmentalized Plaintiffs' Complaint, as well as generally nitpicked every perceived error or gap in the pleadings such that the Complaint from the perspective of Defendant Paul's Motion to Dismiss is utterly unrecognizable. Plaintiffs contend that the Complaint stands on its own merit: it presents a well-supported, cogent and logical sequence of facts establishing a plausible inference that Defendants are liable for the claims presented. Should the Court disagree, however, Plaintiffs respectfully request leave to amend to address any deficiencies.  "If it appears that given an opportunity to amend the pleading, the plaintiff would be able to state a claim upon which relief could be granted, the court should grant leave to amend." *In re Key Energy Servs. Sec. Litig.*, 166 F. Supp. 3d at 830

(citing *People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 U.S. Dist. LEXIS 16624 (N.D. Tex. Mar. 7, 2007)).

## IV.    CONCLUSION

Plaintiffs have met their burden at the pleading stage by presenting a factual basis supporting a plausible inference that Defendants have committed the illegal acts outlined in the Complaint. Defendant Paul's arguments otherwise are based on a dispute of the truth of the claims rather than on a legally supportable basis for dismissal. Accordingly, Defendant Paul's Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
Alexander G. Kykta
Texas Bar No. 24107841
alex@ellzeylaw.com
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rules of Civil Procedure 5(d).  I hereby certify that on October 16, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.  I further certify that the foregoing has been served the foregoing document on all counsel of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Jarrett L. Ellzey*
Jarrett L. Ellzey