**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **DON HOLLAND, individually and on behalf** §<br>**of all others similarly situated,** §<br> §<br> **Plaintiff,** §<br> §<br>**v.** §<br> §<br>**CRYPTOZOO, INC., a Delaware** §<br>**Corporation, LOGAN PAUL, DANIELLE** §<br>**STROBEL, JEFFREY LEVIN, EDUARDO** §<br>**IBANEZ, JAKE GREENBAUM a/k/a** §<br>**CRYPTO KING, and OPHIR BENTOV** §<br>**a/k/a BEN ROTH,** §<br> §<br> **Defendants.** §| **CIVIL ACTION NO.: 1:23-cv-110** |

**DEFENDANTS LEVIN AND BENTOV'S CONSOLIDATED REPLY IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs' Response (Dkt No. 90 ("Resp.")) attempts to rewrite their First Amended

Complaint (Dkt. No. 81 ("FAC")), arguing "facts" that appear nowhere in their allegations and

stretching any inferences that can be drawn from those allegations beyond recognition. Despite

these contortions, Plaintiffs cannot establish personal jurisdiction over Levin or Bentov for

Plaintiffs' federal claims because the international Plaintiffs have not established a "domestic"

injury or transaction under RICO, the Exchange Act, or the CEA, and the domestic Plaintiffs fail

to assert a "colorable" claim under any of those statutes. Plaintiffs also fail to establish personal

jurisdiction for their state law claims because Plaintiffs have not presented any evidence

controverting Levin and Bentov's sworn testimony confirming that neither has minimum

contacts with Texas.

Similarly, there is no basis for the Court to permit Plaintiffs to pursue a jurisdictional

fishing expedition or to further amend their complaint where Plaintiffs fail to identify the

discovery they want to pursue or what they hope to find that would justify subjecting Levin and

Bentov to jurisdiction in Texas. The Court should therefore dismiss all of Plaintiffs' claims against Levin and Bentov, this time with prejudice.

## I.      PLAINTIFFS' FEDERAL CLAIMS DO NOT ESTABLISH JURISDICTION

### A.   The International Plaintiffs Fail to Allege a "Domestic" Injury or Transaction.

Plaintiffs' Response fails to establish that any of the 103 international plaintiffs suffered a "domestic" injury or engaged in a "domestic" transaction, as required to state a claim under RICO, the Exchange Act, and the CEA. (Dkt. No. 87 ("Mot.") pp. 7-8.) Plaintiffs cite *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023) for the proposition that a "domestic" injury under RICO must be analyzed on a "case-specific basis." (Resp. ¶ 3.) In *Yegiazaryan,* the Supreme Court held that the "circumstances surrounding" a RICO injury—*i.e.*, the "nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity"—must be "sufficiently ground[ed]" in the United States "such that it is clear the injury arose domestically." *Id.* at 544-45. Under that standard, the Court concluded that the plaintiff sufficiently alleged a domestic injury because his "interests in his *California* judgment against [defendant], a *California* resident, were directly injured by racketeering activity either taken in *California* or directed from *California*, with the aim and effect of subverting [plaintiff's] rights to execute on that judgment in *California*." *Id*. at 546 (emphases added).

None of the "circumstances surrounding" the international Plaintiffs' alleged injuries here establish a "domestic" injury. The nature of the alleged injury—economic harm to individuals residing outside the United States (*see, e.g*., FAC ¶ 48)[1]—does not implicate a domestic property interest, and Plaintiffs cannot allege that the "effects" of the racketeering activity were felt here. Thus, even under *Yegiazaryan*'s "case-specific" framework, Plaintiffs have not alleged a RICO

---

[1] Paragraph 48 states, in relevant part: "Plaintiff Hwa Kwang Kuar resided in Singapore where he initially purchased CryptoZoo Products from Defendants on September 1, 2021." The allegations for all of the international Plaintiffs follow this same formulation.

injury that is "sufficiently grounded" in the United States.[2]

Plaintiffs have likewise failed to allege a "domestic" transaction under the Exchange Act or the CEA. Plaintiffs fail to address Levin and Bentov's authority confirming that an "investment" in a United States-based venture while a foreign individual is outside the United States is not a "domestic transaction." (Mot. p. 8, citing *Aaes v. 4G Cos.*, 2012 WL 949040, at *7 (S.D. Tex. Mar. 20, 2012)). Plaintiffs instead point to an inapposite case, *Williams v. Binance*, 96 F.4th 129, 137 (2d Cir. 2024), in which the Second Circuit held that plaintiffs' transactions on Binance, an online platform where crypto-assets are purchased and sold, involved a "domestic" transaction. But in *Williams*, plaintiffs transacted on Binance ***from the United States*** and alleged that the "vast majority" of Binance's servers ***were located in the United States***. *Id.* at 138-40; *Basic v. BProtocol Found.*, 2024 WL 4113751, at *11 (W.D. Tex. July 31, 2024) (R&R adopted 2024 WL 4113024 (W.D. Tex. Sept. 6, 2024)) (declining to apply *Binance*). Here, none of the international Plaintiffs identify which specific platforms they supposedly purchased their CryptoZoo Products on, let alone where those platforms' servers are located. And all of the international Plaintiffs confirm that they resided outside the United States when they purchased their CryptoZoo Products.

Plaintiffs' attempts to mischaracterize their own allegations do not cure these deficiencies. (*See* Resp. ¶ 5.) Plaintiffs argue that all individual Defendants are United States citizens and reside in the United States (the cited paragraph 33 does not state where any Defendant resides or their citizenship); that all or some Defendants "made fraudulent statements and promoted their fraudulent scheme in the United States," (the cited paragraphs 13, 15-16, 19,

---

[2] Plaintiffs' own authority confirms the necessity of a domestic touchstone, which Plaintiffs have failed to allege here. *See Digilytic Int'l FZE v. Alchemy Fin., Inc.*, 2024 WL 4008120, at *16 (S.D.N.Y. Aug. 30, 2024) (finding a domestic injury where "[l]ike in *Yegiazaryan*, Plaintiffs allege that most of [defendants'] racketeering activities occurred in the United States.").

and 200 make no mention of the United States); and that all or some Defendants "met in the United States to discuss and further the fraudulent scheme that is the basis of the RICO claims" (paragraph 195 does not mention the United States either). The international Plaintiffs fail to allege a "domestic" injury or transaction and their attempt to rewrite the FAC should be rejected.

### B.  Plaintiffs Fail to Allege "Colorable" Federal Claims.

1.      *RICO*. As set forth in Paul's Reply ("Paul Reply," pp. 8-10), Plaintiffs' Response still fails to identify a single predicate act under RICO or a RICO enterprise, including because Plaintiffs' RICO allegations group Levin and Paul together virtually without distinction (and do not mention Bentov by name at all). (Mot. pp. 10-11.) In an attempt to cure this deficiency, Plaintiffs assert, in conclusory manner, that "[t]he Complaint fully lays out each Defendants' particular role in the CryptoZoo enterprise." (Resp. ¶ 9.) The FAC does no such thing. The FAC merely alleges that Levin was Paul's "manager," hired a software development team to help with "projects related to CryptoZoo," had an ownership interest in CryptoZoo, Inc,[3] and that Paul said Levin was "like in charge" (of what, the FAC does not make clear (*see* FAC ¶ 16)). (*See* Resp. ¶ 10.) Plaintiffs' allegations about Bentov are even more sparse, claiming merely that Bentov "managed" software developers and the "CryptoZoo community" in which "all Defendants made fraudulent misrepresentations about the status of the game's development." (*Id*.)

Plaintiffs make no effort to explain how Levin or Bentov's alleged acts—related to CryptoZoo or any other of the alleged "cryptocurrency and NFT-related rug-pulls and pump-and-dumps" (FAC ¶ 512)—constitute or contributed to any qualifying predicate act under RICO. Nor do Plaintiffs explain how Levin or Bentov could have participated in a RICO enterprise when all

---

[3] Plaintiffs also allege that Levin provided "experiential insight" about "avoiding 'SEC eyeballs.'" (Resp. ¶ 10, citing FAC ¶ 197.) But the text message exchange that appears beneath paragraph 197 merely shows that Levin was cautioning the group against doing anything illegal, and confirmed that they were relying on defendant Ibanez for guidance on SEC regulations. (*See* FAC ¶ 197.)

defendants allegedly worked for or were involved with CryptoZoo, Inc. (Paul Reply pp. 9-10; *see* also FAC ¶ 514 ("For the CryptoZoo phase of Defendants Paul and Levin's ongoing fraudulent enterprise, each of the other Defendants named herein ***managed and operated CryptoZoo*** through a pattern of racketeering activity … .") (emphasis added).)

2.      ***Exchange Act and CEA****.* Plaintiffs also fail to allege "colorable" claims under the Exchange Act and the CEA. As set forth in Paul's Reply, under the Exchange Act, Plaintiffs still (i) fail to show that Zoo Tokens and CryptoZoo NFTs qualify as securities under the *Howey* test; (ii) fail to meet the heightened pleading standard under the PSLRA (including as to any misstatements or omissions made by Levin or Bentov specifically); and (iii) fail to establish that presumptive reliance exists under the "fraud-created-the-market" theory. (Paul Reply pp. 10-14.) Moreover, Plaintiffs fail to establish that their CEA claim is based on futures contracts, as opposed to spot sales—"option" or otherwise. (*Id*. pp. 14-16.)

Plaintiffs attempt to shore up these deficiencies by arguing that Levin and Bentov can still be held liable even if they did not personally make any misrepresentations because "[a]ll Defendants, including Defendants Levin and Bentov, were responsible for the promotional materials, press releases, and public statements on which Plaintiffs relied when purchasing CryptoZoo Products." (Resp. ¶ 15, citing FAC ¶¶ 499, 507.)[4] Courts in the Fifth Circuit have rejected precisely this argument, holding that to allow liability "'to attach to individuals *who did no more than facilitate preparation* of material misrepresentations or omissions actually communicated by others ... would swallow' the bright-line test between primary and secondary

---

[4] Doubling down, Plaintiffs argue that Levin was "'in charge' of the entire CryptoZoo project, including Defendant Paul's promotions and public statements." (Resp. ¶ 15, citing FAC ¶ 186.) These allegations appear nowhere in paragraph 186, or any other part of the FAC, and do not support liability regardless. *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 196 (5th Cir. 2010) (rejecting theory that purported to extend liability to "aiders and abettors, to whom the private right of action under section 10(b) does not extend.").

liability [under Section 10(b) of the Exchange Act]." *SEC v. Narayan*, 2017 WL 4652063, at \*9 (N.D. Tex. Aug. 28, 2017); *Affco Invs.*, 625 F.3d at 193–94.

Without anywhere else to turn, Plaintiffs seem to argue a form of "scheme liability" under Rule 10b-5(a) & (c)—***under which Plaintiffs do not bring a claim***. (*Compare* Resp. ¶ 16 (quoting Rule 10b-5(a) & (c)) *with* FAC, Count 24 ("Violation of Section 10(b) and SEC Rule **10b-5(b)**") (emphasis added).) Any claim under subsections (a) and (c) would fail regardless because Plaintiffs have not alleged a primary violation as to Levin or Bentov. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 160–63 (2008).

Plaintiffs therefore have not alleged a colorable claim under any of the federal statutes and cannot take advantage of the nationwide service of process provisions contained therein.

## II.    LEVIN AND BENTOV DO NOT HAVE MINIMUM CONTACTS WITH TEXAS

As explained in Levin and Bentov's moving papers, the FAC's sole jurisdictional allegations as to Levin and Bentov are that three plaintiffs reside in Texas; that Levin and Bentov had some dealings with a software development company that, unbeknownst to them, was supposedly based in Texas; and, in conclusory fashion, that all "Defendants have substantial contacts with this District." (Mot. pp. 4–6, 14-20; FAC ¶ 34.) Levin and Bentov submitted declarations (now uncontroverted) that confirm they have no relevant connections with Texas that would establish personal jurisdiction. (*See* Mot., Ex. 1 (Levin Decl.) ¶¶ 2–11, Ex. 2 (Bentov Decl.) ¶¶ 2–12.)

It is Plaintiffs who bear the burden of establishing personal jurisdiction. (Mot. p. 7.) Yet Plaintiffs do not even attempt to counter Levin or Bentov's declarations with *facts* in the form of admissible evidence. Instead, their Response speculates about what Defendants "could have" done to connect them to Texas. In this regard, Plaintiffs muse that "Defendants ***could have*** used other CryptoZoo founders, agents, or affiliates to hire Texas residents on their behalf" and argue

that "Defendants do not deny" that one of their or CryptoZoo Inc.'s agents "*could have* reached out to people, or been employed, in Texas." (Resp. ¶¶ 25, 29 (emphasis added).) The Court need not credit Plaintiffs' rank speculation, which does not support exercising personal jurisdiction over Levin or Bentov. *See, e.g.*, *Moreland v. SunPath, Ltd.*, 2021 WL 6773100, at *2–3, n.1 (E.D. Tex. Sept. 10, 2021) (dismissing claims for lack of personal jurisdiction because plaintiff relied solely on his "bare allegations, which the [c]ourt need not credit in light of [the defendant's] uncontroverted affidavit.") (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Cunningham v. Upwell Health, LLC*, 2020 WL 4723175, at *6 (E.D. Tex. July 21, 2020) (similar).

### A.    CryptoZoo, Inc.'s Alleged Conduct Cannot Be Imputed to Levin or Bentov.

With no real basis to link Levin or Bentov to Texas, Plaintiffs claim that CryptoZoo, Inc.'s contacts with Texas (assuming there were some) should be imputed to Levin and Bentov. This argument fails for at least three reasons.

*First*, the allegations relating to Levin and Bentov's involvement in CryptoZoo, Inc. do not establish personal jurisdiction over them in Texas. Plaintiffs allege that Levin is a "founder[]" of CryptoZoo, Inc. and that Bentov is a "manager of the *CryptoZoo community*" (not CryptoZoo, Inc.). (FAC ¶¶ 186, 192 (italics added).)[5] Plaintiffs further allege that Levin hired software developers who were based in Texas and that Bentov "oversaw" some of this work. (*Id.* ¶¶ 3, 186, 209.) These allegations fail to allege, let alone establish, that Levin or Bentov undertook these actions in their individual capacity, as opposed to for the benefit of CryptoZoo, Inc. Affiliation with a corporate entity (even one that is subject to jurisdiction in a forum state) does not establish jurisdiction over the corporation's founders, shareholders, officers, agents, or

---

[5] Plaintiffs mischaracterize Bentov's testimony as stating that he "manages CryptoZoo, **Inc.**" (Resp. ¶ 24) when he in fact asserted that he "served as a community manager for CryptoZoo forums." (Mot., Ex. 2 (Bentov Decl.) ¶ 10.)

employees. *See, e.g.*, *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437-38 (Tex. 1982). And Fifth Circuit precedent makes clear that "merely contracting with a resident of the forum state is insufficient [] to subject the nonresident to the forum's jurisdiction." *Colwell Realty Invs. Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–79 (1985).

*Second*, to the extent Plaintiffs are trying to make an alter ego argument, the FAC fails to support alter ego liability. Plaintiffs' alter ego allegations are limited to the following:

> In the event any parties are misnamed or are not included here, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named here. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

(FAC ¶ 43); *see also id*. ¶ 12 ("The entity CryptoZoo, Inc. was created to serve as a fraudulent vehicle for the sole purpose of selling patently worthless, unregistered Zoo Tokens and CZ NFTs to enrich CryptoZoo's founders, promoter/manager, and affiliates."). These boilerplate allegations do not come close to meeting the pleading standard for alter ego liability or piercing the corporate veil. *See, e.g.*, *Stuart*, 772 F.2d at 1198; *Basic*, 2024 WL 4113751, at \*4 ("Generic and conclusory allegations of control over a company are insufficient as a matter of law to plead specific jurisdiction.").[6]

*Finally*, even if Plaintiffs adequately alleged alter ego liability, they have not alleged facts sufficient for this Court to exercise specific jurisdiction over CryptoZoo, Inc. either. As with Levin and Bentov, Plaintiffs do not allege that CryptoZoo, Inc. purposely directed activities toward Texas or that their claims arise out of CryptoZoo, Inc.'s activities in Texas. Even if the

---

[6] Texas law applies the alter ego rules of the state of incorporation (here, Delaware). *Alberto v. Diversified Grp., Inc*., 55 F.3d 201, 203 (5th Cir. 1995); *see Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992) ("State and federal alter ego tests are essentially the same . . . and [courts] apply state and federal cases interchangeably.").

corporate form were disregarded—which is unsupported by the FAC or any evidence—CryptoZoo, Inc. has no relevant contacts to impute to Levin or Bentov, so no basis exists to exercise jurisdiction over them. *See Williams v. Wilson*, 939 F. Supp. 543, 549 (W.D. Tex. 1995), *aff'd* 95 F.3d 1149 (5th Cir. 1996) (finding no alter ego and explaining that "the Court has already determined that it has no personal jurisdiction over Penthouse … even if Pet is nothing more than a shell or Penthouse's agent, this will not cure the lack of personal jurisdiction.").

### B.    Plaintiffs' "Stream of Commerce" Theory Does Not Establish Jurisdiction.

Plaintiffs also argue that Levin and Bentov are subject to jurisdiction because "Defendants through CryptoZoo[, Inc.] delivered its products into the stream of commerce with the expectation that they would be purchased by or used by consumers across the world, including Texas." (Resp. ¶ 23.) Plaintiff rely on *Ainsworth v. Moffett Engineering, Ltd.*, an inapposite products liability case in which the court exercised jurisdiction over a foreign manufacturer—not its individual officers or employees—under the stream-of-commerce doctrine. 716 F.3d 174 (5th Cir. 2013). In *Ainsworth*, the Fifth Circuit held that a foreign manufacturer of forklifts was subject to personal jurisdiction in Mississippi because the manufacturer sold thousands of forklifts worth hundreds of millions of dollars to its U.S. distributor over the course of about a decade. *Id.* at 177–79. The Court reasoned that, because the manufacturer designed and manufactured the forklift specifically for poultry-related uses and "Mississippi is the fourth largest poultry-producing state in the United States," the manufacturer "reasonably could have expected that such sales would be made." *Id.* at 179.

*Ainsworth* does not create jurisdiction here because Plaintiffs do not allege that Levin or Bentov had any reason to believe that CryptoZoo, Inc.'s digital assets would end up in Texas or that Texas is a significant market for those digital assets. To the contrary, Plaintiffs allege that "CryptoZoo[, Inc.] delivered its products into the stream of commerce with the expectation that

they would be purchased by or used by consumers *across the world*, including Texas." (Resp. ¶ 23 (emphasis added).) That Paul may have conveyed his concern about "losing out" on the Texas market (Resp. ¶ 23)—same as any other market—or that "at least one founder of CryptoZoo visited Texas on CryptoZoo business" (*id*. ¶ 26)—does not change this. Thus, Levin and Bentov are not subject to specific jurisdiction in Texas under *Ainsworth* or otherwise.

### III.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

In a last-ditch effort to force Levin and Bentov to litigate in this Court, Plaintiffs request leave to conduct jurisdictional discovery and to further amend the FAC. (Resp. ¶¶ 29-31.) To obtain jurisdictional discovery, Plaintiffs must make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419, 429 (5th Cir. 2005). Plaintiffs must also state what facts they expect to uncover and how those facts would support personal jurisdiction. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). A plaintiff is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand" a motion to dismiss (*i.e.*, discovery would be futile). *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (citation omitted).

The Court should deny Plaintiffs' request for jurisdictional discovery because Plaintiffs do not make a preliminary showing of personal jurisdiction over Levin or Bentov, and point to no additional facts they would or could uncover that would cure these deficiencies. Any attempt to amend the FAC on this basis would be futile for the same reason, and should be denied. *See id.*; *see also Goldstein v. MCI WorldCom,* 340 F.3d 238, 254–55 (5th Cir. 2003).

### IV.    CONCLUSION

Levin and Bentov respectfully request that the Court grant their motion to dismiss all claims against them for lack of personal jurisdiction and deny Plaintiffs' requests for jurisdictional discovery and for leave to further amend the FAC.

/s/ *Shelby O'Brien*

SHELBY O'BRIEN
ENOCH KEVER PLLC
7600 N. Capital of Texas Highway
Building B, Suite 200
Austin, Texas 78731
Telephone: (512) 615-1223
Facsimile: (512) 615-1198
sobrien@enochkever.com


/s/ *Sarah E. Moses*

CHRISTOPHER CHATHAM
BRAD SEILING
SARAH E. MOSES
(*Pro Hac Vice*)
MANATT, PHELPS, & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
cchatham@manatt.com
bseiling@manatt.com
smoses@manatt.com

Attorneys for Defendants Jeffrey Levin and Ophir
Bentov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of November 2024, I electronically transmitted the attached document to the Clerk's office using the CM/ECF system for filing and transmittal of a notice of electronic filing to all counsel of record.

/s/ *Sarah E. Moses*
Sarah E. Moses