**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

DON HOLLAND, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

Civil Action No. 1:23-cv-110

CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, DANIELLE STROBEL, JEFFREY LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a BEN ROTH,

Defendants.
_____/

LOGAN PAUL,

Cross-Plaintiff,

vs.

EDUARDO IBANEZ and
JAKE GREENBAUM a/k/a CRYPTO KING,

Cross-Defendants.

_____/

**DEFENDANT/CROSS-PLAINTIFF LOGAN PAUL'S REPLY
IN SUPPORT OF HIS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant/Cross-Plaintiff Logan Paul files this reply in support of his motion to dismiss (the "Motion" or "Mot. Dismiss," ECF No. 85) Plaintiffs' First Amended Class Action Complaint (the "First Amended Complaint" or "FAC," ECF No. 81), with prejudice and in its entirety under Federal Rule of Civil Procedure 12(b)(6). The First Amended Complaint fails to state any claim upon which relief may be granted.

## SUMMARY OF THE ARGUMENT

Plaintiffs' Response (the "Resp.," ECF No. 92) to Mr. Paul's Motion to Dismiss is as scattershot and off-the-mark as the First Amended Complaint. Plaintiffs repeatedly assert incorrect statements of the law in an attempt to cover for the First Amended Complaint's many pleading deficiencies, starting with a misreading of Federal Rule of Civil Procedure 8 and continuing through misunderstandings of longstanding Fifth Circuit case law. Plaintiffs also ignore and fail to respond to many of Mr. Paul's arguments for dismissal, thereby waiving any opposition to dismissal on those grounds. And, where Plaintiffs attempt to identify allegations of fact to support their claims, they repeatedly present legal conclusions mischaracterized as factual allegations or resort to improper attempts to insert facts into the Response that were not pled. Plaintiffs fail to present any legitimate reason to deny Mr. Paul's Motion. The Court should dismiss the First Amended Complaint in its entirety, with prejudice.

## ARGUMENT

**I.    PLAINTIFFS FAIL TO SHOW THAT THE FIRST AMENDED COMPLAINT SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 8.**

A.    <u>A plaintiff must plead "ultimate facts" demonstrating that he is entitled to relief under federal pleading standards, and Plaintiffs have not done so here.</u>

Plaintiffs' response opens with a misfire. Ignoring almost two decades of federal precedent beginning with *Bell Atl. Corp. v. Twombly*, Plaintiffs assert—without citation—that Federal Rule of Civil Procedure 8's requirement to plead ultimate facts which if proven would entitle a plaintiff

to relief "is a standard that Defendant Paul apparently made up." (Resp. at 3); 550 U.S. 544, 551 (2007). Plaintiffs are simply incorrect. *Twombly* itself used the term "ultimate" in observing that the "ultimate allegations" in that complaint were insufficient to demonstrate that the plaintiff could be entitled to relief. 550 U.S. at 551, 570.

The Fifth Circuit and federal district courts routinely use the term "ultimate" or "ultimate facts" to describe Rule 8's pleading requirements. *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (affirming dismissal of complaint for failure to state a claim and observing that "a plaintiff is still required 'to plead sufficient facts on *all of the ultimate elements*' of her claim") (emphasis in original; quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)); *Freuler v. Parker*, 803 F. Supp. 2d 630, 638 (S.D. Tex. 2011), *aff'd*, 517 F. App'x 227 (5th Cir. 2013) (dismissing complaint for failure to state a claim and observing that to state a claim for relief, "[t]he "pleader must set forth ... particularized factual statements that are essential to the claim. Such facts are sometimes referred to as 'ultimate facts,' 'principal facts' or 'elemental facts.'"); *Bauer v. AGCO Corp.*, 2024 WL 2703019, at *4 (W.D. Tex. May 23, 2024) (granting motion to dismiss and noting that plaintiff "fails to allege any ultimate facts indicating that [defendant] engaged in such misrepresentations").

Plaintiffs' ignorance of the *Twombly* standard aside, the Response categorically fails to identify with specificity facts sufficient to demonstrate that Plaintiffs could be entitled to relief on all of the ultimate elements of their claims. Plaintiffs fail to identify a single allegation in the First Amended Complaint that they relied on any of Logan Paul's statements—reliance, of course, being an ultimate element of many of Plaintiffs' claims, including securities fraud, fraud and fraudulent misrepresentation, negligent misrepresentation, and violations of most of the state consumer protection statutes at issue. Nor do Plaintiffs point to any specific allegations regarding the

circumstances of their purchases, including who sold them CryptoZoo products or whether they even **heard** any of the statements they allege to have been false. (Mot. Dismiss at 7-8.) The Court should dismiss the First Amended Complaint for this reason alone.

    B.  <u>Plaintiffs fail to rebut Mr. Paul's argument that the First Amended Complaint is an indecipherable shotgun pleading.</u>

Plaintiffs similarly misapprehend the shotgun pleading standard. Courts dismiss complaints as shotgun pleadings if they "utilize[] the practice of incorporating all prior allegations into its asserted claims," like the First Amended Complaint does here. *Valadez v. City of San Antonio*, 2022 WL 1608016, at *7 (W.D. Tex. May 20, 2022) ("[D]ismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'") (emphasis in original; quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015)).

Plaintiffs do not even attempt to rebut the fact that the complaint improperly incorporates successive counts into each other, leaving Mr. Paul unable to determine whether Plaintiffs mean for specific allegations in one count to apply to another. (FAC ¶¶ 235, 258, 269, 272, 278, 285, 293, 493, 504, 510, 518; Resp. at 6-7.) Nor do Plaintiffs address Paragraph 531, which pleads that "[e]very paragraph in this Complaint is hereby incorporated into every other paragraph." (FAC ¶ 531.) Instead, they assert only that "[i]ncorporation of facts by reference is a routine practice in the legal community." (Resp. at 6.) Surely it is common (if not always appropriate) where a plaintiff incorporates all factual allegations into each count, but it is **not** common or appropriate to incorporate each successive count into itself or its preceding counts. *Valadez*, 2022 WL 1608016, at *7. This is one of the "sins" the First Amended Complaint boldly commits.

Another is its excessive group pleading, referencing Defendants as a collective, rather than individually. *Noble Cap. Tex. Real Est. Income Fund LP v. Newman*, 2023 WL 3035411, at *3

(W.D. Tex. Jan. 13, 2023) ("Group pleading or 'shotgun pleading' is disfavored—a 'sin'—in the Fifth Circuit.") (citations omitted), *report and recommendation approved*, 2023 WL 3035399 (W.D. Tex. Feb. 22, 2023). Plaintiffs argue that group pleading is appropriate in this matter but fail to identify specific allegations against Mr. Paul that would support their claims—instead, they point only to twenty-five paragraphs in the First Amended Complaint that level allegations against the "Defendants" generally. Plaintiffs "must do more than slap the hood of the Complaint and assure the court that 'it's all in there!'" *Noble Cap. Tex. Real Est. Income Fund LP v. Newman*, 2023 WL 3035411, at *3 (W.D. Tex. Jan. 13, 2023), *report and recommendation approved,* 2023 WL 3035399 (W.D. Tex. Feb. 22, 2023). But that is all Plaintiffs do. The Court should dismiss the First Amended Complaint as a shotgun pleading.

## II.   PLAINTIFFS FAIL TO IDENTIFY ALLEGATIONS PLEADED WITH PARTICULARITY SUFFICIENT TO SATISFY RULE 9(b).

Plaintiffs acknowledge, as the Fifth Circuit has held, "that pleading fraud with particularity requires that at a minimum . . . a plaintiff must set forth the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013) (cleaned up) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). But Plaintiffs fail to point to particular allegations in the First Amended Complaint that provide the "who, what, when, where, and how" to support their claims for fraud, fraudulent misrepresentation, conspiracy to commit fraud, aiding and abetting fraud, statutory consumer fraud, and unjust enrichment.[1]

Plaintiffs offer no response to Mr. Paul's argument on this matter. They provide no citation to allegations "specify[ing] which 'CryptoZoo Products' they purchased, how they lost money,

---

[1] As noted in Mr. Paul's Motion to Dismiss, unjust enrichment claims under some of the states' laws at issue require particularity in pleading because they sound in fraud: specifically, California, New York, and Texas. (Mot. Dismiss at 11-12 n.5.)

4

what caused their losses, on what representations or omissions (if any) they relied, when they relied, or why they purchased CryptoZoo." (Mot. Dismiss at 12.) Instead, their Response focuses on a single allegation about one statement allegedly made by Mr. Paul. (Resp. at 8-9.) This fails to address the missing factual allegations identified by Mr. Paul, and by failing to respond, Plaintiffs have waived any arguments in opposition on this matter. *See, e.g.*, *Kellam v. Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) (citation omitted), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."). The Court should therefore dismiss Plaintiffs' fraud-based claims because they are not pleaded with sufficient particularity under Rule 9(b).

## III.    PLAINTIFFS HAVE NOT STATED ANY ALLEGATION DEMONSTRATING RELIANCE OR PROXIMATE CAUSATION.

Plaintiffs attempt to remedy their total failure to plead reliance in several ways, each more misguided than the last. In doing so, they fail to point to a single allegation of actual reliance on the part of any Plaintiff in 531 paragraphs of allegations. Instead, their arguments persuasively demonstrate that the First Amended Complaint is wholly devoid of allegations of reliance on any statement attributed to Mr. Paul.

Initially, Plaintiffs argue that their "fraud-created-the-market" allegation suffices to establish reliance for all of their claims. (Resp. at 10.) This allegation is insufficient because this type of reliance is only applicable to federal securities claims. *Spyglass Cap. Partners, L.P. v. Kim*, 2008 WL 8082754, at *1-2 (S.D. Tex. Mar. 11, 2008) (addressing solely a claim for "market manipulation under Rule 10b–5" and observing that the "fraud-on-the-market theory" is applicable only "if the plaintiff proves that 'the defendants conspired to bring to market securities that were not entitled to be marketed.'") (citation omitted). Further, as addressed in Section V.C, *infra*, this theory is also insufficient to support the Exchange Act claims.

Plaintiffs also attempt to argue that they have pleaded specific reliance on statements by Mr. Paul, pointing to paragraphs 202 and 203 of the First Amended Complaint. These two allegations are woefully insufficient. First, they are alleged only with regard to Plaintiffs Holland and Heikali—nothing is mentioned about the other 135 Plaintiffs. (FAC ¶¶ 202-03.) Second, neither paragraph says **anything** about Plaintiffs Holland or Heikali relying on Mr. Paul's statements. Plaintiff Holland alleges that his "son told him about Logan Paul's new NFT project and Holland invested an initial $1,000 to purchase Zoo Tokens," (*id.* ¶ 202), and Plaintiff Heikali alleges that "a friend told him about CryptoZoo, and on September 11, invested an initial $40,000 to purchase Zoo Tokens." (*Id.* ¶ 203.) Plaintiff Holland affirmatively pleads that he relied **on his son**, and Plaintiff Heikali affirmatively pleads that he relied **on a friend**. Both Plaintiffs effectively concede that they did *not* rely on Mr. Paul before "investing" in CryptoZoo. (*Id.* ¶¶ 202-03.) As a result, Plaintiffs cannot succeed on any fraud-based claim raised against Mr. Paul. (Mot. Dismiss at 13.)

Next, Plaintiffs argue that they plead specific reliance by alleging that they "[t]rust[ed] Defendants' promises that CryptoZoo would be functional" in Paragraph 207 of the First Amended Complaint. (Resp. at 10 (alterations in original).). This allegation is similarly unavailing for several reasons. First, and most egregiously, Plaintiffs have altered the allegations of the First Amended Complaint to suit their needs. Paragraph 207 *actually* alleges the following: "Trusting Defendants' promises that CryptoZoo would be functional, [sic]" (FAC ¶ 207.) This allegation is phrased as a dependent introductory clause, but no independent clause follows, and the allegation ends with a comma.[2] At best, Mr. Paul can only guess what Plaintiffs intended, and Plaintiffs may not

---

[2] Normally, Mr. Paul would not make much hay about a typographical error such as this. But, as it is the allegation on which Plaintiffs (now) hang their entire case with regards to reliance, clarity and reasonable decipherability in drafting matters. Without a clear subject and predicate to apply

unilaterally amend the First Amended Complaint by rewriting it in their Response. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (observing that "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.") (citation omitted).

But even if this impermissibly revised allegation did appear in the First Amended Complaint—that all of the Plaintiffs "'[t]rust[ed] Defendants' promises that CryptoZoo would be functional' when purchasing additional CryptoZoo products"—it would still be insufficient to demonstrate reliance. (Resp. at 10.) Even as impermissibly revised, this allegation lacks the necessary specificity in pleading required by Rule 9(b) and the PSLRA. Among other deficiencies, it "fails to identify the speaker, whether the statement was made orally or in writing, any specific injury, or justifiable reliance on the statement." *Walters v. J.D. Palatine, L.L.C.*, 2017 WL 79978, at *3 (W.D. Tex. Jan. 9, 2017), *report and recommendation adopted,* 2017 WL 11002241 (W.D. Tex. Feb. 8, 2017).

Finally, Plaintiffs fail to respond to several of Mr. Paul's arguments regarding reliance. They do not respond to his arguments that they have failed to plead reliance on any act or omission by Mr. Paul. (Mot. Dismiss at 15.) Nor do they respond to Mr. Paul's argument that they have failed to plead allegations supporting proximate causation. (*Id.* at 16.) Therefore, Plaintiffs have waived any opposition to these arguments. *Kellam*, 2013 WL 12093753, at *3. Accordingly, the Court should dismiss Plaintiffs' claims for fraud, fraudulent misrepresentation, negligent

---

this dependent clause to, it carries no meaning. It should therefore be disregarded. This error is also, unfortunately, indicative of the First Amended Complaint's many pleading issues, and demonstrates yet again why the First Amended Complaint should also be dismissed as a shotgun pleading due to its undecipherable nature.

7

misrepresentation, aiding and abetting fraud, conspiracy to defraud, violations of Rule 10b-5, the federal RICO statute, and all state consumer protection statutes.

## IV.  PLAINTIFFS FAIL TO PLEAD ALLEGATIONS SUFFICIENT TO SUPPORT THEIR RICO CLAIM.

### A.  <u>Plaintiffs fail to identify even a single predicate act that could support a pattern of racketeering activity.</u>

Plaintiffs make no effort in their Response to identify even a single predicate act (let alone the required two or more) that could support a RICO claim under Section 1961(1). (Resp. at 11-13); 18 U.S.C. § 1961(1). Contrary to clear federal case law, Plaintiffs insist that common-law fraud claims can serve as RICO predicate acts. (Resp. at 11-12.) They cannot. *See Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 777 (N.D. Tex. 2014) ("For state law predicate acts 'only crimes prohibited in state statutes *and* listed in section 1961(1) can serve as predicate offenses for the purpose of a RICO claim.'") (emphasis in original); 18 U.S.C. § 1961(1) (defining "racketeering activity" to mean, when chargeable under state law, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . .").

Plaintiffs ignore this standard and argue that have plead the requisite predicate acts because they have alleged "practices ris[ing] well above the single act, 'garden-variety fraud.'" (Resp. at 13.) In support, they cite two out-of-circuit cases that do not address the issue at hand: whether state common-law fraud claims can serve as predicate acts under RICO. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (addressing RICO claims under federal mail and wire fraud standards); *Marshall-Silver Const. Co. v. Mendel*, 894 F.2d 593, 597 (3d Cir. 1990) (same). Rather, both deal only with federal mail and wire fraud, which Plaintiffs have not pled or even mentioned in their complaint. Plaintiffs' RICO claim should therefore be dismissed for failing to plead any predicate acts.

B. Plaintiffs fail to address the First Amended Complaint's pleading deficiencies regarding RICO's requirement to demonstrate an enterprise.

1. *Plaintiffs have not pled an enterprise with the requisite specificity.*

Plaintiffs fail to address both the Fifth Circuit's pleading standard for RICO enterprises and the paucity of their pleadings on the subject. The Fifth Circuit holds that an association-in-fact enterprise "(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1461 (5th Cir. 1991)). Plaintiffs do not address how their pleadings meet any of these elements, especially under RICO's more stringent particularity pleading standard. *See, e.g.*, *Chyba v. EMC Mortg. Corp.*, 2011 WL 13205938, at *1 (N.D. Tex. Apr. 15, 2011), *aff'd*, 450 F. App'x 404 (5th Cir. 2011) ("The plaintiff must . . . plead specific facts, not mere conclusory allegations, to avoid dismissal.") (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)). They similarly fail to address, at all, how their one-off allegation about other supposed schemes can meet this pleading standard. Their RICO claim should be dismissed for this reason as well.

2. *Plaintiffs misstate the law by claiming that CryptoZoo can form an enterprise with its officers and employees.*

Plaintiffs wrongly dismiss Mr. Paul's correct citation to the longstanding legal rule that "[w]here a plaintiff alleges that a RICO enterprise consists merely of a corporation associating with its own employees, the claim fails." *Yadav v. Frost Bank*, 2020 WL 7385842, at *5 (W.D. Tex. Dec. 16, 2020), *aff'd sub nom.* 851 F. App'x 509 (5th Cir. 2021). Instead, they argue—without citation to any portion of their pleadings—that Mr. Paul can conspire with CryptoZoo because a corporation's sole owner can, under certain circumstances, be liable when he "unlawfully conducts the affairs of the corporation." (Resp. at 14-15 (quoting *Cedric Kushner Promotions, Ltd. v. King*,

9

533 U.S. 158, 166 (2001)).) But nowhere do Plaintiffs allege Mr. Paul to be the sole owner of CryptoZoo, and the facts at issue are not at all what Plaintiffs plead here. Rather, "Plaintiffs only discernable charge is that CryptoZoo schemed with its own employees to deceive Plaintiffs in connection with their CryptoZoo purchases." (Mot. Dismiss at 23 (citing FAC ¶¶ 12-31, 195-220).) Under clear and binding Fifth Circuit precedent, such allegations cannot support the existence of a RICO enterprise. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). Therefore, Plaintiffs' RICO claim should be dismissed.

**V.      PLAINTIFFS' FAIL TO REBUT THAT THE ZOO TOKENS AND NFTS ARE NOT SECURITIES AND TO MEET THE PSLRA'S HEIGHTENED PLEADING STANDARDS FOR SCIENTER TO SUPPORT THEIR SECURITIES EXCHANGE ACT CLAIMS.**

      A.   <u>Plaintiffs fail to show that ZOO Tokens and NFTs can be considered securities under the "investment contracts" test.</u>

Plaintiffs' entire argument that ZOO Tokens and NFTs should be considered securities under the *Howey* test comes down to asserting that Mr. Paul's identification of their pleading failures is a "semantical quibble." (Resp. at 18 n.6.) Plaintiffs make no actual effort to distinguish the persuasive authority Mr. Paul cites. *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 321 (S.D.N.Y. 2023); Amicus Curiae Brief of Paradigm Operations LP, *Ripple*, No. 20-CIV-10832, at 3-6, n.18, ECF No. 707-1 (S.D.N.Y. Nov. 15, 2022). Instead, they claim—without support—that the Court should look past their pleading that Plaintiffs bought ZOO Tokens and NFTs "from Defendants" instead of from CryptoZoo, Inc. (Resp. at 18 n.6.) This is just one of the many instances where Plaintiffs' failure to distinguish between the Defendants makes the First Amended Complaint impossible to parse. (*See* Section I.B, *supra*.) And once again, Plaintiffs impermissibly attempt to amend the First Amended Complaint in their Response to correct a clear pleading deficiency. The Court should not allow them to do so. *In re Enron Corp.*, 761 F. Supp. 2d at 566.

Plaintiffs next attempt to distinguish *Ripple*'s analysis by arguing that the promoted "flourishing online ecosystem" discussed in *Ripple* was somehow "nebulous" while the statement that CryptoZoo was intended to be a "really fun game that makes you money" is not. (Resp. at 18); *Ripple*, 682 F. Supp. 3d at 318-19. But both statements are "nebulous," and Plaintiffs fail to cite to more specific allegations that could somehow make up the difference. (Resp. at 18.) In other words, *Ripple* is on point and persuasive.

This is precisely why Mr. Paul cites *Ripple*: it is an important, published opinion from a respected federal district court and judge, which addresses a novel issue and happens to be squarely on point. Its thorough and well-reasoned analysis explains why cryptocurrencies should not be considered securities as a blanket matter, and why the specific allegations at issue are essential to determining whether something meets the *Howey* test. *Ripple*'s analysis shows how Plaintiffs' pleading failures mean ZOO Tokens and NFTs should not be considered securities, as Plaintiffs have pleaded them. *Ripple*, 682 F. Supp. 3d at 321.

Finally, Plaintiffs cite to *Securities & Exchange Commission v. Balina*, 2024 WL 2332965, at *10 (W.D. Tex. May 22, 2024), to assert that the ZOO Tokens and NFTs should be considered securities like the cryptocurrency at issue in that case, SPRK tokens. This comparison is unavailing, and *Ripple* remains the more apposite case. The SPRK tokens in *Balina* differed from the ZOO Tokens and NFTs at issue here in several crucial ways. First, SPRK had an "ICO" ("Initial Coin Offering"); CryptoZoo did not. *Id.* at *2-3. SPRK ran on a "decentralized cloud" and required growth in its userbase to properly function, as the decentralized network required "more cells" to meet its goals. *Id.* at *1. CryptoZoo does not function in the same manner at all. Rather, it was designed to function based on the purchase of individual CryptoZoo NFTs through the use of the ZOO Token. The game would not require a "decentralized cloud" or continual user growth based

11

on developer action to make it work (nor do Plaintiffs allege that to be the case). *Balina* addressed a very different type of cryptocurrency project and is not well-suited as a comparison to Plaintiffs' allegations here.

Simply put, Plaintiffs fail to allege sufficient facts to demonstrate that the ZOO Tokens and NFTs qualify as securities under *Howey*. What little they do allege cuts against them: that they "invested" on the advice of friends and relatives (FAC ¶¶ 202-03); that they purchased ZOO Tokens and NFTs "from Defendants" instead of from CryptoZoo directly (*id.* ¶ 45); and that the value of CryptoZoo rose and fell based on market conditions unrelated to statements by any of the Defendants. (*Compare id.* ¶ 205 (alleging rises and falls in price of ZOO Token at various dates starting in November of 2021 and claiming tangential connection to actions by the Defendants drove those price rises and falls) *with id.* ¶ 206 (incongruously alleging that "[i]nitially during **September**, ZOO Tokens lost almost all of their value for the first time," with no connection made to any activity by the Defendants relating to the price fall) (emphasis added).)[3] For all of these reasons, Plaintiffs fail to show that they could have "expected profits solely from the efforts of" Mr. Paul. *Howey*, 328.U.S. at 298-99. Plaintiffs' Exchange Act claims should therefore be dismissed.

    B. <u>Plaintiffs have not met the PSLRA's heightened pleading requirement to allege facts demonstrating intent to defraud or mislead with respect to Mr. Paul's public statements.</u>

Plaintiffs next argue that they have met Rule 9(b)'s pleading standards with regard to allegations of scienter against Mr. Paul because "conditions of mind . . . may be averred generally." (Resp. at 21 (citation omitted).) This blatantly ignores the heightened pleading standard imposed by the Private Securities Litigation Reform Act ("PSLRA"), which establishes a pleading standard

---

[3] Plaintiffs, of course, completely ignore the fact that their own pleadings show the value of ZOO Tokens and NFTs fluctuated based on market conditions instead of on any statement allegedly made by the Defendants in their Response. (Resp. at 15-20.)

even stricter than the basic requirements of Rule 9(b). "The PSLRA *also* requires that the complaint 'with respect to *each* act or omission alleged' to be false or misleading 'state with *particularity facts* giving rise to a *strong* inference that *the defendant* acted with the required state of mind.'" *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (emphasis in original; quoting 15 U.S.C. § 78u–4(b)(2)).

Plaintiffs wholly ignore the PSLRA's requirements. (Resp. at 21-22.) Therefore, they have waived their objections to Mr. Paul's arguments with regard to the PSLRA, and the Exchange Act claims should be dismissed for failure to comply with the enhanced statutory pleading requirements. *Southland Sec.*, 365 F.3d at 362; *Kellam*, 2013 WL 12093753, at *3.

It is also telling that in disputing whether they have complied with Rule 9(b), Plaintiffs will not say what they must to prove this point: that Mr. Paul allegedly sold ZOO Tokens or NFTs "for an immediate profit." (Resp. at 22.) Instead—likely aware that Mr. Paul did not sell his tokens for a profit, but Greenbaum and Ibanez did (Cross-cl. ¶¶ 76-84, 108, ECF No. 55)—Plaintiffs argue only that "Defendants," generally, sold their CryptoZoo products for a profit. (Resp. at 22.) Plaintiffs' semantic efforts to lob accusations at Mr. Paul, all while hiding behind the veil of generally alleging actions by the "Defendants," demonstrate why their securities fraud claims are not viable. They simply cannot and will not plead the heightened details required to allege scienter under the PSLRA (or reliance, as demonstrated in Section III, *supra*). *Southland Sec.*, 365 F.3d at 362. Therefore, Plaintiffs' Exchange Act claims should be dismissed.

C. Plaintiffs fail to show that their "fraud-created-the-market" theory can support presumptive reliance.

Plaintiffs fail to plead sufficient facts to support their "fraud-created-the-market" theory of presumptive reliance for several reasons. First, for the fraud-created-the-market theory to support presumptive reliance, the thing purchased **must actually be a security**. *Regents of Univ. of Cal. v.*

*Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 391 (5th Cir. 2007) (observing that something must be "an otherwise unmarketable **security**" for the "fraud-created-the-market theory" to apply) (emphasis added). ZOO Tokens and NFTs are not. *See* Section V.A, *supra*.

Second, to support the application of this theory, Plaintiffs must allege that ZOO Tokens and NFTs are "patently worthless." *Regents*, 482 F.3d at 391 n.35. But Plaintiffs offer no ultimate facts demonstrating that the ZOO Tokens or NFTs were "patently worthless." They plead in a conclusory fashion that the "ZOO Tokens and CZ NFTs" are "objectively valueless and unmarketable because there was never a CryptoZoo game to use them with." (FAC ¶ 487.) This allegation, however, is not supported with further allegations or detail. For instance, Plaintiffs do not plead any facts demonstrating that no market could or does exist for the ZOO Tokens or NFTs separate from the game. (FAC ¶¶ 486-89.) For these reasons, Plaintiffs' Exchange Act claims should be dismissed.

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE COMMODITY EXCHANGE ACT BECAUSE THEIR ALLEGATIONS SUPPORT ONLY THE EXISTENCE OF SPOT SALES.

Plaintiffs' attempt to salvage their Commodities Act claim by restyling it as a claim based on "options on a commodity for future delivery" fails for two reasons. First, Plaintiffs never make such allegations in the First Amended Complaint—they never allege that the ZOO Tokens can be considered a commodity at all. (FAC ¶¶ 518-523; Mot. Dismiss at 32-33.) Plaintiffs cannot now amend the First Amended Complaint via their Response, as they have attempted repeatedly to do. *In re Enron Corp.*, 761 F. Supp. 2d at 566.

Second, Plaintiffs' attempt to redefine the ZOO Tokens and NFTs as creating "options on a commodity for future delivery" is both factually and legally incorrect. Without a single citation to case law, Plaintiffs assert that the ZOO Tokens and NFTs should be considered options for future delivery because the Base Egg NFTs would "'hatch' into random photoshopped animals that would

14

produce additional CryptoZoo Tokens." (Resp. at 24.) This argument badly misunderstands what "options" for future delivery are under the Commodities Act.

An "option" is a contract that limits one party's ability to revoke an offer. *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 469 (1997) ("An option, as the term is understood in the trade, is a transaction in which the buyer purchases from the seller for consideration the right, but not the obligation, to buy or sell an agreed amount of a commodity at a set rate at any time prior to the option's expiration."). The Commodity Exchange Act itself recognizes this, defining an "option" as "an agreement, contract, or transaction that is of the character of, or is commonly known to the trade as, an 'option', 'privilege', 'indemnity', 'bid', 'offer', 'put', 'call', 'advance guaranty', or 'decline guaranty'." 7 U.S.C. § 1a(36). Option contracts most commonly address one party's right to perform with regard to a commodity in the future at a specified price, whether by buying (a "call") or by selling (a "put"). *Dunn*, 519 U.S. at 469 n.6 ("Participants in these markets refer to an option that provides the right to sell [a commodity] as a "put," and one that provides the right to buy as a "call.").

Plaintiffs' argument that the "hatching" feature of the Base Egg NFTs creates an "options" contract is categorically wrong, because it does not create a contract. (Resp. at 24); *see also BDI Cap., LLC v. Bulbul Invs. LLC*, 446 F. Supp. 3d 1127, 1135 (N.D. Ga. 2020) (noting that "courts have held that a '**condition precedent**' to a Subparagraph (D) claim is that 'the plaintiff purchased or sold **a contract** for future delivery.'") (emphasis added). Plaintiffs make no allegations that the "hatching" feature establishes an agreement to buy or sell ZOO Tokens or NFTs at a specified price in the future. (FAC ¶¶ 518-23.) In fact, they make no allegations that the Base Egg NFTs or ZOO Tokens functioned as a contract at all. Rather, they argue that the hatching feature of the Base Egg NFTs produced "a random amount of cryptocurrency from CryptoZoo NFTs"—something that,

15

even if supported by adequate allegations of fact, does nothing to demonstrate that the hatching feature of the Base Eggs constitutes a contract through which Plaintiffs could buy or sell additional ZOO Tokens or NFTs at a specified, pre-set rate.[4] Therefore, Plaintiffs' claim under the Commodity Exchange Act should be dismissed, because Plaintiffs fail to demonstrate any futures sales instead of spot sales, whether by option or otherwise.

## VII.   PLAINTIFFS FAIL TO SHOW THAT THEIR COMMON-LAW CAUSES OF ACTION ARE PROPERLY PLEADED.

### A.   Plaintiffs fail to respond to Mr. Paul's arguments supporting dismissal of Plaintiffs' claims for breaches of express and implied contracts.

Plaintiffs largely fail to respond to Mr. Paul's arguments regarding the multiple pleading deficiencies in their claims for breach of express and implied contracts, thereby waiving any opposition to those arguments. *Kellam*, 2013 WL 12093753, at *3. For the few arguments that they do contest, Plaintiffs fail to provide either citation to relevant case law or to supporting allegations in the First Amended Complaint.

Plaintiffs' Response ignores Mr. Paul's argument that any reliance on statements that "CryptoZoo would make them money" would be unjustified because the T&C expressly contradict such a representation.[5] (Mot. Dismiss at 36-37.) Plaintiffs similarly disregard Mr. Paul's arguments that the statements in the T&C to "strive to do the best for the project and the community" are "aspirational in nature and cannot provide the basis for *any* breach of contract claim" under

---

[4] In fact, just as Plaintiffs' argument is wholly devoid of legal citation, it is also wholly devoid of supporting citations to allegations in the First Amended Complaint. The **only** allegations to which Plaintiffs point—Paragraphs 18, 188, and 200 of the First Amended Complaint—deal with general statements, not the operations of the Base Egg NFTs or any other part of the CryptoZoo game. The new arguments Plaintiffs raise here are unsupported by any reference to factual allegations.

[5] To be clear, Plaintiffs do not even plead any facts demonstrating reliance, as Mr. Paul states in Section III, *supra*. If they had, such reliance would be unjustified to support a breach of implied contract claim, because the express contract terms disclaim the use of CryptoZoo products as an investment. (Mot. Dismiss at 37.)

16

Delaware law, which governs the T&C. (Mot. Dismiss at 39.) Therefore, Plaintiffs have waived any opposition to these arguments and their breach of contract claims should be dismissed.

Where Plaintiffs do attempt to respond to Mr. Paul's arguments, their Response is remarkable both for what it admits and what it fails to include. First, Plaintiffs Holland and Heikali admit that they have "been investing in cryptocurrency for five and four years respectively." (Resp. at 25.) In doing so, they support Mr. Paul's arguments that they are seasoned cryptocurrency investors and may not unreasonably rely on non-binding promises allegedly made by Mr. Paul.[6] *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) (observing that "[t]he justifiableness of the reliance is judged in light of the plaintiff's intelligence and experience," and holding, "viewed against all of the surrounding circumstances and the plaintiff's business experience" that's plaintiff's reliance "was, as a matter of law, unjustified").

Second, Plaintiffs argue that because Mr. Paul "was not speaking in a vacuum," his alleged statements are somehow not puffery. (Resp. at 26.) Plaintiffs, unsurprisingly, cite no case law for the proposition that "not speaking in a vacuum" constitutes an exception to the legal standard for puffery. (*Id.*) Plaintiffs cannot avoid the fact that the alleged statements on which they base their claims are purely puffery, and their failure to cite any case law in support of their position dooms it from the start. (Mot. Dismiss at 37-38.)

Third, and finally, Plaintiffs fail to cite any allegations in the First Amended Complaint that would support their veil-piercing arguments. (Resp. at 26-27.) The sole allegation to which they point—Paragraph 43—is purely a legal conclusion, devoid of factual support, and should therefore

---

[6] Again, assuming that Plaintiffs ever made any allegations of reliance in the first place, which they do not.

be disregarded. As such, this argument also fails, and Plaintiffs' claims for breach of express and implied contract should be dismissed.

B. Plaintiffs are wrong on the law and short on facts to support a claim for unjust enrichment.

In attempting to support their unjust enrichment claim, Plaintiffs once again misstate black letter law. (Resp. at 27.) The Fifth Circuit has very clearly held that unjust enrichment claims may be dismissed, as a matter of law, when the pleadings at issue show that the plaintiff has an adequate remedy at law. *King v. Baylor Univ.*, 46 F.4th 344, 368 (5th Cir. 2022) (affirming district court's dismissal of unjust enrichment claim where "the parties' contract governs the services at issue" because Texas law holds claims for unjust enrichment to be "inapplicable when parties have an express contract covering the subject matter of the parties' dispute.") (cleaned up). Plaintiffs make much hay about the fact that unjust enrichment claims may sometimes be pleaded in the alternative. (Resp. at 27.) But they completely ignore the procedural posture and outcome in *King*: there, the Fifth Circuit affirmed the district court's dismissal of an unjust enrichment claim on a motion to dismiss where the complaint demonstrated that the parties clearly had an express contract covering the issues at hand. *King*, 46 F.4th at 355, 368-69. Plaintiffs' one-sided reading of the case law deliberately ignores the outcome of that case. Just as in *King*, Plaintiffs' unjust enrichment claim should be dismissed.

Plaintiffs also rehash their veil piercing arguments in support of their claim for unjust enrichment. As with the breach of contract claims, Plaintiffs do not cite to allegations of fact in the First Amended Complaint sufficient to support such a theory (because they cannot).

Finally, Plaintiffs' arguments that they allege the unjust or inequitable retention of a benefit by Mr. Paul are unavailing. Because their veil piercing allegations are unsupported, they cannot show that a benefit was conferred on Mr. Paul. (Mot. Dismiss at 41.) And, because they admit that

18

they pursued "investments" in products expressly disclaimed as an investment, they cannot show that unjust or unconscionable outcomes. (Resp. at 28.) Their attempt to brush aside Mr. Paul's buyback makes this even more clear. Plaintiffs knew what they were doing, and both their pleadings and the arguments in their Response show it: they sought to use CryptoZoo, inappropriately, as an investment opportunity. When their speculative investments failed, because the inherently risky CryptoZoo project failed, they sought a target from which to recoup their losses. This does not present a claim for unjust enrichment.

    C. <u>Plaintiffs fail to address the fact that Mr. Paul did not owe them any legal duty that he breached through negligence.</u>

Plaintiffs similarly fail to respond to Mr. Paul's arguments addressing their negligence claim. They assert without legal support that Mr. Paul owed them a duty, without any legal support. They completely ignore the fact that the T&C disclaims the first duty they seek to impose. (Mot. Dismiss at 44.) And Mr. Paul has clearly shown that Texas case law does not support the imposition of a vague or previously unrecognized duty such as the second duty Plaintiffs seek to impose here. (*Id.* at 45-46.)

Nor can Plaintiffs escape the implications of the economic loss rule. Without argument, they assert that they "may bring claims for negligence as alternatives." (Resp. at 28-29.) This is an incorrect reading of the economic loss rule. Rather, the rule prevents plaintiffs "from seeking relief in tort . . . when the injury is only the economic loss to the subject of a contract itself." *Memorial Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008). The economic loss rule may be properly applied to dismiss a negligence claim at the pleadings stage where the harms alleged in the negligence claim are addressed by a breach of contract claim. *Id.* (affirming dismissal of negligence claim based on economic loss rule on defendant's motion to dismiss).

D.  Plaintiffs fail to point to any support for their claims for civil conspiracy or aiding and abetting.

Plaintiffs' arguments in support of their civil conspiracy and aiding and abetting claims fare no better. They have failed to plead a claim for fraud, so cannot plead claims for civil conspiracy or aiding and abetting. (*See* Sections II, III, *supra*); *see also Berry v. Bryan Cave LLP*, 2010 WL 1946264, at *10 (N.D. Tex. May 11, 2010) ("In pleading a claim for aiding and abetting, Plaintiffs must also plead the underlying tort allegedly committed by the primary tortfeasors.").

Nor does Plaintiffs' attempt to avoid the intra-corporate conspiracy doctrine save these claims. First, they fail to adequately support any claim for veil piercing that could support their arguments. *See* Section VII.A, *supra*. Second, Plaintiffs' argument that "Defendants worked in their own personal interest" is unsupported by either allegations or case law. The case law to which Plaintiffs cite addresses an exception to the general rule where a defendant can be found to have acted separately from his employer corporation where the defendant employee had a personal motive not ascribable to the employer. *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). Even then, the Fifth Circuit described the exception as "possible" rather than definite, and it found that the plaintiffs failed to state a claim anyway. *Id.* In short, *if* this exception is even recognized, it is not applicable in circumstances like those alleged here. Rather, the general rule is applicable: "a 'corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.'" *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citation omitted). Plaintiffs' civil conspiracy and aiding and abetting claims should therefore be dismissed.

VIII.  **PLAINTIFFS DO NOT CITE TO ALLEGATIONS SUFFICIENT TO SUPPORT THEIR COLORADO AND TEXAS STATUTORY CLAIMS.**

Plaintiffs next argue that they have sufficiently pleaded their Colorado and Texas state law deceptive trade practices claims by pointing to Mr. Paul's status as "a popular social media

personality" and "his online celebrity status."[7] (Resp. at 31-32.) This does not offer support to either claim. As Mr. Paul proffered, the Colorado Consumer Protection Act requires that the conduct alleged "significantly impacts the public." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) Simply <u>being</u> a social media personality does not impact the public on its own, and Plaintiffs do not point to allegations demonstrating <u>how</u> any alleged acts by Mr. Paul are supposed to have "significantly" impacted the public. (Resp. at 31.)

Similarly, Plaintiffs' arguments with regard to the Texas Deceptive Trade Practices Act fall flat. The Texas act requires Plaintiffs to "show that the defendant's act took advantage of [a] lack of knowledge and 'that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'" *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)). This is impossible for Plaintiffs to show, because they themselves plead that they had knowledge and experience investing in cryptocurrencies. (FAC ¶¶ 193, 194.) Plaintiffs avoid the impact of their own pleadings—and they allege that they had experience that would prevent "resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Huynh*, 30 F.4th at 453. And Plaintiffs acknowledge that they "invested" in something expressly disclaimed as an investment. (T&C at 2-3, ECF No. 1-2 (emphasis added).) Therefore, Plaintiffs' claims under the Colorado Consumer Protection Act and the Texas Deceptive Trade Practices Act should be dismissed.

## IX.  PLAINTIFFS HAVE NOT PROPERLY REQUESTED LEAVE TO AMEND AND SHOULD NOT BE ALLOWED TO AMEND IN ANY CASE.

Finally, at the end of their Response, Plaintiffs briefly "request leave to amend to address any deficiencies." (Resp. at 32.) Plaintiffs' request for leave to amend does not comport with Fifth

---

[7] Contrary to Plaintiffs' assertion, Section VIII is only about the specific deficiencies in Plaintiffs' Colorado and Texas law claims. Mr. Paul demonstrates the insufficiency of <u>all</u> of Plaintiffs' state deceptive trade practices act claims in Sections II and III of his Motion. (Mot. Dismiss at 11-17.)

Circuit precedent or the Western District of Texas Local Rules. Granting Plaintiffs leave to amend would additionally prejudice Mr. Paul at this point in the litigation.

The Fifth Circuit holds that where plaintiffs fail to move for leave to amend, request leave only in a response brief, and otherwise "fail[] to amend their complaint as a matter of right, fail[] to furnish the district court with a proposed amended complaint, and fail[] to alert both the court and defendants to the substance of their proposed amendment," a district court may properly deny leave to amend. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (affirming denial of leave to amend where "the plaintiffs tacked on a general curative amendment request to the end of their response in opposition to the defendants' motion to dismiss."); *United States ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co.*, 491 F. Supp. 3d 220, 235 (N.D. Tex. 2020) (denying motion for leave to amend where plaintiff stated in response brief "if the Court believes that the Complaint is deficient, [plaintiff] requests that the Court grant leave to amend" and observing such a request to be "the epitome of 'a general curative amendment request.'") (quoting *Goldstein*, 340 F.3d at 254). Western District of Texas Local Rule CV-7(b) requires that "an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave," which Plaintiffs have not done here. W.D. Tex. L.R. CV-7(b).

Additionally, Plaintiffs fail to present sufficient reasons why they should be allowed to amend the First Amended Complaint in the absence of a motion. First, they have failed to amend the First Amended Complaint as of right, which Local Rule 15(a) allowed them to do. W.D. Tex. L.R. 15(a) ("Notwithstanding the time limits provided in Rule CV-7, a party may respond to a first motion under Federal Rule of Civil Procedure 12(b) by filing an amended pleading as a matter of course not later than 21 days after the filing of the motion."). Second, they fail to "demonstrate to

the court how they would replead [reliance] more specifically if given the opportunity, d[o] not proffer a proposed second amended complaint to the district court, and d[o] not suggest in their responsive pleading any additional facts not initially pled that could, if necessary, cure the pleading defects raised by" Mr. Paul.[8] *Goldstein*, 340 F.3d at 255. The absence of any potentially curative allegations in a hypothetical second amended complaint—especially with regard to reliance, but certainly as to all of Plaintiffs' claims—means that they should not be afforded yet another opportunity to amend.

Granting Plaintiffs leave to amend at this point in the proceedings would also unfairly prejudice Mr. Paul. *Id.* (observing that courts may also deny leave to amend based on "undue prejudice to the opposing party by virtue of allowance of the amendment."). This litigation has now been ongoing for almost two years. In those nearly two years, it has been interminably stuck in the pleadings stage, while Plaintiffs have had more than sufficient opportunity to amend and more than adequate time to have properly addressed and resolved the First Amended Complaint's many deficiencies. Extending the pleadings stage of this matter for another round, after all of the time that Plaintiffs have had to plead their case, would unduly prejudice Mr. Paul. Therefore, the Court should grant Mr. Paul's motion to dismiss, with prejudice, denying Plaintiffs' improper request for leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' First Amended Complaint with prejudice.

---

[8] Plaintiffs reference several "new" allegations they may seek to plead in footnotes in the Response. None of these allegations could possibly support their actual claims against Mr. Paul. The potential "new" allegations address conduct largely unrelated to CryptoZoo. (Resp. at 12 n.3.) What little that does relate to CryptoZoo does not support their claims for relief (Resp. at 21 n.8) or fails to provide any details of what additional allegations Plaintiffs might bring, instead relying only on the generalities the Fifth Circuit has repeatedly condemned. (Resp. at 18 n.7.)

23

Dated: November 7, 2024.

| | |
|---|---|
| /s/ *Benjamin J. Widlanski*<br>Benjamin J. Widlanski, Esq.<br>Email: bwidlanski@kttlaw.com<br>Tal Lifshitz, Esq.<br>Email: tjl@kttlaw.com<br>Rachel Sullivan, Esq.<br>Email: rs@kttlaw.com<br>Clayton J. Schmitt, Esq.<br>Email: cschmitt@kttlaw.com<br>**KOZYAK TROPIN & THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Miami, Florida 33134<br>Telephone: (305) 372-1800<br>Facsimile: (305) 372-3508<br>*Counsel for Defendant Logan Paul*<br>(admitted *pro hac vice*) | /s/ *Jeffrey Neiman*<br>Jeffrey Neiman, Esq.<br>jneiman@mnrlawfirm.com<br>Jason L. Mays, Esq.<br>jmays@ mnrlawfirm.com<br>**MARCUS, NEIMAN, RASHBAUM & PINEIRO LLP**<br>One Biscayne Tower<br>2 South Biscayne Boulevard, Suite 2530<br>Miami, Florida 33131<br>Telephone: (305) 400-4260<br><br>*Counsel for Defendant Logan Paul*<br>(admitted *pro hac vice*) |
| /s/ *Shelby O'Brien*<br>Shelby O'Brien<br>**ENOCH KEVER PLLC**<br>7600 N. Capital of Texas Highway<br>Building B, Suite 200<br>Austin, Texas 78731<br>Telephone: (512) 615-1223<br>Facsimile: (512) 615-1198<br>sobrien@enochkever.com<br>*Counsel for Defendants Paul,*<br>*Levin, and Bentov*<br>(admitted to Western District of Texas) | |

## CERTIFICATE OF SERVICE

I hereby certify a copy of the above and foregoing has been served upon all counsel of record by using the Court's electronic filing system on the 7th day of November 2024.

By: /s/ *Clayton J. Schmitt*
Clayton J. Schmitt, Esq.

24