**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **DON HOLLAND, individually and on behalf** : | | |
| **of all others similarly situated,** : | **CIVIL ACTION NO.: 1:23-cv-110** | |
| : | | |
| **Plaintiff,** : | | |
| : | **HON. ALAN ALBRIGHT** | |
| **v.** : | | |
| : | | |
| **CRYPTOZOO, INC.,** *et al.*, : | | |
| : | | |
| : | | |
| **Defendants.** : | | |

**DEFENDANT DANIELLE STROBEL'S REPLY BRIEF IN SUPPORT OF HER**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR LACK OF**
**PERSONAL JURISDICTION**

Defendant Danielle Jonas, f/k/a Danielle Strobel ("Ms. Strobel"), files the following Reply

Brief in Support of her Motion to Dismiss Plaintiffs' Amended Complaint for Lack of Personal

Jurisdiction (Doc. 86, the "Motion"), and in opposition to Plaintiffs' Response to the Motion and

Alternative Motion for Leave to Amend (Doc. 91, the "Response").

[*Brief begins on following page.*]

**I.**    **Plaintiffs Common Law Claims Do Not Provide This Court With Personal Jurisdiction Over Ms. Strobel.**

Plaintiffs' Response does nothing to rebut the deficiencies raised in Ms. Strobel's Motion. There are still no factual allegations that come anywhere close to establishing the necessary "minimum contacts" between Ms. Strobel and Texas.  Plaintiffs and their counsel know this, and their desperation is apparent in the Response.

According to Plaintiffs, the affidavit Ms. Strobel filed in support of her Motion to Dismiss the Amended Complaint no longer swears that she "never hired any employees in the State of Texas."  (Doc. 91 at 2).  Ms. Strobel, Plaintiffs contend, "removed that claim from her affidavit in support of the current Motion because she can no longer swear to that fact given the obvious proof that Defendants hired software developers based in Austin, Texas, to develop the CryptoZoo game."  (*See id.*).  Plaintiffs' argument here is baffling.

First, there is no allegation—much less "obvious proof"—that Ms. Strobel hired anyone in Texas.  More important, the purported revision to Ms. Strobel's affidavit that Plaintiffs make so much of does not actually exist.  The affidavit accompanying Ms. Strobel's initial Motion to Dismiss and the affidavit accompanying her most recent Motion to Dismiss say the exact same thing, i.e. she "never hired employees, servants, or agents in Texas . . ."  (Doc. 22-1 at ¶ 5; Doc. 86-1 at ¶ 5).

Putting this glaring misstatement aside, Plaintiffs also do not respond to Ms. Strobel's argument that the "group pleading" allegations in the Amended Complaint are fatal to the claims made against her.  (Doc. 86 at 9–10).  Instead, Plaintiffs' Response focuses on agency, alter-ego, and "stream of commerce" theories of personal jurisdiction, none of which are applicable to this case.

**A.      Plaintiffs' Amended Complaint Does Not Adequately Allege An "Alter Ego" Or "Agency" Theory Of Personal Jurisdiction.**

In their Response, Plaintiffs criticize Ms. Strobel for not "address[ing] the agency or alter-ego issues." (Doc. 91 at 3). But the Amended Complaint does not even allege a cognizable "alter ego" or "agency" claim upon which personal jurisdiction of Ms. Strobel could be based. A plaintiff must do more than simply recite the terms "alter-ego" and "principal-agent" in its Complaint.

Indeed, to establish personal jurisdiction under an alter ego theory, the Complaint must allege enough facts to plausibly state a claim for alter ego liability, such as:

> (1) whether the individual completely controls the corporation; (2) the level of financial integration between the individual and the corporation; (3) whether the corporation operates with grossly inadequate capital; (4) whether the individual uses the corporation's property as his own personal property; (5) whether the individual uses the corporation to pay personal obligations; and (6) whether the individual acts as if the corporation is an extension of his own personal interests.

*See Canyon Furniture Co. v. Sanchez*, W.D. Tex. No. SA-18-cv-00753-OLG, 2018 U.S. Dist. LEXIS 224455, \*\*21-22 (Nov. 8, 2018) (citing *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985)). Likewise, "[f]or an agency relationship to allow for imputation of contacts, 'the evidence must establish that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task.'" *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018). Plaintiffs' razor thin factual allegations against Ms. Strobel do not support either of these theories.

First, the Amended Complaint's sole reference to "alter ego" is as follows: "In the event any parties are misnamed or are not included here, it is Plaintiffs' contention that such was a 'misidentification,' 'misnomer,' and/or such parties are/were 'alter egos' of parties named here." (Doc. 86 at ¶ 43). Plaintiffs never allege that this Court's assertion of jurisdiction over Ms. Strobel

is warranted under an alter ego theory.  Nor do they assert any facts which could possibly support a claim that Ms. Strobel is the alter ego of CryptoZoo or vice versa.

The same is true with respect to Plaintiffs' "principal-agent liability" allegations.  (Doc. 86 at ¶ 44).  Again, Plaintiffs do not plead that personal jurisdiction over Ms. Strobel is appropriate pursuant to an agency theory.  Further, there are no factual allegations to suggest that Ms. Strobel had the necessary powers to assign and control CryptoZoo's tasks.  To the contrary, the Amended Complaint refers to her as an "assistant" who provided administrative help.  (*Id.* at ¶ 190).  For all of these reasons, exercising personal jurisdiction over Ms. Strobel based on an alter-ego or agency theory is not appropriate or reasonable.

### B.    The Stream Of Commerce Theory Of Personal Jurisdiction Is Not Applicable Either.

Plaintiffs' Response accuses Ms. Strobel of citing "stale caselaw that does not reflect the current state of the 'minimum contacts' step of the analysis." (Doc. 91 at 2).  That "stale caselaw," Plaintiffs' contend, does not account for the stream of commerce theory of personal jurisdiction. (*See id*.).  And according to Plaintiffs, "it is not disputed that Defendant, through CryptoZoo, delivered products into the stream of commerce with the expectation that they would be purchased by or used by consumers across the world, including Texas."  (*Id*. at 3).

As an initial matter, there is no allegation that Ms. Strobel placed anything into the "stream of commerce." Plaintiffs' characterization of this assertion as "indisputable" is perplexing because it **<u>does not even appear</u>** in the paragraphs of the Amended Complaint they cite.  (*Id*. citing Amended Complaint at ¶¶ 32-34).  There is simply no legal or factual basis for this Court to exercise personal jurisdiction over Ms. Strobel—herself not even an officer of CryptoZoo—based on a stream of commerce theory.  *See Ross v. Altria Group, Inc.*, N.D. Cal. No. No. C 04-01453 SI, 2004 U.S. Dist. LEXIS 18558, *15 ("[T]he Court finds that [the officer's] alleged act of

3

'intentionally allowing' products to be placed into the stream of commerce is not an individual action, but rather a corporate decision by one of ALG's subsidiaries."); *Brown v. General Steel Domestic Sales, LLC*, C.D. Cal. No. CV 08-00779 MMM (SHx), 2008 U.S. Dist. LEXIS 97832, *42 (May 19, 2018) ("[M]erely knowing that advertisements are being directed into the stream of commerce is not sufficient to establish personal jurisdiction over a corporate officer.").

In any event, the case Plaintiffs cite to support their argument, *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174 (5th Cir. 2013), is clearly distinguishable from the current dispute. *Ainsworth* involved product liability claims where the Court found jurisdiction over a foreign forklift manufacturer under the stream of commerce doctrine.  Notably, however, that doctrine— which the Fifth Circuit has been reluctant to apply outside of the products liability context—does not confer jurisdiction for "'any claims,'" but only over "harms that stem from . . . [a defendant's] delivery of products into the stream of commerce."  *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215–17 (5th Cir. 2000).

Here, Plaintiffs do not allege that their contact with CryptoZoo's digital assets in Texas caused them harm.  Rather, the purported damages arose out of the fraud and breaches of contract alleged in the Amended Complaint.  Under these facts, the stream of commerce doctrine is simply inapplicable.  *See id*. at 216 ("Appellants' claims arise out of losses they experienced as a result of ACAB's and Robbins' alleged actions vis-a-vis the 1992 Agreement, not as a result of any contact with a product").

## II.     Plaintiffs Have Not Alleged Colorable Federal Claims.

As detailed below and in Ms. Strobel's Motion to Dismiss, Plaintiffs have not alleged colorable violations of federal securities and RICO laws such that they can invoke these statutes' nationwide service of process provisions to establish jurisdiction.

**A.      Plaintiffs Have Not Sufficiently Alleged The Elements Of A Rico Claim.**

In her Motion, Ms. Strobel pointed out two key reasons why Plaintiffs' Complaint does not state a valid RICO claim.  First, Plaintiffs do not identify any conduct that could constitute a single "predicate act" under the RICO statute, let alone the two predicate acts necessary to state a RICO cause of action.  (Doc. 86 at 16–17).  Second, Plaintiffs do not allege any conduct on the part of Ms. Strobel that could invoke a RICO cause of action.  Again, Plaintiffs merely allege that Ms. Strobel was employed as Defendant Logan Paul's assistant and that she was a "founder" of CryptoZoo.  (*See id.* at 17–18).  Rather than address these arguments, Plaintiffs simply refer the Court to their Responses to the other Defendants' Motions to Dismiss.  (Doc. 91 at 5).

But that just highlights the problem with Plaintiffs' claims against Ms. Strobel.  "[A] RICO plaintiff must plead the specified facts as to each defendant.  It cannot . . . 'lump[] together the defendants.'"  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019).  This is precisely what Plaintiffs have done from the beginning, and they continue to follow this misguided approach in their Response.

Ultimately, to adequately state a RICO cause of action, Plaintiffs must allege, among other things, two predicate acts as to each Defendant.  They have not done so as to Ms. Strobel and, therefore, they have not stated a colorable RICO claim against her.

**B.      Plaintiffs Already Admitted That Ms. Strobel Made No Public Statements About CryptoZoo.**

**1.      Plaintiffs Cannot Impute Other Defendants' Statements To Ms. Strobel In Order To Establish Liability Under Rule 10b-5.**

Plaintiffs concede that Ms. Strobel made no public statements about CryptoZoo.  (Doc. No. 81 at ¶ 515; Doc. No. 86 at 15).  And as Ms. Strobel's Motion made clear, failure to identify a misrepresentation made by her individually is fatal to Plaintiffs' Rule 10b-5 claim. *In re UICI Sec. Litig.*, No. 3:04-CV-1149-P, 2006 U.S. Dist. LEXIS 73753, at *7–8 (N.D. Tex. Sept. 29, 2006).

5

Nevertheless, Plaintiffs argue in their Response that Ms. Strobel's alleged "administrative assistance regarding Defendants' internal communications" somehow forms the basis for a "colorable" 10b-5 claim against her. (Doc. 91 at 5). However, under the Exchange Act, civil plaintiffs may only pursue "primary violations" of Rule 10b-5—*i.e.*, misrepresentations directly made by an individual defendant. 15 U.S.C § 78t(e); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 162–63 (2008). Allegations of "assisting," "aiding," or "abetting" a primary violation do not state a claim under Rule 10b-5. *Stoneridge Inv. Partners, LLC*, 552 U.S. at 162–63. Accordingly, it is not enough to say that Ms. Strobel "help[ed] administratively." (*See* Doc. 81 at ¶ 191).

Plaintiffs' contention that Ms. Strobel was "responsible" for the statements of a "single spokesperson" is equally insufficient. (*See* Doc. 91 at 5). "Section 10(b) and Rule 10b-5 require a plaintiff to allege a materially false or misleading statement **on the part of each defendant**," and Plaintiffs' failure to attribute any statements to Ms. Strobel means they have not stated a colorable 10b-5 claim against her.[1] *In re UICI Sec. Litig.*, 2006 U.S. Dist. LEXIS 73753, at *7–8 (emphasis added).

### 2. Plaintiffs' New "Scheme Liability" Theory Does Not Save Their Section 10(b) Claims.

In their Response, Plaintiffs introduce for the first time an unpled "scheme liability" claim. (Doc. 91 at 5–6). Plaintiffs argue that they have stated a claim against Ms. Strobel under Section 10(b) because she allegedly participated in a "scheme" to "inflate the price" of CryptoZoo products

---

[1] Plaintiffs do not defend their Commodities Exchange Act ("CEA") claims in response to Ms. Strobel's Motion, but the same basic argument would apply. To allege secondary liability under the CEA, a plaintiff "must allege that [the defendant] (1) had knowledge of the principal's . . . intent to commit a violation of the Act; (2) had the intent to further that violation; and (3) committed some act in furtherance of the principal's objective." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 256 (5th Cir. 2011) (internal quotation marks omitted). That is, Plaintiffs must allege Ms. Strobel's "knowledge and guilty intent" as to a primary violation of the CEA. *Id.* The Amended Complaint does not plead any of the necessary facts to support such a claim.

merely by purchasing some of these products on June 11, 2021.  (*Id.*).  But this is not what the Amended Complaint actually alleged.

According to the Amended Complaint, Plaintiffs' Exchange Act claims were brought under Rule 10b-5(b)—the subsection pertaining to untrue statements of material fact and actionable omissions.  17 C.F.R. § 240.10b-5(b).  In contrast, scheme liability arises Rule 10b-5(a) and (c).  *SEC v. Narayan*, 3:16-cv-1417-M, 2017 U.S. Dist. LEXIS 170477, at *7 (N.D. Tex. Aug. 28, 2017).  Because the Amended Complaint does not allege such a claim against Ms. Strobel, Plaintiffs argument on this point should not be considered by the Court.  *See Neville v. Lipnic*, No. 5:16-CV-1231-DAE, 2018 U.S. Dist. LEXIS 229672, at *23–24 (W.D. Tex. Mar. 29, 2018) (collecting cases); *Davis v. DRRF Tr.*, No. 5:15-CV-880 RP, 2016 U.S. Dist. LEXIS 186607, at *8 (W.D. Tex. Jan. 6, 2016) (same).

Even if the Court were to construe the Amended Complaint as alleging scheme liability, Plaintiffs' Section 10b-5 claims would still be subject to dismissal.  To sufficiently state such a claim, a plaintiff must allege "the performance of an inherently deceptive act that is **distinct from** an alleged misstatement."  *SEC v. Jaitley*, No. 1:31-CV-832-DAE, 2023 U.S. Dist. LEXIS 202919, at *15 (W.D. Tex. Nov. 13, 2023) (emphasis added).  "[W]here the core misconduct alleged is in fact a misstatement, it [is] improper to impose primary liability . . . by designating the alleged fraud a 'manipulative device' rather than a 'misstatement.'"  *Id.* (alterations in original).  Thus, plaintiffs may not "cobble together their existing allegations into a scheme claim" or "overlay this claim onto existing allegations."  *In re Digital Turbine, Inc. Sec. Litig.*, No. 1:22-CV-550-DAE, 2024 U.S. Dist. LEXIS 150473, at *19–21 (W.D. Tex. Aug. 22, 2024).  A plaintiff must still allege necessary facts that conform to a scheme liability claim, like reliance on the purportedly deceptive conduct and scienter of the defendant.  *Id.* at 21; *Stoneridge Inv. Partners*, 552 U.S. at 160–64.

Here, Plaintiffs' central theory of this case clearly pertains to "misstatements" allegedly concealing "adverse facts concerning the non-existence or inviability of the CryptoZoo game." (Doc. 81 at ¶ 500). Having admitted that Ms. Strobel made no misstatements, Plaintiffs now attempt to "cobble together" this "scheme liability" theory for the first time in their Response. But the only allegation connecting Ms. Strobel to this theory is that she "purchased" CryptoZoo products. (*Id.* at ¶ 217). The Amended Complaint does not allege if or how any Plaintiffs relied on any conduct by Ms. Strobel, which is fatal to a scheme liability claim. *See Stoneridge Inv. Partners*, 552 U.S. at 160–64. And even if they could establish reliance, the Amended Complaint does not allege that Ms. Strobel had any intent to "manipulate" or "deceive," as required for any 10b-5 claim. *See In re Digital Turbine, Inc. Sec. Litig.*, 2024 U.S. Dist. LEXIS 150473, at *19–21.

Plaintiffs also assert that "Defendants sold their products for an immediate profit." (*See* Doc. 91 at 6). Again, however, that is not what was actually pled: "Eddie Ibanez, Jake Greenbaum, *and potentially other Defendants*, sold large amounts of the digital products for an immediate and large profit . . ." (Doc. 81 at ¶ 217) (emphasis added). As it relates to Ms. Strobel, such speculation does not satisfy Rule 8 notice pleading, let alone the heightened pleading required here under Rule 9(b). Simply put, Plaintiffs have not pled scheme liability as to Ms. Strobel.

C.      **Plaintiffs Misconstrue The Law On The Extraterritorial Application Of Their Federal Causes Of Action.**

Ms. Strobel, as well as Defendants Jeffrey Levin and Ophir Bentov, argued in their Motions to Dismiss that the non-U.S. Plaintiffs were precluded from asserting the federal causes of action in the Amended Complaint. (Doc. 86 at 18–19; Doc. 87 at 7–8). While Plaintiffs did not address this argument in their Response to Ms. Strobel's Motion, they did unsuccessfully attempt to rebut it in their Response to Defendants Levin and Bentov's Motion. (Doc. 90)

There, Plaintiffs contend that the Supreme Court's decision in *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023), "expanded" the extraterritorial application of RICO. (Doc. 90 at 2). Not so. In *Yegiazaryan*, the SupremeCourt still acknowledged two requirements for extraterritorial application. First, the two predicate acts alleged must apply extraterritorially. *Yegiazaryan*, 599 U.S. 533, 542 (2023). (As established above, Plaintiffs have not sufficiently alleged *any* predicate acts.) Second, there must be a domestic injury, which the Court clarified as "contextual" and "case-specific." *Id.* at 544. In short, *Yegiazaryan* did not simply open RICO to foreign claimants.

Next, Plaintiffs misconstrue *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-cv-4650 (ER), 2024 U.S. Dist. LEXIS 156487, at *41 (S.D.N.Y. Aug. 29, 2024) as supporting their argument that "the domestic injury burden was met when . . . at least two defendants met in the United States concerning the fraudulent scheme." (Doc. 90 at 2). In actuality, the *plaintiff* met with a defendant in the United States, which gave rise to a domestic injury. *Digilytic Int'l*, No. 20-cv-4650, 2024 U.S. Dist. LEXIS 165487, at *41 (S.D.N.Y. Aug. 29, 2024). Thus, *Digilytic* is also of no help to Plaintiffs.

Finally, Plaintiffs are incorrect when they state that Binance qualifies as a "domestic exchange" for their 10b-5 claims. (Doc. 90 at 3). Rule 10b-5 covers "the purchase or sale of a security listed on an American stock exchange," meaning one of the limited number of exchanges that register with the SEC under Section 6 of the Exchange Act. *See United States v. Georgiou*, 777 F.3d 125, 134–35 (3d Cir. 2015). This does not encompass Binance.

## III.   Neither Jurisdictional Discovery, Nor Further Amendment, Is Justified.

As a last-ditch effort to save their case, Plaintiffs request the opportunity to conduct jurisdictional discovery or leave to file another version of their Complaint. This case will soon be

9

two years old, and Plaintiffs have been afforded multiple opportunities to amend their allegations. No further amendments are justified.

The same is true with respect to jurisdictional discovery. Before such discovery may proceed, a "preliminary showing of jurisdiction" must be made, and courts "will not authorize 'a jurisdictional fishing expedition' based on a plaintiff's general averments." *Telecom v. MET One LLC,* No. A-20-CV-279-LY, 2020 U.S. Dist. LEXIS 240471, *19 (W.D. Tex. Dec. 22, 2020); *Johnson v. TheHuffingtonPost*, 21 F.4th 314, 326. Moreover, plaintiffs are required to explain "what form their proposed jurisdictional discovery would take" and "what facts they expect to find in order to help them establish personal jurisdiction" over the defendant. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, W.D. Tex. No. 1:17-cv-444-RP, 2018 U.S. Dist. LEXIS 1902, *25 (Jan. 4, 2018). Here, Plaintiffs have neither made a "preliminary showing of jurisdiction," nor detailed what discovery they seek to obtain from Ms. Strobel that could possibly alter the analysis. Given the vague and speculative nature of Plaintiffs allegations, jurisdictional discovery would amount to nothing more than a fishing expedition.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' claims against Defendant Danielle Jonas, f/k/a Danielle Strobel, should be dismissed for lack of personal jurisdiction.

Respectfully submitted,

*/s/ William B. Mateja*

William B. Mateja (13185350)
Jonathan E. Clark (24069515)
Sheppard, Mullin, Richter & Hampton LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Phone: 469-391-7400
Email: BMateja@sheppardmullin.com
        JClark@sheppardmullin.com
and

Mark G. Arnzen, Jr. *\*Pro Hac Vice*
Lindsay K. Gerdes *\*Pro Hac Vice*
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: 513-977-8440
Email: mark.arnzen@dinsmore.com
        lindsay.gerdes@dinsmore.com

**Counsel for Defendant Danielle Strobel**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the above and foregoing has been served upon all counsel of record by using the Court's electronic filing system on the 8th day of November 2024.

*/s/ William B. Mateja*
William B. Mateja (13185350)
