**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

DON HOLLAND, individually and on behalf of all
others similarly situated,

Plaintiff,

vs.

CRYPTOZOO INC., a Delaware Corporation,
LOGAN PAUL, DANIELLE STROBEL, JEFFREY
LEVIN, EDUARDO IBANEZ, JAKE GREENBAUM
a/k/a CRYPTO KING, and OPHIR BENTOV a/k/a
 BEN ROTH,

Defendants.
_____/

LOGAN PAUL,

Cross-Plaintiff,

vs.

EDUARDO IBANEZ and
JAKE GREENBAUM a/k/a CRYPTO KING,

Cross-Defendants.

_____/

Civil Action No. 1:23-cv-110

**DEFENDANT/CROSS-PLAINTIFF LOGAN PAUL'S OBJECTION TO THE**
**REPORT AND RECOMMENDATION ON HIS MOTION FOR DEFAULT JUDGMENT**

## INTRODUCTION

Eduardo Ibanez and Jake Greenbaum have willfully ignored all claims pending against them in this action for more than two-and-a-half years. The Clerk of Court entered defaults against them for failure to respond to Logan Paul's crossclaims and, after the crossclaims had been pending for five months, Mr. Paul moved for the entry of default judgment. Unsurprisingly, neither Ibanez nor Greenbaum has appeared to challenge Mr. Paul's motion.

On July 22, 2025, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Court deny Mr. Paul's motion for the entry of default judgment without prejudice. The R&R rested its analysis on *Frow v. De La Vega*, 82 U.S. 15 Wall. 552, 554, 21 L. Ed. 60 (1872), in which the United States Supreme Court held that the entry of default judgment against one of eight joint tortfeasors before the close of litigation would be "incongruous," because entering default judgment would have created a risk of inconsistent judgments among the co-defendants. The R&R analyzed *Frow* and its progeny, but only with respect to Plaintiffs' claims. It concluded, following *Frow*, that it could not enter default judgment against Ibanez and Greenbaum because the *Plaintiffs'* allegations against all Defendants *to the class action*—including Ibanez and Greenbaum—are the same. This R&R's analysis missed the mark. The relevant question is whether default judgment against Ibanez and Greenbaum on *Mr. Paul's crossclaims* would give rise to a potentially incongruous result. It would not.

*Frow* has no application here. Mr. Paul's crossclaims against Ibanez and Greenbaum rest on different theories of liability and seek different damages than Plaintiffs' class action claims. Mr. Paul asserts claims for fraudulent inducement and fraudulent misrepresentation, alleging that Ibanez and Greenbaum lied to him about their employment qualifications to induce him to hire them to develop and manage CryptoZoo, misrepresented material facts during their business

1

relationship, and caused the demise of Mr. Paul's passion project. He seeks to recover the capital he lost developing and running CryptoZoo and damages for harm to his reputation. Plaintiffs, by contrast, allege that Ibanez, Greenbaum, and their co-defendants made material misrepresentations to and breached contracts with *consumers*, causing Plaintiffs and absent class members to lose their "investments" in CryptoZoo. Entering default judgments against Ibanez and Greenbaum on Mr. Paul's crossclaims now will not give rise to any risk of inconsistent judgments in the class action down the road.

The R&R also disregarded Mr. Paul's argument that he will suffer significant prejudice should the Court delay the entry of default judgment. Ibanez and Greenbaum have avoided this litigation for more than two years. They have made clear that they will never respond to Mr. Paul's crossclaims or the class claims, and litigation of this action in its entirety may take several years. By the time all claims are resolved, there may be nothing left for Mr. Paul to recover.

The Court should decline to adopt the R&R and enter default judgments against Ibanez and Greenbaum on Mr. Paul's crossclaims.

## FACTUAL BACKGROUND

Plaintiff Don Holland filed the original class action complaint in this action on February 2, 2023, against CryptoZoo, Inc., Logan Paul, Eduardo Ibanez, Jake Greenbaum, Jeffrey Levin, Danielle Stroebel, and Ophir Bentov, bringing claims arising from an alleged "rug pull" cryptocurrency scheme. [ECF No. 1.] Plaintiff Holland amended the complaint to add more than one hundred additional plaintiffs, among other things, on August 19, 2024. [ECF No. 81.] Both complaints asserted claims sounding in fraud and negligence, as well as claims for alleged breaches of contract. *See* Compl. ¶¶ 56-116; Am. Compl. ¶¶ 235-523. At their core, the plaintiffs in both complaints alleged that the named defendants had lied to consumers to induce them to purchase

CryptoZoo tokens and NFTs, and then "pulled the rug" out from under the project, causing the plaintiffs and putative class members to lose their "investments." *See, e.g.,* Am. Compl. ¶¶ 14-15.

Defendant Logan Paul answered the original complaint, asserted affirmative defenses, and brought two crossclaims against Defendants/Cross-Defendants Eduardo Ibanez and Jake Greenbaum. *See* Answer, Aff. Defenses, and Crossclaim [ECF No. 55] (the "Crossclaim"). Mr. Paul pled claims for fraudulent misrepresentation and fraudulent inducement, alleging that Ibanez and Greenbaum had misrepresented their employment qualifications to induce him to hire them to help develop and manage CryptoZoo; lied to him during the development of the project; drove the venture to fail; and in so doing, caused Mr. Paul to lose the capital he had used to fund the project and damaged his reputation. *See* Crossclaim ¶¶ 110-23.

Greenbaum and Ibanez never responded to either complaint or the Crossclaim. In fact, they never appeared in this action at all. Plaintiffs have taken no further action against Ibanez or Greenbaum. Mr. Paul, however, moved for a clerk's entry of default against Ibanez on April 1, 2024, and Greenbaum on May 15, 2024. [ECF Nos. 69, 73.] The Clerk of Court entered default as to Ibanez and Greenbaum on April 17 and May 16, respectively. [ECF Nos. 70, 74.] Mr. Paul moved for the entry of default judgment against both Cross-Defendants on June 18, 2024 [ECF No. 75], and Plaintiffs responded to that motion on July 12 [ECF No. 77]. Mr. Paul filed a reply challenging Plaintiffs' standing to respond and arguing, among other things, that the entry of default judgment on the *Crossclaim* would not create a risk of inconsistent results *in the class action* and Mr. Paul would be significantly prejudiced by delay. [ECF No. 78.] Mr. Paul's initial motion was accompanied by an affidavit establishing that both Cross-Defendants had been served with the Crossclaim, service was proper, and neither Cross-Defendant had filed or served a response. *See* Affidavit of Benjamin J. Widlanski [ECF No. 75-1].

On July 22, 2025, the Magistrate Judge issued a Report and Recommendation recommending that Mr. Paul's motion for the entry of default judgment against Ibanez and Greenbaum be denied without prejudice. [ECF No. 105.] The R&R centered its recommendation on *Frow v. De La Vega*, in which the United States Supreme Court reversed an opinion entering default judgment as to one of eight joint tortfeasors, reasoning that entering default judgment as to one co-defendant and allowing claims against the others to proceed could result in inconsistent judgments. *See* 82 U.S. 15 Wall. 552, 554, 21 L. Ed. 60 (1872). The R&R then summarily distinguished a series of Fifth Circuit and Texas district court opinions citing *Frow* and largely involving the entry of default among similarly situated co-defendants. *See* R&R at 5-8. The R&R also relied on a District of Oregon opinion citing *Frow* and denying the entry of default judgment as to one of several similarly situated counter-defendants. *See id.* at 9 (citing *Calista Enters. Ltd. v. Tenza Trading Ltd.*, 2014 WL 3670856, at *3 (D. Or. July 23, 2014)).

Ultimately, the R&R denied Mr. Paul's motion for entry of default judgment without prejudice, reasoning, in short, that Ibanez, Greenbaum, and Mr. Paul are similarly situated with respect to *Plaintiffs' claims*, such that entering default judgment as to Ibanez and Greenbaum now on the *Crossclaim* would give rise to a risk of inconsistent judgments. *See* R&R at 4, 8-9 (asking, for example: "If the Court were to grant default judgment and thereby lay all blame on Ibanez and Greenbaum, what would come of Plaintiffs' claims as to Paul and the other defendants?"). The R&R did not recognize any distinction between Mr. Paul's crossclaims and Plaintiffs' claims in the class action or address Mr. Paul's argument that he would be prejudiced by delay.

Defendant/Cross-Plaintiff Logan Paul now objects to the R&R.

## **<u>LEGAL STANDARD</u>**

"A judge of the court shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636. The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## **ARGUMENT**

### I.    **The Entry of Default Judgment Against Ibanez and Greenbaum as Cross-Defendants Would Not Create a Risk of Inconsistent Judgments.**

Mr. Paul's objection turns in large part on the R&R's application of *Frow v. De La Vega*, 82 U.S. 15 Wall. 552, 21 L. Ed. 60 (1872), to his motion for the entry of default judgment on his crossclaims against Ibanez and Greenbaum. The Court in *Frow* addressed claims against multiple defendants alleged to be jointly liable in tort and held that "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." 82 U.S. 15 Wall. at 554. As stated in the R&R, "based on *Frow*, courts should refrain from granting default judgment as to the defaulting *defendant* when claims as to the answering[] *co-defendants* are pending." R&R at 3 (emphasis added).

As the R&R observes, circuit courts are split on *Frow*'s application, while the Fifth Circuit remains undecided. *Id.* at 3-4. Courts approving a narrow interpretation of *Frow* hold that it applies only where co-defendants' liability is joint, as opposed to joint and several. *Id.* at 3; *see also, e.g.*, *Crop Prod. Servs., Inc. v. Keeley*, 2016 WL 2758439, at *4 (E.D. Tex. May 12, 2016) ("The more narrow school of thought states that *Frow* stands for the rule that default judgment cannot be entered against one of several defendants when the theory of recovery is one of joint liability, where, as a matter of law, no one defendant may be liable unless all defendants are liable."), *aff'd sub nom. Matter of Grabanski*, 691 F. App'x 159 (5th Cir. 2017). "The broader interpretation, on the other hand, looks not to the breed of liability, but rather the degree to which the defendants are similarly situated and possess closely related defenses." R&R at 4 (citing authority). Under either

5

interpretation, *Frow* applies where a defaulting defendant is "similarly situated" to his co-defendants for purposes of the plaintiff's claims—either as a co-defendant to a joint wrong or a defendant whose interests and defenses are aligned with those of his co-defendants with respect to the plaintiff's claims. *See, e.g.*, *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[W]here a defending party establishes that [the] plaintiff has no cause of action this defense generally inures also to the benefit of a defaulting defendant. ... The policy rationale for this rule is that it would be incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to *similarly situated* defendants.") (emphasis added); *see also, e.g.*, *Moore v. Booth*, 122 F.4th 61, 67 (2d Cir. 2024) ("[T]he *Frow* principle applies when the defendants are "similarly situated" or have "closely related defenses" even if not jointly liable."); *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) ("When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment.").

Mr. Paul seeks the entry of default judgment against Ibanez and Greenbaum on his crossclaims against them, which plead distinct theories of liability and damages from the claims in Plaintiffs' class action complaint. Mr. Paul alleges, on the one hand, that Ibanez and Greenbaum lied to him about their qualifications and intentions toward CryptoZoo, ultimately sinking Mr. Paul's passion project. *See* Crossclaim ¶¶ 3-6, 32-105, 111-23. He seeks damages arising from that deception—which Ibanez and Greenbaum directed *only* to Mr. Paul—including personal funds he used to build the project and damages for harm to his reputation. *See id.* ¶¶ 6, 107, 108, 116, 123. Ibanez and Greenbaum are the *only* defendants to Mr. Paul's Crossclaim and both have defaulted. *See* Crossclaim ¶¶ 9-10; Clerk's Entries of Default [ECF No. 70, 74]. Plaintiffs, by contrast, bring claims against Ibanez, Greenbaum, and their co-defendants arising from alleged

misrepresentations and omissions directed to *consumers*, as well as breaches of contract between CryptoZoo and the putative class members. *See, e.g.*, Am. Compl. ¶¶ 235-37, 279-84, 295-307. The damages they seek arise from Plaintiffs' and the class's alleged "investment" losses. *See id.* ¶¶ 45, 46, 202, 203, 525-26. Given the bright line separating Mr. Paul's crossclaims from Plaintiffs' claims against Ibanez and Greenbaum, *Frow* has no application here.

This conclusion finds support in the Fifth Circuit's opinion in *Matter of Grabanski*, 691 F. App'x 159 (5th Cir. 2017), which the R&R summarily dismissed as inapplicable to Mr. Paul's motion.[1] *See* R&R at 4. In *Grabanski*, the Fifth Circuit affirmed the entry of default judgment against a farming partnership, G&K Farms, in an action involving unpaid invoices for goods and services sold to G&K. *See* 691 F. App'x at 160-61. The district court had entered default judgment against G&K and found two of its general partners, John and Dawn Keeley, jointly and severally liable for the default judgment. *See Crop Prod. Servs., Inc. v. Keeley*, 2016 WL 2758439, at *2 (E.D. Tex. May 12, 2016). The plaintiff-vendor's individual claims against John Keeley for guaranty, fraud, fraudulent inducement, and fraudulent concealment proceeded to litigation. *See id.* Two months later, after a bench trial, the district court found that the plaintiff-vendor was not entitled to relief on any of the individual claims against John Keeley. *See id.*

The Keeleys moved to vacate the default judgment against G&K, citing *Frow*, and argued that default judgment should not have been entered while they were "actively defending the [individual] claims involving joint and several liability." *Id.* at *3. The district court and the Fifth Circuit concluded that *Frow* was not implicated. The district court explained:

> In many of the cases that discuss *Frow*, the issue is whether it is incongruous to find one or more defendants liable under a theory of default while other defendants who did not default *on the same claim* are found not to be liable. . . . These cases

---

[1] The R&R referred to *Grabanski* as *Crop Product Services v. Keeley*, the case caption given the same case in the district court. *See* R&R at 4.

> hold that it would be incongruent to allow a default judgment to be entered against a defendant who is similarly situated to a defendant who is found not to be liable for the same claim.

*Keeley*, 2016 WL 2758439, at *5 (emphasis in original).

Affirming, the Fifth Circuit concluded that the reasoning of *Frow* did not apply to the default judgment entered against G&K:

> John Keeley successfully defended himself against a *distinct legal claim not advanced against G&K Farms* (the guaranty claim), but his success does not establish that CPS had no other viable claims against G&K Farms. . . . As the district court correctly concluded, its finding that John Keeley possessed a winning statute of limitations defense against CPS's guaranty claim does not directly conflict with the default judgment against G&K Farms.

*Grabanski*, 691 F. App'x at 163 (emphasis added).

In short, the Fifth Circuit held that *Frow* did not apply because the defaulted claims against G&K were substantively distinct from the individual claims against John Keeley and did not *directly conflict* with those claims such that the two judgments could not be reconciled. *See id.*

The Fifth Circuit's reasoning weighs in favor of the entry of default judgment here. The R&R misapplied *Frow* and its progeny by treating defaulting *Cross-Defendants* Ibanez and Greenbaum as similarly situated to the defendants to *Plaintiffs'* claims. In denying the entry of default judgment, the R&R focused almost exclusively on the class claims and concluded that default judgment was not warranted because "Plaintiffs in this case assert the exact same claims against all Defendants, including Ibanez and Greenbaum." R&R at 4. The R&R continued, still addressing only the class complaint:

> Plaintiffs raise twenty-seven causes of action, all of which are alleged as to each defendant. . . . In fact, *Plaintiffs' Complaint* attributes nearly every fact to every defendant. . . . Thus, there is no indication whatsoever that the facts and allegations—and by extension, the defenses—against the answering defendants differ from those of Ibanez and Greenbaum. . . . Taken as a whole, *Plaintiffs' Complaint* paints *all* the defendants as co-conspirators working jointly toward a common goal—defrauding Plaintiffs and absconding with their money.

8

*Id.* at 8 (initial emphasis added; latter in original).

The R&R misplaced its focus. It held, in sum, that default judgment was not warranted against Greenbaum and Ibanez because they stand in the same shoes as their co-defendants *with respect to the class action claims raised in the Amended Complaint*. *See id.* But default on those claims is not at issue. Mr. Paul moved for default judgment on his *crossclaims* for fraudulent inducement and fraudulent misrepresentation against Ibanez and Greenbaum. *See* Mot. for Default Judgment at 3-8. These crossclaims are substantively and entirely distinct from the class claims— they arise from different allegations; involve distinct misrepresentations and omissions (addressed not to class members, but to Mr. Paul); rest on unique theories of liability; and seek discrete categories of damages. *Compare* Am. Compl. ¶¶ 45, 46, 202, 203, 235-37, 279-84, 295-307 *with* Crossclaim ¶¶ 3-6, 32-108, 111-23; *see* pp. 6-7, *supra*. Under these circumstances, *Frow* does not advise against the entry of default judgment. *See, e.g.*, *Grabanski*, 691 F. App'x at 163 (entry of default judgment not warranted where claims at issue were distinct); *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) ("Parties are not similarly situated and a default judgment does not establish inconsistent judgments . . . if the liability of the defaulting party is based on independent wrongful acts or a legal theory distinct from the one under which the answering party prevailed.").

This conclusion makes sense. Judgment in Defendants' favor on all claims in the class action would not create an "incongruous" result should the Court enter default judgment against Ibanez and Greenbaum on the crossclaims. The Court can enter default judgment against Ibanez and Greenbaum now, establishing their liability *to Mr. Paul*, and later find that no defendant is liable *to Plaintiffs or the class members* for their "investment" losses without risking inconsistent judgments. *See, e.g.*, *Angelo Iafrate Const.*, 370 F.3d at 722 (parties not similarly

9

situated and default judgment does not give rise to inconsistency if defaulting party's liability derives from "independent wrongful acts" or "distinct" legal theories from those on "which the answering party prevailed.").

Courts routinely enter default judgment under like circumstances. *See, e.g.*, *id.*; *Grabinski*, *supra*; *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 951 (7th Cir. 2020) (concluding, where "the theories of liability for each defendant d[id] not require uniformity of judgments," that "the concerns described in *Frow* are not present here"); *Douglas v. Metro Rental Servs., Inc.*, 827 F.2d 252, 255-56 (7th Cir. 1987) (affirming default judgment because "two judgments [we]re not necessarily inconsistent" and "[o]ne could speculate as to how the supposed inconsistency between the two judgments might be explained"); *Petersen v. Aries Fin., LLC*, 2010 WL 11626717, at *4 (E.D.N.Y. June 7, 2010) (entering default judgment where "any judgment that the appearing defendants might secure in their favor would not necessarily be 'logically inconsistent' . . . with a judgment against [the defaulting defendant]"); *Steffenberg v. Gilman*, 2005 WL 8176506, at *6 (D. Mass. Sept. 13, 2005) ("[B]ecause differing judgments may be easily reconciled in this case, *Frow* does not control, . . .[and] the Court retains discretion to enter a default judgment against fewer than all of the defendants."); *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1009–10 (N.D. Cal. 2001) ("[B]ecause differing judgments would not necessarily be illogical, *Frow* does not apply, and the Court retains discretion to enter default judgments against less than all defendants under Rule 54(b).").

Finally, though the R&R acknowledges once that Mr. Paul moved for default on the Crossclaim, not the class claims, it fails to reconcile the facts presented here with *Frow*. The R&R cites *Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 2014 WL 3670856 (D. Or. July 23, 2014), to illustrate that the fact that Mr. Paul seeks default judgment on crossclaims has no bearing on the

*Frow* analysis. *See* R&R at 8-9. But *Calista* involved *counter*claims, and a motion for default judgment against one of two *similarly situated* counter-defendants. *See Calista*, 2014 WL 3670856, at *3 ("Because Calista responded to Tenza's Answer and First Amended Counterclaims, the question arises whether the Court should exercise its discretion under Rule 54(b) to enter a default judgment against less than all the answering counterclaim parties."). Ibanez and Greenbaum are the only defendants to the Crossclaim, and both have defaulted. *See* Crossclaim; Mot. for Default Judgment [D.E. 75.] And, as *cross*-defendants, they are not similarly situated to any defendant in the class action *for purposes of the Crossclaim*. *See* pp. 6-7, *supra*.

The Court should reject the R&R's conclusion that the entry of default judgment against Ibanez and Greenbaum on Mr. Paul's crossclaims would create a risk of inconsistent judgments. *See, e.g.*, *Grabanski*, *supra*.

## II.    Cross-Plaintiff Paul Will Be Substantially Prejudiced by Denial of His Motion.

The R&R does not address Mr. Paul's argument that he will suffer prejudice should the entry of default judgment against Ibanez and Greenbaum be delayed. *See* Reply at 7. Mr. Paul has suffered distinct injuries caused by Ibanez and Greenbaum's fraud, and delay will only jeopardize his chances of recovering his losses. *See id.*; pp. 6-7, *supra.*

This action has been pending for more than two years, has not yet proceeded past motions to dismiss, and both Ibanez and Greenbaum have willfully failed to appear for any purpose. Mr. Paul served Ibanez and Greenbaum more than a year ago, and service on Greenbaum took several months to perfect. *See* Widlanski Aff. [ECF No. 75-1] at ¶¶ 10-12. In the interim, the Crossclaim has exposed Ibanez and Greenbaum to the public as con artists and frauds. *See, e.g.*, Crossclaim ¶¶ 4-7. Plaintiffs, unlike Mr. Paul, have not taken a single step towards securing the entry of default against Ibanez or Greenbaum. If the Court delays entry of default judgment on the Crossclaims

until all claims in the class action are resolved, Ibanez and Greenbaum may dissipate their funds, and Mr. Paul may never recover his losses. The prejudice to Mr. Paul that would result from further delay weighs in favor of the entry of default judgment now. *See, e.g.*, *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 1010 (entering default judgment and citing, *inter alia*, "the danger that any damages awarded is likely to become increasingly uncollectible with the passage of time"); *Steffenberg*, 2005 WL 8176506, at *6 (entering default judgment where it "would ameliorate any injustice that might result from requiring the plaintiff to wait for what could well be a period of many years until final adjudication of the entire case on the merits" and with "a substantial amount (approximately $1 million) at stake, and a possibility that one or more of the defaulting defendants will attempt to conceal or transfer assets that could be used to satisfy a judgment for the plaintiff"); *cf. Petersen v. Aries Fin., LLC*, 2010 WL 11626717, at *5 (E.D.N.Y. June 7, 2010) (entering default judgment and considering defaulting defendant's "utter silence for more than three years . . . in the face of the allegations of egregious conduct[,]" which "strongly suggest[ed] willful avoidance").

## CONCLUSION

The Court should decline to adopt the R&R and should enter default judgment against Cross-Defendants Ibanez and Greenbaum.

Date: August 5, 2025

Respectfully submitted,

/s/ *Benjamin J. Widlanski*
Benjamin J. Widlanski, Esq.
bwidlanski@kttlaw.com
Tal Lifshitz, Esq.
tjl@kttlaw.com
Rachel Sullivan, Esq.
rs@kttlaw.com
Clayton Schmitt, Esq.
cschmitt@kttlaw.com
**KOZYAK TROPIN & THROCKMORTON LLP**

/s/ *Jeffrey Neiman*
Jeffrey Neiman, Esq.
jneiman@mnrlawfirm.com
Jason L. Mays, Esq.
jmays@mnrlawfirm.com
**MARCUS, NEIMAN, RASHBAUM & PINEIRO LLP**
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2530
Miami, Florida 33131
Telephone: (305) 400-4260

2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134                    *Counsel for Defendant Paul*
Telephone: (305) 372-1800               (admitted *pro hac vice*)
Facsimile: (305) 372-3508

*Counsel for Defendant Logan Paul*
(admitted *pro hac vice*)

/s/ *Shelby O'Brien*
Shelby O'Brien
**BUTLER SNOW LLP**
1400 Lavaca Street, Suite 1000
Austin, Texas 78701
Telephone: (737) 802-1800
Facsimile: (737) 802-1801
shelby.obrien@butlersnow.com

*Counsel for Defendants*
*Paul, Levin, and Bentov*
(admitted to Western District of Texas)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify a copy of the above and foregoing has been served upon all counsel of

record by using the Court's electronic filing system on the 5th day of August 2025.

/s/ *Benjamin J. Widlanski*
Benjamin J. Widlanski, Esq.