## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, *Plaintiff,* | § § § | |
| v. | § § | 1:23-CV-00110-ADA-RCG |
| CRYPTOZOO INC., a Delaware Corporation; LOGAN PAUL; DANIELLE STROBEL; JEFFREY LEVIN; EDUARDO IBANEZ; JAKE GREENBAUM a/k/a CRYPTO KING; and OPHIR BENTOV a/k/a BEN ROTH; *Defendants.* | § § § § § § § § | |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendants Jeffrey Levin and Ophir Bentov's Rule 12(b)(2) Motion to Dismiss. (Doc. 87).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and case law, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87) and Plaintiffs' claims against Defendants Levin and Bentov be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### I.    BACKGROUND

Because the Court outlined the general facts of this case at length in its previous Reports and Recommendations ("R&R(s)"), it omits those facts here. (*See* Docs. 104, 105, 107). For purposes of this Motion, the Court uses "Founder Defendants" when referring to Logan Paul ("Defendant Paul"), Danielle Strobel ("Defendant Strobel"), Jeffrey Levin ("Defendant Levin"), Eddie Ibanez ("Defendant Ibanez"), and Jake Greenbaum ("Defendant Greenbaum"). The Court

---

1. All citations are to CM/ECF generated pagination, unless otherwise noted.

uses "Defendants" when referring to the Founder Defendants and Ophir Bentov ("Defendant Bentov"). Finally, the Court uses "Strobel R&R" and "Paul R&R" when citing to the R&Rs disposing of Defendant Strobel's Motion and Defendant Paul's Motion, respectively. (Docs. 104, 107).

On August 19, 2024, Plaintiffs filed their Complaint alleging 27 separate causes of action. (Doc. 81). On September 3, 2024, Defendants Levin and Bentov filed their Rule 12(b)(2) Motion to Dismiss (the "Motion"), challenging this Court's jurisdiction over them. (Doc. 87). Plaintiffs filed their Response on October 16, 2024. (Doc. 90). Defendants Levin and Bentov replied on November 8, 2024. (Doc. 97). Consequently, the instant matter is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. In resolving a Rule 12(b)(2) motion, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 496 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). To carry that burden the plaintiff must plead a *prima facie* showing of personal jurisdiction. *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 467 (E.D. Tex. 2020) (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)). Additionally, "allegations in the plaintiff's complaint are taken as true, except to the extent that they are contradicted by the defendant" and "[a]ny material and genuine, conflicting facts are

resolved in favor of the plaintiff for the purpose of determining whether a *prima facie* case exists." *Id.*

There are two requirements for a court to exercise personal jurisdiction over a non-resident defendant: "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). "Because Texas' long-arm statute has been held to extend to the limits of due process, only the second jurisdictional precondition must be examined." *Allstate Inc. v. Interline Brands, Inc.*, 997 F. Supp. 2d 501, 506 (N.D. Tex. 2014) (citing *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)).

For personal jurisdiction to comport with due process, the plaintiff must show that: (1) "the defendant purposefully availed itself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state such that it would reasonably anticipate being haled into court there"; and (2) "exercising jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice." *Id.* (citing *Jones*, 954 F.2d at 1068). "The 'minimum contacts' prong of the due process analysis can be met through contacts giving rise to either specific or general jurisdiction." *Id.* (citing *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996)). General jurisdiction arises "when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial"; whereas specific jurisdiction "is established through the defendant's contacts with the forum state arising from, or related to, the cause of action." *Id.* (citations and quotation marks omitted).

### III.    DISCUSSION

Plaintiffs' general assertion of personal jurisdiction in their Complaint is as follows: "The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District, is an individual who either is present in the district for jurisdictional purposes, or has sufficient minimum contacts with the District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice." (Doc. 81 at 18). The issue presented is whether, based on the facts in the record, the Court has personal jurisdiction over Defendants Levin and Bentov, both California residents. (Docs. 87-1 at 1; 87-2 at 1). As far as the Court can tell, Defendants Levin and Bentov's Motion raises three primary and distinct bases for dismissal: (1) Defendants Levin and Bentov lack sufficient contacts with Texas for the Court to exercise general[2] or specific jurisdiction over them, (2) Plaintiffs cannot manufacture jurisdiction by pleading federal statutory claims, and (3) Plaintiffs' federal statutory claims necessarily fail as to the international plaintiffs. (Doc. 87). The Court assesses each in turn. But first, because the Complaint consistently attributes conduct to "Defendants" and "Founder Defendants," the Court addresses whether it can impute CryptoZoo's contacts to Defendants Levin and Bentov for jurisdictional purposes.

### 1.  Imputing Contacts of Other Defendants to Defendants Levin and Bentov for Purposes of Establishing Specific Jurisdiction

For the bulk of the Complaint, Plaintiffs refer to the various defendants in the collective, rather than to Defendants Levin and Bentov, specifically. (*See generally* Doc. 81). At times, Plaintiffs use "Defendants" to refer to all the named defendants, while in other instances they use

---

2. Defendants Levin and Bentov contend the Court lacks general jurisdiction over them. (Doc. 87 at 14). The Court quickly disposes of this basis for dismissal because Plaintiffs concede as much: "Plaintiff[s] do[] not claim to have general jurisdiction over Defendants but do[] have specific jurisdiction . . . ." (Doc. 90 at 7). Furthermore, the Court agrees Defendants Levin and Bentov lack sufficient contacts with Texas to confer general jurisdiction over them.

"Founder Defendants" to include all defendants save Defendant Bentov. *Id*. Defendants Levin and Bentov argue—and the Court agrees—lumping all the defendants together and attributing the actions of some defendants to others is problematic. (Doc. 97 at 8). In essence, Defendants Levin and Bentov believe CryptoZoo and the other Defendants' contacts with the forum cannot be imputed to them because Plaintiffs' vicarious liability theories are deficient. *Id*. In their Response, Plaintiffs argue their allegations, as were raised in their Complaint, of liability based on alter ego, corporate veil-piercing, and agency render imputation proper in this case. (Doc. 90 at 9). Thus, the threshold issue before the Court is whether Plaintiffs' use of "Defendants" and "Founder Defendants" presents adequate bases for contacts imputation, or if only those allegations referencing Defendants Levin and Bentov by name are subject to consideration.

Although not explicitly mentioned in the parties' briefing, the Court first takes up the fiduciary-shield doctrine. Under this doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart*, 772 F.2d at 1197. However, there are two exceptions to the fiduciary-shield doctrine: it does not shield defendants from liability where: "(1) the defendant allegedly engaged in a tort for which he may be personally liable, or (2) the plaintiff demonstrates cause to pierce the corporate veil. *Savoie v. Pritchard*, 122 F.4th 185, 192 (5th Cir. 2024). The Court addresses each exception—first the tort exception, then the veil-piercing exception—in turn.

As for the tort exception, Plaintiffs allege Defendants committed a variety of torts. (Doc. 81 at 56–64). However, as explained in greater detail in the Strobel R&R, Plaintiffs' Complaint suffers from a fatal flaw: it lumps Defendants together. (Doc. 104). And the tort exception only holds that "the fiduciary-shield doctrine does not bar jurisdiction when a

defendant is being sued for *his own tortious conduct*, which had reasonably foreseeable consequences in Texas." *Ragan & Massey, Inc. v. Voluntary Purchasing Grps, Inc.*, No. 09-CV-00039, 2009 WL 3157468, at *5 (E.D. Tex. Sept. 28, 2009) (emphasis added). In other words, "plaintiffs may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025); *see Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) ("[I]t is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations."); *Rush v. Savchuk*, 444 U.S. 320, 332–33 (1980) (finding the aggregation of defendants does not comport with due process); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *Fernandez-Lopez v. Hernandez*, No. 19-CV-46, 2020 WL 9396523, at *8 (W.D. Tex. Oct. 1, 2020 ("To establish jurisdiction, a plaintiff still must establish sufficient minimum contacts within the forum state for *each individual defendant . . . .*")), *R. & R. adopted*, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020). Therefore, to the extent Plaintiffs allege Defendants Levin and Bentov, themselves, committed various torts in their capacities as corporate officers, they cannot avail themselves of the fiduciary-shield doctrine. As discussed in greater detail below, the Court does not believe Plaintiffs sufficiently pled Defendants Levin and Bentov individually committed torts. Regardless, in those instances where Plaintiffs allege "Defendants" or "Founder Defendants" committed various torts, the Court finds the tort exception inapposite and declines to attribute those actions to Defendants Levin and Bentov for purposes of jurisdiction.

As for the alter ego exception,[3] Plaintiffs contend CryptoZoo is the alter ego of Defendants, thereby justifying imputation of CryptoZoo's contacts to individual officers. (Doc. 81 at 21). Under the alter ego exception, "courts attribute a corporation's contacts with the forum state to an individual defendant for jurisdictional purposes" when "the corporation is the alter ego of the defendant." *Stuart*, 772 F.2d at 1197. In determining whether a corporation is the alter ego of a defendant, courts are to consider factors, including: "the degree to which corporate and individual property have been kept separate[;] the amount of financial interest, ownership, and control the individual maintains over the corporation[;] and whether the corporation has been used for personal purposes." *Savoie*, 122 F.4th at 192 (internal citations and quotation marks omitted). "Under Texas law, the primary factor for jurisdictional veil-piercing is the defendant's control of internal business operations and affairs of the corporation." *Id.* The Court first assesses Plaintiffs' allegations as to Defendant Levin, followed by those pertaining to Defendant Bentov.

The Complaint is devoid of facts supporting the first factor. As for the second— Defendant Levin's control—Plaintiffs do present some facts, albeit insufficiently. For instance, they allege Defendant Levin is a 10% shareholder. (Doc. 81 at 43). "But an individual's status as an officer, director, or shareholder of an entity, standing alone, is not enough to support an alter ego finding." *See Savoie*, 122 F.4th at 193; *see also AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) ("[L]iability is not to be conflated with amenability to suit in a particular forum."). At one point, Plaintiffs do provide a quote from Defendant Paul, wherein he says he "will explain everything one day [about his NFT past], with his manager [Levin] who's like in charge now." (Doc. 81 at 12) (alterations in original). However, the issue with that quote

---

3. Plaintiffs' alter ego argument and corporate veil-piercing argument are indistinguishable, as Plaintiffs allege CryptoZoo is the alter ego of Defendants for purposes of piercing the corporate veil and imputing CryptoZoo's contacts (and liability) to individual officers. (Doc. 90 at 9). The Court therefore disposes of Plaintiffs' alter ego and corporate veil-piercing arguments in the same section.

is it "refer[s] to another NFT project called Originals[,]" not CryptoZoo. *Id*. And in fact, in the vast majority of the Complaint, Plaintiffs consistently aver "Defendants" or "Founder Defendants" exercised control, as opposed to Defendant Levin. *See e.g., id*. at 106 ("Because of their positions of control and authority, the Founder Defendants and [Defendant Bentov] were able to and did, directly or indirectly, control the content of the statements of CryptoZoo."). Given the generality of the accusations, it is impossible for the Court to infer Defendant Levin, specifically, exercised control. Finally, the Complaint raises no facts indicating Defendant Levin used CryptoZoo for personal purposes or commingled property. For these reasons, the Court declines to pierce the corporate veil for purposes of imputing CryptoZoo or any of the other defendants' contacts to Defendant Levin.

The allegations pertaining to Defendant Bentov are even more scant. In fact, excluding the case style and initial identification of the parties, Defendant Bentov is only mentioned by name twice in the Complaint. (Doc. 81 at 7, 43). Plaintiffs allege Defendant Bentov "managed various developers and is the manager of the CryptoZoo community who promised future updates to the community that were never fulfilled." *Id*. at 43. With no evidence of commingling property, control, or Defendant Bentov's use of CryptoZoo for personal purposes, the Court could not possibly impute CryptoZoo's contacts with the forum to him. Thus, for the same reasons as those in Defendant Levin's section, the Court declines to pierce the corporate veil as to Defendant Bentov for jurisdictional purposes.

The Court also notes Plaintiffs seek to impute CryptoZoo's contacts to Defendants based on a principal-agent liability theory. (Doc. 81 at 21). "To impute the contacts of a third party to the defendant under an agency theory, the defendant must exercise control over the third party's activities in the forum by directing its agents or distributors to take action there." *Fellowship*

*Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 15-CV-2049, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016). And as mentioned, Plaintiffs have given the Court no reason to find Defendants Levin and Bentov exercised control over CryptoZoo or its agents. Plaintiffs also believe, because Defendants cannot say they have not (or their agents have not) hired Texas employees, principal-agent imputation is proper. (Doc. 90 at 8.) But Defendant Benov does, in fact, attest that he has not hired Texas employees: "I did not hire BlockOps [a Texas development firm] and I do not know where BlockOps, or any individuals associated with the company, are or were located." (Doc. 87-2 at 2.) And even if Defendant Levin did in fact hire Texas employees, "[d]efendants having hired a Texas resident does not establish minimum contacts for purposes of personal jurisdiction." *Gotay v. Block One Marine, Inc.*, No. 07-0229, 2007 WL 4116659, at *2 (S.D. Tex. Nov. 16, 2007). For these reasons, the Court declines to afford greater weight to Plaintiffs' bare-bones agency allegation or impute contacts on an agency basis.

That said, Plaintiffs' various attempts at contact-imputation—through the exceptions to the fiduciary-shield doctrine and a principal-agent liability theory—fail. Having disposed of the portions of the Complaint wherein Plaintiffs refer to the defendants in the collective or seek to impute contacts, the Court below focuses on portions of the relevant filings that highlight Defendants Levin and Bentov's contacts, specifically.

**2. Minimum Contacts Analysis**

As a preliminary matter and relevant to the analysis in this section, the Court first identifies each of the instances where the Complaint refers to Defendants Levin and Bentov by name, beginning with Defendant Levin:

> Founder Defendants Logan Paul, Danielle Strobel, Jeffrey Levin,
> Eddie Ibanez, and Jake Greenbaum a/k/a Crypto King created the

company, CryptoZoo Inc., to sell digital assets ostensibly for use in the digital CryptoZoo game: first, in the form of a digital currency called Zoo Tokens, which could then be used to purchase Defendants' other products, CryptoZoo Non-Fungible Tokens ("CZ NFTS").

\* \* \* \*

This is similar to the other morally bankrupt strategies Defendant Paul and Levin, potentially in conjunction with other Defendants, employed with their other cryptocurrency and NFT related rug-pulls . . . . The only issue being that Paul was referring to another NFT project called the Originals, implying CryptoZoo was a failure, before he goes on to say he "will explain everything one day [about his NFT past], with his manager [Levin] who's like in charge now."

\* \* \* \*

In another attempt to acknowledge CryptoZoo's failings on January 13, 2023, [Defendant Paul] release[ed] a video promising to (1) burn his and Levin's Zoo Tokens . . . .

\* \* \* \*

Defendant Levin is Logan Paul's manager and one of the founders of Crypotzoo, Inc., who hired the software development team BlockOps LLC out of Austin, Texas, and who was aware of Ibanez's fraudulent backstory one month before the product publicly launched as shown in a publicly available call between Coffeezilla and Levin. . . . Paul publicly stated Levin is in "charge now."

\* \* \* \*

The list of CryptoZoo founders is noted in Defendants' internal documents, where Paul, Strobel, Levin, Ibanez, and Greenbaum are listed as founders of CryptoZoo Inc., with each receiving 51%, 1%, 10%, 30%, and 5% of the founder shares respectively, with 3% leftover for expenses.

\* \* \* \*

On May 27, 2021, Defendant Levin further stated they "definitely don't want to do anything that brings sec eyeballs" in response to

Logan pushing for a presale of Zoo Tokens after Levin told him it would be "against the SEC."

* * * *

On May 14, 2022, Defendants Levin and Paul stated they were "Never given [sic] up, working on CryptoZoo daily," before making additional comments affirming their dedication to CryptoZoo:

a. "Let our actions speak for themselves," Levin
b. "Artists working around the clock," Paul.
c. "[Defendants] said they are going to do something, they are gonna do it," Levin.
d. Defendants are "long-term thinkers," Levin.

* * * *

Thus, in a video released by a YouTube-based investigative reporter Coffeezilla on December 20, 2022, there is audio of a call between Levin and Coffeezilla where Levin first began to publicly backpedal, stating:

a. "More preparation, more education, more time to learn and uh find the right partners."
b. "Logan loves to move fast . . . Fast sometimes can be a stumble," and
c. Defendants need to "Take the time."

* * * *

On information and belief, June 11, 2021, . . . [Defendants, including] Jeffrey Levin . . . purchased these digital products at an artificially low value. Soon after the project was publicly announced, Eddie Ibanez, Jake Greenbaum, and potentially other Defendants, sold large amounts of the digital products for an immediate and large profit, effectively stealing the money of consumers who had invested.

* * * *

CryptoZoo was one of Defendants Paul and Levin's entities for their criminal enterprise . . . . Before and during the Class period, Defendants participated in an ongoing fraudulent enterprise led by Defendants Paul and Levin . . . . In relation to each of the above cryptocurrencies or crypto exchanges, Paul and Levin either individually or through agents invested in each . . . . For the CryptoZoo phase of Defendants Paul and Levin's ongoing fraudulent enterprise, each of the other Defendants named herein

11

> managed and operated CryptoZoo through a pattern of racketeering
> activity, and thereby damaged Plaintiffs.

(Doc. 81 at 6–7, 12, 41, 43–44, 48–50, 108–109). The portions of the Complaint mentioning

Defendant Bentov are as follows:

> Defendants also created an online CryptoZoo community to
> discuss the game, which Manager Ophir Bentov a/k/a Ben Roth
> oversaw maintaining.
>
> * * * *
>
> Defendant Ophir Bentov a/k/a Ben Roth managed various
> developers and is the manager of the CryptoZoo community who
> promised future updates to the community that were never
> fulfilled.

*Id*. at 7, 43.

In their Motion, Defendants Levin and Bentov argue the Court lacks specific jurisdiction

over them because they do not possess minimum contacts with the forum. (Doc. 87 at 14).

According to their unsworn declarations, both attest they live in California (never Texas), did not

make any statements in Texas, and never visited Texas for CryptoZoo-related business matters.

(Docs. 87-1 at 1–2; 87-2 at 1–2). In fact, Defendant Bentov has never been to Texas, and

Defendant Levin has only visited Texas for less than two weeks in the last ten years for reasons

unrelated to this suit. (Docs. 87-1 at 1; 87-2 at 1). Defendant Levin did, however, "work[] with

software developers in connection with the CryptoZoo game, including BlockOps" but "do[es]

not know where BlockOps, or any individuals associated with the company, are or were

located." (Doc. 87-1 at 2). Similarly, Defendant Bentov admits to "communicat[ing] with

members of the public about the CryptoZoo game" from his "apartment in Los Angeles,

California" and "worked with certain software developers," including BlockOps. (Doc. 87-2 at

2). The only notable difference between the two declarations is Defendant Levin, but not

12

Defendant Bentov, says he never communicated with Texas residents, and Defendant Bentov, but not Defendant Levin, claims he never hired Texas residents. (Docs. 87-1, 87-2). Below, the Court addresses whether Defendants Levin and Bentov's contacts are such that this Court may exercise jurisdiction over them.

In determining whether a court has specific jurisdiction over a defendant, the core inquiry is whether the defendant's contacts are such that he "could 'reasonably anticipate' being haled into the court of the plaintiff's chosen forum." *Shambaugh & Son, L.P. v. Steadfast Ins.*, 91 F.4th 364 (5th Cir. 2024) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)). For specific jurisdiction to exist, a plaintiff must establish the affirmative of the first two prongs: (1) "whether the defendant has purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Gadasalli v. Bulasa*, No. 22-CV-249, 2023 WL 3586424, at *7 (E.D. Tex. May 22, 2023) (quotation marks omitted). Once a plaintiff has met his charge as to the first two prongs, the burden thereafter shifts to the defendant to establish fairness and reasonableness. *See Savoie*, 122 F.4th at 191. Under certain circumstances, a single act by a defendant may be sufficient to confer personal jurisdiction over him. *See Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001). Importantly, the "minimum contacts prong for specific jurisdiction focuses on 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Conveyor Aggregate Prods. Corp. v. Benitez*, No. 18-CV-20, 2019 WL 1921613, at *3 (W.D. Tex. Mar. 4, 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). In other words, the "defendant's suit-related conduct must be such that it creates a substantial connection with the forum state." *Id.* Relevant

here, because specific jurisdiction is a claim-specific inquiry, courts "must separately conduct a 'minimum contacts' analysis for each cause of action asserted." *Fairchild v. Barot*, 946 F. Supp. 2d 573, 577 (N.D. Tex. 2013). Beginning with Plaintiffs eight common law claims, then proceeding through their fifteen state statutory claims, the Court addresses each in turn.[4]

### i.     Counts 1 and 6: Fraud and Fraudulent Misrepresentation[5]

This district categorizes fraud claims into two similar but distinct classes:

> Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations. These are separate causes of action, but they share the same elements, which are: (1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury. However, to state a claim of fraudulent inducement, the plaintiff must also prove the existence of a contract.

*Bates Energy*, 361 F. Supp. 3d at 660 (internal citations and quotation marks omitted). The only distinction between the two claims is that, unlike fraudulent misrepresentation, "[f]raudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (quotation marks omitted). Regardless of this variance, inherent in a viable fraud claim is either an affirmative misrepresentation or a failure to disclose some material fact. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d

---

4. The pertinent analysis for Plaintiffs' federal statutory claims is distinct from those for their other claims. As such, the Court analyzes the federal statutory claims in their own section.

5. For Counts 1 and 6, Plaintiffs assert claims for "fraud" and "fraudulent misrepresentation." (Doc. 81 at 56–57, 62–63). Texas law recognizes two forms of fraud: fraud in the inducement and fraudulent misrepresentation. *See Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 660 (W.D. Tex. 2019). Although unclear, the Court assumes Plaintiffs intended to raise both claims and addresses them in this section.

759, 770–71 (S.D. Tex. 2007) (clarifying the distinction between affirmative misrepresentation and failure to disclose a material fact); *see also Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 24 F.4th 491, 499 (5th Cir. 2022) (noting a Texas court does not automatically have personal jurisdiction over every foreign defendant who fails to disclose a material fact to a resident, but rather only in those cases where the defendant fails to disclose material facts through continuous communications). In the personal jurisdiction context, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). For instance, minimum contacts exist "where the nonresident defendant communicated via letters, telephone calls, and faxes with the plaintiff and the content of that communication included the alleged fraudulent statements." *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 441 (W.D. Tex. 2007) (citing *Wien Air Alaska*, 195 F.3d at 212). Regardless of the mode of communication, a fraud claim in the context of personal jurisdiction cannot survive without some form of material misrepresentation directed at a forum resident. This is where Plaintiffs' claims fall short.

First, the Court can easily dispose of the fraud claim as to Defendant Bentov, because nowhere in the Complaint do Plaintiffs argue Defendant Bentov made any misrepresentative statements or omissions. Defendant Levin, on the other hand, did make public statements, such as, "Let our actions speak for themselves," Defendants are "long-term thinkers," and "[Defendants] said they are going to do something, they are gonna do it." (Doc. 81 at 48–49). The first two of these statements are mere puffery. *See Gulf Oil Corp. v. Fed. Trade Comm'n*, 150 F.2d 106, 109 (5th Cir. 1945) (Puffery, unlike a material misrepresentation, refers to "an expression of opinion not made as a representation of fact."); *see also Pizza Hut, Inc. v. Papa*

*John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) ("[N]on-actionable "puffery" comes in at least two possible forms: (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion."). However, "[a] promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Defendant Levin's third statement—"[Defendants] said they are going to do something, they are gonna do it"—may fall into this category. (Doc. 81 at 48). But even this statement is not enough to confer jurisdiction over Defendant Levin, as Plaintiffs provide no evidence whatsoever as to Defendant Levin's state of mind or whether Defendant Levin, specifically, made this misrepresentation with no intent to perform. The Court reiterates, while the content of one fraudulent communication can indeed give rise to jurisdiction, Plaintiffs must nevertheless plead the requisite elements of a fraud claim. *See Moody Nat. Realty v. Ozark Mgmt., Inc.*, No. 07-CV-3239, 2008 WL 8082760, at *6 (S.D. Tex. Apr. 22, 2008) ("Where the exercise of specific jurisdiction turns entirely on an allegation that Defendant has committed the intentional tort of fraud, the Court believes that it is incumbent upon Plaintiff to state its fraud claim with particularity."); *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Plaintiffs cannot do so as to Defendant Bentov and have not done so as to Defendant Levin.

Although Defendant Levin's final statement, if properly pled, may amount to a fraudulent misrepresentation, Plaintiffs present no ties between the statement and the forum. As discussed

in the Strobel R&R, Plaintiffs unsuccessfully attempt to cure their Complaint's errors in their Response. *Compare* (Doc. 81 at 49) ("Paul exchanged text messages with Ibanez evincing concern

the Texas market may be in danger if cryptocurrency is banned there . . . .") *with* (Doc. 90 at 8) ("Plaintiffs specifically alleged that Logan Paul conveyed to the other CryptoZoo founders that he was specifically worried about access to crypocurrency marketplaces being banned in Texas and losing out on that market."). With no ties between Defendant Levin's statement (along with no evidence he made the statement with no intention of performing) the Court cannot find Plaintiffs made a preliminary showing of jurisdiction, as is required to authorize jurisdictional discovery or amendment.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' fraud claims be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

ii.     **Counts 2 and 3: Breach of Express Contract and Implied Contract**[6]

Plaintiffs' allegations pertaining to their breach of contract claims—both express and implied—are also insufficient to satisfy the minimum contacts requirement. "[W]ith respect to interstate contractual obligations, [the Supreme Court and the Fifth Circuit alike have] emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulations and sanctions for the consequences of their activities." *Stuart*, 772 F.2d at 1191 (quoting *Burger King Corp. v.*

---

6. For purposes of disposing of this Motion, it is important to note the Court expresses no opinion as to whether Plaintiffs' claims have merit or if there was indeed a valid contract at issue here. Thus, because the facts relevant to Plaintiffs' second and third claims—breach of express contract and breach of implied contract, respectively—are the same, the Court analyzes them in conjunction. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009) (noting the "difference between contracts formed through express promises and those formed through implied promises is the means by which they are formed").

*Rudzewicz*, 471 U.S. 462, 479 (1985)). Notably, the mere existence of a contract alone is not determinative; rather, courts are to consider factors such as "prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing" in determining whether a contractual relationship gives rise to personal jurisdiction. *Id*. at 1193.

Having declined to pierce the corporate veil, the Court cannot entertain Plaintiff's breach of contract claim as it pertains to the Terms & Conditions ("T&C")—as only Plaintiffs and CryptoZoo were parties to that contract. *Green v. Nationwide Mut. Ins.*, No. 12-CV-600, 2012 WL 5188031, at *4 (W.D. Tex. Oct. 17, 2012) ("One who is not a party to a contract cannot be held liable for breach of contract."), *R. & R. adopted*, 2012 WL 12850260 (W.D. Tex. Nov. 14, 2012)**.** To the extent Plaintiffs raise a claim for an oral contract, the Court cannot fathom how any of Defendant Levin or Bentov's statements constitute offers. And as discussed above, if Defendant Levin did hire a Texas development company, that alone is not enough, as Plaintiffs provide no facts regarding prior negotiations, future consequences, or the actual course of dealing. *See Gotay*, 2007 WL 4116659, at *2 (S.D. Tex. Nov. 16, 2007) ("Defendants having hired a Texas resident does not establish minimum contacts for purposes of personal jurisdiction.").

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' contract claims be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### iii.    Count 4: Unjust Enrichment

Preliminarily, the Court notes Plaintiffs' unjust enrichment claim necessarily fails because Plaintiffs have not successfully pled an underlying wrongful act. *See Tarasiewicz v. PNC Bank*, No. 22-CV-00816, 2023 WL 2940025, at *6 n.6 (W.D. Tex. Apr. 13, 2023) ("[T]he

Texas Supreme Court implied that some wrongdoing is necessary to sustain a claim for unjust enrichment." (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992))). Even so, their claim does not survive for lack of demonstration of enrichment. "Under Texas law an unjust enrichment claim requires a showing that one party has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.*, 965 F.3d 365, 379 (5th Cir. 2020) (internal citations and quotation marks omitted). As the Court already disposed of Plaintiffs' fraud claims, and Plaintiffs do not allege duress, that leaves them with one available avenue—unjust enrichment by taking of an undue advantage. But as discussed at length in the Strobel R&R, Plaintiffs allege Founder Defendants surreptitiously purchased CryptoZoo digital products "at an artificially low value[,]" but only "Eddie Ibanez, Jake Greenbaum, and *potentially other Defendants*, sold large amounts of the digital products for an immediate and large profit, effectively stealing the money of consumers who had invested." (Doc. 81 at 50 (emphasis added)). Plaintiffs do not allege Defendant Bentov purchased any CryptoZoo products to begin with and fail to allege Defendant Levin sold his for a profit in order to substantiate an unjust enrichment claim. *See Rio Grande Food Prods., Inc. v. Cyclone Enters., Inc.*, No. CV H-18-3265, 2019 WL 3766376, at *3 (S.D. Tex. Aug. 9, 2019) ("For an unjust enrichment claim, the plaintiff must demonstrate that the defendant obtained a benefit from the taking of an undue advantage."). With neither a demonstration of unjust action or enrichment, Plaintiffs' unjust enrichment claim does not survive Defendants Levin and Bentov's Motion.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' unjust enrichment claim be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

####    iv.    Count 5: Negligence

Plaintiffs' negligence claim does not survive, as the Complaint does not identify specific conduct on Defendants Levin or Bentov's part directed at the forum. In the realm of personal jurisdiction as it pertains to a negligence claim, *Jobe v. ATR Marketing, Inc.* is instructive:

> A tort is complete when, and personal jurisdiction lies where, the actual injury occurs. In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, *economic effects*, *or other collateral consequences* that often stem from the actual injury. Recognizing that such collateral consequences may be far-reaching . . . our precedent holds that consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur.

87 F.3d at 753 (citations omitted and emphasis added); *see Hoffman v. L & M Arts*, 774 F. Supp. 2d 826 (N.D. Tex. 2011) (applying the *Jobe* standard to a case arising under Texas law). In other words, "[a]lthough the foreseeable effects of a tort are to be assessed as part of the minimum contacts analysis, the Fifth Circuit has unequivocally expressed that 'foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum.'" *Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d 903, 908 (S.D. Tex. 2001) (quoting *Wien Air Alaska*, 195 F.3d at 212). For example, courts have found sufficient contacts where the "defendant directs intentional tortious conduct into a forum, or places a defective product into the stream of commerce with the knowledge it will be distributed in the forum state." *Id*.

Here, as with their fraud argument, Plaintiffs' foreseeability argument cannot survive because they fail to allege a single action attributable to either Defendant Levin or Bentov directed at the forum. Plaintiffs only allege Defendant Levin made a statement indicating Defendants intended to follow through with CryptoZoo, but nowhere do they argue he could

have foreseen the consequences his statements might have on Texas consumers. (Doc. 81 at 48). Because, again, a text conversation between Defendants Paul and Ibanez does not demonstrate the other defendants were on notice of the potential impact on the Texas market. *Id.* at 49.

As for their stream-of-commerce argument, Plaintiffs attempt—unsuccessfully—to utilize the same foreseeability logic applied in their negligence claim. Not only does this argument fail for lack of foreseeability, but Plaintiffs also do not allege Defendants Levin or Bentov placed a product into the stream of commerce. A precondition to the stream-of-commerce standard espoused by Plaintiffs is "that the defendant deliver[] the product into the stream of commerce." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)). In other words, with no allegation of delivery, a stream-of-commerce argument will not lie. And nowhere in the Complaint do Plaintiffs allege Defendants Levin and Bentov delivered a product into the stream of commerce.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' negligence claim be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### v.    Counts 7 and 8: Conspiracy to Commit Fraud and Civil Aiding and Abetting Fraud

Preliminarily, it bears noting, on account of the Court's recommended dismissal of the underlying tort claims, these final two common law claims necessarily fail. The viability of both claims for conspiracy to commit fraud and civil aiding and abetting hinges on the existence of an underlying tort. *Zarzana v. Ashley*, 218 S.W.3d 152, 162 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[C]onspiracy is not an independent cause of action but requires an underlying tort, which may include fraud."); *Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 372 (S.D. Tex. 2025) ("Aiding and abetting itself, without an underlying tort,

cannot stand alone as a legal claim in Texas."). Even so, as mentioned in the negligence section, "mere allegations of a tort occurring outside the forum state is [sic] not sufficient to meet the purposeful availment requirement." *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608 (E.D. Tex. 1994) (citing *Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763 (5th Cir. 1988)). Thus, where "[t]here is no allegation in the complaint that the alleged conspiracy was expressly aimed at Texas, nor an allegation that the alleged tortfeasor had knowledge that a particular Texas resident would suffer the brunt of the harm[,]" this Circuit's precedent "dictates this [C]ourt should not exercise personal jurisdiction." *Id*. The same showing is required in civil aiding and abetting claims. *See VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 667 (N.D. Tex. 2020) (finding no *prima facie* showing of specific jurisdiction where the defendant neither aimed his tortious conduct at the forum, nor did he know "the brunt of the injury would be felt by the particular resident in the form").

Here, the deficiencies to Plaintiffs' conspiracy and civil aiding and abetting claims are no different than those before. Plaintiffs neither demonstrate Defendants Levin and Bentov directed a tort at the forum, nor had knowledge of their alleged co-conspirators scheme. Plaintiffs do allege "Defendant Levin is Logan Paul's manager and . . . was aware of Ibanez's fraudulent backstory . . . ." (Doc. 81 at 41). Even accepting this allegation as truth, Plaintiffs only allege Defendant Levin knew of Defendant Ibanez's "fraudulent backstory," not that he was aware of any fraudulent intentions or scheme Defendant Ibanez concocted as to CryptoZoo. *Id*. At most, Plaintiffs allege Defendant Levin (but not Defendant Bentov) may have been involved in the Zoo Day events by purchasing CryptoZoo products at an artificially low value. (Doc. 81 at 50). But, once again, there is no allegation Defendant Levin sold those products for a profit. And even if he had, Plaintiffs only identify effects experienced in Texas, and "the effects of an alleged

conspiracy in the forum state are insufficient to grant the court personal jurisdiction over the non-resident co-conspirators." *Hawkins*, 890 F. Supp. at 608.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' civil conspiracy and civil aiding and abetting claims be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### vi.    State Law Claims

Plaintiffs raise a total of 15 state statutory violations in their Complaint. (Doc. 81 at 64–101). Every statute listed is some form of consumer protection act prohibiting unfair trade and advertisement practices. *See id*.  Plaintiffs' 15 statutory violations, along with excerpts relevant to this analysis, are listed below.

- Count 9: Arizona Consumer Fraud Act: "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522.

- Count 10: California False Advertising Law: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services . . . which [are] untrue or misleading, and which [are] known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." CAL. BUS. & PROF. CODE § 17500.

- Count 11: California Consumer Legal Remedies Act: "The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: . . . Representing that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have. CAL. CIV. CODE § 1770(a).

- Count 12: California Unfair Competition Law: "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by . . . the Business and Professions Code." CAL. BUS. & PROF. CODE § 17200.

- Count 13: Colorado Consumer Protection Act: "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person: . . . Either knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property . . . ." COLO. REV. STAT. § 6-1-105(1).

- Count 14: Florida Deceptive & Unfair Trade Practices Act: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." FLA. STAT. § 501.204(1).

- Count 15: Iowa Private Right of Action for Consumer Frauds Act: "A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise . . . ." IOWA CODE § 714H.3.

- Count 16: Illinois Consumer Fraud and Deceptive Business Practices Act: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful . . . ." 815 ILL. COMP. STAT. § 501/2.

- Count 17: Massachusetts Business Practices for Consumer Protection Law: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." MASS. GEN. LAWS. ch. 93A, § 2.

- Count 18: North Carolina Unfair and Deceptive Trade Practices Act: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. GEN. STAT. § 75-1.1.[7]

---

7. For Count 18, Plaintiffs cite to "North Carolina Code § 714H.1, *et seq.*" (Doc. 81 at 88). Presumably, Plaintiffs inadvertently inserted a section of the Iowa Private Right of Action for Consumer Frauds Act—Iowa Code § 714H.1—because, to the Court's knowledge, no such section exists in the North Carolina Code. Based on the substance of the claim, it is clear Plaintiffs intended to cite to North Carolina General Statutes § 75-1.1. *See id.* The Court, therefore, cites to the relevant portion of this section of the North Carolina Code.

- Count 19: New Jersey Consumer Fraud Act: The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . is declared to be an unlawful practice . . . ." N.J. Stat. § 56:8-2.

- Count 20: Nevada Deceptive Trade Practices Act: "A person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she: . . . Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale . . . ." Nev. Rev. Stat. § 598.0915.

- Count 21: New York General Business Law: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349.

- Count 22: Pennsylvania Unfair Trade Practices and Consumer Protection Law: "'Unfair methods of competition' and 'unfair or deceptive acts or practices'" mean any one or more of the following: . . . Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ." 73 Pa. Stat. § 201-2(4).

- Count 23: Texas Deceptive Trade Practices Act: "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division . . . ." Tex. Bus. & Com. Code § 17.46(a).

Examined collectively, these statutes convey the same fundamental message: a person violates state law when she knowingly misrepresents a product in a transaction with the intent that the consumer rely and act on her misrepresentations. Just as the various states' statutes mirror one another, so do Plaintiffs' claims under them. (*See* Doc. 81 at 64–101). Seeing as both the law and the allegations are nearly identical for Plaintiffs' state law claims, the Court condenses the analysis for these claims. In determining whether a forum court may exercise personal jurisdiction over a non-resident defendant for violations of other states' statutes, the minimum-contacts analysis remains the same. *See, e.g.*, *Orton v. Pines*, No. G-15-25, 2015 WL 1637863 (S.D. Tex. Apr. 13, 2015) (conducting a minimum-contacts analysis over a foreign

defendant for a violation of California state law). For purposes of the Motion at hand, the focus remains whether Defendants Levin and Bentov directed unlawful conduct at Texas so as to purposely avail themselves of this forum, even if the alleged statutory violations occurred in other states.

Disposing of these claims is rather simple, as the statutes closely mirror the common-law fraud claims already addressed. *Compare Bates Energy*, 361 F. Supp. 3d at 660 (listing the elements of common-law fraud: "(1) defendant made a material misrepresentation that (2) was false, (3) and was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the representation to be acted upon, (5) it was relied upon, and (6) it caused injury"), *with* ARIZ. REV. STAT. § 44-1522 ("The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . is declared to be an unlawful practice."). Thus, Plaintiffs' statutory claims invariably suffer the same unfortunate fate as their fraud claims. In other words, because Plaintiffs allege no fraudulent acts or omissions committed by Defendants Levin or Bentov directed at the forum, their state law claims do not pass muster.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' state law claims be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### 3. Whether Plaintiffs' Claims Arise Out of Defendant Strobel's Contacts

Although the Court is of the opinion Plaintiffs failed to satisfy the first prong of the specific jurisdiction analysis—that Defendants Levin and Bentov purposely availed themselves

of Texas by establishing minimum contacts with the state—the inquiry does not end there. The Court must nevertheless determine whether their Texas contacts, although insufficient, "arise from, or are directly related to, the cause[s] of action." *Gundle Lining*, 85 F.3d at 205; *see Morris v. B.C. Olympiakos, SFP*, 721 F. Supp. 2d 546, 567 (S.D. Tex. 2010) (addressing the second, "arise from" prong even though the plaintiff failed to demonstrate the defendant possessed the requisite contacts). "Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor*, 592 U.S. at 359. (citations and quotation marks omitted). For reasons outlined below, Plaintiffs failed to establish their claims arise from Defendants Levin and Bentov's purported contacts.

Read generously, the Complaint identifies two potential (but insufficient) contacts between Defendant Levin and Texas: (1) his title as manager of CryptoZoo, "who hired the software development team BlockOps LLC out of Austin, Texas," and (2) his statement indicating Defendants would follow through with finalizing the game. (Doc. 81 at 41, 48). The first fails not because of its attenuated link with Texas, but its overall insufficiency. As explained, "merely contracting with a resident of the state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). The second contact fails for the opposite reason: it bears no link whatsoever to Texas. Not only have Plaintiffs fallen short of the requisite fraud elements, but they also are silent as to how Defendant Levin's statement impacted Texas consumers—or if Texas consumers were even aware of his statement, for that matter. *See Boyd v. Teamsters Loc. Union 968*, No. 15-3710, 2018 WL 2321951, at *6 (S.D. Tex. Feb. 9, 2018) ("As Defendants correctly argue, Plaintiff's fraud claim fails because she produces no evidence that any fraudulent statements were made to her or that she relied on

the statements on which she bases her claim."); *see also Nabulsi v. Nahyan,* No. H-06-2683, 2009 WL 1658017, at *16 (S.D. Tex. June 12, 2009) ("[O]nly the commission of an intentional tort aimed at the forum state will satisfy the purposeful availment inquiry of the minimum contacts requirement."); *Fernandez-Lopez*, 2020 WL 9396523, at *9 ("Jurisdiction can be based on acts done outside the state that have consequences or effects within the forum state, but only if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."). With no additional facts surrounding Defendant Levin's dealings with BlockOps and no facts supporting an inference that Defendant Levin's statement affected Texas residents, the Court cannot find Plaintiffs alleged he has sufficient contacts or that their claims arise out of or relate to those contacts.

As for Defendant Bentov, Plaintiffs' chances are even more bleak. His only conceivably actionable contact with Texas is his potential communication with Texas consumers through his position as game and community manager. (Doc. 81 at 43). But that is the extent to Plaintiffs' allegations. Did Defendant Bentov convey fraudulent messages to the community members in Texas? Did he engage in some sort of unlawful conduct in working with the Texas development company? The Complaint does not say. So, for those reasons, the Court cannot conclude Plaintiffs' claims arise out of Defendant Bentov's contacts with the forum.

### 4. Whether the Exercise of Personal Jurisdiction Would be Fair and Reasonable

The third and final prong of the personal jurisdiction analysis tasks courts with determining whether the exercise of personal jurisdiction is fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). If the plaintiff is able to satisfy the first two prongs, the burden thereafter shifts to the defendant to prove the obverse—that the exercise of jurisdiction would be unfair and unreasonable. *See id*. However, "[i]f the plaintiff

fails to satisfy either of [the first two prongs], personal jurisdiction is not established in the forum state," and the analysis concludes after the second prong. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Regardless, given Defendants Levin and Bentov's attenuated contacts with Texas and its residents, it would be neither fair nor reasonable for the Court to exercise personal jurisdiction over them. Having concluded Defendant Levin and Bentov's random and fortuitous contacts with Texas did not give rise to Plaintiffs' claims, the Court concludes the traditional specific jurisdiction analysis and proceeds to Plaintiffs' federal statutory claims.

### 5. Federal Statutory Claims

As discussed at length in the Strobel R&R, the personal jurisdiction analysis as it pertains to federal statutory claims is distinct from that for common law and state statutory claims:

> Under Rule 4(k)(1)(D) of the Federal Rules of Civil Procedure, service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant when authorized by a statute of the United States. Where service is authorized by federal statute, the more expansive due process requirements of the Fifth Amendment govern the controversy and the relevant due process inquiry is whether the defendant has had minimum contacts with the United States. Consequently, when a congressional statute provides for nationwide service of process, the district court will have personal jurisdiction over a U.S. resident who is personally served in the United States since a resident has sufficient minimum contacts with the U.S. by virtue of his or her residency.

*Warfield v. Arpe,* No. 3-05-CV-1457, 2007 WL 549467, at *4 (N.D. Tex. Feb. 22, 2007) (internal citations and quotation marks omitted). In other words, while the analysis is not unlike the typical minimum contacts test in that courts still look for minimum contacts, relatedness, and reasonableness, the Fifth Amendment governs, and the relevant contacts are those the defendant

has with the United States. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 642 (S.D.N.Y. 2017).

"When a plaintiff relies on a federal statute providing for nationwide service of process, the court will have personal jurisdiction over a properly served defendant provided that (1) the federal claim is colorable, and (2) the exercise of personal jurisdiction satisfies the Fifth Amendment's Due Process Clause." *Doe 8 v. Varsity Brands, LLC*, No. CV 22-3508, 2023 WL 4209843, at \*7 (D.S.C. June 27, 2023). A federal claim is not colorable "only if the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 941 (11th Cir. 1997) (citations and quotation marks omitted).

Plaintiffs' Complaint asserts four federal statutory claims arising under: (1) Section 10(b) of the Securities Exchange Act ("SEA"), along with Rule 10b-5 promulgated by the Securities Exchange Commission ("SEC"); (2) Section 20(a) of the SEA; (3) the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and Sections 4o and 22(a) of the Commodity Exchange Act ("CEA"). (Doc. 81 at 104–11). The Court addresses each in turn.

### i. SEA Section 10(b) and SEC Rule 10b-5

The SEA, in relevant part, provides, "district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa(a). And "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." *Id*. "Once process is validly served, jurisdiction is based upon the contacts between the defendant and the United States because it is the United States, and not the particular state that is exercising jurisdiction." *909*

*Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1292 (S.D. Tex. 1990). Here, neither party disputes Defendants Levin and Bentov, both California residents, were properly served in the United States. (*See* Docs. 87, 90, 97).[8] Rather, the parties disagree as to whether Plaintiffs allege a colorable SEA claim.

Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate . . . ." 15 U.S.C. § 78j(b). One such rule, Rule 10b-5, provides, "It shall be unlawful for any person . . . (a) [t]o employ any device, scheme, or artifice to defraud[;] (b) [t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading[;] or (c) [t]o engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person, in connection with the purchase or sale of a security." 17 C.F.R. § 240.10b-5. Once again, while plaintiffs need not make a showing required to survive a Rule 12(b)(6) motion, they nevertheless must make a "colorable" SEA claim to survive a Rule 12(b)(2) motion. *Hall v. Tyco Int'l Ltd.*, 223 F.R.D. 219, 227 (M.D.N.C. 2004) ("The authority the Court has located, however, indicates that Plaintiff's claims must only be colorable to permit him to take advantage of the nationwide-service-of-process provisions of the Securities Exchange Act . . . ."). "When a jurisdictional motion to dismiss depends . . . on the assertion of a right created by federal statute, the court should dismiss for lack of jurisdiction only if the right

---

8. Although the Court issued summons as to all defendants on February 6, 2023, Plaintiffs did not file executed summonses as to Defendants Levin or Bentov. (Doc. 6). Based on the parties' silence on the issue and Defendants Levin and Bentov's active participation in the case, the Court assumes they were properly served in the United States—presumably where the summonses were issued, at their respective residences in California. *Id*. at 3, 9.

claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as to not involve a federal controversy." *Republic of Panama*, 119 F.3d at 941 (quotation marks omitted). Conclusory allegations unattributed to the defendant at issue do not amount to a colorable claim. *See Brown v. Fid. Nat'l Title Grp.*, No. 318-CV-01148, 2020 WL 6106090, at *17 (M.D. Fla. Aug. 5, 2020) (finding the plaintiff failed to state a colorable claim where his allegations were vague, conclusory, and implausible), *R. & R. adopted*, 2020 WL 5105435 (M.D. Fla. Aug. 31, 2020); *In re BitConnect Sec. Litig.*, No. 18-CV-80086, 2019 WL 9104318, at *3 (S.D. Fla. Aug. 23, 2019) ("The mere *allegation* of a Securities Act violation is not sufficient to confer personal jurisdiction . . . ."); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453 (S.D.N.Y. 2008) ("[C]onclusory allegations of participation in the fraud are insufficient [to confer personal jurisdiction.]").

Here, neither Plaintiffs' allegations as to Defendants Levin or Bentov give rise to colorable claims under Section 10(b) and Rule 10b-5. Nowhere do Plaintiffs identify how Defendants Levin or Bentov, specifically, employed a scheme to defraud, made untrue statements of material fact, or engaged in an act that operates as fraud. Without establishing a colorable claim, Plaintiffs cannot take advantage of the nationwide service of process provision.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' SEA Section 10(b) and Rule 10b-5 claim be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### ii.    SEA Section 20(a)

For their Section 20(a) claim, Plaintiffs aver, "the Founder Defendants were able to, and did, control the contents of the various promotional materials, press releases and public statements which CryptoZoo disseminated in the marketplace . . . ." (Doc. 81 at 108). According

to Plaintiffs, "[e]ach of the Founder Defendants exercised control over the general operations of CryptoZoo and possessed power to control the specific activities which comprise the primary violations . . . ." *Id*.

Section 20(a) provides, [e]very person who, directly or indirectly, controls any person liable under any provision of this chapter of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . ." 15 U.S.C.A. § 78t(a). "To establish a prima facie case of control person liability pursuant to Section 20(a), a plaintiff must sufficiently allege (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457 (S.D.N.Y. 2022) (citations and quotation marks omitted). "Further, a plaintiff must demonstrate primary liability under Section 10(b) prior to making out a control person liability claim." *Id*. "[A] plaintiff must at least show that the defendant had the ability to control the specific transaction or activity upon which the primary violation is based." *Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 95 F.3d 45 (5th Cir. 1996).

Here, Plaintiffs' claim fails for two reasons. First, the Court found no underlying Rule 10(b) violation upon which to predicate this claim. Second, Plaintiffs have not demonstrated either Defendant Levin or Bentov had the ability to control the activity giving rise to the alleged violation. Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' SEA Section 20(a) claim be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### iii.    RICO

Although the Fifth Circuit has yet to explicitly clarify the breadth of RICO's nationwide process provisions, our sister court has noted—and this Court agrees—"[t]he more widely recognized and sound approach is to determine if a plaintiff has raised a 'colorable' RICO claim." *Fernandez-Lopez*, 2020 WL 9396523, at *10. Although a less onerous burden than surviving a Rule 12(b)(6) and Rule 9(b) standards, a district court may dismiss RICO claims on jurisdictional grounds if it determines "(1) that the federal claim is immaterial and made solely for the purpose of obtaining jurisdiction, or (2) that the federal claim is wholly insubstantial and frivolous." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 449 (5th Cir. 1983). Thus, the Court's narrow goal is to determine whether Plaintiffs brought their RICO claim to artificially manufacture jurisdiction or if the claim is insubstantial enough to warrant dismissal.

"The substantive provisions of RICO, 18 U.S.C. § 1962(a)-(d), outlaw four types of racketeering-related activities." *Morin v. Trupin*, 835 F. Supp. 126, 130 (S.D.N.Y. 1993). Generally speaking, "[t]o establish a RICO violation, a plaintiff must prove four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Brown v. Fid. Nat'l Title Grp.*, No. 18-CV-01148, 2020 WL 6106090, at *17 (M.D. Fla. Aug. 5, 2020), *R. & R. adopted*, 2020 WL 5105435 (M.D. Fla. Aug. 31, 2020). Plaintiffs specifically allege a violation under 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." (*See* Doc. 81 at 108). To prevail under this subsection, Plaintiffs must show "(1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4)

34

that the participation was through a pattern of racketeering activity." *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005) (citations and quotation marks omitted). "An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003). "To prove a pattern of racketeering activity, a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139–40 (5th Cir. 1992). Alleging only one predicate act— i.e., involvement in only the criminal act at issue—is insufficient to prove a pattern under RICO. *See Fernandez-Lopez*, 2020 WL 9396523, at *13.

Although Plaintiffs at least refer to Defendant Levin in their RICO claim and attempt to implicate him in an alleged violation, their RICO section contains no mention of Defendant Bentov. (Doc. 81 at 108–10). Plaintiffs allege CryptoZoo was but one of many of "Defendants Paul and Levin's entities for their criminal enterprise, all of whom are engaged in interstate commerce and whose activities affect interstate commerce." *Id.* at 108–09. Although Plaintiffs list various "rug-pulls" in which Defendant Levin allegedly participated, nowhere do they specify what criminal acts, if any, constitute predicate acts. *Id.* at 109. Nor do they adequately plead the existence of an enterprise, as explained in the Paul R&R. (Doc. 107 at 66). And as this district has done before, the Court declines to allow Plaintiffs to "couch their claims as falling under RICO simply for the purpose of obtaining jurisdiction over Defendants." *Fernandez-Lopez*, 2020 WL 9396523, at *13. Thus, for the narrow purpose of disposing of the instant Motion and based solely on the allegations pertaining to Defendants Levin and Bentov, Plaintiffs are ineligible for RICO's nationwide service provision.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' RICO claim be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### iv.   CEA Sections 4o and 22(a)

For their final argument, Plaintiffs alternatively allege Defendants violated Sections 4o and 22(a) of the CEA. (Doc. 81 at 110–11). Section 4o of the CEA provides as follows:

> It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6o. Section 22(a) provides a private right to action under the CEA. *See* 7 U.S.C. § 25(a)(1)(A)–(D).

> To have standing under Section 22, a private plaintiff must fall into one of four categories: a plaintiff must either have (A) received trading advice from Defendants for a fee; (B) traded through Defendants or deposited money with Defendants in connection with a commodities trade; (C) purchased from or sold to Defendants or placed an order for purchase or sale of a commodity through them; or (D) engaged in certain market manipulation activities in connection with the purchase or sale of a commodity contract.

*Starshinova v. Batratchenko*, 931 F. Supp. 2d 478, 487 (S.D.N.Y. 2013). Once again, "[t]he plaintiff need only make 'a colorable showing that the defendant *might* be liable' under that statute." *Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 836 (9th Cir. 2024) (citations and quotation marks omitted).

The Court can easily dispose of this claim because its elements are nearly indistinguishable from those under subsections (a) and (c) of Rule 10b-5 promulgated by the SEC, as analyzed above. *Compare* 17 C.F.R. § 240.10b-5 (making it unlawful to "employ any device, scheme, or artifice to defraud" and "engage in any act, practice or course of business which operates or would operate as fraud or deceit"), *with* 7 U.S.C. § 6o (making it unlawful to "employ any device, scheme, or artifice to defraud" and "engage in any transaction, practice, or course of business which operates as a fraud or deceit"). As with Plaintiffs' SEA claim, the Court struggles to see how Plaintiffs satisfy the above elements based on the facts provided.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' SEA Section 20(a) claim be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

### 6.  Federal Statutory Claims as to International Plaintiffs

Although the Court has already concluded Plaintiffs' federal statutory claims do not support a finding of personal jurisdiction over Defendants Levin and Bentov, regardless of each member's residence, it will nevertheless address Defendant Levin and Bentov's final ground for dismissal. Of Plaintiffs' class, 3 are Texas residents, 34 residents of states other than Texas, and 103 are residents of foreign countries. (Doc. 81 at 22–41). Defendant Levin and Bentov argue there is a presumption against extraterritorial application of the federal statutes, and Plaintiffs have not rebutted that presumption. (Doc. 87 at 7–8).

It is true that "[t]he presumption against extraterritorial application provides that when a statute gives no clear indication of extraterritorial application, it has none." *United States v. Kaluza*, 780 F.3d 647, 669 n.14 (5th Cir. 2015) (alteration in original) (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 108 (2013)). In other words, Defendants Levin and Bentov

are correct: there is a rebuttable presumption against the extraterritorial application of the federal statutes alleged by Plaintiffs. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 261–266 (2010) ("[T]he focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. Section 10(b) [and Rule 10b-5] do[] not punish deceptive conduct, but only deceptive conduct in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered."); *Starshinova*, 931 F. Supp. 2d 478   (extending the presumption against extraterritorial application to CEA claims). However, it is only a rebuttable presumption, not an unwavering bar. *See generally Morrison*, 561 U.S. 247. In their Response, Plaintiffs advocate for a new standard prescribed by the Supreme Court. (Doc. 90 at 2) (citing *Yegiazaryan v. Smagin*, 599 U.S. 533 (2023)). *Yegiazaryan* sets out the following rule:

> [I]n assessing whether there is a domestic injury, courts should engage in a case-specific analysis that looks to the circumstances surrounding the injury. If those circumstances sufficiently ground the injury in the United States, such that it is clear the injury arose domestically, then the plaintiff has alleged a domestic injury.

599 U.S. at 545. Defendants Levin and Bentov argue because the international plaintiffs' injuries were extraterritorial in nature, those plaintiffs cannot recover under the federal statutes at issue here. The Court finds this argument unavailing. The *Yegiazaryan* Court urged lower courts to "look to the circumstances surrounding the alleged injury to assess whether it arose in the United States." *Id*. The Court is not convinced Plaintiffs have not adequately demonstrated facts and circumstances allowing the Court to infer a domestic injury. In other words, Defendants Levin and Bentov's extraterritorial application argument, itself, does not warrant dismissal. Nevertheless, because Plaintiffs failed to state colorable federal statutory claims, as outlined above, those claims should be dismissed on those grounds.

Accordingly, the Court **RECOMMENDS** Defendants Levin and Bentov's Motion to Dismiss be **GRANTED** (Doc. 87), and Plaintiffs' federal statutory claims be **DISMISSED WITHOUT PREJUDICE** (Doc. 81), not because the Court believes Plaintiffs cannot recover under the federal statutes, but because Plaintiffs failed to state colorable federal statutory claims.

### 7. Jurisdictional Discovery

In their Response, Plaintiffs request jurisdictional discovery in the event of an unfavorable ruling. (Doc. 90 at 10). Defendants Levin and Bentov are opposed. (Doc. 97 at 10). They argue Plaintiffs failed to make a preliminary showing of jurisdiction, as is required before a court can grant jurisdictional discovery. *Id*. The Court agrees.

"If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts[,] the plaintiff's right to conduct jurisdictional discovery should be sustained." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). "The decision to permit such discovery is within the court's discretion." *Bar Grp., LLC v. Bus. Intel. Advisors, Inc.,* 215 F. Supp. 3d 524, 545 (S.D. Tex. 2017). When, as here, the motion to dismiss raises no issues of fact and a lack of jurisdiction is evident, the Court should deny jurisdictional discovery. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000). Moreover, the Fifth Circuit has authorized denial of jurisdictional discovery when plaintiffs do not "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction." *Id*.

Here, the Complaint is practically devoid of facts pertaining to Defendant Bentov. (Doc. 81). Although the Complaint raises more facts pertaining to Defendant Levin, none

sufficiently allege wrongful acts or tie his conduct to the forum. *Id*. Moreover, nowhere do Plaintiffs describe what they expect jurisdictional discovery would generate or how those facts might support a finding of jurisdiction, as is required in a request for jurisdictional discovery. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Accordingly, the Court is of the opinion jurisdictional discovery is not warranted.

### 8. Leave to Amend

In addition to jurisdictional discovery, Plaintiffs also request leave to amend their complaint. (Doc. 90 at 10–11). Defendants Levin and Bentov believe Plaintiffs have produced no justification calling for amendment. (Doc. 97 at 10–11).

Federal Rule of Civil Procedure 15 instructs this Court to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). District courts consider several factors in determining whether to grant leave to amend, such as undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. *In re Am. Refinery, Inc.*, 676 F.3d 455, 466–67 (5th Cir. 2012) (internal citations omitted). Ultimately, however, the decision to grant or deny leave to amend is within the sound discretion of the district court. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

Although Plaintiffs have exhibited no undue delay or dilatory motive, all other factors weigh in favor of denying leave to amend. First, Plaintiffs have had an opportunity to amend and cure any deficiencies. Plaintiffs' initial complaint was filed on February 2, 2023, raised 8 causes of action, and contained nearly identical facts as the Complaint at issue. (Docs. 1, 81). Although 19 claims and 89 pages longer, the instant Complaint no further dispels the Court's concern that it lacks jurisdiction over Defendants Levin and Bentov. (Doc. 81). At the time of this ruling,

nearly two and a half years have elapsed since Plaintiffs filed suit, and Defendants Levin and Bentov have expended resources on various filings, including two motions to dismiss. And once again, Plaintiffs do not indicate they have more facts attributable to Defendants Levin or Bentov that might support a finding of jurisdiction. Most importantly, Plaintiffs have not raised a single actionable allegation as to either Defendants Levin or Bentov. In sum, the Court is of the opinion Plaintiffs have had opportunity to cure deficiencies, Defendants Levin and Bentov would be prejudiced if Plaintiffs were granted leave, and most importantly, amendment would be futile.

## IV.    RECOMMENDATION

In accordance with the above discussion, the Court **RECOMMENDS** Defendants Levin and Bentov's Rule 12(b)(2) Motion to Dismiss be **GRANTED** (Doc. 87) in its entirety, and Plaintiffs' claims against Defendants Levin and Bentov be **DISMISSED WITHOUT PREJUDICE** (Doc. 81).

SIGNED this 25th day of August, 2025.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).