**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 1:23-cv-00110 |
| vs. | § § § | JURY TRIAL DEMANDED |
| CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, EDUARDO IBANEZ, and JAKE GREENBAUM a/k/a CRYPTO KING, | § § § § § | |
| *Defendants.* | § § § | |

**PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Co-Lead Plaintiffs Don Holland, Alex Heikali, and Mourad Kechichian, each individually and on behalf all others similarly situated, and Plaintiffs Simon Geldof, Jeffer Holzheimer, Ali Mustafa, Marko Drapic, Richard Lam, Daniel Commons, Conrado Canete, Jesse Griggs, Kyle Gorney, Jakob Emil Slotsvang, Daniel Nicolici, Jacob Juggins, Matthew Walmsley, Lasse Bjornstad, Theirry Ducatel, Emilio Jorge Collazo Sanz, Renato Herartt, Agron Pitarka, Arseny Savrasov, Kira Krieg, Jacob Stockamp, Dmitry Bobkov, Patrick Marcher, Abdullah Miraj, Nicolas Campoamor, David Reading, Cristian Nunez, Liam Manning, Daniel Healy, Aidan O'Flaherty, Jacky Jiang, Yanick Martel, Liam Giblin, Armen Akopian, Hwa Kwang Kuar, Evgeniya Guberman, Nicolas Camacho, Nathan Jones, Alex Heikali, Paul Brian Endriga, Carlos Manuel Miniño Medina, Tyler Paboojian, Mitch Robinson, Nicolas Cortes, Eduardo Vazquez, Juan Pablo Ochoa, Sanitago Borzone, Nabine Neupane, Matthew Bundy, Nicolas Mougel, Vraj Patel, Brandon Potemra, Marco Zahedi, Thomas Baker, Liam Boyd, Tim Bauer, Ayush Patel, Marius

Amihaesei, Oliver Simoza, Andrew Felkin, Shaun Triplett, Louis Dimonaco, Umer Ali, Justin

Mayo, Jesper Roos, Martin Paolo Austria, Gunnar Leon, James Goetz, Phillip Ladendorf, Mike

Speilmann, Zaboer Rafaqat, Afonso Silvano, Johan Cruz, Tom Fitzgerald, Kurt Alexander, George

Bou Khalil, Martin Beattie,  Luke Mcllwee, Garrett Roche, Duarte Campos de Oliveira, Emil

Norgaard, Sean Fry, Mark Lightbwon, Anthony Arnold, Daniel Hernández, Mourad Kechichian,

Tom Cropper, João Amorim, Marcus Owens, David Nicholls, Ricardo Garcia, Jagdeep Cheema,

Shawn Bourget, Arun Bhatta, Marcus Karl Förster, Alexandre El-Hage, Matthew Chase, Matthew

Walker, James Furber, Hon fai Ma, Mangus Lervold, Luke Gorman, Brennen Giroux, Jordan

Hazel, Danielle Altman, Daniel Brink, Jacobo Castaño,nLogan Law, Artiom Zorin, Grant Kim

Castillones, Francisco Javier Fernandez Sanz, Mitchell Rogers, Jaime Ruiz Martinez,  Dražen

Jakobović, Kenneth Thorbjornsen, Jon Gjyleri, collectively the Plaintiffs by their undersigned

attorneys, allege in this Second Amended Class Action Complaint for violations of the federal

securities laws (the "Complaint") the following, based upon personal knowledge with respect to

their own acts, and upon information and belief based upon facts obtained through investigation

conducted by their counsel, which included, inter alia: (a) documents and solicitation materials

made by Defendants; (b) public statements made by Defendants concerning CryptoZoo, Inc. or the

CryptoZoo products; and (c) media publications, web blogs and other web sources concerning

CryptoZoo products, against Defendant Paul of CryptoZoo Inc., Logan Paul, Eddie Ibanez, and

Jake Greenbaum a/k/a Crypto King (collectively, "Defendants").

Despite the public admissions and internal documents already available, Plaintiffs believe

that further substantial evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein

are known only to the Defendants or are exclusively within their control.

## I.    INTRODUCION

1.      This is a class action lawsuit against serial scammers promoting an ever-pending digital asset project in order to abscond with investor funds. Defendants sold digital assets that did not have characteristics, uses, or benefits they advertised and promoted and, either through reckless incompetence or greed, never released the CryptoZoo game—the purported purpose of Defendants' endeavor that may have concealed their scheme.

2.      Defendant Paul Logan Paul, Eddie Ibanez, and Jake Greenbaum a/k/a Crypto King created the company, CryptoZoo Inc., to sell digital assets ostensibly for use in the digital CryptoZoo game: first, in the form of a digital currency called Zoo Tokens, which could then be used to purchase Defendants' other products, CryptoZoo Non- Fungible Tokens ("CZ NFTs"). Non-Fungible Tokens ("NFTs"), as discussed below, are a form of digital assets that can be purchased, sold, and transferred on other cryptocurrencies, such as the Binance or Ethereum blockchain in this case. Collectively, Zoo Tokens and CZ NFTs are referred to as "CryptoZoo Products" below. Defendants also created an online CryptoZoo community to discuss the game.

3.      As shown below, thousands of consumers were duped in to purchasing this non-existent product for one single reason – Defendant Logan Paul continuously represented the existence and viability of these products in various false statements designed to fraudulently induce investment in CryptoZoo products between August 18, 2021 and January 4, 2024.  Defendant Paul knew these representations all of his statements were false or materially misleading at the time they were made.

4.      Each of Paul's knowingly false statements were intended to induce continued purchases of Zoo Tokens and CZ NFTs and did so. Plaintiffs relied upon these specific statements, described below, in making their purchases. Defendants Paul, Greenbaum, and Ibanez all profited

from the scheme.

5.      In addition to what Paul said publicly to promote CryptoZoo, what he failed to disclose is even more revealing. Before announcing CryptoZoo on August 18, 2021, Paul and his co-Defendants secretly launched the Zoo Token and acquired large quantities at an artificially low price. This undisclosed "stealth launch" amounted to classic insider trading. The Defendant Paul purchased Zoo Tokens among themselves at a fraction of the value the tokens would reach once promoted to the public, allowing Paul, Greenbaum, and Ibanez to accumulate enormous holdings before consumers even knew the project existed. They then used material, non-public information about the upcoming launch and Paul's promotional influence to position themselves for profit once trading began.

6.      Compounding this deception, the CryptoZoo *Whitepaper*, which Defendant Paul personally wrote or approved, represented that the largest wallets were "locked" and that all founder-held tokens would be restricted for 6 months to prevent insider sales. Defendant Paul knew these assurances were false at the time of writing and endorsing the *Whitepaper*. Paul and the other founders never disclosed to the public that they themselves were early purchasers and controlled substantial portions of the total token supply. The *Whitepaper's* promises of locked founder wallets gave investors the impression that insiders could not dump tokens, when in truth, the very individuals behind CryptoZoo were the primary beneficiaries of the initial stealth launch.

7.      To disguise this insider activity, Defendant Paul established internal "rules" for when and how the founders could trade their Zoo Tokens. These rules acknowledged that the Defendants knew their conduct was improper and that public promotion would dramatically inflate prices once the game was announced. The existence of these "rules" confirms that the Defendants viewed the Zoo Token as an investment security and understood they were manipulating a market

based on inside knowledge.

RULES FOR SELLING:
1. No selling until 200M market cap and don't impact the market more than 3%. And not impact the market more than 10% in a day

Liquidity
If you know that price is about to go up then it makes sense to pull liquidity

8.    When CryptoZoo was finally made public on August 18, 2021, the price of Zoo Tokens skyrocketed to a $600 Million dollar market cap within hours as Paul's millions of followers rushed to buy in, believing they were purchasing access to a legitimate game economy. In the immediate aftermath of the launch, Defendants Greenbaum and Ibanez began unloading their tokens on the open market, extracting millions of dollars in profit. Critically, these insider sales were not acts of rebellion or rogue conduct—they were carried out in accordance with the insider-trading "rules" that Paul himself had established. Paul's private directives determined when insiders could sell, how much could be sold, and under what conditions, making the trading activity a coordinated liquidation rather than a breach of discipline. While ordinary investors bought at inflated prices, the Defendants Greenbaum and Ibanez quietly enriched themselves using the very system of insider trading that Paul had designed and controlled.

9.    Defendnant Greenbaum began selling his Zoo Tokens after the August 18, 2021 launch, precisely in line with the insider-trading rules Paul had imposed, Paul became furious. Paul's anger was not over any violation of his rules but over the fact that Greenbaum had managed

to profit first, while Paul himself had not yet realized his gains. In retaliation, Paul orchestrated a full conversion of the Zoo Token smart contract to a nearly identical coin hereafter called "Zoo Token Version 2". This move effectively locked Greenbaum out of the project and froze his remaining holdings. Paul described this maneuver internally as a "surgical" removal of a "snake from the grass." *See* Dkt. 55 at p. 31. To conceal the true motive behind this move, the CryptoZoo project publicly released a Medium article on September 1st, 20201 and updated its whitepaper claiming the conversion was to enhance blockchain "accessibility" and enable "interoperability" across chains. In reality, these publications were created by Paul and served as a cover story. Paul personally reaffirmed and endorsed these false explanations from his own Twitter account on September 2, 2021, misleading investors into believing the conversion was a technical improvement rather than a calculated act of retaliation and market manipulation. In truth, the conversion had nothing to do with accessibility. It was a calculated effort to cut out a fellow insider, consolidate control over the liquidity pool, and preserve Paul's opportunity to profit at the expense of the public during the coming days when the game would officially launch.

## Distribution

Total $ZOO Tokens: 2,000,000,000,000

- Game wallet: 1,000,000,000,000
- Circulation: 1,000,000,000,000
  - 500,000,000,000 available to public
  - 500,000,000,000 allocated to development, marketing, and founders
    - Locked for 6 months from allocation
    - After 6 months, 10% of allocation unlocked per month for next 10 months

The $ZOO Token was minted on the Binance Smart Chain (BSC) to avoid the high fees and latency associated with ETH transactions recently. The goal was ultimately to provide more accessibilty through low fees, but building on BSC introduced other accessibility issues, through restrictions on Binance transactions in many provinces, and a prohibitively confusing setup process for new crypto participants. In late August/early September 2021, $ZOO was paused, and a new contract distributed to all holders of the original contract. The new contract will make possible full interoperability and functionality across both Ethereum and Binance Smart Chain.



10.     After locking Greenbaum out, Paul immediately began extracting value from the project for his own personal gain. On or about September 3, 2021, CryptoZoo began selling "egg" NFTs to the public. CZ Egg NFTs were the digital products that Paul had repeatedly promised

would "hatch" at a later date into a CZ Base Animal NFT and form the basis of the CryptoZoo game. The CA Egg NFTs  sold out almost instantly, generating approximately $2.6 million in revenue from eager consumers who believed they were investing in a functioning blockchain game. Just two days later, on or about September 5, 2021, on information and belief, Paul paid himself approximately $943,229 from CryptoZoo's accounts. The very next day, on September 6, 2021, on information and belief Paul paid himself approximately $364,000 from CryptoZoo's accounts. These funds did not come from Zoo Token trading but from the proceeds of the CZ NFT Egg sales. Although Paul was not personally conducting the CZ NFT Egg sales, CryptoZoo functioned as his alter ego and personal piggy bank, allowing him to unilaterally withdraw investor funds under the guise of legitimate project operations. This was not an accidental act. It was a deliberate and malicious extraction of consumer funds from a nonfunctional product that never delivered on its promises. Text messages exchanged long after the scheme's exposure confirm Paul's awareness and intent, as he sought to rationalize and spin his conduct rather than accept responsibility. CryptoZoo, in substance, was never a company. It was Logan Paul's personal enrichment vehicle, dressed up as a blockchain venture.



11.    It is important to note that the text messages Paul later exchanged, after the scheme was exposed, are clearly attempts to save face. In those messages, Paul tries to rationalize his conduct as reimbursement. But his own crossclaim filing admits that he incurred only about $220,000 in out-of-pocket expenses for the project up to that point. *See* Dkt. 55 at p.12. That admission makes each payout of approximately $943,229 and $364,000 indefensible. And even if his claimed expenses had been legitimate, which they were not, it would make no difference: Paul had no right to unilaterally strip investor funds from a project that never produced the product he

sold. CryptoZoo was not a business venture; it was Logan Paul's personal cash machine, designed to convert public trust and fan enthusiasm into private enrichment.

12.    By mid-September 2021, after the instant sell-out of the egg NFTs and the influx of hundreds-of-millions of dollars in trading volume, Paul faced pressure to sustain market enthusiasm and keep the price of Zoo Token Version 2 artificially high. Privately, however, Paul already knew that the CryptoZoo "game" did not exist in any meaningful capacity. On September 8, 2021, Paul was shown a test of CryptoZoo's supposed "virtual marketplace" and told his team it looked "confusing," "incomplete," and that his first impression was "Wtf is this" *See* Dkt. 55 at p. 34.  Rather than disclose that the CryptoZoo game was still nonexistent, Paul doubled down with new misrepresentations. On September 15, 2021, during a CryptoZoo community "Ask Me Anything" forum, Paul falsely proclaimed that he had personally played the game, stating: "I can't wait for you guys to see the game. It is so much fun. I am addicted to it. My friends are addicted to it. Every developer is addicted to it. Every other person on the team. We love playing it." These statements were not harmless puffery—they were concrete, verifiable claims about the existence and functionality of the CryptoZoo game. In truth, no game existed at all. . *CryptoZoo AMA with Logan Paul*, YouTube (Sept. 15, 2021), available at https://www.youtube.com/watch?v=itnhkAFhUQ4  (last visited Nov. 5, 2025). Paul's statements were calculated to reassure purchasers, prop up secondary-market demand, and preserve the inflated value of the Zoo Token Version 2 and related CryptoZoo products, all while concealing that the project had no working product, no revenue-generating mechanism, and no path to deliver the promised game

13.    By the end of September 2021, the internal power struggle among the founders escalated into yet another covert manipulation of the token contract. On or about September 29,

2021, Paul directed a second conversion, creating "Zoo Token Version 3", this time under the guise of further "technical improvements." In truth, the switch served two purposes: to exclude Defendant Ibanez from access to project funds, and, even more tellingly, to re-include Defendant Greenbaum, the very person Paul had accused of being a "snake" and thief only weeks earlier. Then, on October 13, 2021, Paul transferred 25,000,000,000 Zoo Tokens Version 3 to Greenbaum's wallet, empowering him to resume off-loading tokens on unsuspecting purchasers. The move speaks for itself, if Paul genuinely believed Greenbaum had stolen from the project, there is no plausible explanation for reinstating him and handing him billions of tokens to sell to the very victims Paul claimed to protect.

14.     Through October 2021, Paul continued a coordinated media campaign to promote CryptoZoo and maintain the illusion of progress. Despite privately knowing the true nature of the project, Paul went on camera to tell the public the opposite. On October 11, 2021, during *The Logan Paul Interview with Jon Youshaei*, Paul falsely portrayed CryptoZoo as a finished, functioning ecosystem, stating: "Let's make a fun game where people can live out their wildest dreams and breed animals that they never could before in very hyper-realistic fashion. Make them NFTs. Provide an ecosystem around it. Gamify it. And now, like, **we have a complete platform.**" Jon Youshaei, *The Logan Paul Interview*, YouTube (Oct. 11, 2021), available at https://www.youtube.com/watch?v=ZNQG93EkWiI (last visited Nov. 5, 2025). This statement was a deliberate lie. Paul knew no such platform existed, yet his remarks successfully pumped the price of Zoo Token Version 3, creating another wave of investor optimism and secondary-market trading.

15.     Only days later, on October 13, 2021, Paul transferred 25 billion Zoo Tokens Version 3 to Defendant Greenbaum, reinstating his token holdings so he could continue extracting

ill-gotten funds from the public despite having previously branded Greenbaum as corrupt. If Paul truly believed Greenbaum was a "snake" or a thief, there is no rational explanation for handing him billions of tokens to continue selling to victims. The far more likely truth is that these actions were an insider reshuffle designed to maintain liquidity, mislead the public, and keep the cash flowing while insiders continued dumping tokens.

16.     Over the following months, Paul and his team made a series of half-hearted attempts to "hire" developers to finish the CryptoZoo game. These efforts were never genuine. On information and belief, Defendants retained multiple developers, including a software engineer who was never paid, a firm called PixelPlex, and later Vatom Ventures (whom Defendant Paul offered to pay in Zoo Token Version 3), none of whom were compensated for their work. Each time a contractor asked to be paid, the relationship collapsed. Paul and his associates dismissed these developers as "too transactional"—a telling phrase that meant they expected labor without cost. Eventually, Defendants engaged BlockOps LLC out of Austin, Texas, which began developing related projects under Paul's direction. Yet Paul refused to authorize completion of the actual CryptoZoo game, complaining that it was too expensive. In reality, Paul had no intention of funding development; he had already extracted his profits and was unwilling to reinvest in a product that might expose the scheme's emptiness. Instead, he continued to make empty promises and public statements about the game's progress to keep the public at bay. Insisting that artists were "working around the clock" and that he was "never giving up" on multiple occasions throughout 2022 while privately knowing the development had stopped entirely.

17.     By late 2022, Paul appeared convinced he had gotten away with the scheme. CryptoZoo had quietly died, no development work was being done, and Paul had already moved on to his next NFT venture, "99 Originals," which he marketed as his new flagship Web3 project.

Investors from CryptoZoo had been abandoned, left holding worthless tokens and NFTs. That changed only when independent journalist Stephen "Coffeezilla" Findeisen released his three-part exposé on December 20, 2022, which uncovered internal communications, insider testimony, and irrefutable proof that CryptoZoo had no working game, that developers were never paid, and that Paul and his team had deceived the public for over a year.

18.     At the time of the exposé, Paul was not working on CryptoZoo in any capacity. There was no development team, no active project, and no plan to make one. But once the investigation went viral and public backlash mounted, Paul scrambled to rewrite history. He first lashed out at Coffeezilla, accusing him of "misinformation" and "clout chasing," before backpedaling under pressure. Suddenly claiming that CryptoZoo was "still in development." These statements were false. If Paul began working on CryptoZoo after the exposé, it was only because he got caught, not because he intended to finish the project. His belated claims that the game was coming were nothing more than damage control. Worse still, Paul's false assurances that the project was back on track caused additional investors to buy in, reviving secondary-market activity and prolonging the harm to consumers who believed CryptoZoo was being revived when, in truth, it remained dead.

19.     Almost a full year later, on January 4, 2024, Paul publicly admitted via X that the game will never be released, allegedly because "there are too many regulatory hurdles that would need    to    be    cleared."    Logan    Paul,    X,    @LoganPaul,    available    at https://twitter.com/LoganPaul/status/1742965534645276708 ("2024 Tweet"). Paul's 2024 Tweet revealed Defendants' promises and representations they had individually played the CryptoZoo game, or that it was functional, made before the game was allegedly "complet[ed] in early 2023" were false. *Id*.

20.     Further, Paul attempts to distance himself from the fraudulent scheme he instigated with the other Defendant Paul by blaming "[b]ad actors who DID steal money and who betrayed [the CryptoZoo] team while internally sabotaging the game" (*id*.), referencing his contemporaneously filed, self-exculpatory crossclaims against Defendants Ibanez and Greenbaum. *See* Dkt. 55 at p.15. However, Paul's assertions against his fellow co-Defendants are undermined by his own conduct. Paul transferred out approximately $1,280,118 from the CryptoZoo treasury wallet to wallets he controlled in the immediate days following the initial CZ NFT Eggs sale.  To make matters worse, after Paul's scheme was exposed and he was receiving negative press, internal communications show Paul affirmatively agreeing to conceal the fact that he pocketed money from the fraudulent venture.

21.     Defendant Paul acted with a high degree of scienter. His conduct was not careless or negligent but deliberate and calculated. He knew that his public statements about the CryptoZoo game were false at the time he made them. Paul had access to internal communications, test builds, and financial data showing the game did not exist and that investor funds were being diverted for personal use. He continued to issue promotional statements to sustain investor demand and protect his own financial position. His knowledge and control over the project's structure, token contracts, and treasury funds demonstrate conscious intent to deceive or, at minimum, reckless disregard for the truth.

22.     To create more distance from his bad acts, Paul also offers to "buy-back" CZ NFTs for their "original purchase price," claiming it is "a way for [him] to make whole those who intended to play CryptoZoo." 2024 Tweet.

23.     Yet, an inspection of Paul's "buy-back" program's Terms and Conditions reveals his promises to again be misrepresentations. The Terms and Conditions do not contain the term

"original purchase price" and in its place Paul offered a flat exchange of 0.1 Ethereum for each CZ

NFT returned—conveniently omitting the economic reality that Ethereum's dollar-value was down

nearly 50% since the initial sale of CryptoZoo products during the "buy-back" window:

> Upon requesting a buy-back and accepting these Terms, PAUL agrees to pay you .1 Ethereum, and in exchange you agree to return, the CryptoZoo NFT [] that is the subject of your buy-back request (the "Buy-Back"). Pursuant to this Buy-Back, .1 Ethereum will be deposited into the crypto wallet from which the NFT was returned, and at that time you will no longer own or have any possessory interest in the NFT that was returned.

*See* Terms and Conditions, Logan Paul's EggNFTBuyBack program, available at

https://etotbjdn3ex.typeform.com/EggNFTBuyBack (site no longer active). The next term, entitled

Eligibility, further eviscerates Paul's presented offer by granting Paul sole discretion as to whether

to complete the exchange even after the NFT is transferred to him:

> The CryptoZoo NFTs eligible for the Buy-Back will be base egg NFTs and base animal NFTs. Hybrid animal NFTs will not be eligible for the Buy-Back. Any NFTs submitted for the Buy-Back that PAUL in his sole discretion deems ineligible pursuant to this provision will not be returned.

*Id.*

24.     And most revealing of all, the Terms and Conditions contain a term entitled Waiver

and Release of Claims term requiring claimants to waive all other CryptoZoo related claims,

including for Zoo Tokens. Investors/consumers, such as Plaintiffs and those similarly situated,

spent much more and lost much more on Zoo Tokens than CZ NFTs by almost a factor of ten. The

differential was caused as investors/consumers lost faith after purchasing Zoo Tokens yet never

receiving the CryptoZoo game to use the CZ NFTs, which themselves were later discovered to not

have the advertised properties. The Waiver and Release of Claims covers claims against Paul and

"any related personnel, affiliates, agents, partners, employees, service providers, or

representatives, for monetary or equitable relief arising out of or in connection with CryptoZoo,

including but not limited to this Buy-Back, your purchase of any $ZOO tokens, or your purchase of any CryptoZoo NFT." *Id*. The term is designed to have damaged consumers/investors waive their valuable Zoo Token claims in exchange for receiving a partial recovery on their less valuable (overall) CZ NFT claims.

25.    Paul states the Zoo Tokens are not included because the "buy-back is not intended to compensate those who gambled on the crypto market and lost" before incongruously stating, "the Zoo Token was created to support the CryptoZoo game and its players; it was 'not intended as an investment vehicle,' as outlined in the original WhitePaper." 2024 Tweet. Yet, even if Zoo Tokens were created solely to support the CryptoZoo game—despite Paul's prior representation that CryptoZoo was a "really fun game that makes you money" at a time before CZ NFTs had even been released—the game never existed or will never be released. Defendants promised one thing up front, did something completely different behind the scenes for years, and now attempt to walk back their misrepresentations and fraudulent inducements to avoid liability.

26.    Defendants misrepresented the status of the CryptoZoo game to entice Paul's loyal online fans and the public into investing into CryptoZoo Products and then failed to ever provide a functional CryptoZoo game to use said CryptoZoo Products, failed to support the CryptoZoo community as promised, and manipulated the initial and resale markets for Zoo Tokens and CZ NFTs.

27.    Plaintiffs relied directly and reasonably on Defendant Paul's public statements, believing the CryptoZoo products would operate as described. The timing and volume of transactions show that purchases increased immediately following each of his statements. Plaintiffs suffered concrete financial loses as a result. The losses were direcrlt caused by Paul's misrepresentations and omissions, which concealed the absence of a real game and the misuse of

investor funds.

## II. NATURE OF ACTION

28.     This action is brought on behalf of a class consisting of all persons and entities who purchased Zoo Tokens or CZ NFTs ("CryptoZoo Products") from June 11, 2021 through the original filing date of this suit, February 2, 2023, inclusive (the "Class"). The Class is comprised of four subclasses: (1) all persons and entities who purchased Zoo Tokens directly from Defendants, or the platform Defendants used for sale, on their public release date; (2) all persons and entities who purchased CZ NFTs directly from Defendants, or the platform Defendants used for sale, on their public release date; (3) all persons and entities who purchased Zoo Tokens or CZ NFTs directly from Defendants during the class period; and (4) all persons and entities who purchased Zoo Tokens or CZ NFTs on the open market during the class period as a result of Defendants' successfully soliciting Zoo Tokens or CZ NFTs. This action seeks to recover damages for Plaintiffs and future Class members' claims, which are brought under common law, state consumer statutes, and violations of federal law, including federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder by SEC, against CryptoZoo Inc. and the Defendant Paul.

29.     Amongst common law and state consumer claims, this action alleges Exchange Act violations of Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5] against all Defendants; and violations of Section 20(a) [15 U.S.C. § 78t(a)] against the Defendant Paul (the "Exchange Act Claims").

30.     Defendants were never permitted to solicit investments from the public related to CryptoZoo. The entity CryptoZoo Inc. was created to serve as a fraudulent vehicle for the sole purpose of selling patently worthless, unregistered Zoo Tokens and CZ NFTs to enrich

CryptoZoo's founders, promoter/manager, and affiliates. Absent Defendants' fraudulent conduct and misrepresentations, Zoo Tokens and CZ NFTs could not have been offered and sold to investors at any price.

31.    Defendants promoted CryptoZoo Products using Paul's online platforms—such as his YouTube channels, specifically his show Impaulsive, as well as other social media accounts to consumers unfamiliar with digital currency products, as a "game that makes you money"—despite no game existing unbeknownst to said customers. This led to tens of thousands of people purchasing said fraudulent security products.

32.    The CryptoZoo game would never be released—but that did not deter Defendants' scheme. Defendant Paul maintained course and manipulated the digital currency market for Zoo Tokens to their advantage by executing a "rug pull," which is a colloquial term used to describe a scheme in which an NFT developer solicits funds from prospective NFT purchasers promising them certain benefits. Once the purchasers' funds are used to purchase the NFTs, the developers abruptly abandon the project and fail to deliver the promised benefits all while fraudulently retaining the purchasers' funds.

33.    As part of Defendants' NFT scheme, Defendant Paul marketed CZ NFTs to purchasers by falsely claiming that, in exchange for transferring cryptocurrency to purchase the CZ NFT, purchasers would later receive benefits, including, among other things, rewards, exclusive access to other cryptocurrency assets, and the support of an online ecosystem to use and market CZ NFTs. Soon after completing the sale of all their CZ NFTs, Defendants, together with others, transferred millions of dollars' worth of purchasers' cryptocurrency to, among other places, wallets controlled by Defendants.

34.    This is similar to other morally bankrupt strategies Defendant Paul, potentially in

conjunction with other Defendants, employed with other cryptocurrency and NFT related rug-pulls, pump-and-dumps, insider trading schemes—scams generally—including Dink Doink, Liquid Marketplace, Bully, F*** Elon, EMAX, OMI, Bully. and Elon Gate. Paul ties these schemes together with CryptoZoo when he appeared on a YouTube show hosted by True Geordie on June 19, 2022—a time when many Plaintiffs and future potential Class members were still asking for the CryptoZoo game. Paul, attempting to distance himself from the repercussions of his "failed projects" aka scams, stated, "[he] will keep building" from his failed projects and his current NFT project "will work." *LOGAN PAUL Calls Out Everyone*, True Geordie Podcast #155, available at https://www.youtube.com/watch?v=QOTQrXa1YKw. The only issue being that Paul was referring to another NFT project called Originals, implying CryptoZoo was a failure, before he goes on to say he "will explain everything one day [about his NFT past], with his manger [Levin] who's like in charge now." *Id*.

35.    Even once this scheme came to the public's attention in December of 2022, Paul posted a video on January 3, 2023, denying responsibility by blaming a "developer who stole the game code" and "trusting the team that [he] relied on to vet and manage [Defendant Ibanez's] hiring process," who hired the developer and who also "conned [him]." He then deleted it the same day after receiving negative public attention.

36.    In another attempt, Paul acknowledged CryptoZoo's failings on January 13, 2023, releasing a video promising to (1) "burn" his and Levin's Zoo Tokens, (2) create a "rewards program for disappointed Base Egg and Base Animals holders," and (3) to finish and deliver the game. The rewards program involves "burn[ing] your Base Egg or Base Animal for the mint price (0.1 Eth/equivalent in BNB)"—only two of three sets of CZ NFTs in CryptoZoo. The program did not appear to include Defendants' Zoo Tokens used to participate in the failed CryptoZoo game or

the third set of CZ NFTs, Hybrid Animals—and does not appear to have ever been created. Yet, Paul said he was still going to complete the game at this time—inducing more investors/customers to buy CryptoZoo Products shown by a great increase in trading volume:



37.    Around the same time, Paul—or someone acting on his behalf—posted messages to the CryptoZoo community confirming the exclusion of consumers who had already sold CZ NFTs from the "rewards program."



38.     Paul also posted that no one in the CryptoZoo community should put any more money into CryptoZoo, framing it as an investment, before saying CryptoZoo was "not intended as an investment vehicle."









39.     Paul stated he "would no longer be the scapegoat for anyone's financial decisions," denying responsibility for Plaintiffs and the CryptoZoo community's losses.



40.     Defendants' unlawful solicitation, offer, and sale of unregistered securities are violations of the Securities Act of 1933 (the "Securities Act") Sections 5 [15 U.S.C. § 77e(a)(1)], 12(a)(1) [15 U.S.C. § 77l(a)(1)], and 15(a) [15 U.S.C. § 77o(a)]. Defendants' public offer and sale of Zoo Tokens and CZ NFTs were unlawful offerings of unregistered securities for which no exemption from registration was available under the Securities Act.

41.    The public sale of Zoo Tokens and CZ NFTs were clear offers and sales of securities because, inter alia, Defendants touted, and Plaintiffs and other purchasers were conditioned to expect, and did reasonably expect, that the Zoo Tokens and CZ NFTs received would be worth more than the ETH, BTC, or other virtual currencies invested. Additionally, Defendants explicitly referred to CryptoZoo as a game that would make the purchaser money.

42.    The Securities Act's registration requirements are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions. Absent registration, issuers of securities may market their securities with no disclosure requirements whatsoever. For example, an issuer could omit any information that would make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines), peddle its securities using unbounded exaggerations regarding the progress of its product development and business plan, or even fabricate the existence of a game supporting the digital products, as was the case here.

43.    Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent the protections of the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security. As detailed herein, Defendants' public offers and sales of Zoo Tokens (any version) and CZ NFTs, were most likely offers and sales of unregistered securities. Accordingly, Defendants are strictly liable under Section 12(a)(1) of the Securities Act.

44.    The Exchange Act Claims are based on Defendants' fraudulent and manipulative scheme to enrich themselves by issuing false and materially misleading statements concerning the existence of the CryptoZoo game, that it would make players money, the value of Zoo Tokens and CZ NFTs and the benefits from owning Zoo Tokens and CZ NFTs, and that the Defendants were

actively supporting the project, its online ecosystem, or the game.

45.    Defendant Paul's false and materially misleading statements appeared in press releases, CryptoZoo's website, online chat rooms or forums located on websites such as Reddit.com/r/CryptoZooCo ("Reddit"), white papers, postings on social media websites such as Twitter, promotional videos posted on websites such as YouTube, internet podcast interviews and other materials relating to CryptoZoo, Zoo Tokens, or CZ NFTs, which were disseminated widely to the investing public.

46.    Each of Defendant Paul's misrepresentations and omissions were material because they were designed to, and did, entice the public into purchasing unregistered securities (Zoo Tokens or CZ NFTs) which were nothing more than a vehicle for the individual Defendants' personal enrichment. As detailed *infra*, when the magnitude of Defendants' failure to support the project and build the game was revealed, the trading prices of Zoo Tokens, or CZ NFTs plummeted.

47.    Plaintiffs allege that Defendant Paul, Ggreenbaum, and Ibanez acted with scienter in connection with their claims under the Exchange Act. Proof of Defendants' scienter comes, in part, from text messages between the Defendant Paul. These text messages show, among other things, that CryptoZoo was a fraudulent scheme since its inception, Zoo Tokens and CZ NFTs have at all times been patently worthless, and that no investor would have purchased any Zoo Tokens or CZ NFTs absent Defendants' fraudulent acts.

48.    Plaintiffs and others similarly situated deserve redress from Defendants for their fraudulently promoting and selling products that did not function as advertised, failing to support the CryptoZoo project, and manipulating the digital currency. Defendants operated this fraudulent venture to exploit and steal from Plaintiffs and other customers who trusted Paul's false

representations. As a result, Defendants defrauded Plaintiffs and thousands of other consumers, and unjustly enriched themselves by profiting off Plaintiffs and others without delivering on their promises.

49.    Today, investors in Zoo Tokens or CZ NFTs have little to show for their investments other than broken promises. For these reasons, Plaintiffs on behalf of themselves, and all similarly situated investors, seeks compensatory, injunctive, and rescissory relief, providing rescission and repayment of all investments made to purchase Zoo Tokens or CZ NFTs during the class period, and the right to secure and conserve such funds until repayment.

### III.    SUBJECT MATTER JURISDICTION AND VENUE

50.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), under Section 22 of the Securities Act [15 U.S.C. § 77v] because Plaintiffs allege violations of Sections 12(a)(1) and 15(a) of the Securities Act [15 U.S.C. §§ 77l(a)(1) and 77o(a)], and under Section 27 of the Exchange Act [15 U.S.C. § 78aa], because Plaintiffs allege violations of Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)]. In connection with the acts, conduct and other wrongs alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the U.S. mails, interstate telephone communications and the Internet.

51.    The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District, is an individual who either is present in this District for jurisdictional purposes, or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

52.    Venue is proper in this District under Section 27 of the Exchange Act [15 U.S.C. §

78aa] and 28 U.S.C. § 1391 because the claims asserted in this action arose in this district; a substantial part of the activities, conduct, and/or damages giving rise to the claims occurred in this district; Defendants have substantial contacts with this district; and Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## IV.    BACKGROUND ON DIGITAL ASSETS, CRYPTOCURRENCY, AND NFTS

53.    A "cryptocurrency" is a digital or "virtual" currency circulated over the Internet as a form of value. Cryptocurrencies are created, and their transaction records are verified and maintained, by a decentralized system using cryptography, rather than through a centralized authority like a bank or government. Like traditional fiat currency, there are multiple types of cryptocurrencies—e.g., Bitcoin, Ether, and Binance Token ("BNB"). Due to its decentralized nature and limited regulation, cryptocurrency users can transfer funds over the blockchain more anonymously compared to traditional banking and credit systems.

54.    Cryptocurrency owners typically store their cryptocurrency in digital "wallets," which are identified by unique electronic "addresses." Wallets allow cryptocurrency users to store multiple cryptocurrencies and retrieve their digital assets. Each digital wallet has a unique cryptographic address, which is used to facilitate transfers of cryptocurrency between wallet addresses.

55.    These types of cryptocurrency transactions are completed using (1) a "public key," which is akin to a bank account number or public-facing email address, and (2) a corresponding "private key," which is akin to a bank 4-digit PIN or email password that allows a user the ability to access and transfer value or information stored at the public address. Users may transfer cryptocurrency to the public address represented as a case-sensitive string of letters and numbers,

26 to 36 characters long. Each public address is controlled and/or accessed using a unique corresponding private key. Only the holder of an address's private key can authorize transfers of cryptocurrency from that address to another cryptocurrency address. A user may control multiple public blockchain addresses simultaneously.

56.     Each cryptocurrency transaction, regardless of the cryptocurrency denomination, is recorded on a "blockchain," which acts as a public accounting ledger. Unlike a traditional bank's ledger, the transactions reflected in a blockchain are distributed across numerous participants that, together, form a network. For each cryptocurrency transaction occurring on a blockchain, the blockchain public ledger records, among other things, the following transaction details: the date and time; the unique cryptocurrency addresses involved in the transaction, including the addresses of the sending and receiving parties; and the amount of cryptocurrency transferred.

57.     The blockchain does not identify the parties who control the cryptocurrency addresses involved in each transaction. However, because each cryptocurrency address is unique, anyone can review other transactions recorded on the blockchain related to the transfer and trace the flow of cryptocurrency. Tracing cryptocurrency to a particular user can be complicated, however, by a user's reliance on multiple cryptocurrency addresses to transfer funds or the use of "mixers," which, in practice, can be used to obscure the link between the sender and receiver of transferred cryptocurrency by commingling cryptocurrencies from multiple transferring parties into a pool before sending specific amounts on to an intended recipient.

58.     An NFT is a unique digital item that is recorded on a blockchain and cannot be copied, substituted, or subdivided. In other words, each NFT is a one-of-a-kind digital item. NFTs can also be transferred on the blockchain. Many NFTs exist as part of the Ethereum blockchain. Like cryptocurrencies, NFTs are uniquely identifiable on the blockchain. Once minted, an NFT

can no longer be edited, modified, or deleted.

59.     NFTs can be created in multiple forms, but one of the most common types of NFTs is an image data file similar to a .jpeg image file. However, unlike a .jpeg image file, the NFT provides the owner with an electronic image and corresponding certificate of ownership. NFTs can also act as a "utility" token, allowing an NFT owner to access reward programs, giveaways, and access to other digital assets by virtue of their NFT ownership.

60.     NFTs are created through a process referred to as "minting" and relies on the use of a "smart contract." A smart contract is a piece of computer code that runs on a blockchain. In simple terms, a smart contract is a program that automatically executes defined tasks when and if certain conditions are met. A smart contract system often follows "if . . . , then . . ." statements. For example, a smart contract might be coded to release electronic currency to a party automatically upon the occurrence of an agreed-upon event without the need for further action by either party to the contract. The minting of NFTs relies on smart contracts to govern the creation, sale, and any subsequent transfers of the NFTs after minting. NFT smart contract code is publicly viewable on the blockchain.

## V.     MISNOMER / ALTER EGO

61.     In the event any parties are misnamed or are not included here, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named here. Alternatively, Plaintiffs contend that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## VI.     PRINCIPAL-AGENT LIABILITY

62.     All allegations here of acts or omissions by Defendants include, but are not limited to, acts and omissions of such Defendants' officers, directors, operators, managers, supervisors,

employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners. Plaintiffs allege that such acts and omissions were committed or made with express and/or implied authority of the Defendants, or were ratified or otherwise approved by the same Defendants; or otherwise that such acts or omissions were made in the routine, normal course of the actor's employment or agency, and within the scope of the agency or employment, as the case may be.

## VII.    PARTIES

### A.    CO-LEAD CLASS PLAINTIFFS AND PLAINTIFF-SPECIFIC FACTS

63.    Plaintiff Don Holland, a police officer residing in Round Rock, Texas, invested one-thousand dollars ($1,000) purchasing CryptoZoo Products on September 4, 2021, and an additional two-thousand dollars ($2,000) in November of 2021, while in Round Rock, Texas. Holland lost a total of three-thousand dollars ($3,000).

64.    Plaintiff Holland relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 Tweet before  purchasing CryptoZoo products for the first time on September 4, 2021. Additionally, Plaintiff Holland relied on Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements before purchasing CryptoZoo products for the second time in November 2021. Had Plaintiff Holland known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff Holland's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely

needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff Holland would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

65.    Plaintiff Alex Heikali is an investment banker residing in Los Angeles, California where he initially purchased CryptoZoo Products from Defendants on September 15, 2021. Mr. Heikali invested two hundred fifty thousand dollars ($250,000.00) and lost two hundred forty-thousand dollars ($240,000.00).

66.    Plaintiff Heikali relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper before purchasing CryptoZoo products for the first time on September 15, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

67.    Plaintiff Mourad Kechichian is a small business owner residing in Madera, California where he initially purchased CryptoZoo Products from Defendants on September 3,

2021. Mr. Kechichian invested three hundred fifty thousand dollars ($350,000.00) and lost three hundred fifty thousand dollars ($350,000.00).

68.     Plaintiff Kechichian relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 Tweet before purchasing CryptoZoo products for the first time on September 3, 2021. Additionally, Plaintiff Kechichian relied on Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

**B.  INDIVIDUAL PLAINTIFFS AND PLAINTIFF-SPECIFIC FACTS**

69.     Plaintiff Hwa Kwang Kuar resided in Singapore where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Kuar invested two hundred thousand forty-eight dollars ($248,000.00) and lost a total of two hundred thousand forty-five dollars ($245,000.00).

70.     Plaintiff Kuar relied on Defendant Paul's August 18, 2021 statements, Paul's

September 1, 2021, Medium Article, Paul's September 2, 2021, tweet, and Paul's edited September 2, 2021, CryptoZoo Whitepaper before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Kuar relied on Paul's September 3, 2021, Tweet, Paul's September 5, 2021, tweet, Paul's September 15, 2021, AMA statements, October 11, 2021, statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

71.     Plaintiff Simon Geldof resided in Belgium where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Geldof invested eight thousand dollars ($8,000.00) and lost a total of six thousand dollars ($6,000.00).

72.     Plaintiff Geldof relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had

he understood that the game was still completely undeveloped.

73.    Plaintiff Jeffer Holzheimer resided in Charlotte, North Carolina where he initially purchased CryptoZoo Products from Defendants beginning on August 26, 2021. Mr. Holzheimer invested eighteen thousand dollars ($18,000.00) and lost seventeen thousand dollars ($17,000.00).

74.    Plaintiff Holzheimer relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 26, 2021. Additionally, Plaintiff Holand relied on Paul's September 1, 2021, Medium Article, Paul's September 2, 2021, tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

75.    Plaintiff Ali Mostafa resided in Thomastown Australia where he initially purchased CryptoZoo Products from Defendants beginning on August 18, 2021. Mr. Mostafa invested thirty thousand dollars ($30,000.00) and lost twenty-nine thousand dollars ($29,000.00).

76.    Plaintiff Mostafa relied on Defendant Paul's August 18, 2021 statements before

purchasing CryptoZoo products for the first time on August 18, 2021. Additionally, Plaintiff Holand relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet,  Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

77.    Plaintiff Marko Drapic resided in Illinois where he initially purchased CryptoZoo Products from Defendants beginning on October 28, 2021. Mr. Drapic invested five thousand eight hundred seventy-six dollars ($5,876.00) and lost five thousand two hundred forty-six dollars ($5,246.00).

78.    Plaintiff Drapic relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, before purchasing CryptoZoo products for the first time on October 28, 2021. Had Plaintiff known that the founders

engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

79.    Plaintiff Richard Lam resided in Riverwood, Australia where he initially purchased CryptoZoo Products from Defendants beginning on August 20, 2021. Mr. Lam invested thirty-four thousand eighty-five dollars and fifty-six cents ($34,085.86) and lost thirty thousand dollars ($30,000.00).

80.    Plaintiff Lam relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 20, 2021. Additionally, Plaintiff Lam relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted

images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

81.     Plaintiff Daniel Commons resided in Dundas, Australia where he initially purchased CryptoZoo Products from Defendants beginning on August 20, 2021. Mr. Commons invested thirty-five thousand dollars ($35,000.00) and lost fifteen thousand dollars ($15,000.00).

82.     Plaintiff Commons relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 20, 2021. Additionally, Plaintiff Commons relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

83.    Plaintiff Conrado Canete resided in Santa Fe, Argentina where he initially purchased CryptoZoo Products from Defendants beginning on September 1, 2021. Mr. Canete invested twenty-five thousand dollars ($25,000.00) and lost ten thousand dollars ($10,000.00).

84.    Plaintiff Canete relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Canete relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

85.    Plaintiff Jesse Griggs resided in Tucson, Arizona where he initially purchased CryptoZoo Products from Defendants on October 17, 2021. Mr. Griggs invested twenty-two thousand dollars ($22,000.00) and lost nineteen thousand dollars (19,000.00).

86.    Plaintiff Griggs relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2,

2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, before purchasing CryptoZoo products for the first time on October 17, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

87.    Plaintiff Kyle Gorney resided in the United States where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Gorney invested twenty-four thousand dollars ($24,000.00) and lost twenty-three thousand dollars ($23,000.00).

88.    Plaintiff Gorney relied on Defendant Paul's August 18, 2021 statements, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Gorney relied on Paul's September 2, 2021 tweet, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and

amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

89.    Plaintiff Jakob Emil Slotsvang resided in Denmark where he initially purchased CryptoZoo Products from Defendants on January 6, 2022. Mr. Slotsvang invested sixty-four thousand one hundred twenty-nine dollars ($64,129.00) and lost sixty-thousand dollars ($60,000.00).

90.    Plaintiff Slotsvang relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, before purchasing CryptoZoo products for the first time on January 6, 2022. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of

Defendant Paul's knowingly false material misrepresentations and omissions.

91.    Plaintiff Daniel Nicolici resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Nicolici invested twenty thousand dollars ($20,000.00) and lost eighteen thousand dollars ($18,000.00).

92.    Plaintiff Nicolici relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

93.    Plaintiff Jacob Juggins resided in England where he initially purchased CryptoZoo Products from Defendants on August 18, 2021. Mr. Juggins invested twelve thousand six hundred fifteen dollars ($12,615.00) and lost eight thousand four hundred fifteen ($8,415.00).

94.    Plaintiff Juggins relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 18, 2021. Additionally, Plaintiff Holand relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs

were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

95.    Plaintiff Matthew Walmsley resided in England where he initially purchased CryptoZoo Products from Defendants on August 21, 2021. Mr. Walmsley invested five thousand ($5,000.00) and lost four thousand six hundred sixty-four ($4,664.00).

96.    Plaintiff Walmsley relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

97.    Plaintiff Lasse Bjornstad resided in Norway where Lasse Bjornstad initially purchased CryptoZoo Products from Defendants on September 1, 2021. Lasse Bjornstad invested three thousand dollars ($3,000.00) and lost eight hundred fifty dollars ($850.00).

98.    Plaintiff Bjornstad relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Bjornstad relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet,

Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

99.     Plaintiff Thierry Ducatel resided in France where he initially purchased CryptoZoo Products from Defendants on August 15, 2021. Mr. Ducatel invested seventeen thousand dollars ($17,000.00) and lost sixteen thousand dollars ($16,000.00)

100.     Plaintiff Ducatel relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 15, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning

money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

101.    Plaintiff Emilio Jorge Collazo Sanz resided in Spain where he initially purchased CryptoZoo Products from Defendants on August 22, 2021. Mr. Collazo Sanz invested fifty thousand dollars ($50,000.00) and lost forty-seven thousand dollars ($47,000.00).

102.    Plaintiff Collazo Sanz relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 22, 2021. Additionally, Plaintiff Collazo Sanz relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's

knowingly false material misrepresentations and omissions.

103.    Plaintiff Renato Herartt resided in Brazil where he initially purchased CryptoZoo Products from Defendants on September 29, 2021. Mr. Herartt invested forty-two thousand dollars ($42,000.00) and lost twelve thousand dollars ($12,000.00).

104.    Plaintiff Herartt relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on September 29, 2021. Additionally, Plaintiff Herartt relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

105.    Plaintiff Argon Pitarka resided in Macedonia where he initially purchased CryptoZoo Products from Defendants on October 16, 2021. Mr. Pitarka invested two thousand three hundred dollars ($2,300.00) and lost two thousand dollars ($2,000.00).

106.    Plaintiff Pitarka relied on Defendant Paul's August 18, 2021 statements, Paul's

September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on October 16, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

107.    Plaintiff Arseny Savrasov resided in Switzerland where he initially purchased CryptoZoo Products from Defendants on September 25, 2021. Mr. Savrasov invested five thousand dollars ($5,000.00) and lost four thousand eight hundred dollars ($4,800.00).

108.    Plaintiff Savrasov relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on September 25, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's

implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

109.    Plaintiff Kira Krieg resided in Waikato, New Zealand where she initially purchased CryptoZoo Products from Defendants on September 21, 2021. Ms. Krieg invested three thousand five hundred ($3,500.00) and lost three thousand three hundred ($3,300.00).

110.    Plaintiff Krieg relied on Defendant Paul's August 18, 2021 statements, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on September 21, 2021. Additionally, Plaintiff Krieg relied on Paul's October 11, 2021 statements, acting on these representations to preserve her investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

111.    Plaintiff Jacob Stockamp resided in Litchfield, Illinois where he initially purchased

CryptoZoo Products from Defendants on September 1, 2021. Mr. Stockamp invested two thousand nineteen dollars and forty-three cents ($2,019.43) and lost one hundred sixty-nine dollars and seventy-three cents ($169.73).

112.    Plaintiff Stockamp relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Stockamp relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

113.    Plaintiff Dmitry Bobkov resided in Moscow, Russia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Bobkov invested one hundred fifty thousand dollars ($150,000.00) and lost one thousand four hundred dollars ($140,000.00).

114.    Plaintiff Bobkov relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making

his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

115.    Plaintiff Patrick Marcher resided in Italy where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Marcher invested twenty-three thousand five-hundred dollars ($23,500.00) and lost twenty-one thousand five-hundred dollars ($21,500.00).

116.    Plaintiff Marcher relied on Defendant Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 3, 2021. Additionally, Plaintiff Stockamp relied on Paul's September 3, 2021 Tweet, and Paul's September 5, 2021 tweet, statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

117.    Plaintiff Abdullah Miraj resided in Canada where he initially purchased CryptoZoo Products from Defendants on October 4, 2021. Mr. Miraj invested one hundred thirty thousand

dollars ($130,000.00) and lost one hundred twenty-eight thousand dollars ($128,000.00).

118.    Plaintiff Miraj relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements before purchasing CryptoZoo products for the first time on October 4, 2021. Additionally, Plaintiff Miraj relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

119.    Plaintiff Nicolás Campoamor resided in Madrid, Spain where he initially purchased CryptoZoo Products from Defendants on May 8, 2021. Mr. Campoamor invested eight thousand dollars ($8,000.00) and lost seven thousand four hundred ($7,400.00).

120.    Plaintiff Campoamor relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on

these representations, to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on May 8, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

121.    Plaintiff David Reading resided in England where he initially purchased CryptoZoo Products from Defendants on September 29, 2021. Mr. Reading invested twenty-one thousand one hundred seventy-four dollars and sixty-three cents ($21,174.63) and lost five thousand five hundred fourteen dollars and seventeen cents ($5,514.17).

122.    Plaintiff Reading relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on September 29, 2021. Additionally, Plaintiff reading relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked,

millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

123.    Plaintiff Cristian Nunez resided in New York, New York where he initially purchased CryptoZoo Products from Defendants on December 24, 2021. Mr. Nunez invested five thousand seven hundred six dollars ($5,706.00) and lost three-thousand five-hundred sixty dollars and eighty-three cents ($3,560.83).

124.    Plaintiff Nunez relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on December 24, 2021. Additionally, Plaintiff Nunez relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant

Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

125.    Plaintiff Liam Manning resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Manning invested one thousand two hundred dollars ($1,200.00) and lost six hundred dollars ($600.00).

126.    Plaintiff Manning relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

127.    Plaintiff Daniel Healy resided in Australia where he initially purchased CryptoZoo Products from Defendants on October 12, 2021. Mr. Healy invested seven thousand dollars ($7,000.00) and lost six thousand seven hundred dollars ($6,700.00).

128.    Plaintiff Healy relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had

he understood that the game was still completely undeveloped.

129. Plaintiff Aidan O'Flaherty resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 22, 2021. Mr. O'Flaherty invested twenty thousand dollars ($20,000.00) and lost twenty thousand dollars ($20,000.00).

130. Plaintiff O'Flaherty relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 22, 2021. Additionally, Plaintiff O'Flaherty relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

131. Plaintiff Jacky Jiang resided in Australia where Jacky Jiang initially purchased CryptoZoo Products from Defendants on October 31, 2021. Jacky Jiang invested two thousand dollars ($2,000.00) and lost one thousand seven hundred dollars ($1,700.00).

132. Plaintiff Jiang relied on Defendant Paul's promises that the CryptoZoo game would

"make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

133.    Plaintiff Yanick Martel resided in Canada where he initially purchased CryptoZoo Products from Defendants on August 15, 2021. Mr. Martel invested twenty-eight thousand dollars ($28,000.00) and lost twenty-five thousand dollars ($25,000.00).

134.    Plaintiff Martel relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 15, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's

knowingly false material misrepresentations and omissions.

135.    Plaintiff Liam Giblin resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Giblin invested ten thousand dollars ($10,000.00) and lost ten thousand dollars ($10,000.00).

136.    Plaintiff Giblin relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 20, 2021. Additionally, Plaintiff Giblin relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

137.    Plaintiff Armen Akopian resided in Las Vegas, Nevada where he initially purchased CryptoZoo Products from Defendants on November 23, 2021. Mr. Akopian invested four thousand dollars ($4,000.00) and lost three thousand eight hundred dollars ($3,800.00).

138.    Plaintiff Akopian relied on Defendant Paul's August 18, 2021 statements, Paul's

September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements,  and Paul's October 11, 2021 statements before purchasing CryptoZoo products for the first time on November 23, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

139.    Plaintiff Evgeniya Guberman resided in Canoga Park, California where she initially purchased CryptoZoo Products from Defendants on October 14, 2021. Ms. Guberman invested thirty-eight thousand dollars ($38,000.00) and lost thirty-thousand dollars ($30,000.00).

140.    Plaintiff Guberman relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements before purchasing CryptoZoo products for the first time on October 14, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars

of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

141.    Plaintiff Nicolas Camacho resided in Bogota, Colombia where he initially purchased CryptoZoo Products from Defendants on August 26, 2021. Mr. Camacho invested six hundred dollars ($600.00) and lost five hundred fifty dollars ($550.00).

142.    Plaintiff Camacho relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 26, 2021. Additionally, Plaintiff Camacho relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game

was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

143.    Plaintiff Nathan Jones resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Jones invested twenty-five thousand dollars ($25,000.00) and lost fifteen-thousand six-hundred sixty-four dollars and ninety-three cents ($15,664.93).

144.    Plaintiff Jones relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 25, 2021. Additionally, Plaintiff Jones relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

145.    Plaintiff Paul Brian Endriga resided in the Philippines where he initially purchased CryptoZoo Products from Defendants on August 29, 2021. Mr. Endriga invested four thousand

dollars ($4,000.00) and lost three thousand nine hundred dollars ($3,900.00).

146.    Plaintiff Endriga relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

147.    Plaintiff Carlos Manuel Miniño Medina resided in the Dominican Republic where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Miniño Medina invested six thousand dollars ($6,000.00) and lost three thousand dollars ($3,000.00).

148.    Plaintiff Miniño relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Miniño relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before

launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

149.    Plaintiff Tyler Paboojian resided in Fresno, California where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Paboojian invested seven hundred dollars ($700.00) and lost seven hundred dollars ($700.00).

150.    Plaintiff Paboojian relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 Tweet before purchasing CryptoZoo products for the first time on September 3, 2021. Additionally, Plaintiff Paboojian relied on Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

151.    Plaintiff Mitch Robinson resided in West Liberty, Iowa where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Robinson invested

six thousand dollars ($6,000.00) and lost six thousand dollars ($6,000.00).

152.    Plaintiff Robinson relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article before purchasing CryptoZoo products for the first time on September 3, 2021. Additionally, Plaintiff Robinson relied on Paul's September 2, 2021 tweet, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

153.    Plaintiff Eduardo Vazquez resided in Eugene, Oregon where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Vazquez invested one thousand two hundred dollars ($1,200.00) and lost one thousand dollars ($1,000.00).

154.    Plaintiff Vazquez relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 tweet before purchasing CryptoZoo products for the first time on September 3, 2021. Additionally, Plaintiff Vazquez relied on Paul's September 5, 2021 tweet, and October 11, 2021 statements, acting on these representations to

preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

155.    Plaintiff Juan Pablo Ochoa resided in Bogota, Colombia where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Ochoa invested one thousand dollars ($1,000.00) and lost nine hundred eighty dollars ($980.00).

156.    Plaintiff Ochoa relied on Defendant Paul's September 3, 2021 tweet, and Paul's September 5, 2021 tweet, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 20, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game

was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

157.    Plaintiff Santiago Borzone resided in Argentina where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Santiago Borzone invested one thousand six hundred dollars ($1,600.00) and lost one thousand dollars ($1,000.00).

158.    Plaintiff Borzone relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Paboojian relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

159.    Plaintiff Nabine Neupane resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 29, 2021. Nabine Neupane invested thirty-five

thousand dollars ($35,000.00) and lost thirty-four thousand seven hundred dollars ($34,700.00).

160.    Plaintiff Neupane relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

161.    Plaintiff Matthew Bundy resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 12, 2021. Mr. Bundy invested five thousand three hundred seventeen dollars ($5,317.00) and lost five thousand nine dollars ($5,000.00).

162.    Plaintiff Bundy relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, and  Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on September 12, 2021. Additionally, Plaintiff Bundy relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and

would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

163. Plaintiff Nicolas Cortes resided in Bogota, Colombia where he initially purchased CryptoZoo Products from Defendants on August 17, 2021. Mr. Cortes invested four thousand dollars ($4,000.00) and lost three thousand nine hundred eighty dollars ($3,980.00).

164. Plaintiff Cortes relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing CryptoZoo products for the first time on August 17, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

165. Plaintiff Nicolas Mougel resided in France where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Mougel invested thirteen thousand four

hundred one dollars ($13,401.00) and lost twelve thousand six hundred thirty-nine dollars ($12,639.00).

166.    Plaintiff Mougel relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, and Paul's edited September 2, 2021 CryptoZoo Whitepaper, before purchasing CryptoZoo products for the first time on September 2, 2021. Additionally, Plaintiff Mougel relied on Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

167.    Plaintiff Vraj Patel resided in Castle Pines, Colorado where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Patel invested seventy-five thousand dollars ($75,000.00) and lost sixty-five thousand dollars ($65,00.00).

168.    Plaintiff Patel relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on

September 1, 2021. Additionally, Plaintiff Patel relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

169.    Plaintiff Brandon Potemra resided in Allen, Texas where he initially purchased CryptoZoo Products from Defendants on August 17, 2021. Mr. Potemra invested forty-five thousand sixty-nine dollars and eighty-one cents ($45,069.81) and lost forty-five thousand sixty-nine dollars and eighty-one cents ($45,069.81)

170.    Plaintiff Potemra relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo before purchasing CryptoZoo products

for the first time on August 17, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

171.    Plaintiff Marco Zahedi resided in Irvine, California where he initially purchased CryptoZoo Products from Defendants on September 25, 2021. Mr. Zahedi invested two thousand three hundred fifty dollars ($2,350.00) and lost two thousand three hundred forty dollars ($2,340.00).

172.    Plaintiff Zahedi relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements before purchasing CryptoZoo products for the first time on September 25, 2021. Additionally, Plaintiff Zahedi relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs

were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

173.    Plaintiff Thomas Baker resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Baker invested thirteen thousand twenty-eight dollars and eighty-nine cents ($13,028.89) and lost thirteen thousand twenty-eight dollars and eighty-nine cents ($13,028.89)

174.    Plaintiff Baker relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 25, 2021. Additionally, Plaintiff Baker relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game

was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

175.    Plaintiff Liam Boyd resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 28, 2021. Mr. Boyd invested fifteen thousand six hundred twenty-four dollars ($15,624.00) and lost fifteen thousand five hundred dollars ($15,550.00).

176.    Plaintiff Boyd relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on September 28, 2021. Additionally, Plaintiff Boyd relied on October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

177.    Plaintiff Tim Bauer resided in Slovenia where he initially purchased CryptoZoo Products from Defendants on July 28, 2021. Mr. Bauer invested ten thousand dollars ($10,000.00) and lost seven thousand dollars ($7,000.00)

178.    Plaintiff Bauer relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

179.    Plaintiff Ayush Patel resided in India where he initially purchased CryptoZoo Products from Defendants on September 4, 2021. Mr. Patel invested one thousand five hundred dollars ($1,500.00) and lost one thousand five hundred dollars ($1,500.00)

180.    Plaintiff Patel relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 Tweet, before purchasing CryptoZoo products for the first time on September 4, 2021. Additionally, Plaintiff Patel relied on Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood

that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

181.    Plaintiff Marius Amihaesei resided in Romania where he initially purchased CryptoZoo Products from Defendants on August 30, 2021. Mr. Amihaesei invested twenty-two thousand dollars ($22,000.00) and lost fifteen thousand dollars ($15,000.00).

182.    Plaintiff Amihaesei relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

183.    Plaintiff Oliver Simoza resided in Florida where he initially purchased CryptoZoo Products from Defendants on September 29, 2021. Mr. Simoza invested one hundred thousand thirty-one five hundred twenty dollars ($131,520.00) and lost thirty-five thousand dollars ($35,000.00).

184.    Plaintiff Simoza relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on September 29, 2021. Additionally, Plaintiff Simoza relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff

known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

185.    Plaintiff Andrew Felkin resided in Northern Ireland where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Felkin invested one hundred thirty thousand dollars ($130,000.00) and lost one hundred ten thousand dollars ($110,000.00).

186.    Plaintiff Felkin relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, and Paul's September 15, 2021 AMA statements, before purchasing CryptoZoo products for the first time on September 30, 2021. Additionally, Plaintiff Felkin relied on Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications

that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

187.     Plaintiff Shaun Triplett resided in Australia where he initially purchased CryptoZoo Products from Defendants on November 21, 2021. Mr. Triplett invested two thousand dollars ($2,000.00) and lost one thousand nine hundred seventy-eight dollars ($1,978.00).

188.     Plaintiff Triplett relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, before purchasing Cryptozoo products for the first time on November 21, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

189.     Plaintiff Louis Dimonaco resided in Yorktown Heights, New York where he initially purchased CryptoZoo Products from Defendants on August 16, 2021. Mr. Dimonaco

invested three thousand dollars ($3,000.00) and lost three thousand dollars ($3,000.00).

190.    Plaintiff Dimonaco relied on Defendant Paul's August 18, 2021 statements acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 16, 2021. Additionally, Plaintiff Dimonaco relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

191.    Plaintiff Umer Ali resided in England where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Ali invested one thousand two hundred forty-one dollars ($1,241.00) and lost one thousand two hundred forty-one dollars ($1,241.00).

192.    Plaintiff Ali relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs

were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

193.    Plaintiff Justin Mayo resided in Fall River, Massachusetts where he initially purchased CryptoZoo Products from Defendants on September 4, 2021. Mr. Mayo invested five hundred dollars ($500.00) and lost five hundred dollars ($500.00).

194.    Plaintiff Mayo relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 Tweet, before purchasing CryptoZoo products for the first time on September 4, 2021. Additionally, Plaintiff Mayo relied on Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

195.    Plaintiff Jesper Roos resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on August 31, 2021. Mr. Roos invested twelve thousand dollars ($12,000.00) and lost nine thousand dollars ($9,000.00).

196.    Plaintiff Roos relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 31, 2021. Additionally, Plaintiff Roos relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet,  Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

197.    Plaintiff Martin Paolo Austria resided in the Philippines where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Austria invested one thousand two hundred dollars ($1,200.00) and lost one thousand one hundred fifty dollars ($1,150.00).

198.    Plaintiff Austria relied on Defendant Paul's promises that the CryptoZoo game

would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

199.    Plaintiff Gunnar Leon resided in New York, New York where he initially purchased CryptoZoo Products from Defendants on June 1, 2021. Mr. Leon invested thirty thousand dollars ($30,000.00) and lost twenty thousand dollars ($20,00.00).

200.    Plaintiff Leon relied on Defendant Paul's August 18, 2021 statements, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo before purchasing CryptoZoo products for the first time on June 1, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

201.    Plaintiff James Goetz resided in Woodland Hills, California where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Goetz invested two thousand dollars ($2,000.00) and lost two thousand dollars ($2,000.00).

202.    Plaintiff Goetz relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Goetz relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

203.    Plaintiff Phillip Ladendorf resided in Germany where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Ladendorf invested one thousand three hundred dollars ($3,000.00) and lost three thousand dollars ($3,000.00).

204.    Plaintiff Ladendorf relied on Defendant Paul's promises that the CryptoZoo game

would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

205.    Plaintiff Mike Spielmann resided in Whitesboro, New York where he initially purchased CryptoZoo Products from Defendants on August 1, 2021. Mr. Spielmann invested three thousand dollars ($3,000.00) and lost two thousand eight hundred dollars ($2,800.00).

206.    Plaintiff Spielmann relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 18, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's

knowingly false material misrepresentations and omissions.

207.    Plaintiff Zaboer Rafaqat resided in Belgium where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Rafaqat invested six thousand dollars ($6,000.00) and lost five thousand dollars ($5,000.00).

208.    Plaintiff Rafaqat relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 20, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

209.    Plaintiff Afonso Silvano resided in Portugal where he initially purchased CryptoZoo Products from Defendants on October 15, 2021. Mr. Silvano invested four thousand five hundred dollars ($4,500.00) and lost two thousand six hundred dollars ($2,600.00).

210.    Plaintiff Silvano relied on Defendant Paul's August 18, 2021 statements, Paul's

September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, before purchasing CryptoZoo products for the first time on October 15, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

211.    Plaintiff Johan Cruz resided in Canada where he initially purchased CryptoZoo Products from Defendants on August 26, 2021. Mr. Cruz invested four thousand two hundred forty-four dollars and four cents ($4,244.04) and lost three thousand six hundred forty-seven dollars and twenty cents ($3,647.20).

212.    Plaintiff Cruz relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, before purchasing Cryptozoo products for the first time on August 26, 2021. Additionally, Plaintiff Cruz relied on Paul's October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff

known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

213.    Plaintiff Tom Fitzgerald resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 9, 2021. Mr. Fitzgerald invested four hundred twenty-two dollars ($422.00) and lost four hundred twenty dollars ($420.00).

214.    Plaintiff Fitzgerald relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, and Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on September 9, 2021. Additionally, Plaintiff Fitzgerald relied on Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed

Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

215.    Plaintiff Kurt Alexander resided in Canada where he initially purchased CryptoZoo Products from Defendants on January 18, 2022. Mr. Alexander invested two thousand dollars ($2,000.00) and lost two thousand dollars ($2,000.00).

216.    Plaintiff Alexander relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

217.    Plaintiff George Bou Khalil resided in Lebanon where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Bou Khalil invested fifty thousand dollars ($50,000.00) and lost twenty-five thousand dollars ($25,000.00).

218.    Plaintiff Khalil relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, and Paul's edited September 2, 2021, CryptoZoo Whitepaper before purchasing CryptoZoo products for the first time on September 2, 2021. Additionally, Plaintiff Khalil relied on Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11,

2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

219.     Plaintiff Martin Beattie resided in Spain where he initially purchased CryptoZoo Products from Defendants on January 9, 2021. Mr. Beattie invested one thousand eight hundred twenty dollars and thirty-five cents ($1,820.35) and lost one thousand four hundred ninety-four dollars and ninety-seven cents ($1,494.97).

220.     Plaintiff Beattie relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on January 9, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted

by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

221.    Plaintiff Luke Mcllwee resided in San Diego, California where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Mcllwee invested two thousand dollars ($2,000.00) and lost two thousand dollars ($2,000.00).

222.    Plaintiff Mcllwee relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, and Paul's edited September 2, 2021 CryptoZoo Whitepaper, before purchasing CryptoZoo products for the first time on September 2, 2021. Additionally, Plaintiff Mcllwee relied on Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood

that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

223.    Plaintiff Garrett Roche resided in Biglerville, Pennsylvania where he initially purchased CryptoZoo Products from Defendants on October 1, 2021. Mr. Roche invested one hundred ($100.00) and lost one hundred dollars ($100.00).

224.    Plaintiff Roche relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, and Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on October 1, 2021. Additionally, Plaintiff Roche relied on October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

225.    Plaintiff Duarte Campos de Oliveira resided in Portugal where he initially purchased CryptoZoo Products from Defendants on August 18, 2021. Mr. Campos de Oliveira

invested one hundred eighty-five thousand dollars ($185,000.00) and lost one hundred seventy-five thousand dollars ($175,000.00).

226.    Plaintiff De Oliveira relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time August 18, 2021. Additionally, Plaintiff De Oliveira relied on Paul's September 1, 2021 Medium Article Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

227.    Plaintiff Emil Norgaard resided in Denmark where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Norgaard invested five thousand dollars ($5,000.00) and lost five thousand dollars ($5,000.00).

228.    Plaintiff Norgaard relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making

his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

229.    Plaintiff Sean Fry resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Fry invested one thousand one hundred thirty-seven dollars and sixty-six cents ($1,137.66) and lost one thousand one hundred twenty-six dollars and two cents ($1,126.02).

230.    Plaintiff Fry relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

231.    Plaintiff Mark Lightbown resided in England where he initially purchased CryptoZoo Products from Defendants on August 24, 2021. Mr. Lightbown invested fifteen thousand dollars ($15,000.00) and lost thirteen thousand five hundred dollars ($13,500.00).

232.    Plaintiff Lightbown relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images.

He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

233.    Plaintiff Anthony Arnold resided in La Palma, California where he initially purchased CryptoZoo Products from Defendants on December 8, 2021. Mr. Arnold invested eighty-five thousand dollars ($85,000.00) and lost eighty-three thousand dollars ($83,000.00).

234.    Plaintiff Arnold relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, before purchasing CryptoZoo products for the first time on December 8, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

235.    Plaintiff Daniel Hernández resided in Spain where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Hernández invested fourteen-thousand dollars ($14,000.00) and lost thirteen-thousand seven-hundred dollars ($13,700.00).

236.    Plaintiff Hernández relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

237.    Plaintiff Tom Cropper resided in England where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Cropper invested one thousand seven hundred fifty-three dollars and seventeen cents ($1,753.17) and lost one thousand seven hundred fifty-one dollars and twenty-four cents ($1,751.24).

238.    Plaintiff Cropper relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Cropper relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing

touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

239.    Plaintiff João Amorim resided in Portugal where he initially purchased CryptoZoo Products from Defendants on July 31, 2021. Mr. Amorim invested eight thousand dollars ($8,000.00) and lost eight thousand dollars ($8,000.00).

240.    Plaintiff Amorim relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

241.    Plaintiff Marcus Owens resided in the United States where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Owens invested eighty thousand dollars ($80,000.00) and lost eighty thousand dollars ($80,000.00).

242.    Plaintiff Owens relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had

he understood that the game was still completely undeveloped.

243.    Plaintiff David Nicholls resided in Wales where he initially purchased CryptoZoo Products from Defendants on September 15, 2021. Mr. Amorim invested one thousand five hundred dollars ($1,500.00) and lost one thousand four hundred seventy dollars ($1,470.00).

244.    Plaintiff Nicholls relied on Defendant Paul's before Paul's September 3, 2021 tweet, and Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on September 15, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

245.    Plaintiff Ricardo Garcia resided in Las Vegas, Nevada where he initially purchased CryptoZoo Products from Defendants on July 29, 2021. Mr. Garcia invested seventy-five thousand dollars ($75,000.00) and lost fifty thousand dollars ($50,000.00).

246.    Plaintiff Garcia relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these

representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on July 29, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

247.    Plaintiff Jagdeep Cheema resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Cheema invested ninety-two thousand eight hundred forty-nine dollars and ninety-eight cents ($92,849.98) and lost ninety-two thousand eight hundred forty-nine dollars and ninety-eight cents ($92,849.98).

248.    Plaintiff Cheema relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements , before purchasing CryptoZoo products for the first time on September 30, 2021. Additionally, Plaintiff Cheema relied on October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of

dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

249.    Plaintiff Shawn Bourget resided in Canada where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Bourget invested twelve thousand five hundred dollars and ($12,500.00) and lost eleven thousand dollars ($11,000.00).

250.    Plaintiff Bourget relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, and Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on September 30, 2021. Additionally, Plaintiff Bourget relied on October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still

completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

251.    Plaintiff Arun Bhatta resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 1, 2021. Mr. Bhatta invested ten thousand dollars and ($10,000.00) and lost eight thousand dollars ($8,000.00).

252.    Plaintiff Bhatta relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 1, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

253.    Plaintiff Marcus Karl Förster resided in Germany where he initially purchased CryptoZoo Products from Defendants on September 30, 2021. Mr. Förster invested five thousand dollars and ($5,000.00) and lost four thousand eight hundred dollars ($4,800.00).

254.    Plaintiff Förster relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

255.    Plaintiff Alexandre El-Hage resided in Canada where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. El-Hage invested three thousand dollars and ($3,000.00) and lost two thousand eight hundred dollars ($2,800.00).

256.    Plaintiff El-Hage relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

257.    Plaintiff Matthew Chase resided in Brea, California where he initially purchased CryptoZoo Products from Defendants on September 2, 2021. Mr. Chase invested one hundred twenty thousand dollars and ($120,000.00) and lost one hundred fifteen thousand dollars ($115,000.00).

258.    Plaintiff Chase relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, and Paul's edited September

2, 2021 CryptoZoo Whitepaper, before purchasing CryptoZoo products for the first time on September 2, 2021. Additionally, Plaintiff Chase relied on Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

259. Plaintiff Matthew Walker resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Walker invested six thousand dollars and ($6,000.00) and lost six thousand dollars ($6,000.00).

260. Plaintiff Walker relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Walker relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had

Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

261.    Plaintiff James Furber resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on July 21, 2021. Mr. Furber invested twenty-five thousand dollars and ($25,000.00) and lost twenty-four thousand dollars ($24,000.00).

262.    Plaintiff Furber relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on July 21, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered

Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

263.    Plaintiff Hon Fai Ma resided in Philippines where he initially purchased CryptoZoo Products from Defendants on October 10, 2021. Mr. Ma invested fifty thousand dollars and ($50,000.00) and lost thirty-eight thousand one hundred eighty-two dollars ($38,182.00).

264.    Plaintiff Ma relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

265.    Plaintiff Magnus Lervold resided in Norway where he initially purchased CryptoZoo Products from Defendants on January 19, 2021. Mr. Lervold invested seventy thousand dollars and ($70,000.00) and lost seventeen thousand eight hundred dollars ($17,800.00).

266.    Plaintiff Lervold relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products

for the first time on January 9, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

267.    Plaintiff Luke Gorman resided in Scotland where he initially purchased CryptoZoo Products from Defendants on August 26, 2021. Mr. Gorman invested twelve thousand one hundred dollars and ($12,100.00) and lost nine thousand three hundred dollars ($9,300.00).

268.    Plaintiff Gorman relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 26, 2021. Additionally, Plaintiff Gorman relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and

amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

269.    Plaintiff Brennen Giroux resided in Canada where he initially purchased CryptoZoo Products from Defendants on August 28, 2021. Mr. Giroux invested forty thousand dollars and ($40,000.00) and lost forty thousand dollars ($40,000.00).

270.    Plaintiff Giroux relied on Defendant Paul's August 18, 2021 statements before purchasing CryptoZoo products for the first time on August 28, 2021. Additionally, Plaintiff Giroux relied on Paul's September 1, 2021 Medium Article,  Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper,  Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if

he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

271.    Plaintiff Jordan Hazel resided in England where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Hazel invested six hundred dollars and ($600.00) and lost six hundred dollars ($600.00).

272.    Plaintiff Hazel relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

273.    Plaintiff Danielle Altman resided in Los Angeles, California where she initially purchased CryptoZoo Products from Defendants on September 28, 2021. Ms. Altman invested five thousand dollars and ($5,000.00) and lost five thousand dollars ($5,000.00).

274.    Plaintiff Altman relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, and Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on September 28, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and

amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

275.    Plaintiff Daniel Brink resided in Australia where he initially purchased CryptoZoo Products from Defendants on September 5, 2021. Mr. Brink invested eleven thousand four hundred sixty-nine dollars and ($11,469.00) and lost eleven thousand four hundred sixty-nine dollars ($11,469.00).

276.    Plaintiff Brink relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, and Paul's September 5, 2021 tweet, before purchasing CryptoZoo products for the first time on September 5, 2021. Additionally, Plaintiff Brink relied on Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amaterely crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he

understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

277.    Plaintiff Logan Law resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Law invested two thousand dollars and ($2,000.00) and lost two thousand dollars ($2,000.00).

278.    Plaintiff Law relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Law relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

279.    Plaintiff Jacobo Castaño resided in Spain where he initially purchased CryptoZoo Products from Defendants on February 1, 2022. Mr. Castaño invested two thousand three hundred

dollars and ($2,300.00) and lost two thousand two-hundred dollars ($2,200.00).

280.    Plaintiff Castaño relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

281.    Plaintiff Artiom Zorin resided in Belgium where he initially purchased CryptoZoo Products from Defendants on August 17, 2021. Mr. Zorin invested five thousand dollars and ($5,000.00) and lost four thousand dollars ($4,000.00).

282.    Plaintiff Zorin relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

283.    Plaintiff Grant Kim Castillones resided in the Philippines where he initially purchased CryptoZoo Products from Defendants on August 20, 2021. Mr. Castillones invested one thousand five hundred six dollars and seventy-four cents ($1,506.74) and lost one thousand two hundred forty-four dollars and thirty cents ($1,244.30).

284.    Plaintiff Castillones relied on Defendant Paul's August 18, 2021 statements before

purchasing CryptoZoo products for the first time on August 20, 2021. Additionally, Plaintiff Castillones relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

285.    Plaintiff Francisco Javier Fernandez Sanz resided in Spain where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Fernandez Sanz invested one thousand one hundred sixty-eight dollars and ($1,168.00) and lost one thousand dollars ($1,000.00).

286.    Plaintiff Fernandez Sanz relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted

images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

287.    Plaintiff Mitchell Rogers resided in Australia where he initially purchased CryptoZoo Products from Defendants on August 3, 2021. Mr. Rogers invested three thousand dollars and ($3,000.00) and lost three thousand dollars ($3,000.00).

288.    Plaintiff Rogers relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

289.    Plaintiff Jaime Ruiz Martinez resided in Spain where he initially purchased CryptoZoo Products from Defendants on January 14, 2023. Mr. Ruiz Martinez invested one hundred ninety dollars and ($190.00) and lost one hundred seventy dollars ($170.00).

290.    Plaintiff Martinez relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, before purchasing CryptoZoo products for the first time on January 14, 2023. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars

of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

291.    Plaintiff Dražen Jakobović resided in Croatia where he initially purchased CryptoZoo Products from Defendants on August 21, 2021. Mr. Jakobović invested twelve thousand dollars and ($12,000.00) and lost twelve thousand dollars ($12,000.00).

292.    Plaintiff Jakobović relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

293.    Plaintiff Kenneth Thorbjornsen resided in Norway where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Thorbjornsen invested four thousand dollars and ($4,000.00) and lost four thousand dollars ($4,000.00).

294.    Plaintiff Thorbjornsen relied on Defendant Paul's September 2, 2021 tweet, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his

investment in CryptoZoo, before purchasing CryptoZoo products for the first time on September 1, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

295.    Plaintiff Jon Gjyleri resided in New Jersey where he initially purchased CryptoZoo Products from Defendants on August 27, 2021. Mr. Gjyleri invested thirty-five thousand dollars and ($35,000.00) and lost thirty-five thousand dollars ($35,000.00).

296.    Plaintiff Gjyleri relied on Defendant Paul's August 18, 2021 statements, before purchasing CryptoZoo products for the first time on August 27, 2021. Additionally, Plaintiff Gjyleri relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales,

CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

297.    Plaintiff Brett Thomas resided in Queensland Australia where he initially purchased CryptoZoo Products from Defendants on November 21, 2021. Mr. Thomas invested seven hundred fifty thousand dollars ($750,000.00) and lost seven hundred fifty thousand dollars ($750,000.00).

298.    Plaintiff Thomas relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, before purchasing CryptoZoo products for the first time on November 21, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game

was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

299.    Plaintiff Michael Ahdoot resided in Los Angeles, California where he initially purchased CryptoZoo Products from Defendants on August 1, 2021.  Mr. Ahdoot invested one hundred thousand dollars ($100,000.00) and lost one hundred thousand dollars ($100,000.00).

300.    Plaintiff Ahdoot relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on August 1, 2021. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

301.    Plaintiff David-lee Brunelle resided in Montreal, Quebec Canada where he initially purchased CryptoZoo Products from Defendants on September 20, 2021.  Mr. Brunelle invested one hundred thousand dollars ($100,000.00) and lost ninety thousand dollars ($90,000.00).

302.    Plaintiff Brunelle relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

303.    Plaintiff Kyle McVey resided in New Zealand where he initially purchased CryptoZoo Products from Defendants on September 1, 2021.  Mr. McVey invested sixty thousand dollars ($60,000.00) and lost sixty thousand dollars ($60,000.00).

304.    Plaintiff McVey relied on Defendant Paul's August 18, 2021 statements, and Paul's September 1, 2021 Medium Article, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff McVey relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood

that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

305.    Plaintiff Mohammad Shahzad Faisal resided in Kuwait where he initially purchased CryptoZoo Products from Defendants on August 20, 2021.  Mr. Faisal invested forty-five thousand dollars ($45,000.00) and lost seven hundred fifty thousand dollars ($45,000.00).

306.    Plaintiff Faisal relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

307.    Plaintiff Yudesh Ramchand resided in Queens Village, New York where he initially purchased CryptoZoo Products from Defendants on August 25, 2021.  Mr. Ramchand invested thirty thousand dollars ($30,000.00) and lost thirty thousand dollars ($30,000.00).

308.    Plaintiff Ramchand relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

309.    Plaintiff John Louie Magat resided in the Phillipines where he initially purchased CryptoZoo Products from Defendants on August 19, 2021. Mr. Magat invested thirty thousand dollars ($30,000.00) and lost twenty-nine thousand dollars ($29,000.00).

310.    Plaintiff Magat relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

311.    Plaintiff Julian Vincent Deutsch resided in Germany where he initially purchased CryptoZoo Products from Defendants on August 13, 2021. Mr. Deutsch invested twenty-two thousand dollars ($22,000.00) and lost nineteen thousand five hundred dollars ($19,500.00).

312.    Plaintiff Deutsch relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

313.    Plaintiff Jefferey Lens resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on January 3, 2022. Mr. Lens invested twenty thousand dollars ($20,000.00) and lost nineteen thousand dollars ($19,000.00).

314.    Plaintiff Lens relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

315.    Plaintiff Andrei Diaconu resided in Texas where he initially purchased CryptoZoo Products from Defendants on September 29, 2021.  Mr. Diaconu invested ten thousand dollars ($10,000.00) and lost ten thousand dollars ($10,000.00).

316.    Plaintiff Diaconu relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

317.    Plaintiff Jake Castinetti resided in Danvers, Massachusetts where he initially purchased CryptoZoo Products from Defendants on August 4, 2021.  Mr. Castinetti invested two thousand nine hundred dollars ($2,900.00) and lost two thousand nine hundred dollars ($2,900.00).

318.    Plaintiff Castinetti relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs

were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

319.    Plaintiff Raney van Oers resided in the Netherlands where he initially purchased CryptoZoo Products from Defendants on September 3, 2021.  Mr. van Oers invested six thousand five hundred dollars ($6,500.00) and lost six thousand five hundred dollars ($6,500.00).

320.    Plaintiff van Oers relied on Defendant Paul's August 18, 2021 statements, Paul's edited September 2, 2021 CryptoZoo Whitepaper, and Paul's September 3, 2021 tweet, before purchasing CryptoZoo products for the first time on September 3, 2021. Additionally, Plaintiff van Oers relied on Paul's September 5, 2021 tweet, and Paul's September 15, 2021 AMA statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

321.    Plaintiff William Ball resided in Prescot, England, UK, where he initially purchased CryptoZoo Products from Defendants on August 31, 2021.  Mr. Ball invested six thousand dollars

($6,000.00) and lost six thousand dollars ($6,000.00).

322.    Plaintiff Ball relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

323.    Plaintiff Jason Thompson resided in the United Kingdom where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Thompson invested five thousand dollars ($5,000.00) and lost five thousand dollars ($5,000.00).

324.    Plaintiff Thompson relied on Defendant Paul's August 18, 2021 statements, before purchasing CryptoZoo products for the first time on September 1, 2021. Additionally, Plaintiff Thompson relied on Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood

that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

325.    Plaintiff Aden Worroll resided in the Australia where he initially purchased CryptoZoo Products from Defendants on September 3, 2021. Mr. Worroll invested four thousand two hundred dollars ($4,200.00) and lost four thousand two hundred dollars ($4,200.00).

326.    Plaintiff Worroll relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

327.    Plaintiff Mark Furber resided in Spain where he initially purchased CryptoZoo Products from Defendants on January 28, 2022. Mr. Furber invested four thousand dollars ($4,000.00) and lost three thousand dollars ($3,000.00).

328.    Plaintiff Furber relied on Defendant Paul's August 18, 2021 statements, Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's edited September 2, 2021 CryptoZoo Whitepaper, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo, before purchasing Cryptozoo products for the first time on January 28, 2022. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price,  the largest Zoo

Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

329.    Plaintiff Isaiah Hopkins resided in Henderson, Nevada where he initially purchased CryptoZoo Products from Defendants on October 17, 2021.  Mr. Hopkins invested three thousand dollars ($3,000.00) and lost three thousand dollars ($3,000.00).

330.    Plaintiff Hopkins relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

331.    Plaintiff Reece Dickson resided in Scotland where he initially purchased CryptoZoo Products from Defendants on September 29, 2021.  Mr. Dickson invested three thousand dollars ($3,000.00) and lost two thousand seven hundred dollars ($2,700.00).

332.    Plaintiff Dickson relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making

his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

333.    Plaintiff Yury Petrov resided in Moscow, Russia where he initially purchased CryptoZoo Products from Defendants on October 15, 2021. Mr. Petrov invested two thousand five hundred dollars ($2,500.00) and lost two thousand three hundred fifty dollars ($2,350.00).

334.    Plaintiff Petrov relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

335.    Plaintiff Rob Taylor resided in Chapel St. Leonards, England in the United Kingdom where he initially purchased CryptoZoo Products from Defendants on August 19, 2021. Mr. Taylor invested twenty-five thousand dollars ($25,000.00) and lost one thousand five hundred dollars ($1,500.00).

336.    Plaintiff Taylor relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images.

He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

337.     Plaintiff Yori Bouthillier resided in Quebec, Canada where he initially purchased CryptoZoo Products from Defendants on September 1, 2021. Mr. Bouthillier invested one thousand eight hundred ninety-five dollars ($1,895.00) and lost seven hundred fifty-eight dollars ($758.00).

338.     Plaintiff Bouthillier relied on Defendant Paul's promises that the CryptoZoo game would "make you money," was fully funded, and was backed by a professional team when making his purchases. He would not have purchased CryptoZoo products had he known that the CZ NFTs were not functionally capable of earning money and were shoddily and amateurly crafted images. He likewise believed Defendant Paul's implications that the game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped.

339.     Plaintiff Isaac Jensen resided in Beaverton, Oregon where he initially purchased CryptoZoo Products from Defendants on August 25, 2021. Mr. Jensen invested six hundred dollars ($600.00) and lost four hundred dollars ($400.00).

340.     Plaintiff Jensen relied on Defendant Paul's August 18, 2021 statements, before purchasing CryptoZoo products for the first time on August 25, 2021. Additionally, Plaintiff Jensen relied on Paul's September 1, 2021 Medium Article, Paul's September 2, 2021 tweet, Paul's September 3, 2021 Tweet, Paul's September 5, 2021 tweet, Paul's September 15, 2021 AMA statements, and Paul's October 11, 2021 statements, acting on these representations to preserve his investment in CryptoZoo. Had Plaintiff known that the founders engaged in a stealth launch in

order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

341.    Plaintiff Diego Villalba resided in Madrid, Spain where he initially purchased CryptoZoo Products from Defendants on January 21, 2022. Mr. Villalba invested two hundred fifty dollars ($250.00) and lost two hundred fifty dollars ($250.00).

342.    Plaintiff Villalba relied on Defendant Paul's January 2023 'Thank you Coffeezilla' YouTube video before purchasing CryptoZoo products for the first time on January 21, 2022. Additionally, Plaintiff Villalba relied on Paul's January 2023 'Thank you Coffeezilla' YouTube video, and reasonably believing that Defendant Paul had not abandoned the project and was actively working to bring Cryptozoo to fruition, and in reliance on these representations, maintained his investment in the project. Had Plaintiff known that the founders engaged in a stealth launch in order to buy large quantities of Zoo Tokens at an artificially low price, the largest Zoo Token holders wallets were not locked, millions of dollars of liquidity had already been extracted by Defendants through Zoo Token sales, CZ NFTs were not functionally capable of earning money, or the CZ NFTs were shoddily and amateurly crafted images, it materially altered Plaintiff's considerations. He likewise believed Defendant Paul's implications that the Paul game

was functional and merely needed finishing touches before launching and would not have purchased CryptoZoo products had he understood that the game was still completely undeveloped. Plaintiff would not have invested in CryptoZoo if he knew the totality of Defendant Paul's knowingly false material misrepresentations and omissions.

## C. DEFENDANT PAUL

343.    Defendant Logan Paul is an entertainer with a sizeable online audience. Based on his own statements, information, and belief, he is a founder and majority owner of CryptoZoo Inc., who has been involved in other cryptocurrency related rug-pulls, pump-and-dumps, or scams such as Dink Doink, Bully, Liquid Marketplace, F*** Elon, EMAX, and Elon Gate.

344.    Defendant Eduardo Ibanez is one of the founders of CryptoZoo Inc. and the lead developer of CryptoZoo. The CryptoZoo website described Ibanez "American tech entrepreneur, data scientist, and cybersecurity expert" who "spent most of his teen years hacking websites from his bedroom before he joined the MIT and went on to work to government agencies in cyber security." CryptoZoo Website, *Who is Eddie Ibanez? CryptoZoo Lead Developer*, https://CryptoZooworld.com/eddie-ibanez.

345.    Ibanez also has "3 kids, who he said multiple times, love to play CryptoZoo. So much that his daughter was apparently telling her teachers that her dad was creating hybrids animals at his office. You can't make that up." *Id*. Plaintiff believes these statements are lies based on CryptoZoo never being made and on information and belief from public reports. *See* Adam Robb, *Philly-born tech founder who falsely claimed he had an Eagles Super Bowl ring and helped the CIA hunt terrorists, got $1.5 million in PPP loans as his company went up in flames*, BILLPENN at WHYY, Feb. 14, 2022, at 2, https://billypenn.com/2022/02/14/eddie-ibanez-zenabi-eagles-dolphins-logan-paul ("Ibanez's most recent public bio, posted on the CryptoZoo.co

website last July, falsely claimed he was a visiting associate professor at the Stern School of Business at New York University, held multiple degrees, and was the recipient of distinguished service medals.").

346.    Defendant Jake Greenbaum a/k/a Crypto King is one of the founders of CryptoZoo Inc. who tried to profit earlier than the group originally planned, dramatically lowering the overall assessed value of all Zoo Tokens before the products were released to the public.

347.    The list of CryptoZoo founders is noted in Defendants' internal documents, where Paul, Ibanez, and Greenbaum are listed as founders of CryptoZoo Inc., with each receiving 51%, 30%, and 5% of the founder shares respectively, with 3% leftover for expenses. Co-founders Jeffery Levin and Danielle Strobel, who have been dismissed from this lawsuit due to lack of personal jurisdiction,[1] respectively claimed 10% and 1% shares.

## VIII.    FACTUAL ALLEGATIONS AS TO DEFENDANTS

348.    In early 2021, Defendant Paul concocted the preliminary idea for CryptoZoo scam. On at least as early as February 19, 2021, Paul recircuited the other Defendant Paul who began developing what would become CryptoZoo. Their meeting notes from these meetings show the motive behind CryptoZoo was always profit despite Paul's claim it was a "passion project," with their June 3, 2021c meeting notes showing they were focused on "profit for the team" and "cover[ing] startup costs," and the fact they had planned a private sale amongst themselves before publicly releasing it as of May 26, 2021 according to their internal communications:

---

[1]        Plaintiffs have since filed lawsuits against Jeffrey Levin, Danielle Strobel, and CryptoZoo's manager, Ophir Bentov, in their respective home jurisdictions.

jake the crypto king



> 2 trillion tokens. Private sale 10% allocated, 200 Billion tokens allowed to be sold privately. $.002 is the going live price, selling at $.001. That means the private sale has room to raise $200mil on 10% of the token supply at $.001 which is a 50% discount. And with how little of circulating supply will be out it is likely to run significantly.

349. Defendant Paul were also aware as of April 14, 2021 that a cryptocurrency token "can trade as security" and the same token can act as a cryptocurrency and NFT:

Apr 14, 2021, 1:21 AM

Eddie Ibanez

There would be close no gas fee's if I did an ERC1155 token as I can bundle actions & transactions into 1 VS having to create a smart contract every time.

It can also transact as a currency (fungible) and as a nonfungible token (animal) -
It allows for multiple tokens under
One contract. The same token can trade as a security & NFT if we wanted.

350. On May 27, 2021, Levin further stated they "definitely don't want to do anything that brings sec eyeballs" in response to Logan pushing for a presale of Zoo Tokens after Levin told him it would be "against the SEC":





351.    Despite such knowledge, Defendants never registered Zoo Tokens or CZ NFTs and did either a presale through illegal liquidity pool trading before the CryptoZoo Products were publicly released, as noted on May 27, 2021:



jake the crypto king

If we can't sell, no presale. We can still trade em in the liquidity pool.

And again, on June 11, 2021:

jake the crypto king

1. We mint tokens via a wallet address (new phone or just need wallet doesn't matter). 2. We lock tokens in a liquidity pool from that same wallet address. 3. We lock team tokens to be distributed over months to the founders that have token allocations. 4. We begin buying out of the liquidity pool. 5. Once the team has exhausted funds for the liquidity pool buying we send the contract address to friends/family/investors who want to be able to get in that have heard about it. 5. As long as trusted team members have the back up words I can't do anything with locked tokens, and if I perish when they unlock u can access them. Or we just use a different new phone but than same situation, who holds it, who holds back up words.

352.    On May 15, 2021, Paul asks the other Defendant Paul if they should "add a charity component at all. Donating to animal rescues or some shit," evincing derision of any altruism and focusing on the brand and tax benefit possibilities.

353.    On information and belief, June 11, 2021, was considered internally by Defendants as "Zoo Day," the day upon which they released—without any public notice—their digital

products for purchase on the Binance blockchain. On Zoo Day, and until the release was publicly announced, Logan Paul, Danielle Strobel, Jeffrey Levin, Eddie Ibanez, and Jake Greenbaum a/k/a Crypto King purchased these digital products at an artificially low value. Soon after the project was publicly announced, Eddie Ibanez, Jake Greenbaum, and potentially other Defendants, sold large amounts of the digital products for an immediate and large profit, effectively stealing the money of consumers who had invested.

354.    Externally, on or around August 18, 2021, Paul promoted CryptoZoo publicly for the first time on his YouTube show Impaulsive. *Logan Paul Announces Date for His NFT Project: CryptoZoo*, available at https://www.youtube.com/watch?v=rqrH7TbruZA (last visited Nov. 4, 2025) (emphasis added). The following statements were made on August 18, 2021 show and were materially false and misleading at they time they were made. Each statement was made with knowledge of falsity or reckless disregard:

> **(1)** Logan Paul's First Intentionally Deceptive August 18 ,2021 Statement: "[CryptoZoo] is so fun. It provides a yield with a token, it can earn you money."

355.    Defendant Paul's first statement is a material misrepresentation because it falsely represented that the CryptoZoo NFTs had a built-in mechanism to generate income or yield for purchasers. In reality, the verified smart contract code on the blockchain contained no such functionality. Meaning holders could not earn tokens through ownership. Paul made this representation as part of his broader marketing campaign to induce people to buy the NFTs under the belief they were an investment vehicle that would passively generate returns. As majority owner and project creator with direct access to his "developers," Paul either knew or recklessly disregarded the fact that the product lacked any yield feature. Investors reasonably relied on his statements in purchasing CryptoZoo NFTs, and as a result suffered financial losses when the

promised yield never materialized. materialized.

> **(2)** Logan Paul's Second Intentionally Deceptive August 18 ,2021 Statement: "We have a massive team behind it and are probably out of pocket like a million."

356.    Paul's second statement is a material misrepresentation because Logan Paul falsely represented that CryptoZoo was backed by a "massive team" and that he was "out of pocket like a million," creating the illusion that the project was heavily funded and professionally staffed. In reality, the project had no such large development team, no meaningful infrastructure, and Paul had spent only around $200,000 of his own money, a fraction of what he claimed publicly. This misrepresentation was material because investors reasonably understood it to mean that CryptoZoo was a serious, well-capitalized venture with substantial resources devoted to its success. In the NFT world, funding and team size directly influence perceptions of credibility, security, and long-term viability. By exaggerating his financial commitment and the scope of his team, Paul induced consumers to believe CryptoZoo was a legitimate, well-funded enterprise rather than the underdeveloped, internally disorganized project it truly was. This statement cannot be viewed in isolation as Paul, Greenbaum, and Ibanez all made money from the CrypoZoo within three weeks of this statement; it was part of a coordinated effort to present CryptoZoo as a major, fully financed operation so that ordinary investors would feel confident putting their own money into it.

> **(3)** Logan Paul's Third Intentionally Deceptive August 18 ,2021 Statement: "It starts with the product bro and I'm super particular about this product….It's quick to make a digital asset with unique randomly generated characteristics. We **hand made** art for the past 6 months, bro; a proof of very specific notes; 10 different artists making art for our project."

357.    Defendant Paul's third statement is a material misrepresentation because the CryptoZoo NFTs were not "handmade" pieces of art as Paul claimed. In reality, the images used in the project were stock images — preexisting, publicly available animal photographs and

illustrations — that were crudely edited and combined, not original works of art. In the NFT world, claims of "handmade" or "original" art are material because much of an NFT's value derives from its uniqueness, authenticity, and the creative labor behind it. By falsely asserting that the images were painstakingly hand-drawn, Paul misled buyers into believing they were purchasing exclusive, high-effort digital collectibles that generated a yield. The deception was further concealed by the "egg hatching mechanic," which was intentionally delayed the reveal of the NFT artwork until months after the CryptoZoo founders Paul, Greenbaum, and Ibanez had already extracted money for themselves. Preventing buyers from realizing that the images were recycled stock art rather than the bespoke, handcrafted creations they had been promised.

358.    For example, bellow is a hybrid animal meant to be a representative of a cross between a butterfly and an elephant:



359.    However, upon after a little digging, it is clear that the "handmade" hybrid animal is merely a low effort photoshop of two publicly available stock images.





360.    A single glance at the NFT artwork above shows that none of the images were "hand made," nor were they created by professional "wizards." The NFTs marketed as fully funded and supported by professionals a) could not function as promised because the underlying code did not contain the coding required for the NFT to generate any yield (make money as promised), and

b) were shoddy, unprofessional photoshopped stock photos. Defendants promised unique artwork that could earn money but sold cheap stock images functionally incapable of earning anything.

361.    When customers began to realize the CZ NFTs they purchased were simple adobe stock photos shoddily photoshopped together rather than unique, handmade art as promised, they demanded answers from the CryptoZoo team. Founder Logan Paul, through his manager Ben Roth, doubled down on their deception in order to maintain the premium price of CryptoZoo products long enough for Defendant Paul to earn a profit.



    **(4)** Logan Paul's Fourth Intentionally Deceptive August 18 , 2021 Statement: "A development team that has to be wizards because you're dealing with blockchains, people's money, transactions and it's going to be on the binance smart chain… I'm saying this here now… because the Ethereum network… the gas fees don't make sense for the continuous and frequent transactions taking place in our game…[CryptoZoo] is a really fun game that makes you money…Kids are addicted to it. Our developers kids, all of them, cannot stop playing the game."

362.    At this time this statement was made no game existed. This statement was false when made. Paul's own cross claims reveal that on September 8, 2021 he saw that no functional game existed, no playable build had been delivered, and Paul himself privately acknowledged confusion and dissatisfaction with the state of development. *See* Dkt. 55 at p. 34. Paul therefore could not have genuinely believed that CryptoZoo was "a fun game" on August 18, 2021, because he had never played it. Additionally, he had never seen another play it because the game did not

exist in any functional form at that time, and by his own later admission, no playable build had ever been delivered. His description of it as a "fun game" was therefore not an opinion formed from experience but a knowingly false promotional statement about a product that had yet to be created.

363.    When CryptoZoo was made public on August 18, 2021, the price of Zoo Tokens surged to a market capitalization of approximately $613 million within hours, driven by Paul's massive online following who believed they were investing in a legitimate and functioning game economy. Immediately after the launch, Defendants Greenbaum and Ibanez began selling portions of their holdings on the open market, generating millions of dollars in profit. These sales were not rogue or unauthorized; they were conducted in accordance with the insider-selling rules that Paul himself had established, which dictated when and how insiders could liquidate their positions. While ordinary investors bought at inflated prices based on Paul's public statements, Greenbaum and Ibanez quietly profited under a system designed to benefit insiders

364.    In the days following, while the Zoo Token market cap continued to soar, Paul discovered that Greenbaum had begun selling, he became enraged—not because any rules were violated, but because Greenbaum had taken profits before Paul had done so himself. In response, Paul ordered a full migration of the Zoo Token smart contract to a new version called "Zoo Token Version 2," which froze Greenbaum's remaining tokens and removed his ability to sell. Paul publicly claimed that the new contract was implemented to improve "accessibility" and "interoperability" between blockchains, but this explanation was false. The real purpose of the conversion was to punish a fellow insider for profiting first, consolidate control over the project's liquidity, and preserve Paul's own opportunity to cash out later at the expense of investors.

365.    A revealing glimpse into Paul's true motives for the Zoo Token Version 2 migration

comes from his own private comments following Greenbaum's sales. Rather than expressing concern about investor protection, project integrity, or technical issues, Paul described his decision to replace the original Zoo Token contract Paul admitted this was his intent, saying, "Wait until we successfully launch our eggs and I explain this f***ing surgical maneuver we pulled off to remove the snake from the grass . . .." [Dkt 55, ¶ 80].

366.    To conceal the true reason for the contract migration, Paul and the CryptoZoo team published a Medium article on September 1, 2021 (hereinafter referred to as *the Medium Article*), accompanied by an updated whitepaper and coordinated social media posts. *The Medium Article* falsely asserted that the migration was a technical upgrade designed to enhance accessibility and interoperability across chains. On information and belief, Paul either personally authored the article or provided direct, hands-on instruction regarding its content and messaging.

367.    This transition out of the original Zoo Token tainted the liquidity pool and the new Zoo tokens were worth less because of Greenbaum's heavy offloading, but Paul failed to disclose the decrease in value or the true nature of the switch to Zoo Token Version 2. Rather than admit to the presence of bad actors tainting the liquidity pool, Paul deflected by claiming the transition was to make the blockchain more accessible:

> Logan Paul's Deceptive Statement via a CryptoZoo Blog Post He Personally Authored or Directed - September 1, 2021: "We have heard the community and understand that the barrier to entry on the Binance Smart Chain (BSC) has been prohibitive for some, so we're taking actionable steps to ensure full interoperability and functionality across both Ethereum and Binance Smart Chain, not only for the $ZOO token itself but also for the game that is built completely on-chain (with more chains to come in the future). We aim to make CryptoZoo the most accessible blockchain game in the world."

CryptoZoo: Genesis Start Contract Update, available at https://medium.com/@CryptoZooCo/CryptoZoo-genesis-smart-contract-update-c7dfc029b25 (last visited Nov. 3, 2025).

368.     The language and talking points mirrored Paul's own public statements, and the timing of publication aligned with his effort to control the narrative. In reality, *The Medium Article* was not an independent team update, but a calculated cover story crafted under Paul's direction to mislead investors and conceal that the migration was an act of retaliation and market manipulation so he could profit off the coming CZ NFT sale.

369.     Paul reaffirmed this lie on September 2, 2021, and edited the white paper to reflect the false reasoning behind the transition to Zoo Token Version 2. Critically, Paul also affirmed the white paper's claims that the NFTs would earn yields:

**Distribution**

Total $ZOO Tokens: 2,000,000,000,000

- Game wallet: 1,000,000,000,000
- Circulation: 1,000,000,000,000
  - 500,000,000,000 available to public
  - 500,000,000,000 allocated to development, marketing, and founders
    - Locked for 6 months from allocation
    - After 6 months, 10% of allocation unlocked per month for next 10 months

The $ZOO Token was minted on the Binance Smart Chain (BSC) to avoid the high fees and latency associated with ETH transactions recently. The goal was ultimately to provide more accessibilty through low fees, but building on BSC introduced other accessibility issues, through restrictions on Binance transactions in many provinces, and a prohibitively confusing setup process for new crypto participants. In late August/early September 2021, $ZOO was paused, and a new contract distributed to all holders of the original contract. The new contract will make possible full interoperability and functionality across both Ethereum and Binance Smart Chain.

New $ZOO contract address: 0x19263F2b4693da0991c4Df046E4bAA5386F5735E



370.    The screenshots attached hereto depict (1) the September 2, 2021 *CryptoZoo Whitepaper* (hereinafter referred to as the "Whitepaper") and (2) Logan Paul's corresponding public tweet promoting the Whitepaper (hereinafter referred to as the "September 2, 2021 Tweet"). Together, the Whitepaper and the September 2, 2021 Tweet further demonstrate Paul's intent to mislead investors regarding the true purpose of the Zoo Token Version 2 migration by publicly framing it as a technical improvement rather than an act of retaliation and control.

371.    Paul's own cross-claim confirms that the decision to launch Zoo Token Version 2 was not a planned technical improvement, as he publicly represented, but a deliberate act of retaliation and market manipulation. In that filing, Paul admits that he "agreed with a plan conceived by several of the co-founders to remove [Greenbaum] from the project," and that a "new version of the ZOO Token was launched" specifically to "blacklist" wallets traceable to Greenbaum. By his own admission, the purpose of Zoo Token Version 2 was to exclude a fellow

insider from trading, not to enhance interoperability or accessibility as claimed in the September 1, 2021 *Medium Article* and accompanying *Whitepaper*. *See* Dkt 55, ¶ 78. This admission directly contradicts Paul's public narrative and proves that his statements about the Version 2 migration were knowingly false. Paul's own words establish that the migration was a retaliatory maneuver designed to freeze another insider's assets and manipulate market control, not a legitimate technological upgrade.

372.    Again, the purpose behind the transition to a Zoo Token Version 2 was not to enhance accessibility, as demonstrated in Paul's "surgical maneuver" that resulted in the Zoo Token Version 2 holders losing significant value. Rather, the transition was for the sole purpose of locking Defendant Greenbaum out of selling his CryptoZoo products before Paul. Paul and the other Defendant Paul wanted their share of the liquidity pool, so they maneuvered the Zoo tokens to lock Greenbaum out, while not informing the public that Greenbaum had already extracted millions of dollars from the liquidity pool. Lying about their reasoning for the transition to Zoo Token Version 2 so that customers such as Plaintiffs would not be put off from purchasing CryptoZoo products.

373.    The sole purpose behind the lie was to entice more customers into buying CryptoZoo products so that Paul and the other Defendant Paul could eventually sell their CryptoZoo products just like they locked Greenbaum from doing.

374.    After locking Greenbaum out, Paul immediately began extracting value from the project for his own personal gain. On or about September 3, 2021, CryptoZoo began selling "egg" NFTs to the public. CZ Egg NFTs were the digital products that Paul had repeatedly promised would "hatch" into a CZ Base Animal NFT and form the basis of the CryptoZoo game. The CA Egg NFTs  sold out almost instantly, generating approximately $2.6 million in revenue from eager

consumers who believed they were investing in a functioning blockchain game. Just two days later, on or about September 5, 2021, on information and belief, Paul paid himself approximately $943,229 from CryptoZoo's accounts. The very next day, on September 6, 2021, Paul paid himself approximately $364,000 from CryptoZoo's accounts. These funds did not come from Zoo Token trading but from the proceeds of the CZ NFT Egg sales. Although Paul was not personally conducting the CZ NFT Egg sales, CryptoZoo functioned as his alter ego and personal piggy bank, allowing him to unilaterally withdraw investor funds under the guise of legitimate project operations. This was not an accidental act. It was a deliberate and malicious extraction of consumer funds from a nonfunctional product that never delivered on its promises. Text messages exchanged long after the scheme's exposure confirm Paul's awareness and intent, as he sought to rationalize and spin his conduct rather than accept responsibility. CryptoZoo, in substance, was never a company. It was Logan Paul's personal enrichment vehicle, dressed up as a blockchain venture.

375.    Months later, after the CryptoZoo scheme had been abandoned, Paul sought advice from Defendant Roth about how to spin his robbery of CrytoZoo assets to customers like Plaintiffs:





376.    The $943,229 and $364,000 transfers to Paul show that he had complete control of CryptoZoo's assets and the ability to remove funds from CryptoZoo to his own wallet and for his own personal use, at will, and also that he did so freely. It likewise demonstrates that this was the intent behind CryptoZoo all along. Paul padded his own wallet by taking money earned from the sale of eggs that did not function as they were promised (the eggs were incapable of making money as promised).

377.    By September 1, 2021 the Zoo Token Version 2 market cap was over $2 billion dollars. By mid-September 2021, following the rapid sell-out of the CryptoZoo egg NFTs and the surge of hundreds of millions of dollars in trading activity, Paul was under mounting pressure to sustain market excitement and maintain the inflated value of Zoo Token Version 2. Behind the scenes, however, Paul already knew that no functional CryptoZoo "game" existed. On September 8, 2021, he reviewed a demonstration of the project's so-called "virtual marketplace" and immediately expressed frustration, describing it as "confusing," "incomplete," and asking his team, "Wtf is this." *See* Dkt. 55 at p. 34. Despite knowing the game was nonfunctional, Paul continued to publicly mislead investors.

378.     Defendant Logan Paul's September 3, 2021 social media post, hereinafter referred to as the September 3, 2021 Tweet, was materially false and misleading. In the September 3, 2021 Tweet, Paul stated, "So @CryptoZooCo eggs dropped tonight and they're selling instantly. I can't even get one and I created the game." This statement created the false impression that (1) CryptoZoo was an operational, fully launched game; (2) the CZ Egg NFTs were in high demand due to genuine consumer interest; and (3) Paul himself had no access or preferential benefit from the sale. The statement that he "couldn't get one" was deceptive because Paul, as the project's founder and controlling person, had full control over CryptoZoo's smart contracts and treasury assets, including the ability to mint or access NFTs at will. The September 3, 2021 Tweet was intended to manufacture scarcity and hype, misleading investors into believing CryptoZoo was a legitimate, popular, and functional project, when in truth it was neither operational nor transparent, and Paul had already personally planned to extract profited from the very sale he publicly pretended to be excluded from.

379.     Defendant Logan Paul's September 5, 2021 social media post, hereinafter referred to as the September 5, 2021 Tweet, was materially false and misleading. In the September 5, 2021 Tweet, Paul asserted, "the best part about this: we're not just an NFT. we're not just a token. @CryptoZooCo is a GAME… the best is yet to come," while promoting a concurrent post showing CryptoZoo's trading volume on OpenSea. This statement falsely represented that CryptoZoo was a functioning, interactive game ecosystem rather than a speculative token or NFT collection. At the time of the September 5, 2021 Tweet, the CryptoZoo game did not exist in any operable form, and no player could engage in gameplay, hatching, or breeding functions as advertised. Paul's use of the word "GAME" was intentionally deceptive, designed to suggest that purchasers were buying access to an existing or imminently launching gaming product supported by a development team.

In truth, Paul and his co-founders had already diverted proceeds from NFT sales for personal use, and no genuine development was underway. The statement "the best is yet to come" further misled investors into believing that CryptoZoo's core product was being completed and improved, when in reality the project was defunct, underfunded, and devoid of active developers. The September 5, 2021 Tweet was part of a calculated campaign to sustain market demand, inflate token value, and conceal the fact that CryptoZoo was not a game at all, but a fraudulent investment scheme.

380.    On September 15, 2021, during a CryptoZoo community "Ask Me Anything" livestream (hereinafter referred to as the "September 15, 2021 Statement"**),** Paul falsely claimed that he and his team had been playing the game, stating: "**I can't wait for you guys to see the game. It is so much fun. I am addicted to it. My friends are addicted to it. Every developer is addicted to it. Every other person on the team. We love playing it**." These were not vague expressions of optimism but specific, factual assertions about the existence and playability of the CryptoZoo game. In reality, there was no playable product of any kind. Paul's misrepresentations in the September 15, 2021 Statement were designed to reassure holders, drive continued secondary-market purchases, and sustain the inflated price of Zoo Token Version 2 and related CryptoZoo NFTs, all while concealing that the project had no working platform, no revenue system, and no means of delivering the promised game. *CryptoZoo AMA with Logan Paul*, YouTube (Sept. 15, 2021), https://www.youtube.com/watch?v=itnhkAFhUQ4 (last visited Nov. 5, 2025).

381.    By late September 2021, tensions among the CryptoZoo founders had erupted into another behind-the-scenes manipulation of the token contract. Around September 29, 2021, Paul ordered a second token conversion, creating "Zoo Token Version 3" under the pretense of making additional "technical improvements." In reality, the conversion served two purposes: to remove

Defendant Ibanez's access to project funds and, even more remarkably, to restore Defendant Greenbaum's position in the project—the same individual Paul had just branded a "snake" and a thief weeks earlier. Then, on October 13, 2021, Paul transferred approximately 25,000,000,000 Zoo Token Version 3 to Greenbaum's wallet, allowing him to resume liquidating tokens to unsuspecting investors. Paul's actions speak volumes. If he genuinely believed Greenbaum had stolen from the project, there is no plausible explanation for reinstating him and handing him billions of tokens to sell to the very investors Paul claimed to be protecting.

382.    On September 30, 2021, just one day after Paul locked Ibanez out of the project through the creation of Zoo Token Version 3, the CryptoZoo team publicly announced that it had hired a blockchain development firm called PixelPlex to build the long-promised CryptoZoo game. In that announcement, CryptoZoo community manager Ophir Bentov team praised PixelPlex as a top-tier developer known for creating sophisticated blockchain ecosystems, using the association to suggest that CryptoZoo was finally moving toward completion. In reality, the relationship with PixelPlex never actually began. PixelPlex announced on October 22, 2021, that it would not be working on CryptoZoo after all, because Paul refused to pay for the development services he had requested. The supposed partnership existed only in CryptoZoo's public statements. By falsely presenting PixelPlex as an active development partner, Paul misled investors into believing that meaningful progress was underway, when in truth no work had ever started and the project remained stalled due to his unwillingness to fund real development.

383.    Additionally in October 2021, while Paul knew he did not have a development team working on CryptoZoo, Paul relied increasingly on a media appearances to maintain investor confidence and keep the price of Zoo Token Version 3 artificially high. He appeared on an interview to generate hype and project the illusion that CryptoZoo was a thriving, fully realized

ecosystem. To further this deception, Paul appeared on Jon Youshaei's YouTube channel on a show entitled *The Logan Paul Interview*, released October 11, 2021 (hereinafter referred to as the "October 11, 2021 Statement"), where he declared:

> Let's make a fun game where people can live out their wildest dreams and breed animals that they never could before in very hyper-realistic fashion. Make them NFTs. Provide an ecosystem around it. Gamify it. **And now, like, we have a complete platform."**

384.    Only two days later, on October 13, 2021, Paul executed the transfer of 25 billion Zoo Token Version 3 to Greenbaum, restoring his holdings and enabling him to continue profiting from token sales. Paul's willingness to re-empower Greenbaum, despite labeling him a bad actor, demonstrates that the move was not about accountability or project ethics but about maintaining liquidity and keeping trading volume alive. These were not the actions of a project leader protecting investors; they were the actions of an insider coordinating a controlled cash-out.

385.    Plaintiffs thought there was long term merit in the project due to the false affirmations and positive spin by the development team. It was a steady drip of information on positive developments—which were untrue—that led them to believe the project was legitimate. For example, on November 2, 2021, the CryptoZoo Twitter account posted a riddle announcing a prize of 10 million Zoo Tokens or an CZ NFT—supporting a surge—despite it being unclear which is being offered and it appears nothing was ever awarded.

386.    On November 3, 2021, the long-promised CryptoZoo "Hatch Day" finally arrived — the event when purchasers were told they would be able to hatch their egg NFTs and begin playing the game. Instead of launching a functioning product, the event exposed that the CryptoZoo platform did not work at all. Buyers attempting to hatch their eggs encountered broken interfaces, missing assets, and nonfunctional code. The so-called game mechanics, which Paul had

repeatedly described as "addictive" and "complete," were nonexistent. As news spread that the platform was inoperable, market confidence collapsed, and the price of Zoo Token Version 3 plummeted almost immediately. What was supposed to mark the official debut of the CryptoZoo ecosystem instead confirmed that no real game existed, triggering a sharp decline in value and leaving investors with worthless digital assets.

387.    In the months that followed, Paul made superficial attempts to appear as though development was ongoing. In the CryptoZoo discord, project manager Ophir Bentov publicly discussed "hiring" new developers while privately refusing to fund meaningful progress. In April 2022, CryptoZoo announced the hiring of developer Vatom Ventures—whom Paul offered to pay in Zoo Token Version 3 rather than real currency. However, in June 2022, when CryptooZoo victims approached Vatom employees, they were informed that Vatom doesn't "have any direct role with CZ like we do with other clients."

388.    Each engagement ended when the developers demanded payment. Paul and his associates dismissed them as "too transactional," revealing that they expected free labor while continuing to profit from public hype. Eventually, the team retained BlockOps LLC of Austin, Texas, which began developing related infrastructure under Paul's direction. Still, Paul refused to approve completion of the actual CryptoZoo game, claiming it was "too expensive." In truth, Paul had no intent to complete the project; he had already realized his profits and sought only to maintain appearances. Throughout 2022, Paul continued making empty public promises, insisting that artists were "working around the clock" and that he was "never giving up," despite knowing full well that development had stopped entirely.

389.    Finally, Defendants hired developers from BlockOps LLC operating out of Austin, Texas. These developers created projects related to CryptoZoo, including Zoobay, under the

direction of Defendants. Defendants refused to have BlockOps finish the CryptoZoo game because it was too expensive.

390.    As this process unfolded, Defendants continued to publicly talk about the game and provide news about potential updates that never come to fruition. On May 14, 2022, Levin and Defendant Paul stated they were "Never given up, working on [CryptoZoo] daily," before making additional comments affirming their dedication to CryptoZoo:

a.    "Let our actions speak for ourselves," Levin.

b.    "Artists working around the clock," Paul.

c.    "[Defendants] said they are going to do something, they're gonna do it," Levin.

d.    Defendants are "long-term thinkers," Levin.

e.    "Retroactively working to make these projects right and just takes times time bro. It just takes f***ing time bro. Development takes time." Paul.

f.    "Working backwards to fix things, which isn't ideal, but also this project will speak for itself." Paul.

g.    "And now, you know, we're working backwards to try and fix it." Paul.

391.    These statements continued until Defendants realized the game was not going to be created at a price they wanted to pay. Thus, in a video released by a YouTube-based investigative reporter Coffeezilla on December 20, 2022, there is audio of a call between Levin and Coffeezilla, where Levin first began to publicly backpedal, stating:

h.    "More preparation, more education, more time to learn and uh find the right partners,"

i.    "Logan loves to move fast…Fast sometimes can be a stumble," and

j.    Defendants needed to "Take the time."

Available at https://www.youtube.com/watch?v=wvzyDg40-yw.

392.    On information and belief, Defendants made the business decision to forego an expensive and time-consuming process to create a functional CryptoZoo game or support it, and instead deliberately undertook a scheme to defraud Plaintiffs and other consumers. Paul has admitted the game will never be released and alleges it was actually built, but not until early in 2023.

393.    Defendants' internal documents show the Defendant Paul knew they were supposed to hold onto any early purchased digital products until months after the public release because they knew that selling before then constitutes a "rug pull" and is fraudulent. Due to the unconscionability of Defendants' fraudulent scheme, Defendants should disgorge the revenue, profit, and any other gains made therefrom to Plaintiffs.

394.    On information and belief, Defendants manipulated the Zoo Token market. Their standard operating procedure has been to promise products they failed to deliver on only to abandon the project and community they promised to support. Due to these unconscionable practices, Defendants should disgorge any revenue, profits, or any other gains from their scheme to Plaintiffs.

395.    Logan Paul and Defendants knew or should have known that they were falsely advertising a non-functional product and that consumers would be deceived by their false representations. Defendants acted with reckless disregard when they made such false representations and are responsible for Plaintiffs' damages.

## IX.    CLASS ACTION ALLEGATIONS

396.    Plaintiffs bring this action under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

**CRYPTOZOO CLASS:**

**All persons who purchased Zoo Tokens and/or CryptoZoo NFTs from June 11, 2021 through (at least) January 4, 2024.**

397.    The Class is comprised of four subclasses: (1) all persons and entities who purchased Zoo Tokens directly from Defendants, or the platform Defendants used for sale, on their public release date; (2) all persons and entities who purchased CZ NFTs directly from Defendants, or the platform Defendants used for sale, on their public release date; (3) all persons and entities who purchased Zoo Tokens or CZ NFTs directly from Defendants during the class period; and (4) all persons and entities who purchased Zoo Tokens or CZ NFTs on the open market during the class period as a result of Defendants' successfully soliciting Zoo Tokens or CZ NFTs.

398.    Excluded from the class definition are any employees, officers, directors of Defendants, and attorneys appearing in this case, and any judge assigned to hear this action. Plaintiffs reserve the right to modify this class definition as he obtains relevant information.

399.    The proposed class can be identified through Defendants' records and Binance block chain records containing, amongst other information, the relevant digital currency transactions.

400.    Such data indicates there is approximately 20,000 potential victims based on publicly available cryptocurrency addresses and, on information and belief, there are thousands in the United States. Accordingly, the number of Putative CryptoZoo Class Members is believed to be in the thousands, rendering the class so numerous that individual joinder of all class members is impracticable.

401.    Lead Plaintiffs are members of the proposed class.

**Commonality**

402.    There are questions of fact common to the Putative CryptoZoo Class, and those

questions predominate over questions affecting any individual Putative CryptoZoo Class Member.

Common questions of fact include but are not limited to:

        a.     Whether Defendants fraudulently promoted investment products, that did not function as promoted, causing investors/consumers like those in the Putative CryptoZoo Class to invest in Zoo Tokens or CZ NFTs;

        b.     Whether Defendants fraudulently promoted future products or services, or futures in products or services—products or services Defendants knew would not exist as promoted or at all—causing consumers like those in the Putative CryptoZoo Class to purchase said futures or invest further in CryptoZoo products;

        c.     Whether Defendants violated their agreement(s) to deliver functional products and breached their agreement(s);

        d.     Whether Defendants knew CryptoZoo would not be functional when they claimed it would be or was, and made false representations despite that knowledge;

        e.     Whether Defendants had a duty to provide functional products to their consumers, and if Defendants violated that duty;

        f.     Whether Defendants failed to deliver on its promises to consumers to provide functional products;

        g.     Whether Defendant made any false representations to their investors or consumers, and whether Defendants knew those representations to be false, or whether those assertions were made recklessly and without adequate

investigation of their truth or falsity;

h.    Whether Defendants received revenues from their fraudulent venture, and the amount of those revenues;

i.    Whether Defendant manipulated the market for Zoo Tokens and their NFTs; and

j.    Whether Defendants had a duty to not manipulate the market for Zoo, and whether Defendants violated that duty.

403.    There are questions of law common to the Putative CryptoZoo Class, and those questions predominate over questions affecting any individual Putative CryptoZoo Class Member. Common questions of law include but are not limited to:

a.    Whether Defendant's conduct in (1) making false representations about CryptoZoo, (2) failing to provide a functional CryptoZoo product, (3) selling Zoo Tokens and CZ NFTs as unregistered securities without proper regard for investors, and (4) manipulating the Zoo Token market, constitute acts of fraud;

b.    Whether Defendant's conduct common to the Putative CryptoZoo Class has resulted or will result in Defendant being enriched at the expense of Putative CryptoZoo Class Members, or in Defendant retaining a benefit to the detriment and loss of Putative CryptoZoo Class Members, in frustration of the fundamental principles of justice, equity, and good conscience, and thus constitutes unjust enrichment;

c.    Whether Defendant's conduct common to the Putative CryptoZoo Class demonstrates willfulness, malice, or recklessness, or whether Defendant

proceeded with conscious disregard for the rights of others, therefore entitling Putative CryptoZoo Class Members to punitive damages.

**Typicality**

404.    Typicality. *Fed. R. Civ. P. 23(a)(3).* Lead Plaintiffs' claims are typical of the claims of the Putative CryptoZoo Class Members. Lead Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Lead Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other Members of the Putative CryptoZoo Class.

**Adequacy**

405.    Adequacy. *Fed. R. Civ. P. 23(a)(4).* Lead Plaintiffs are adequate representatives of the proposed Putative CryptoZoo Class because their interests coincide with and are not antagonistic to, the interests of the other Plaintiffs and Members of the Putative CryptoZoo Class they seek to represent; they have retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. The non-lead Plaintiffs have no interests antagonistic to or conflicting with those of the Class. Lead Plaintiffs and their Counsel will fairly and adequately protect the interests of the Members of the Putative CryptoZoo Class.

**Superiority**

406.    Superiority. *Fed. R. Civ. P. 23(b)(3).* Questions of law and fact common to the Putative CryptoZoo Class Members predominate over questions affecting only individual Members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness and Scienter will be determined based on Defendants' conduct and knowledge, not upon the effect of Defendants' conduct on the Putative CryptoZoo Class Members.

407.    The damages sought by each Member are such that individual prosecution for a

majority of the Members would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct—and would be burdensome and expensive on the Federal Judiciary System to resolve multiple litigations based on the same facts as a single class action. It would be virtually impossible for Members of the Putative CryptoZoo Class individually to redress effectively the wrongs done to them. Even if the Members of the Putative CryptoZoo Class themselves could afford such individual litigation, it would still be an unnecessary burden on the courts.

408.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in one case.

## X.    CAUSES OF ACTION

### A.    COUNT ONE: FRAUD

409.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

410.    Defendants failed to disclose that CryptoZoo was non-functional as promoted and that they would not be supporting the project.

411.    Defendants have no practice of providing promised products/projects and supporting said projects/products.

412.    This is a signal attribute of fraud because Defendants represented to provide the promoted products/projects and to do what was best for the Plaintiffs and other consumers. Moreover, in related context and as previously alleged, Defendants had a duty to provide the

promoted products/projects and to do what was best for the Plaintiffs, investors, and other consumers, but chose to proceed in violation of this duty.

413.    Rather than make candid, straightforward disclosure of their material failures, Defendants ignored them.

414.    Plaintiffs and other consumers were ignorant of these material failures and did not stand in equal opportunity with Defendants to know they existed. They had no way of knowing what sort of products/projects would be implemented or what contractual terms Defendants injected to immunize their scheme. In this context these purported contractual terms have the additional effect of intentionally misleading Plaintiffs and other consumers concerning Defendants' practices. These customers cannot reasonably expect that Defendants would take their assets and fail to provide a functional CryptoZoo, fail to support the community, or manipulate the Zoo Token market. But this is reflected repeatedly in Plaintiffs' statements as presented in this Complaint.

**B.    COUNT TWO: EXPRESS BREACH OF CONTRACT**

415.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

416.    Plaintiffs allege that they entered into valid and enforceable express contracts, or was a third party beneficiary of valid and enforceable express contracts, with Defendants.

417.    The valid and enforceable express contracts that Plaintiffs entered with Defendants include Defendants' representations that they would provide a functional version of CryptoZoo at the time the Zoo Tokens and CZ NFTs were publicly noticed and/or released as for sale. The express contracts also include violations of Defendants' then-current terms of service.

418.    Under these express contracts, Defendants and/or their affiliated contractors or

associates, promised and were obligated to: (a) provide a functional version of CryptoZoo, upon which the value of Zoo Tokens and CZ NFTs were at least partially dependent; and (b) provide the agreed terms in exchange for Plaintiffs' and other consumers investments in Defendants' products/services. In exchange, Plaintiffs and other consumers agreed to pay money for these products/services.

419.    Both the (a) provision of a functioning CryptoZoo and (b) the obligation that Defendants "will strive to do the best for the project and the community" of participants in CryptoZoo—amongst other obligations—were material aspects of these agreements.

420.    At all relevant times, Defendants expressly represented in their promotions that CryptoZoo would be functional by September 1, 2021, and they "will strive to do the best for the project and the community [of participants in CryptoZoo]." Defendants had a duty to provide a functional CryptoZoo product, especially if they were taking assets from Plaintiffs and other consumers in exchange for access to it. Instead, Defendants pocketed Plaintiffs' and other consumers' money and mostly forgot, according to the publicly available information, about the "failed endeavor" until receiving negative media attention.

421.    Defendants' express representations—including, but not limited to, express representations found in their advertising and promotion—formed an express verbal contract/offer requiring Defendants to provide a functional CryptoZoo and to "strive to do the best for the project and the community [of participants in CryptoZoo]."

422.    Plaintiffs trusted Defendants' representations and proposed agreements related to their products. Yet Defendants failed to provide the promoted product and do what was best for their consumers, even lying about the underlying investment in the project. The CryptoZoo Tokens and CZ NFTs are essentially worthless, in part because CryptoZoo was never released. Plaintiffs

would not have entered into these arrangements with Defendants without believing CryptoZoo would function and be supported by Defendants.

423.    A meeting of the minds occurred, as Plaintiffs and other consumers invested in Defendants digital products in exchange for, amongst other things, a functioning CryptoZoo and Defendants' support of it.

424.    Plaintiffs performed their obligations under the contract when they paid for Defendants' digital products.

425.    Defendants materially breached their contractual obligations to provide a functional CryptoZoo and support the project.

426.    Defendants materially breached the terms of these express contracts, including, but not limited to, the terms stated in their promotions and then-current terms of service.

427.    The ensuing damages were a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

428.    As a result of Defendants' failure to fulfill obligations promised in these contracts, Plaintiffs and other consumers did not receive the full benefit of the bargain, and instead received products that were of a diminished value to that described in the agreements. Defendants therefore damaged Plaintiffs in an amount at least equal to the difference in the value of the Zoo Tokens they paid for, and the value they were left with.

429.    Had Defendants disclosed that CryptoZoo was nonfunctional, or that they were not going to support the project, neither the Plaintiffs nor any reasonable person would have purchased/invested in Defendants' products/services.

430.    As a direct and proximate result of these breaches, Plaintiffs have been harmed and suffered, and will continue to suffer, actual damages and injuries, including without limitation the

loss of assets and loss of use of those assets, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendants.

431.    Plaintiffs are entitled to compensatory and consequential damages suffered as a result of these breaches.

C.    COUNT THREE: IMPLIED BREACH OF CONTRACT

432.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

433.    When Plaintiffs and other consumers provided their investments/monies to Defendants in exchange for Defendants' services and products required to participate in CryptoZoo, they entered into implied contracts with Defendants under which Defendants agreed to reasonably provide a functional CryptoZoo and support it.

434.    Defendants solicited and invited Plaintiffs and other consumers to invest/pay for their digital products as part of Defendants' regular business practices. Plaintiffs accepted Defendants' offers and provided assets to Defendants.

435.    In entering such implied contracts, Plaintiffs reasonably believed and expected that Defendants would provide a functional CryptoZoo and support the project.

436.    Plaintiffs provided assets to Defendants reasonably believing and expecting that Defendants would provide a functional CryptoZoo and support the project.

437.    Plaintiffs would not have provided their assets to Defendants in the absence of the implied contract between them and Defendants to provide a functional CryptoZoo and support the project.

438.    Plaintiffs would not have entrusted their assets to Defendants in the absence of their implied promise provide a functional CryptoZoo and support the project.

439.     Plaintiffs fully and adequately performed their obligations under the implied contracts with Defendants.

440.     Defendants breached their implied contracts with Plaintiffs by failing to provide a functional CryptoZoo and support the project.

441.     As a direct and proximate result of Defendants' breaches of the implied contracts, Plaintiffs sustained damages as alleged here.

442.     Plaintiffs are entitled to compensatory and consequential damages suffered as a result of these breaches.

**D.     COUNT FOUR: UNJUST ENRICHMENT**

443.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

444.     As a direct and proximate result of Defendants' intentional and unlawful taking of Plaintiffs' assets without providing the promised product/services, Plaintiffs have been deprived of the profits and other benefits of purchasing/investing in Defendants' products. Defendants have been unjustly enriched by its wrongful receipt and retention of profits and other benefits they deprived Plaintiffs and, in equity, Defendants should not be allowed to retain their revenues and benefits.

445.     Plaintiffs are entitled to a judgment requiring Defendants to disgorge all sums they have received as revenue and other benefits arising from their unconscionable and unlawful failure to provide a functional CryptoZoo, failure to support the project, and manipulation of the Zoo Token market.

**E.     COUNT FIVE: NEGLIGENCE**

446.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

447.    By representing to the public that CryptoZoo would be functional, was seeded with around a million dollars, and that the CryptoZoo community would be supported, Defendants had a duty of care to use reasonable means to provide the promised products/services, not manipulate the Zoo Token and CZ NFT markets, and support Plaintiffs and the other members of the CryptoZoo community.

448.    Defendants' duty of care to provide the promised products/services, not manipulate the Zoo Token market, and support Plaintiffs and the other members of the CryptoZoo community arose from the special relationship that existed between Plaintiffs and Defendants. Defendants were positioned to ensure that the promised products/services would be delivered, that Zoo Token and CZ NFT markets were not manipulated, and to support Plaintiffs and the other members of the CryptoZoo community.

449.    Defendants breached their duties, and thus were negligent, by failing to provide the promised products/services, failing to support Plaintiffs and the other members of the CryptoZoo community, and manipulating the Zoo Token and CZ NFT markets. The specific negligent acts and omissions committed by Defendants include, but are not limited to:

    a.  Promoting products or services, that did not exist as promoted, causing Plaintiffs to purchase said products or services under false pretenses;

    b.  Representing that CryptoZoo would be functional and making false representations despite that knowledge;

    c.  Willfully failing to provide functional products and services to their consumer, even after receiving revenues from their fraudulent venture;

    d.  Willfully manipulating the market for Zoo Tokens and CZ NFTs; and

    e.  Willfully failing to support Plaintiffs and the CryptoZoo community.

450.    It was foreseeable that Defendants' failures to provide the promised

products/services, not manipulate the Zoo Token and CZ NFT markets, and support Plaintiffs and the other members of the CryptoZoo community would result in one or more types of damages and/or injuries to Plaintiffs.

451.    Plaintiffs are entitled to compensatory and consequential damages suffered as a result of Defendants' negligent failures.

**F.    COUNT SIX: FRAUDULENT MISREPRESENTATION**

452.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

453.    Defendants fraudulently represented to the public that CryptoZoo would be functional and that they would be supporting the project and the CryptoZoo community.

454.    Upon information and belief, Defendants knew that CryptoZoo would never be functional and that they had no intention of supporting the project or the CryptoZoo community, including Plaintiffs.

455.    Defendants had a duty to tell its consumers, including Plaintiffs, that CryptoZoo would never be functional and that they had no intention of supporting the project or the CryptoZoo community.

456.    Rather than make candid, straightforward disclosures to their consumers, including Plaintiffs, Defendants willfully concealed that CryptoZoo would never be functional and that they had no intention of supporting the project or the CryptoZoo community.

457.    Plaintiffs would not have purchased Defendants' products but for their reliance on Defendants' material statements that CryptoZoo would be functional and that they would be supporting the project and the CryptoZoo community.

458.    As a result, Plaintiffs is entitled to compensatory and consequential damages

suffered as a result of Defendants' fraudulent representations.

G.    **COUNT SEVEN: CONSPIRACY TO COMMIT FRAUD**

459.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

460.    Defendants conspired with one another and potentially others as yet unknown to commit the acts set forth in this Complaint.

461.    Said conspiracy constitutes a conspiracy to defraud Plaintiffs and other consumers.

462.    Plaintiffs, unaware of the falsity of statements made by Defendants, and in reliance on their accuracy, paid money to Defendants based on such fraudulent statements. Plaintiffs have been damaged as a result of Defendants' conspiracy to commit fraud.

H.    **COUNT EIGHT: CIVIL AIDING AND ABETTING FRAUD**

463.    Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

464.    Each non-entity Defendant, on behalf of CryptoZoo Inc., themselves, and each other, made numerous misrepresentations of material fact with the intent to commit the acts set forth in this Complaint.

465.    Each Defendant aided and abetted each other in perpetuating the fraudulent scheme described above against Plaintiffs and other investors/consumers. Indeed, by virtue of the conduct and facts described above, each of the Defendants named in this action aided and abetted the fraud that each Defendant perpetrated against Plaintiffs.

466.    Plaintiffs, because of Defendants' aiding and abetting each other's fraud, unaware of the falsity of statements made by Defendants, and relying on their accuracy, paid money to Defendants based on such fraudulent statements. Plaintiffs have been damaged as a result of

Defendants' aiding and abetting.

CONSUMER PROTECTION CLAIMS AGAINST ALL DEFENDANTS

467. For each of the Consumer Protection Claims below, Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth here.

468. Though Plaintiffs believe Defendants' alleged actions had an effect nationwide, the claims below are based on Plaintiffs' domicile at the time of injury and Plaintiffs reserve the right to supplement, as necessary, the Consumer Protection Claims for any future Class members who is domiciled in a state unrepresented below.

I.    COUNT NINE: VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. ANN. § 44-1521, *ET SEQ*.)

469. The Arizona Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Arizona ("Arizona resident Class members") against all Defendants.

470. The Defendants, the Arizona Plaintiff, and Arizona resident Class members are "persons" within the meaning of Ariz. Rev. Stat. Ann. § 44-1521(6).

471. Zoo Tokens, CZ NFTs, and the CryptoZoo game are "merchandise" within the meaning of Ariz. Rev. Stat. Ann § 44-1521(5).

472. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful business practices. Ariz. Rev. Stat. Ann § 44-1522(A).

473. In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Arizona CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

474.    Specifically, by failing to disclose and actively concealing the failure to develop CryptoZoo, and misrepresenting its progress, affecting the value of Zoo Tokens and CZ NFTs, Defendants engaged in deceptive acts or practices, as outlined in Ariz. Rev. Stat. § 44-1522(A), including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with advertising CryptoZoo and selling Zoo Tokens and CZ NFTs.

475.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Arizona Plaintiff and Arizona resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

476.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Arizona Plaintiff and Arizona resident Class members, as Defendants intended. Had they known the truth, the Arizona Plaintiff and Arizona resident Class members would not have purchased Zoo Tokens or CZ NFTs, or would have paid significantly less for them.

477.    The Arizona Plaintiff and Arizona resident Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Arizona Plaintiff and Arizona resident Class members did not, and could not, unravel Defendants' deception on their own.

478.    Defendants had an ongoing duty to the Arizona Plaintiff and Arizona resident Class members to refrain from unfair or deceptive practices under the Arizona CFA in the course of their business. Specifically, Defendants owed the Arizona Plaintiff and Arizona resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and/or appropriately support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo or support the CryptoZoo community from Arizona Plaintiffs and the Arizona resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

479.    The Arizona Plaintiff and Arizona resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

480.    Defendants' violations present a continuing risk to the Arizona Plaintiff and Arizona resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

481.    The Arizona Plaintiff and Arizona State Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices and awarding damages and any other just and proper relief available under the Arizona CFA.

**J.    COUNT TEN: FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)**

482.    The California Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in California ("California resident Class members") against all Defendants.

483.    Defendants, the California Plaintiffs, and California resident Class members are

"persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

484.    The California False Advertising Law ("California FAL") prohibits false advertising. California Bus. & Prof. Code § 17500.

485.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

486.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or support the CryptoZoo community, affecting the value of Zoo Tokens and CZ NFTs, Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500., including using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with advertising CryptoZoo and selling Zoo Tokens and CZ NFTs.

487.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Arizona Plaintiff and Arizona resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

488.    Defendants made or caused to be made and disseminated throughout California

advertising, marketing, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including the California Plaintiffs and California resident Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint, including paragraphs 1-31; 170-198.

489.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiffs and California resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

490.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the California Plaintiff and California resident Class members, as Defendants intended. Had they known the truth, the California Plaintiff and California resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

491.    The California Plaintiff and California resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The California Plaintiff and California resident Class members did not, and could not, unravel Defendants' deception on their own.

492.    Defendants had an ongoing duty to the California Plaintiff and California resident Class members to refrain from unfair or deceptive practices under the California FAL in the course of their business. Specifically, Defendants owed the California Plaintiff and California resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from California Plaintiffs and the California resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

493.    The California Plaintiff and California resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

494.    Defendants' violations present a continuing risk to the California Plaintiff and California resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

495.    The California Plaintiff and California State Class members seek an order enjoining Defendants' false advertising, any such orders or judgments as may be necessary to restore to the California Plaintiffs and California resident Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

K.    **Count Eleven: False Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, _et seq._)**

496.    The California Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in California ("California resident

Class members") against all Defendants.

497.    Zoo Tokens, CZ NFTs, and the CryptoZoo game are "goods" within the meaning of Cal. Civ. Code § 1761(a).

498.    Defendants, the California Plaintiffs, and California resident Class members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

499.    The California Plaintiffs and California resident Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

500.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

501.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

502.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

    a.   Representing that Zoo Tokens and CZ NFTs have characteristics, uses, benefits, and qualities which they do not have.

    b.   Representing that Zoo Tokens and CZ NFTs are of a particular standard, quality, and grade when they are not.

c. Advertising CryptoZoo, Zoo Tokens, and/or CZ NFTs with the intent not to sell them as advertised.

d. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

503.   Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiff and California resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

504.   Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the California Plaintiff and California resident Class members, as Defendants intended. Had they known the truth, the California Plaintiff and California resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

505.   The California Plaintiff and California resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The California Plaintiff and California resident Class members did not, and could not, unravel Defendants' deception on their own.

506.   Defendants had an ongoing duty to the California Plaintiff and California resident Class members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, Defendants owed the California Plaintiff and California resident Class

members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from California Plaintiffs and the California resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

507.    The California Plaintiff and California resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

508.    Defendants' violations present a continuing risk to the California Plaintiff and California resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

509.    Defendants were provided notice of the issues raised in this count before the filing of this lawsuit through Coffeezilla and Paul interacted publicly to Coffeezilla's expose. Because Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the California Plaintiffs seek all damages and relief to which the California Plaintiffs and California State Class members are entitled.

510.    Pursuant to Cal. Civ. Code § 1780(a), the California Plaintiffs and California residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against Defendants.

L.    **C**OUNT **T**WELVE: **U**NLAWFUL, **U**NFAIR, OR **F**RAUDULENT **B**USINESS **P**RACTICES **U**NDER THE **C**ALIFORNIA **U**NFAIR **C**OMPETITION **L**AW (**C**AL. **B**US. & **P**ROF. **C**ODE § 17200, *ET SEQ.*)

511.    The California Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in California ("California resident Class members") against all Defendants.

512.    California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

513.    As detailed in the allegations above, Defendants knowingly and intentionally designed, developed, tested, manufactured, and/or sold Zoo Tokens and/or CZ NFTs, and marketed and sold those Zoo Tokens and/or CZ NFTs, while misrepresenting the development of the CryptoZoo game and fraudulently concealing that failure from regulators and the California Plaintiffs and California resident Class members alike. In doing so, Defendants have engaged in at least one of the following unlawful, fraudulent, and unfair business acts and practices in violation of the UCL:

> a.  Knowingly and intentionally concealing from the California Plaintiffs and California resident Class members that was not and/or would not be developed while obtaining money from the California Plaintiffs and California State Class members;

> b.  marketing Zoo Tokens and/or CZ NFTs as possessing functional use for a game that did not and would not exist; and/or

> c.  violating both federal and California laws, including the federal RICO statute, as alleged *infra*.

514.    Defendants' misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Califor nia Plaintiff and California resident Class members, about the true safety and reliability of investing in

CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

515.    The California Plaintiff and California resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

516.    Pursuant to Cal. Bus. & Prof. Code § 17200, the California Plaintiffs and California residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices, any such orders or judgments as may be necessary to restore to the California Plaintiffs and California State Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203, and any other just and proper relief available under the California UCL.

## M.    COUNT THIRTEEN: VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT (COLO. REV. STAT. § 6-1-101, *ET SEQ.*)

517.    The Colorado Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Colorado ("Colorado resident Class members") against all Defendants.

518.    Defendants, the Colorado Plaintiff, and Colorado resident Class members are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

519.    The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices in the course of the person's business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

520.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the

reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

521.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members— Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Colo. Rev. Stat. § 6-1-105, including failing to disclose material information.

522.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Colorado Plaintiff and Colorado resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

523.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Colorado Plaintiff and Colorado resident Class members, as Defendants intended. Had they known the truth, the Colorado Plaintiff and Colorado resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

524.    The Colorado Plaintiff and Colorado resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Colorado Plaintiff and Colorado resident Class members did not, and could not, unravel Defendants'

deception on their own.

525.    Defendants had an ongoing duty to the Colorado Plaintiff and Colorado resident Class members to refrain from unfair or deceptive practices under the Colorado CPA in the course of their business. Specifically, Defendants owed the Colorado Plaintiff and Colorado resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Colorado Plaintiff and the Colorado resident Class members.

526.    The Colorado Plaintiff and Colorado resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

527.    Defendants' violations present a continuing risk to the Colorado Plaintiff and Colorado resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

528.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and Colorado residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Colorado CPA.

**N.    COUNT FOURTEEN: VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET SEQ.*)**

529.    The Florida Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Florida ("Florida resident Class members") against all Defendants.

530.    The Florida Plaintiff and Florida resident Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

531.    Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

532.    The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

533.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

534.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

535.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Florida Plaintiff and Florida resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

536.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Florida Plaintiff and Florida resident Class members, as Defendants intended. Had they known the truth, the Florida Plaintiff and Florida resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

537.    The Florida Plaintiff and Florida resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Florida Plaintiff and Florida resident Class members did not, and could not, unravel Defendants' deception on their own.

538.    Defendants had an ongoing duty to the Florida Plaintiff and Florida resident Class members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed the Florida Plaintiff and Florida resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the Florida Plaintiff and the Florida resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

539.    The Florida Plaintiff and Florida resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

540.    Defendants' violations present a continuing risk to the Florida Plaintiff and Florida

resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

541.    Pursuant to Fla. Stat. § 501.211, the Florida Plaintiff and Florida residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

**O.    COUNT FIFTEEN: VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*)**

542.    The Iowa Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Iowa ("Iowa resident Class members") against all Defendants.

543.    The Iowa Plaintiff and Iowa resident Class members are "consumers" within the meaning of Iowa Code § 714H.2.

544.    Defendants were and are engaged in the "sale" of "consumer merchandise" within the meaning of Iowa Code § 714H.2.

545.    The Iowa Private Right of Action for Consumer Frauds Act ("PRACF Act") prohibits unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes." Iowa Code § 714H.3.

546.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the PRACF Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the

reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

547.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Iowa Code § 714H.3.

548.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Iowa Plaintiff and Iowa resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

549.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Iowa Plaintiff and Iowa resident Class members, as Defendants intended. Had they known the truth, the Iowa Plaintiff and Iowa resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

550.    The Iowa Plaintiff and Iowa resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Iowa Plaintiff and Iowa

resident Class members did not, and could not, unravel Defendants' deception on their own.

551.    Defendants had an ongoing duty to the Iowa Plaintiff and Iowa resident Class members to refrain from unfair or deceptive practices under the PRACF Act in the course of their business. Specifically, Defendants owed the Iowa Plaintiff and Iowa resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the Iowa Plaintiff and the Iowa resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

552.    The Iowa Plaintiff and Iowa resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

553.    Defendants' violations present a continuing risk to the Iowa Plaintiff and Iowa resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

554.    Pursuant to Iowa Code § 714H.5, the Iowa Plaintiff and Iowa residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under the PRACF Act.

P.    COUNT SIXTEEN: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1, *ET SEQ.*)

555.    The Illinois Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Illinois ("Illinois resident Class members") against all Defendants.

556.    Defendants, the Illinois Plaintiffs, and Illinois resident Class members are

"persons" within the meaning of 815 ILCS 505/1(c).

557.    The Illinois Plaintiffs and Illinois resident Class members are "consumers" within the meaning of 815 ILCS 505/1(e).

558.    The CryptoZoo game, Zoo Tokens, and CZ NFTs are "merchandise" within the meaning of 815 ILCS 505/1(b).

559.    Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

560.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

561.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

562.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

    a.    Causing likelihood of confusion or of misunderstanding as to the existence of a CryptoZoo game;

    b.    Representing that the CryptoZoo products, including CryptoZoo game, Zoo Tokens, and CZ NFTs, had characteristics, uses, or benefits that they do not have;

c.  Representing that the CryptoZoo game, Zoo Tokens, and CZ NFTs are of a particular standard, quality, and grade when they are not;

d.  Advertising the CryptoZoo game, Zoo Tokens, and CZ NFTs with the intent not to sell them as advertised;

e.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

f.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the CryptoZoo game, Zoo Tokens, or CZ NFTs, whether or not any person has in fact been misled, deceived or damaged thereby.

563.  Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

564.  Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Illinois Plaintiffs and Illinois resident Class members, as Defendants intended. Had they known the truth, the Illinois Plaintiffs and Illinois resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

565.  The Illinois Plaintiffs and Illinois resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Illinois Plaintiffs and Illinois resident Class members did not, and could not, unravel Defendants' deception on their

own.

566.    Defendants had an ongoing duty to the Illinois Plaintiffs and Illinois resident Class members to refrain from unfair or deceptive practices under the Illinois CFDBPA in the course of their business. Specifically, Defendants owed the Illinois Plaintiffs and Illinois resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Illinois Plaintiffs and the Illinois resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

567.    The Illinois Plaintiffs and Illinois resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

568.    Defendants' violations present a continuing risk to the Illinois Plaintiffs and Illinois resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

569.    Pursuant to 815 ILCS 505/10a, the Illinois Plaintiffs and Illinois residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under Illinois CFDBPA.

**Q.    COUNT SEVENTEEN: VIOLATION OF THE DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*)**

570.    The Massachusetts Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Massachusetts

("Massachusetts resident Class members") against all Defendants.

571.    Defendants, the Massachusetts Plaintiffs, and Massachusetts resident Class members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

572.    Defendants were and are engaged in "trade" and "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

573.    The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

574.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

575.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair and/or deceptive business practices in the conduct of any trade or commerce as prohibited by Mass. Gen. Laws ch. 93A, § 2.

576.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Massachusetts Plaintiffs and Massachusetts resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or

CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

577.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Massachusetts Plaintiffs and Massachusetts resident Class members, as Defendants intended. Had they known the truth, the Massachusetts Plaintiffs and Massachusetts resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

578.    The Massachusetts Plaintiffs and Massachusetts resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Massachusetts Plaintiffs and Massachusetts resident Class members did not, and could not, unravel Defendants' deception on their own.

579.    Defendants had an ongoing duty to the Massachusetts Plaintiffs and Massachusetts resident Class members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed the Massachusetts Plaintiffs and Massachusetts resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Massachusetts Plaintiffs and the Massachusetts resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

580.    The Massachusetts Plaintiffs and Massachusetts resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants'

concealment, misrepresentations, and/or failure to disclose material information.

581.    Defendants' violations present a continuing risk to the Massachusetts Plaintiffs and Massachusetts resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

582.    Any requirement to give notice to Defendants under Mass. Gen. Laws ch. 93A, § 9(3) is excused because, inter alia, on information and belief Defendants do not maintain a place of business or do not keep assets within Massachusetts.

583.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Plaintiffs and Massachusetts residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under the Massachusetts Act.

**R.    COUNT EIGHTEEN: VIOLATION OF THE NORTH CAROLINA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (NORTH CAROLINA CODE § 714H.1, *ET SEQ.*)**

584.    The North Carolina Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in North Carolina ("North Carolina resident Class members") against all Defendants.

585.    The North Carolina Plaintiff and North Carolina resident Class members are "consumers" within the meaning of North Carolina Code § 714H.2.

586.    Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

587.    The Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise,

misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes." North Carolina Code § 714H.3.

588.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

589.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce prohibited by N.C. Gen. Stat. § 75-16.

590.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the North Carolina Plaintiff and North Carolina resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

591.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the North Carolina Plaintiff

and North Carolina resident Class members, as Defendants intended. Had they known the truth, the North Carolina Plaintiff and North Carolina resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

592.    The North Carolina Plaintiff and North Carolina resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The North Carolina Plaintiff and North Carolina resident Class members did not, and could not, unravel Defendants' deception on their own.

593.    Defendants had an ongoing duty to the North Carolina Plaintiff and North Carolina resident Class members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed the North Carolina Plaintiff and North Carolina resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the North Carolina Plaintiff and the North Carolina resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

594.    The North Carolina Plaintiff and North Carolina resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

595.    Defendants' violations present a continuing risk to the North Carolina Plaintiff and North Carolina resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

596.     Pursuant to N.C. Gen. Stat. § 75-16, the North Carolina Plaintiff and North Carolina residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, attorney fees, costs, and any other just and proper relief available under the North Carolina UDTPA.

**S.    COUNT NINETEEN: VIOLATION OF THE NEW JERSEY PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (NEW JERSEY CODE § 714H.1, *ET SEQ.*)**

597.     The New Jersey Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in New Jersey ("New Jersey resident Class members") against all Defendants.

598.     Defendants, the New Jersey Plaintiff, and New Jersey resident Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

599.     The CryptoZoo game, Zoo Tokens, and CZ NFTs are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

600.     The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unfair trade practices. N.J. Stat. Ann. § 56:8-2.

601.     In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

602.     Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members—Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair

or deceptive acts or practices in the conduct of any trade or commerce prohibited by N.J. Stat. Ann. § 56:8-2, including the act, use, or employment of any unconscionable commercial practice, and/or concealment, suppression or omission of material facts.

603.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New Jersey Plaintiff and New Jersey resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

604.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the New Jersey Plaintiff and New Jersey resident Class members, as Defendants intended. Had they known the truth, the New Jersey Plaintiff and New Jersey resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

605.    The New Jersey Plaintiff and New Jersey resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The New Jersey Plaintiff and New Jersey resident Class members did not, and could not, unravel Defendants' deception on their own.

606.    Defendants had an ongoing duty to the New Jersey Plaintiff and New Jersey resident Class members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed the New Jersey Plaintiff and New

Jersey resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from the New Jersey Plaintiff and the New Jersey resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

607.    The New Jersey Plaintiff and New Jersey resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

608.    Defendants' violations present a continuing risk to the New Jersey Plaintiff and New Jersey resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

609.    Pursuant to N.J. Stat. Ann. § 56:8-19, the New Jersey Plaintiff and New Jersey residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

T.    **COUNT TWENTY: VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ.*)**

610.    The Nevada Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Nevada ("Nevada resident Class members") against all Defendants.

611.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et. seq., prohibits the use of deceptive trade practices in the course of business and occupation.

612.    In the course of their business, Defendants, themselves or through their agents,

employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

613.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members— Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

     a.  Causing likelihood of confusion or of misunderstanding as to the existence of a CryptoZoo game;

     b.  Representing that the CryptoZoo products, including CryptoZoo game, Zoo Tokens, and CZ NFTs, had characteristics, uses, or benefits that they do not have;

     c.  Representing that the CryptoZoo game, Zoo Tokens, and CZ NFTs are of a particular standard, quality, and grade when they are not;

     d.  Advertising the CryptoZoo game, Zoo Tokens, and CZ NFTs with the intent not to sell them as advertised;

     e.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

     f.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the CryptoZoo game, Zoo Tokens, or CZ NFTs, whether or not any person has in fact been misled, deceived or damaged thereby.

614.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable

consumers, including the Nevada Plaintiffs and Nevada resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

615.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Nevada Plaintiffs and Nevada resident Class members, as Defendants intended. Had they known the truth, the Nevada Plaintiffs and Nevada resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

616.    The Nevada Plaintiffs and Nevada resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Nevada Plaintiffs and Nevada resident Class members did not, and could not, unravel Defendants' deception on their own.

617.    Defendants had an ongoing duty to the Nevada Plaintiffs and Nevada resident Class members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed the Nevada Plaintiffs and Nevada resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Nevada Plaintiffs and the Nevada resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

618.     The Nevada Plaintiffs and Nevada resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

619.     Defendants' violations present a continuing risk to the Nevada Plaintiffs and Nevada resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

620.     Pursuant to Nev. Rev. Stat. §§ 41.600, the Nevada Plaintiffs and Nevada residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada Act.

U.     COUNT TWENTY-ONE: VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349)

621.     The New York Plaintiffs bring this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in New York ("New York resident Class members") against all Defendants.

622.     The New York Plaintiffs and New York resident Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

623.     Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

624.     The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

625.     In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the

reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

626.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members— Defendants engaged in deceptive or practices in the conduct of business, trade or commerce, and/or in the furnishing practices of any service, as prohibited by N.Y. Gen. Bus. Law. § 349.

627.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New York Plaintiffs and New York resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

628.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the New York Plaintiffs and New York resident Class members, as Defendants intended. Had they known the truth, the New York Plaintiffs and New York resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

629.    The New York Plaintiffs and New York resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The New York Plaintiffs and New York resident Class members did not, and could not, unravel

Defendants' deception on their own.

630.     Defendants had an ongoing duty to the New York Plaintiffs and New York resident Class members to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed the New York Plaintiffs and New York resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from New York Plaintiffs and the New York resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

631.     The New York Plaintiffs and New York resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

632.     Defendants' violations present a continuing risk to the New York Plaintiffs and New York resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

633.     Pursuant to N.Y. Gen. Bus. Law § 349, the New York Plaintiffs and New York residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under New York DAPA.

**V.     COUNT TWENTY-TWO: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 PA. CONS. STAT. §§ 201-1, *ET SEQ.*)**

634.     The Pennsylvania Plaintiff brings this count individually and on behalf of members of the CryptoZoo Class who purchased Zoo Tokens or CZ NFTs in Pennsylvania ("Pennsylvania resident Class members") against all Defendants.

635.    Defendants, the Pennsylvania Plaintiff, and Pennsylvania resident Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

636.    The Pennsylvania Plaintiffs and Pennsylvania resident purchased the CryptoZoo products primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

637.    Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

638.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

639.    In the course of their business, Defendants, themselves or through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of investing in CryptoZoo or purchasing Zoo Tokens and CZ NFTs, as detailed above.

640.    Specifically, by misrepresenting, failing to disclose, and actively concealing the failure to develop a CryptoZoo game or properly support the CryptoZoo community—which negatively affected the value of Zoo Tokens and CZ NFTs held by Plaintiffs and Class members— Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat. § 201-2(3):

   a. Causing likelihood of confusion or of misunderstanding as to the existence of a CryptoZoo game;

   b. Representing that the CryptoZoo products, including CryptoZoo game, Zoo Tokens, and CZ NFTs, had characteristics, uses, or benefits that they do not have;

    c.   Representing that the CryptoZoo game, Zoo Tokens, and CZ NFTs are of a particular standard, quality, and grade when they are not;

    d.   Advertising the CryptoZoo game, Zoo Tokens, and CZ NFTs with the intent not to sell them as advertised;

    e.   Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding; and/or

    f.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the CryptoZoo game, Zoo Tokens, or CZ NFTs, whether or not any person has in fact been misled, deceived or damaged thereby.

641.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Pennsylvania Plaintiff and Pennsylvania resident Class members, about the true safety and reliability of investing in CryptoZoo or purchasing Zoo Tokens and/or CZ NFTS, the quality of CryptoZoo products, and the true value of CryptoZoo and its products including Zoo Tokens and CZ NFTs.

642.    Defendants' scheme and concealment of their failure to develop CryptoZoo and true characteristics of the Zoo Tokens and CZ NFTs were material to the Pennsylvania Plaintiff and Pennsylvania resident Class members, as Defendants intended. Had they known the truth, the Pennsylvania Plaintiff and Pennsylvania resident Class members would not have purchased Zoo Tokens or CZ NFTs or would have paid significantly less for them.

643.    The Pennsylvania Plaintiff and Pennsylvania resident Class members relied on Defendants and had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. The Pennsylvania Plaintiff and Pennsylvania resident Class members did not, and could not,

unravel Defendants' deception on their own.

644.    Defendants had an ongoing duty to the Pennsylvania Plaintiff and Pennsylvania resident Class members to refrain from unfair or deceptive practices under the Pennsylvania CPA in the course of their business. Specifically, Defendants owed the Pennsylvania Plaintiff and Pennsylvania resident Class members a duty to disclose all the material facts concerning the failures to develop CryptoZoo and support the CryptoZoo community because they possessed exclusive knowledge, they intentionally concealed the failures to develop CryptoZoo and support the CryptoZoo community from Pennsylvania Plaintiff and the Pennsylvania resident Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

645.    The Pennsylvania Plaintiff and Pennsylvania resident Class members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

646.    Defendants' violations present a continuing risk to the Pennsylvania Plaintiff and Pennsylvania resident Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

647.    Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), the Pennsylvania Plaintiff and Pennsylvania residents Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under Pennsylvania CPA.

## W.    COUNT TWENTY-THREE: VIOLATION OF TEXAS'S DECEPTIVE TRADE PRACTICES ACT ("DTPA")

648.    Texas resident Plaintiffs are consumers under the DTPA.

649.    Defendants' conduct concerning their false advertising, failure to provide the

promised products/services, manipulation of the Zoo Token and CZ NFT markets, failure to disclose information concerning the progress of CryptoZoo, and failure to support Texas resident Plaintiffs and the CryptoZoo community, as enumerated in this Complaint, constitute false, unfair, misleading, unconscionable, and/or deceptive acts under the DTPA These facts were known to Defendants at all times and done with the intent to induce Texas resident Plaintiffs and consumers to provide assets to Defendants, remain invested the game after it initially failed, or engage in transactions that they would not otherwise have engaged had the information withheld been known to them.

650.    Defendants conduct concerning their misrepresentations and failures as enumerated in this Complaint was unfair, misleading, and unconscionable under the DTPA.

651.    Defendants should not be allowed to rely on their terms of service to escape liability for their accused practices and profit from their own wrong.

652.    As a direct and proximate result of Defendants' intentional, unconscionable, misleading, unfair, and unlawful conduct, Texas resident Plaintiffs have been deprived of the profits and other benefits of purchasing/investing in Defendants' products/services.

653.    Texas resident Plaintiffs have been damaged by Defendants' willful violation of the DTPA and are entitled to relief in the form of treble damages, attorneys' fees, and costs.

**THE EXCHANGE ACT CLAIMS**

654.    Plaintiffs' Exchange Act claims seek to hold Defendants liable for intentionally (or with deliberate recklessness) issuing false and misleading statements for the purpose of inducing investors to purchase Zoo Tokens and/or CZ NFTs, and/or perpetuating a fraudulent scheme or device upon Plaintiffs and the Class.

**SCIENTER**

655.    For the purposes of Plaintiffs' claims under the Exchange Act, Plaintiffs allege that

the above-described material misrepresentations and omissions were made by Defendants either intentionally and/or with reckless disregard to the accuracy for the purposes of: (a) personal financial gain; (b) inflating market demand for Zoo Tokens during the public sale and offering of Zoo Tokens and CZ NFTs; and (c) securing additional financing and/or investors.

656.    Defendants were aware of the false claims as set forth in detail above. Each of the Defendant Paul had actual knowledge that: (i) the CryptoZoo game did not exist, (ii) that it could therefore not make players money, (iii) there was no value in Zoo Tokens and CZ NFTs; (iv) there are no benefits from owning Zoo Tokens and CZ NFTs, and (v) that the Defendants were not actively supporting the project, its online ecosystem, or the game.

657.    Similarly, by virtue of his position as a manager, and/or his relationship with the Defendant Paul, the Manager Defendant knew or were grossly reckless in not knowing the fabricated, non-existent base security that Plaintiffs and the Class were investing in.

**LOSS CAUSATION**

658.    During the Class Period, Defendants made false and misleading statements and engaged in a scheme to deceive the market, as well as a course of conduct that artificially inflated the price of CryptoZoo's patently worthless Zoo Tokens and CZ NFTs and operated as a fraud and deceit on the Class by materially misleading the investing public.

659.    These false and/or materially misleading statements concealed the fact that CryptoZoo was nothing but a vehicle for the Defendant Paul's self-dealing and personal enrichment.

**APPLICATION OF PRESUMPTION OF RELIANCE:**
**FRAUD-CREATED-THE MARKET DOCTRINE**

660.    Reliance need not be proven in this action because the action involves falsities so egregious and pervasive that they go to the very existence of Zoo Tokens and CZ NFTs. Positive

proof of reliance is not a prerequisite to recovery. All that is necessary is that the securities are so tainted by fraud as to be unmarketable. In other words, it must be shown that but for the fraud, Zoo Tokens and CZ NFTs would not have been marketable.

661.    Zoo Tokens and CZ NFTs should not have been sold to the investing public as they have at all times been objectively valueless and unmarketable because there was never a CryptoZoo game to use them with or other promised owner benefits.

662.    As detailed herein, absent the Defendant Paul's fraudulent conduct, Zoo Tokens and CZ NFTs could not have been sold for any price. Further, given that Zoo Tokens and CZ NFTs were not registered for sale, they were unlawfully offered and thus, *per se* unmarketable. Where, as here, actors introduce an otherwise unmarketable security into the market by means of fraud, they have manipulated all purchasers of the security at issue.

663.    Accordingly, Plaintiffs are entitled to the presumption of reliance because all Zoo Tokens and CZ NFTs were offered and sold as a result of Defendants' brazen fraud and in particular, the Defendant Paul's egregious fraudulent conduct.

**NO SAFE HARBOR**

664.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

665.    The Zoo Tokens and CZ NFTs at issue here were unregistered securities and thus, such safe harbors are inapplicable. Furthermore, to the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

666.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of CryptoZoo who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying, or relating to, any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when they were made.

## X.     COUNT TWENTY-FOUR: VIOLATION OF SECTION 10(B) AND SEC RULE 10B-5(B).

667.     Plaintiffs incorporates and re-allege all preceding paragraphs as if fully set forth herein.

668.     This Count is asserted by Plaintiffs on behalf of themselves and the Class against all Defendants and is based upon Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

669.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct that was intended to, and did (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Zoo Tokens and CZ NFTs; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire patently worthless unregistered securities, Zoo Tokens and CZ NFTs, at artificially created, and inflated, prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants took the actions set forth herein.

670.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material fact

and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiffs and the other members of the Class.

671.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of Defendants participated directly or indirectly in the preparation and/or publication of the promotional materials, press releases and other statements and documents described above, including statements made to the media that were designed to influence the market for Zoo Tokens and CZ NFTs. Such promotional materials, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about CryptoZoo's business, value of Zoo Tokens and CZ NFTs, and the entire 'game' scheme.

672.    By virtue of their positions at, and relationships or interactions with, CryptoZoo, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with a reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

673.    The Defendant Paul are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Defendant Paul and Manager Defendant were able to and did, directly or indirectly, control the content of the statements of CryptoZoo. As officers and/or directors of a company raising investments from the

general public, the Defendant Paul and Manager Defendant had a duty to disseminate timely, accurate, and truthful information with respect to CryptoZoo's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading promotional materials, releases, and public statements, a public market was created for worthless Zoo Tokens and CZ NFTs. Zoo Tokens and CZ NFTs have no use and no value whatsoever, yet Defendants' fraudulent conduct artificially created such a market.

674.    In ignorance of the adverse facts concerning the non-existence or inviability of the CryptoZoo game and Defendants' misrepresentations and concealment of CryptoZoo Inc.'s business and financial conditions, Plaintiffs and the other members of the Class purchased or otherwise acquired Zoo Tokens and CZ NFTs and were damaged thereby.

675.    Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired any Zoo Tokens and CZ NFTs. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, Zoo Tokens and CZ NFTs had no true value and thus Plaintiffs and the other members of the Class purchased worthless unregistered securities. The market price of Zoo Tokens and CZ NFTs plummeted upon materialization of undisclosed risks and/or public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

676.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

677.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of CryptoZoo unregistered securities during the Class Period, upon the disclosure that the CryptoZoo had been disseminated false information concerning essentially

every aspect of its operation to the investing public.

**Y.** **C**OUNT **T**WENTY-**F**IVE: **V**IOLATION OF **S**ECTION 20(A) OF THE **E**XCHANGE **A**CT **A**GAINST THE **D**EFENDANT **P**AUL

678.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

679.     During the Class Period, the Defendant Paul participated in the operation and management of CryptoZoo, and conducted and participated, directly and indirectly, in the conduct of CryptoZoo's business affairs. Because of their senior positions, they knew the false information about CryptoZoo's development and the Zoo Tokens and CZ NFTs.

680.     As officers and/or directors of a company raising investments from the investing public, the Defendant Paul had a duty to disseminate accurate and truthful information with respect to CryptoZoo's operations and to correct promptly any public statements issued by CryptoZoo which had become materially false or misleading.

681.     Because of their positions of control and authority as senior officers, the Defendant Paul were able to, and did, control the contents of the various promotional materials, press releases and public statements which CryptoZoo disseminated in the marketplace during the Class Period concerning CryptoZoo's operations. Throughout the Class Period, the Defendant Paul exercised their power and authority to cause CryptoZoo to engage in the wrongful acts complained of herein. The Defendant Paul, therefore, were "controlling persons" of CryptoZoo within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which created a market for patently worthless Zoo Tokens and CZ NFTs.

682.     Each of the Defendant Paul, therefore, acted as a controlling person of CryptoZoo. By reason of their senior positions and/or being directors of CryptoZoo, each of the Defendant Paul had the power to direct the actions of, and exercised the same to cause, CryptoZoo to engage

in the unlawful acts and conduct complained of herein. Each of the Defendant Paul exercised control over the general operations of CryptoZoo and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

683.    By reason of the above conduct, the Defendant Paul are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by CryptoZoo.

**RICO CLAIM**

**Z.  COUNT TWENTY-SIX: VIOLATION OF RICO: 18 U.S.C. § 1962(C)**

684.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

685.    CryptoZoo Inc. was one of Defendants Paul and Levin's entities for their criminal enterprise, all of whom are engaged in interstate commerce and whose activities affect interstate commerce.

686.    Before and during the Class Period, Defendants participated in an ongoing fraudulent enterprise led by Defendants Paul and Levin—who were previously engaged in a pattern and practice of cryptocurrency and NFT-related rug-pulls and pump-and-dumps, including:

    a.  Dink Doink;

    b.  Liquid Marketplace;

    c.  F*** Elon;

    d.  EMAX;

    e.  OMI;

    f.  Elon Gate; and

    g.  Bully.

687.    In relation to each of the above cryptocurrencies or crypto exchanges, Paul and

Levin either individually or through agents invested in each, Paul would made a public appearance touting each, and then they sold the investments after Paul's celebrity would make price of each jump after his public support.

688.    For the CryptoZoo phase of Defendants Paul and Levin's ongoing fraudulent enterprise, each of the other Defendants named herein managed and operated CryptoZoo through a pattern of racketeering activity, and thereby damaged Plaintiffs.

689.    Defendants each employed such criminal conduct as their regular way of doing business, as each Defendant lied about the progress of the game except for Defendant Stroebel who did not make public statements. Defendant Paul verifies such assertions of criminality as to his former-conspirators Defendants Ibanez and Greenbaum in his crossclaims. [Dkt. 55]

690.    Each of the Defendants transferred Plaintiffs' fraudulently obtained cryptocurrency and funds, and other fraudulently obtained funds, amongst themselves and in the open market in order to profit off their misrepresentations and to conceal the nature of their scheme.

691.    As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in an amount of at least $5,000,000.

## XI.    APPLICABLE SUBSRANTIVE LAW

692.    Plaintiffs acknowledge the Court's prior clarification regarding the applicable substantive law in this action. This case involves a federal question with supplemental state and common law claims asserted by a putative class that includes residents of multiple states and foreign countries. Consistent with the Court's direction, Plaintiffs plead their common law causes of action under Texas law, as the Court has determined that Texas law governs Counts 1 through 8.

693.    The state statutory claims are asserted under the consumer protection laws of the

respective states to which those claims belong. Each such claim is governed by the law of the state whose statute is invoked. The federal statutory claims are governed by federal law.

694.    Accordingly, and for purposes of clarity, all common law claims in this Amended Complaint—including fraud, fraudulent inducement, negligent misrepresentation, breach of contract, and related theories—are brought and should be analyzed under Texas law. All statutory consumer protection claims are governed by the law of their respective states, and all federal statutory claims are governed by federal law.

## XII.    DAMAGES

695.    Plaintiffs hereby adopts by reference each and every foregoing paragraph of the stated in this Complaint as if fully and completely set forth here.

696.    Defendants' conduct and actions discussed above proximately caused injury to Plaintiffs, which resulted in:

    a.  Loss of use damages for assets diminished by Defendants' actions;

    b.  Actual damages and treble damages under the Consumer Protection Claims;

    c.  Exemplary damages under the Consumer Protection Claims and Common Law Fraud;

    d.  Actual damages, including economic damages under all causes of action;

    e.  As a direct and proximate result of Defendants' breaches of contracts, Plaintiffs sustained damages as alleged here;

    f.  Plaintiffs are entitled to compensatory and consequential damages suffered as a result of Defendants' fraud and actions.

    g.  Mental anguish;

    h.  Civil penalties;

    i.  Prejudgment interest;

    j.  Attorney's fees; and

    k.  Costs of action.

697.    Plaintiffs further seek unliquidated damages within the jurisdictional limits of this Court.

## XIII.    PUNITIVE DAMAGES

698.    Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully set forth herein.

699.    The wrong done to Plaintiffs by Defendants was attended by fraudulent, malicious, intentional, willful, wanton, or reckless conduct that evidenced a conscious disregard for Plaintiffs' rights. Therefore, Plaintiffs seek punitive damages in an amount to be proven at trial.

## XIV.    ATTORNEY'S FEES

700.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten here.

701.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorney's fees be awarded under his breach of contract claims.

## XV.    INCORPORATION OF PARAGRAPHS

702.    Every paragraph in this Complaint is hereby incorporated into every other paragraph.

## XVI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, awarding relief as follows:

   a.    For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

   b.    Holding that the doctrine of unjust enrichment applies and ordering Defendants to pay Plaintiffs all sums received by Defendants flowing from their illegal and unconscionable activities;

   c.    For an award of actual damages, compensatory damages, statutory damages, exemplary damages, and statutory penalties, in an amount to be

determined, as allowable by law;

d.     For an award of punitive damages, as allowable by law;

e.     For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

f.     Pre-and post-judgment interest on any amounts awarded; and

g.     Such other and further relief as this court may deem just and proper.

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher (*pro hac vice* forthcoming)
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rules of Civil Procedure 5(d).  I hereby certify that on November 12, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.  I further certify that the foregoing has been served this document on all counsel of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

 */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey