**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DON HOLLAND, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 1:23-cv-00110 |
| vs. | § § | |
| CRYPTOZOO INC., a Delaware Corporation, LOGAN PAUL, EDUARDO IBANEZ, and JAKE GREENBAUM a/k/a CRYPTO KING, | § § § § § | |
| *Defendants.* | § § § § | |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANT LOGAN PAUL'S**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs submit this Surreply to address a discrete matter raised for the first time in Defendant Logan Paul's Reply (Dkt. 129):  Defendant's reliance on SEC Release No. 33-11412 ("SEC Release"), issued March 17, 2026, which Plaintiffs could not have addressed in their Opposition. Plaintiffs do not revisit arguments already briefed, and respond as follows:

**ARGUMENT:**
**SEC RELEASE NO. 33-11412 DOES NOT DISPLACE THE *HOWEY* ANALYSIS**

Defendant argues that the SEC Release classifying certain crypto assets as "digital tools" and "digital collectibles" resolves the securities question in his favor. Reply at 5–9. It does not. The SEC Release is a Commission-level interpretive statement and is not a rule promulgated through notice-and-comment rulemaking, and therefore lacks the force of law.[1] For perspective,

---

[1] *See* Application of the Fed. Sec. Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, Sec. Act Release No. 33-11412, Exch. Act Release No. 34-105020 (Mar. 17, 2026) ("SEC Release").

the Release refers to itself as an "interpretation" over fifty times. The Release itself acknowledges as much, stating that it "[t]he interpretation in this release does not supersede or replace the *Howey* test, which is binding legal precedent."[2]

After *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 369, 144 S. Ct. 2244, 2247, 219 L. Ed. 2d 832 (2024), courts "must exercise independent judgment in deciding the meaning of statutory provisions" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." The Second Circuit has already applied this principle to SEC interpretations. In *SEC v. Amah*, the court vacated a ruling that had relied on the SEC's statutory construction without independent judicial analysis, remanding for the district court to reach its own interpretation. *See United States Sec. & Exch. Comm'n v. Amah*, No. 24-2206-CV, 2026 WL 504794, at *4 (2d Cir. Feb. 24, 2026).

More fundamentally, the SEC Release itself concedes the dispositive point. It expressly provides that non-security crypto assets can still be the subject of investment contracts when "an issuer offers [them] by inducing an investment of money in a common enterprise with representations or promises to undertake essential managerial efforts from which a purchaser would reasonably expect to derive profits." SEC Release at 24-25. The classification of Zoo Tokens as "digital tools" or CryptoZoo NFTs as "digital collectibles" therefore does not end the *Howey* inquiry whatsoever; the transaction-level analysis still controls. *See Sec. & Exch. Comm'n v. LBRY, Inc.*, 639 F. Supp. 3d 211, 220 (D.N.H. 2022) ("Nothing in the case law suggests that a token with both consumptive and speculative uses cannot be sold as an investment contract.").

*Howey* is binding Supreme Court precedent that agency guidance cannot narrow. The investment contract definition is "flexible rather than a static principle, one that is capable of

---

[2]SEC Release at 8.

adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299, 66 S. Ct. 1100, 1103, 90 L. Ed. 1244 (1946). Courts must "disregard[] form for substance" and place "emphasis . . . on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336 88 S. Ct. 548, 553, 19 L. Ed. 2d 564 (1967); *Long v. Shultz Cattle Co.*, 881 F.2d 129, 133 (5th Cir. 1989) ("substantive 'economic realities' must govern over form"). The economic reality of how CryptoZoo assets were marketed and sold controls, not their *post hoc* guiding classification.

Plaintiffs' allegations satisfy *Howey* on the facts alleged. Defendant's own Reply concedes that Zoo NFTs were "yield-generating assets that would produce Zoo Tokens over time" and that Paul marketed CryptoZoo as a game that "makes you money." Reply at 9. These are textbook representations of profit. *Real v. Yuga Labs* is readily distinguishable: BAYC was marketed for consumptive use (membership and status), the project functioned on the independent Ethereum blockchain, and the promoter received creator fees regardless of investor profit or loss.[3] CryptoZoo, by contrast, was marketed as yield-generating, operated within a proprietary ecosystem controlled by Defendants, and never launched as promised. SAC ¶¶ 1–2, 22–26, 357.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court consider this Surreply and deny Defendant Paul's Motion to Dismiss the Second Amended Complaint.

---

[3] *See Real v. Yuga Labs, Inc.*, No. CV 22-8909 FMO (BFMX), 2025 WL 3437389 at 5-9 (C.D. Cal. Sept. 30, 2025)

Dated: April 21, 2026

Respectfully submitted,

*/s/ Jarrett L. Ellzey*

**ELLZEY & ASSOCIATES, PLLC**
Jarrett L. Ellzey
Texas Bar No. 24040864
jarrett@ellzeylaw.com
Leigh S. Montgomery
Texas Bar No. 24052214
leigh@ellzeylaw.com
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEY TOM & ASSOCIATES**
Tom Kherkher
Texas Bar No. 24113389
tom@attorneytom.com
5909 West Loop South Suite 525
Houston, Texas 77401
Phone: (855) 866-9467

**ATTORNEYS FOR PLAINTIFFS**

4